UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
| | |
|---|---|
| In re : | |
| : | **Chapter 11** |
| : | |
| CALPINE CORPORATION, *et al.*, : | Case No. 05-60200 (BRL) |
| : | |
| : | **(Jointly Administered)** |
| : | |
------------------------------------------------------------x
| | |
|---|---|
| HSBC BANK USA, NATIONAL : | |
| ASSOCIATION, AS INDENTURE : | |
| TRUSTEE, THE BANK OF NEW YORK, : | Case No. 1:07-cv-03088 (GBD) |
| AS ADMINISTRATIVE AGENT, : | |
| WILMINGTON TRUST FSB, AS : | |
| INDENTURE TRUSTEE, WILMINGTON : | |
| TRUST COMPANY, AS ADMINISTRATIVE : | |
| AGENT, AND MANUFACTURERS : | |
| & TRADERS TRUST COMPANY, : | |
| AS INDENTURE TRUSTEE, : | |
| : | |
| Appellants, : | |
| : | |
| – against – : | |
| : | |
| CALPINE CORPORATION, THE OFFICIAL : | |
| COMMITTEE OF UNSECURED : | |
| CREDITORS OF CALPINE CORPORATION, : | |
| AND THE OFFICIAL COMMITTEE OF : | |
| EQUITY SECURITY HOLDERS, : | |
| : | |
| Appellees. : | |
------------------------------------------------------------x   *caption continued on next page*

```
-----------------------------------------------------------------x
CALPINE CORPORATION, THE OFFICIAL              :
COMMITTEE OF UNSECURED                         :
CREDITORS OF CALPINE CORPORATION,              :
AND THE OFFICIAL COMMITTEE OF                  :
EQUITY SECURITY HOLDERS,                       :
                                               :
           Appellants,                         :
                                               :
    – against –                                :
                                               :
HSBC BANK USA, NATIONAL                        :
ASSOCIATION, AS INDENTURE                      :
TRUSTEE, THE BANK OF NEW YORK,                 :
AS ADMINISTRATIVE AGENT,                       :
WILMINGTON TRUST FSB, AS                       :
INDENTURE TRUSTEE, WILMINGTON                  :
TRUST COMPANY, AS ADMINISTRATIVE               :
AGENT, AND MANUFACTURERS                       :
& TRADERS TRUST COMPANY,                       :
AS INDENTURE TRUSTEE,                          :
                                               :
           Appellees.                          :
-----------------------------------------------------------------
```

# OPENING BRIEF OF APPELLANT
## WILMINGTON TRUST COMPANY AS COLLATERAL AGENT

NIXON PEABODY LLP
Amanda D. Darwin, Esq. (AD 2719)
Richard C. Pedone, Esq. *(Admitted Pro Hac Vice)*
Dennis A. Murphy, Esq. (*Admitted Pro Hac Vice*)
100 Summer Street
Boston, MA 02110
Telephone: (617) 345-1000

- and -

Christopher M. Desiderio, Esq. (CD 6929)
437 Madison Avenue
New York, NY 10022
Telephone: (212) 940-3000

Attorneys for Wilmington Trust Company as Collateral Agent

10495958

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ 1

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF APPELLATE JURISDICTION ........................................................... 1

STATEMENT OF ISSUES PRESENTED.......................................................................... 2

STANDARD OF APPELLATE REVIEW ......................................................................... 2

STATEMENT OF THE CASE............................................................................................ 2

ARGUMENT ....................................................................................................................... 7

    I.    THE BANKRUPTCY COURT ERRED WHEN IT DIMINISHED THE COLLATERAL AGENT'S LIENS BY RANKING THEM JUNIOR TO THE DIP LIENS, EXCEPT AS TO THE DISPUTED CALGEN CLAIMS AS DEFINED IN THE DIP REFINANCING ORDER.................................................................. 7

        A.    The Collateral Trust Agreement And Security Agreement Grant The Collateral Agent First Priority, Continuing Liens That Cannot Be Subordinated or Discharged Until All Secured Obligations Are Satisfied................................................................. 8

        B.    Even Though The Collateral Agent's Liens Retain Priority Over The Disputed CalGen Claims (Including Interest), That Alone Does Not Adequately Protect Its Security Interests In The Collateral ................................................................ 9

    II.    THE BANKRUPTCY COURT ERRED WHEN IT FAILED TO PROVIDE EXPRESSLY FOR ONGOING COMPENSATION OF THE COLLATERAL AGENT'S FEES AND EXPENSES FOR SERVICES THAT IT REMAINS CONTRACTUALLY OBLIGATED TO PERFORM ................................................ 11

CONCLUSION.................................................................................................................. 12

## TABLE OF AUTHORITIES

### FEDERAL CASES

In re First Cent. Fin. Corp., 377 F.3d 209 (2d Cir. 2004) .......................................................... 2

In re WestPoint Stevens, Inc., 333 B.R. 30 (S.D.N.Y. 2005) ....................................................... 9

Zervos v. Verizon N.Y., Inc., 252 F.3d 163 (2d Cir. 2001) ........................................................... 2

### FEDERAL STATUTES

11 U.S.C. § 105 ........................................................................................................................ 1, 7

11 U.S.C. § 361 ........................................................................................................................ 1, 7

11 U.S.C. § 362 ........................................................................................................................ 1, 7

11 U.S.C. § 364(c)(1) ............................................................................................................... 1, 7

11 U.S.C. § 363(b) ....................................................................................................................... 9

28 U.S.C. § 157(b) ....................................................................................................................... 2

28 U.S.C. § 158(a) ....................................................................................................................... 2

Fed. R. Bankr. P. 8013 ................................................................................................................. 2

Fed. R. Bankr. P. 3007 ................................................................................................................. 9

## PRELIMINARY STATEMENT

Wilmington Trust Company, solely in its capacity as collateral agent (when acting in such capacity, the "Collateral Agent") under a certain Collateral Trust and Intercreditor Agreement, dated March 23, 2004 (the "Collateral Trust Agreement"), hereby appeals from three orders of the United States Bankruptcy Court for the Southern District of New York (Lifland, J.). In the first order, the Memorandum Decision and Order,[1] the Bankruptcy Court authorized the DIP Refinancing and ruled on, among other things, the Collateral Agent's claims. In the second order, the DIP Refinancing Order,[2] the Bankruptcy Court improperly diminished the rank of the Collateral Agent's liens outside the procedural protections of the Bankruptcy Code's plan confirmation process. In the third order, the Amended Claims Order,[3] the Bankruptcy Court failed to provide for the payment of fees and expenses that the Collateral Agent remains contractually obligated to perform. Because the Collateral Agent's obligations have not been fully discharged, it was legal error for the Bankruptcy Court to alter the Collateral Agent's lien position, and not expressly provide for ongoing compensation of its fees and expenses.

## STATEMENT OF APPELLATE JURISDICTION

This appeal is from a core proceeding of the United States Bankruptcy Court for the Southern District of New York. 28 U.S.C. § 157(b). The DIP Refinancing Order and Amended

---

[1] The Memorandum Decision and Order is the "Memorandum Decision and Order Granting, in Part, Debtors' Motion for an Order (I) Authorizing Debtors to Obtain Replacement Postpetition Financing to (A) Refinance Existing Postpetition Financing and (B) Repay Prepetition Debt; (II) Allowing Debtors' Limited Objection to Claims; and (III) Determining Value of Secured Claims" entered by the Bankruptcy Court on March 5, 2007. (J.A. at 1).

[2] The DIP Refinancing Order is the March 12, 2007 "Order Authorizing Debtors to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 364(e)." (J.A. at 15).

[3] The Amended Claims Order is the March 26, 2007 "Amended Order (I) Granting Debtors Limited Objection to Claim Numbers 2664, 3275, 3393 Through 3421 (Inclusive), 3546 Through 3554 (Inclusive), 3586 Through 3588 (Inclusive), 3731, 4073, 5653 Through 5730 (Inclusive), 5791, and 5792; (II) Determining the Value of the CalGen Secured Debt Pursuant to Rule 3012 of the Federal Rules of Bankruptcy Procedure; and (III) Authorizing Repayment of CalGen Secured Debt." (J.A. at 62).

10495958

Claims Order are final orders of the Bankruptcy Court. This Court has jurisdiction to hear such appeals from final judgments, orders and decrees of the Bankruptcy Court. 28 U.S.C. § 158(a).

## STATEMENT OF ISSUES PRESENTED

1. Whether the Bankruptcy Court erred when it diminished the Collateral Agent's liens by ranking them junior to the Replacement DIP liens, except as to the Disputed CalGen Claims as defined in the DIP Refinancing Order; and

2. Whether the Bankruptcy Court erred when it failed to provide expressly for ongoing compensation of the Collateral Agent's fees and expenses for services that it remains contractually obligated to perform.

## STANDARD OF APPELLATE REVIEW

The Bankruptcy Court's legal errors in the DIP Refinancing Order and Amended CalGen Claims Order are reviewed *de novo,* and this Court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013; In re First Cent. Fin. Corp., 377 F.3d 209, 212 (2d Cir. 2004). *De novo* review is review without deference, and applies to questions of law, as well as to mixed questions of fact and law. Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 168-69 (2d Cir. 2001) ("A court abuses or exceeds the discretion accorded to it when (1) its decisions rests on an error of law (such as an application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision – though not necessarily the product of a legal error or a clearly erroneous factual finding – cannot be located within the range of permissible decisions.")

## STATEMENT OF THE CASE

On March 23, 2004, Calpine Generating Company, LLC ("CalGen") and CalGen Finance Corp. ("CalGen Finance") (CalGen Finance and CalGen are hereinafter sometimes referred to collectively as the "CalGen Issuers") completed an offering of first, second and third lien debt consisting of various floating and fixed rate notes, floating rate term loans and revolving lines of

credit, which collectively was in excess of $2.6 billion and may be summarized as follows (collectively, the "CalGen Secured Debt").

| No. | Description | Principal Amount |
|---|---|---|
| 1. | First Priority Secured Term Loans Due 2009 | $600 million |
| 2. | First Priority Secured Floating Rate Notes Due 2009 | $235 million |
| 3. | First Priority Revolving Loans | $200 million |
| 4. | Second Priority Secured Term Loans Due 2010 | $100 million |
| 5. | Second Priority Secured Floating Rate Notes Due 2010 | $640 million |
| 6. | Third Priority Secured Floating Rate Notes Due 2011 | $680 million |
| 7. | Third Priority Secured Notes Due 2011 | $150 million |
|  | **TOTAL:** | $2.605 billion |

Pursuant to the provisions of the Collateral Trust Agreement, a certain Security Agreement (the "Security Agreement"), and various related pledge agreements, mortgages, account control agreements, UCC-1 financing statements and other documents and instruments, all as more particularly described in the Collateral Agent's Proofs of Claim filed in these cases (together with the Collateral Trust Agreement and the Security Agreement, hereinafter sometimes referred to collectively as the "Security Documents"), the CalGen Issuers and various subsidiaries and affiliates of the CalGen Issuers acting as pledgors and guarantors (the "CalGen Guarantors") (the CalGen Issuers and the CalGen Guarantors are hereinafter sometimes referred to collectively as the "CalGen Debtors") granted to the Collateral Agent, for the benefit of the holders of the CalGen Secured Debt (collectively, the "CalGen Secured Noteholders"), a first priority lien on

10495958

substantially all of the assets of the CalGen Debtors (collectively, the "<u>Collateral</u>") to secure the complete and prompt payment by the CalGen Debtors of the CalGen Secured Debt.  <u>See</u> <u>e.g.</u>, Security Agreement, Article I (J.A. at 1043); Collateral Trust Agreement Section 2.3 (J.A. at 1134 - 1137).[4]

Read together, the Security Documents collectively provide that the Collateral Agent's liens may not be released or subordinated except upon payment in full and discharge of <u>all</u> outstanding CalGen Secured Debt.  For example, the Security Agreement grants to the Collateral Agent a "security interest and continuing lien," which "shall remain in full force and effect with respect to all Collateral until the Secured Obligations Termination Date."  Security Agreement, Article II & Article IX (J.A. at 1049 – 50; 1060 - 61).  The "Secured Obligations Termination Date," in turn, is defined under the Collateral Trust Agreement to mean "the date on which all Secured Obligations . . . have been paid in full in cash."  Collateral Trust Agreement, p. 29 (J.A. at 1127)  "Secured Obligations" are further defined as "including all interest accrued thereon after the commencement of any Insolvency Proceeding . . . even if such interest is not enforceable, allowable or allowed as a claim in such proceeding."  <u>Id.</u>  Under the terms of the Security Documents, therefore, the Collateral Agent's first priority liens remain in place until all Secured Obligations are paid in full, including accrued interest even if that interest cannot be collected in bankruptcy.

Moreover, Section 3.2 of the Collateral Trust Agreement imposes an affirmative obligation on the Collateral Agent to "not release or subordinate any Lien" or "consent to the release or subordination of any Lien" unless (among other exceptions not relevant) required by Article 5.  Collateral Trust Agreement, § 3.2 (J.A. at 1146).  Article 5, in turn, provides for

---

[4]   "J.A." refers to the separately bound, consecutively paginated Joint Appendix submitted to this Court on June 1, 2007.  "C.D." refers to the Agreed Consolidated Designation of Bankruptcy Record On Appeal submitted to this Court by the parties to the above-captioned appeal on May 11, 2007 (Dkt. No. 7).

10495958

release of the Collateral Agent's Liens upon "payment in full and discharge of all outstanding Secured Debt and all other Secured Obligations that are outstanding at the time all of the Secured Debt is paid in full and discharged . . . ." Collateral Trust Agreement, § 5.1 (J.A. at 1152). By its terms, the Collateral Trust Agreement remains effective after the commencement of any Insolvency Proceeding, which includes "any case under Title 11 of the United States Code . . . whether or not voluntary." Collateral Trust Agreement, p. 19 (J.A. at 1117). The Collateral Agent's first priority liens, therefore, remain unaffected until all Secured Obligations – including all accrued interest, even if unenforceable in bankruptcy – are paid in full and the CalGen Secured Debt is discharged.

By order dated March 12, 2007 (the DIP Refinancing Order), the Bankruptcy Court authorized the CalGen Debtors to refinance their debtor-in-possession ("DIP") post-petition financing and to repay a portion of the CalGen Secured Debt. The DIP Refinancing Order, pgs. 1 - 4 (J.A. at 15 - 18). By authorizing the DIP Refinancing and repayment of the CalGen Secured Debt without resolving all outstanding amounts due thereunder and without ordering immediate payment of all such amounts, the Bankruptcy Court materially altered the Collateral Agent's lien position under the Security Agreement, the Collateral Trust Agreement and other Security Documents. Specifically, the Bankruptcy Court diminished the rank of the Collateral Agent's pre-petition liens by making them junior to the liens that secure the DIP Obligations, except as to certain "Disputed CalGen Claims," including the makewhole payment, interest, fees and expenses, and contract damage claims. The DIP Refinancing Order states:

> <u>Liens Securing the CalGen Secured Debt.</u>  Upon entry of this Order and the repayment of the CalGen Secured Debt, the DIP Obligations shall be secured by valid, binding, continuing, enforceable, fully perfected first priority senior security interests in, and liens on, all pre-petition and post-petition property of CalGen Holdings, Inc. and its subsidiaries, whether such property existed as of the Petition Date or was acquired thereafter, that secured the CalGen Secured

- 5 -

>   Debt; provided that until the date of entry of a Final Order with respect to the Disputed CalGen Claims (as defined below) the liens granted to the [DIP Collateral Agent] Collateral Agent hereunder (for the benefit of itself, the Agent and the DIP lenders) on such property shall rank junior to the liens related to the CalGen Secured Debt that secure any alleged (i) CalGen Makewhole Payment, (ii) entitlement to interest (whether default or otherwise) sought by or on account of CalGen Secured Debt, (iii) claims for fees and expenses that may ultimately be allowed, and (iv) any and all claims, including without limitation, contract damage claims (collectively, (i) th[r]ough (iv) are the "Disputed CalGen Claims").

The DIP Refinancing Order, p. 19, ¶ 6(e) (J.A. at 33). By ranking the liens securing the DIP Obligations senior to the Collateral Agent's liens except as to the four disputed categories, the Bankruptcy Court compromised the Collateral Agent's lien position in contravention of the plain terms of the Security Agreement and the Collateral Trust Agreement.

The Bankruptcy Court entered the Amended Claims Order on March 26, 2007, but failed to preserve the Collateral Agent's right to continue collecting its fees and expenses for administering the collateral that secures the CalGen Secured Debt. Nothing in either the Amended Claims Order or the DIP Refinancing Order expressly provides for the Collateral Agent to be compensated for its ongoing fees and expenses, even though it remains contractually obligated to continue performing under the Collateral Trust Agreement and the other Security Documents and even though such fees and expenses are secured under the Security Documents.

On February 16, 2007, the Collateral Agent filed an objection in the Bankruptcy Court, requesting changes to the Debtor's proposed DIP Refinancing Order (C.D. No. 8, the "<u>Collateral Agent Objection</u>"). In its objection, the Collateral Agent requested that the proposed order be amended to (i) preserve the Collateral Agent's prepetition liens and (ii) permit continued payment of the Collateral Agent's fees and expenses. Neither the Debtors nor any other parties responded to the Collateral Agent Objection.

The Memorandum Decision and Order called for the parties to draft and settle on an order consistent with its terms. On March 9, 2007, the parties, not having agreed on a form of order, each submitted their proposed orders.[5] (C.D. Nos. 51 & 52). Without notice, hearing, or conference as required by the Local Bankruptcy Rules of the Southern District of New York, the Bankruptcy Court signed and entered the Debtors' Proposed DIP Order and the Debtors' Proposed Claims Order. The Bankruptcy Court subsequently entered the Amended CalGen Claims Order on March 26, 2007, which was also granted without notice or a hearing. (J.A. at 62).

## ARGUMENT

**I.    THE BANKRUPTCY COURT ERRED WHEN IT DIMINISHED THE COLLATERAL AGENT'S LIENS BY RANKING THEM JUNIOR TO THE DIP LIENS, EXCEPT AS TO THE DISPUTED CALGEN CLAIMS AS DEFINED IN THE DIP REFINANCING ORDER**

The DIP Refinancing Order improperly diminished the liens held by the Collateral Agent by ranking them junior to the liens securing the CalGen Secured Debt, except as to the "Disputed CalGen Claims." Those "Disputed CalGen Claims" are defined in the DIP Refinancing Order to include: "(i) CalGen Makewhole Payment, (ii) entitlement to interest (whether default or otherwise) sought by or on account of CalGen Secured Debt, (iii) claims for fees and expenses that may ultimately be allowed, and (iv) any and all claims, including without limitation, contract damage claims." The DIP Refinancing Order, p. 19, ¶ 6(e) (J.A. at 33). Allowing the Collateral Agent's liens to retain priority for only the Disputed CalGen Claims is contrary to the

---

[5]    The Debtor's proposed orders were styled: "Order Authorizing Debtors to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 364(e)" (the "Debtors' Proposed DIP Order") and "Order (I) Granting Debtors Limited Objection to Claim Numbers 2664, 3275, 3393 Through 3421 (Inclusive), 3546 Through 3554 (Inclusive), 3586 Through 3588 (Inclusive), 3731, 4073, 5653 Through 5730 (Inclusive), 5791, and 5792; (II) Determining the Value of the CalGen Secured Debt Pursuant to Rule 3012 of the Federal Rules of Bankruptcy Procedure; and (III) Authorizing Repayment of CalGen Secured Debt" (the "Debtors' Proposed Claims Order") (C.D. No. 52).

10495958

terms of the Security Agreement, the Collateral Trust Agreement and the other Security Documents, and does not adequately protect the Collateral Agent's security interests in the Collateral. Under no circumstances should any portion of the Collateral Agent's liens have been rendered subordinate to the $5 billion Replacement DIP Facility.

### A. The Collateral Trust Agreement And Security Agreement Grant The Collateral Agent First Priority, Continuing Liens That Cannot Be Subordinated or Discharged Until All Secured Obligations Are Satisfied

Under the plain terms of the Collateral Trust Agreement and the Security Agreement, the Collateral Agent's liens may not be released or subordinated except upon payment in full and discharge of all outstanding Secured Obligations. Collateral Trust Agreement, § 5.1 (J.A. at 1152). Those Secured Obligations include all accrued interest, even if "not enforceable, allowable or allowed as a claim in such [insolvency] proceeding." Collateral Trust Agreement, p. 29 (J.A. at 1127). The Collateral Agent's first priority liens thus remain in effect until all Secured Obligations are paid in full and discharged, including any interest even if unenforceable in bankruptcy.

It is undisputed that the Bankruptcy Court deferred ruling on the issue of whether default interest would be awarded in connection with the DIP Refinancing and repayment of the CalGen Secured Debt. Memorandum Decision and Order, p. 13 (J.A. at 13) (ruling that "a decision today on the default rate of interest may be premature" and "the default interest issue need not be decided at this time"). Because the default interest issue has yet to be decided by the Bankruptcy Court, and since interest is part of the CalGen Secured Debt underlying the Collateral Agent's liens, the Secured Obligations have not been paid in full and completely discharged. Therefore, under the clear terms of the Security Agreement and the Collateral Trust Agreement, the Collateral Agent's first priority, continuing liens should not have been released or subordinated by the Bankruptcy Court.

- 8 -

But that is precisely what the DIP Refinancing Order purports to do. That Order diminished the rank of the Collateral Agent's liens by making them junior to the liens securing the DIP Refinancing, except as to the few "Disputed CalGen Claims" arbitrarily defined by the Debtors' form of order and entered by the Bankruptcy Court. The DIP Refinancing Order, p. 19, ¶ 6(e) (J.A. at 33). That unwarranted change in the Collateral Agent's lien position undermined its security in the Collateral underlying the CalGen Secured Debt. Bankruptcy law forbids the material alteration of a secured creditor's interests absent the procedural protections of participation in the plan confirmation process or adversary proceeding.[6] Moreover, the Bankruptcy Court also compromised the Collateral Agent's lien position by, for example, converting the fully secured prepayment premiums into unsecured claims for damages. It was legal error for the Bankruptcy Court to diminish the Collateral Agent's liens contrary to the plain terms of the parties' agreements and outside a plan of reorganization or adversary proceeding.

**B.     Even Though The Collateral Agent's Liens Retain Priority Over The Disputed CalGen Claims (Including Interest), That Alone Does Not Adequately Protect Its Security Interests In The Collateral**

The Disputed CalGen Claims, as defined by the Bankruptcy Court in the DIP Refinancing Order, include "entitlement to interest (whether default or otherwise)." The DIP Refinancing Order, p. 19, ¶ 6(e) (J.A. at 33). As explained above, interest is also among the Secured Obligations covered by the Collateral Agent's first priority, continuing lien. Collateral Trust Agreement, p. 29 (J.A. at 1127). But that happenstance does not excuse compliance with the plain terms of the Security Agreement and the Collateral Agreement. Just because some of

---

[6]     See 11 U.S.C. § 363(b); In re WestPoint Stevens, Inc., 333 B.R. 30, 52 (S.D.N.Y. 2005) (noting that § 363(b) "does not authorize the court to ignore the creditor's rights and procedural requirements of Chapter 11. Indeed, it is well established that section 363(b) is not to be utilized as a means of avoiding Chapter 11's plan confirmation process.").

Furthermore, Federal Rules of Bankruptcy Procedure 3007 and 7001 are explicitly clear in requiring a claim objection requesting the determination of the extent of a lien, then the lienholder and other parties are entitled to the full procedural safeguards of an adversary proceeding and Part VII of the Federal Rules of Civil Procedure.

the Disputed CalGen Claims -- notably, interest -- happen also to be among the Secured Obligations, the Bankruptcy Court was not authorized by the parties' agreements or by the Bankruptcy Code to subordinate the Collateral Agent's liens.

The liens granted to the Collateral Agent "shall remain in full force and effect with respect to <u>all</u> Collateral until the Secured Obligations Termination Date," which is "the date on which <u>all</u> Secured Obligations . . . have been paid in full in cash." Security Agreement, Article II; Article IX (J.A. at 1049 - 50; 1060 – 61); Collateral Trust Agreement, p. 29 (J.A. at 1127) (emphasis added). Nothing in either the Security Agreement or Collateral Trust Agreement contemplates <u>partial</u> release of the liens upon <u>partial</u> satisfaction of the Secured Obligations. All liens under those agreements "remain in full force and effect" until the entire debt, including interest, has been paid in full. (<u>Id.</u>).

There are sound reasons why the parties to the Security Agreement and the Collateral Trust Agreement structured the Collateral Agent's liens to remain in full force and effect until all debt was paid in full and finally discharged. First, the Collateral Agent's administrative duties monitoring the Collateral remain unabated until all obligations are completely satisfied. Second, the undifferentiated liens against all Collateral were a material inducement to the CalGen Secured Noteholders purchasing the CalGen Secured Debt and a material inducement to the Collateral Agent accepting its duties and obligations as collateral agent for the CalGen Secured Noteholders in the first place. Third, due to the difficultly inherent in valuing a partial satisfaction of certain Secured Obligations (such as the remaining Disputed CalGen Claims), the liens were to remain in full force and effect until all obligations were satisfied and the entire debt discharged. Indeed, the parties structured the Collateral Agent's liens precisely that way in order to avoid just the kind of situation presented here.

By limiting the Collateral Agent's liens to only the CalGen Disputed Claims (as defined in the DIP Refinancing Order), the Bankruptcy Court inappropriately diminished the Collateral Agent's liens. The Bankruptcy Court's error was contrary to the express terms of the Security Agreement and the Collateral Trust Agreement, and issued outside the procedural protections of the Bankruptcy Code that safeguard creditor's interests through participation in the plan confirmation process. Accordingly, the DIP Refinancing Order should therefore be vacated and remanded to the Bankruptcy Court with an order to restore the Collateral Agent's liens to the first priority position until all outstanding issues – including default interest – have been adjudicated, all Secured Obligations satisfied, and all Secured Debt paid in full and discharged.

## II. THE BANKRUPTCY COURT ERRED WHEN IT FAILED TO PROVIDE EXPRESSLY FOR ONGOING COMPENSATION OF THE COLLATERAL AGENT'S FEES AND EXPENSES FOR SERVICES THAT IT REMAINS CONTRACTUALLY OBLIGATED TO PERFORM

As part of the Collateral Agent's agreement to assume its role under the Collateral Trust Agreement, the CalGen Debtors agreed to pay the fees and expenses of the Collateral Agent. Collateral Trust Agreement, § 8.7 (J.A. at 1164 – 65). The compensation provision in the Collateral Trust Agreement, by its terms, "survive[s] repayment of all other Secured Obligations." (Id.) The Collateral Agent's fees and expenses are secured by those liens. See e.g. Security Agreement, § 3.1 (J.A. at 1050). Even if the status of those liens were not at issue, the Bankruptcy Court erred by not providing expressly for the ongoing payment of the Collateral Agent's secured fees and expenses.

As long as the Collateral Agent remains obligated to continue servicing the collateral that secures the CalGen Senior Secured Debt -- which is not disputed -- the CalGen Debtors must continue to pay the Collateral Agent's fees and expenses. The Bankruptcy Court failed to provide for such payment in the DIP Refinancing Order or Amended Claims Order. Without

such an explicit mandate, the Collateral Agent remains in the untenable position of remaining contractually obligated to service the Collateral without any assurance that it will be compensated for doing so. Those Orders should therefore be amended to provide for the payment of the Collateral Agent's ongoing fees and expenses.

## CONCLUSION

For the foregoing reasons, the DIP Refinancing Order and the Amended Claims Order should be vacated, and this matter remanded to the Bankruptcy Court with instructions to restore the Collateral Agent's liens to their first priority position until full discharge of the CalGen Secured Debt, and until that time, to provide for ongoing payment of the Collateral Agent's fees and expenses, including the fees and costs associated with this appeal.

Dated: June 1, 2007

**WILMINGTON TRUST COMPANY,**
**as Collateral Agent**

By its attorneys

*/s/ Christopher M. Desiderio*
Amanda D. Darwin, Esq. (AD 2719)
Richard C. Pedone, Esq. (Admitted Pro Hac Vice)
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110
Telephone: (617) 345-1305
Facsimile: (617) 345-1300
Email: rpedone@nixonpeabody.com

and

Christopher M. Desiderio, Esq. (CD 6929)
Nixon Peabody LLP
437 Madison Avenue
New York, NY 10022
Tel. (212) 940-3000
Fax: (212) 940-3111
Email: cdesiderio@nixonpeabody.com