UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| CALPINE CORPORATION, ET AL., | Case No. 05-60200 (BRL) |
| Debtors. | (Jointly Administered) |

------------------------------------------------------------------------x

HSBC BANK USA, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, THE BANK OF NEW YORK, AS ADMINISTRATIVE AGENT, WILMINGTON TRUST FSB, AS INDENTURE TRUSTEE, WILMINGTON TRUST COMPANY, AS ADMINISTRATIVE AGENT, WILMINGTON TRUST COMPANY AS COLLATERAL AGENT, AND MANUFACTURERS & TRADERS TRUST COMPANY, AS INDENTURE TRUSTEE

Case No. 1:07-cv-03088 (GBD)

Appellants,

- against -

CALPINE CORPORATION, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CALPINE CORPORATION, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

Appellees.

------------------------------------------------------------------------x

CALPINE CORPORATION, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CALPINE CORPORATION, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

Appellants,

- against -

HSBC BANK USA, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, THE BANK OF NEW YORK, AS ADMINISTRATIVE AGENT, WILMINGTON TRUST FSB, AS INDENTURE TRUSTEE, WILMINGTON TRUST COMPANY, AS ADMINISTRATIVE AGENT, WILMINGTON TRUST COMPANY AS COLLATERAL AGENT, AND MANUFACTURERS & TRADERS TRUST COMPANY, AS INDENTURE TRUSTEE

Appellees.

------------------------------------------------------------------------x

# OPENING BRIEF OF THE OFFICIAL COMMITTEE
# OF EQUITY SECURITY HOLDERS

**FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP**

Brad Eric Scheler (BS-8019)
Gary Kaplan (GK-4542)
Adrian Feldman (AF-2478)
One New York Plaza
New York, NY 10004
Telephone:  (212) 859-8000
Facsimile:   (212) 859-4000

Counsel to the Official Committee of Equity Security Holders

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

BASIS OF APPELLATE JURISDICTION ............................................................................. 2

ISSUES PRESENTED............................................................................................................... 2

STANDARD OF APPELLATE REVIEW............................................................................... 3

STATEMENT OF THE CASE.................................................................................................. 3

I.      FACTUAL HISTORY................................................................................................... 3

II.     PROCEDURAL HISTORY........................................................................................... 7

ARGUMENT.............................................................................................................................. 8

I.      THE DEBTORS' REPAYMENT OF THE CALGEN SECURED DEBT
DID NOT CONSTITUTE A BREACH OF THE INDENTURES
BECAUSE THE NO-CALL PROVISIONS ARE UNENFORCEABLE IN
BANKRUPTCY. ............................................................................................................ 8

        A.     The Bankruptcy Court correctly determined that the no-call
provisions are unenforceable against the Debtors. ................................................. 8

        B.     The Bankruptcy Court correctly determined that repayment of the
CalGen Secured Debt does not constitute a prepayment because
the debt was accelerated by CalGen's bankruptcy filing........................................ 9

        C.     The Debtors' excused compliance with the no-call provision
cannot give rise to damages for breach of contract............................................... 10

II.     THERE IS NO LEGAL BASIS FOR AN AWARD OF EXPECTATION
DAMAGES BECAUSE THE CALGEN LENDERS CANNOT
RECOVER ANY DAMAGES THAT ARE NOT EXPLICITLY
PROVIDED FOR IN THE CALGEN INDENTURES. ................................................ 11

CONCLUSION........................................................................................................................ 15

# TABLE OF AUTHORITIES

## CASES

*In re 360 Inns, Ltd.*, 76 B.R. 573 (Bankr. N.D. Tex. 1987)..........................................12, 13

*In re AE Hotel Venture*, 321 B.R. 209 (Bankr. N.D. Ill. 2005) ..........................................13

*Anchor Resolution Corp. v. State St. Bank & Trust Co. of Am. (In re Anchor Resolution Corp.)*, 221 B.R. 330 (Bankr. D. Del. 1998) ...............................................13

*Babitt v Vebeliunas (In re Vebeliunas)*, 332 F.3d 85 (2d Cir. 2003)………..……………….3

*Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610 (2d Cir. 1999) ..................................................................................................................................3

*In re Calpine Corp.*, 2007 WL. 57879 (S.D.N.Y. Jan. 9, 2007)..........................................8

*Continental Secs. Corp v. Shenandoah Nursing Home Pshp*, 188 B.R. 205 (W.D. Va. 1995)....................................................................................................................8, 12

*Continental Secs. Corp. v. Shenandoah Nursing Home Pshp*, 193 B.R. 769 (W.D. Va. 1996)......................................................................................................................9

*Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996)...............................................................12

*In re Jamesway Corp.*, 201 B.R. 73 (Bankr. S.D.N.Y. 1996).............................................10

*In re LHD Realty Corp.*, 726 F.2d 327 (7th Cir. 1984) ...........................................9, 10, 13

*In re Manville Forest Products Corp.*, 43 B.R. 293 (Bankr. S.D.N.Y. 1984).....................9

*Noonan v. Fremont Fin. (In re Lappin Elec. Co.)*, 245 B.R. 326 (Bankr. E.D. Wis. 2000) ...............................................................................................................................12

*Official Comm. of Unsecured Creditors v. Manufacturers & Traders Trust Co. (In re Bennett Funding Group)*, 146 F.3d 136 (2d Cir. 1998) ........................................3

*In re R.H. Macy & Co.*, 170 B.R. 69 (Bankr. S.D.N.Y. 1994) ...........................................10

*In re Ridgewood Apartments*, 174 B.R. 712 (Bankr. S.D. Ohio 1994)........................10, 13

*Sheline v. Dun & Bradstreet, Inc.*, 1991 U.S. Dist. LEXIS 9473 (N.D. Tex. Mar. 7, 1991) ............................................................................................................................10

*In re Skyler Ridge*, 80 B.R. 500 (Bankr. C.D. Cal. 1987).....................................................9

*United States Trust Co. v. LTV Steel Co.*, 150 B.R. 529 (Bankr. S.D.N.Y. 1993) ..............9

*United States v. Winstar Corp.*, 518 U.S. 839 (1996).........................................................12

*In re Vanderveer Estates Holdings, Inc.*, 283 B.R. 122 (Bankr. E.D.N.Y. 2002) ..............13

*In re Vest Assocs.*, 217 B.R. 696 (Bankr. S.D.N.Y. 1998) ............................................9, 12

*Well v. Rambam*, 300 A.D.2d 580 (N.Y. App. Div. 2d Dep't 2002) ................................11

## STATUTES, RULES AND REGULATIONS

28 U.S.C. §158(a)(1)..............................................................................................................2

Fed. R. Bankr. P. 8013 ..........................................................................................................3

REST 2d CONTR § 346 .......................................................................................................10

## PRELIMINARY STATEMENT

This appeal by the Official Committee of Equity Security Holders (the "Equity Committee") of Calpine Corporation, et al. (the "Debtors") arises from the Memorandum Decision and Order dated March 5, 2007 (the "Opinion") and the Order dated March 26, 2007 (as amended, the "Repayment Order") of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) granting the Debtors the authority to repay various tranches of secured prepetition debt (the "CalGen Secured Debt") at one of the Debtors' largest operating subsidiaries, Calpine Generating Company, LLC ("CalGen"), with the proceeds of replacement post-petition financing and (ii) awarding damages to the holders of the CalGen Secured Debt (the "CalGen Lenders") for the purported breach of the indentures and loan agreements governing the CalGen Secured Debt (the "CalGen Indentures") that occurred as a result of the repayment of the debt.[1]

Each of the CalGen Indentures includes a no-call provision barring the voluntary prepayment or optional redemption of debt within certain time periods. The Bankruptcy Court properly ruled that the no-call provisions are unenforceable against the Debtors because prohibitions on prepayment conflict with the goals and purpose of chapter 11 of the Bankruptcy Code. The Bankruptcy Court also correctly ruled that, under the terms of the CalGen Indentures, upon CalGen's bankruptcy filing the CalGen Secured Debt was accelerated and became due and payable immediately. As such, the debt had matured and the repayment of the debt was not a redemption or prepayment. After finding that the no-call provisions were unenforceable and that

---

[1] To avoid unessecary duplication, the Equity Committee's citations to the record refer to the opening appendix filed by the Debtors-Appellants on June 1, 2007, using the format "DA - Tab __."

the CalGen Secured Debt had matured so that it was not prepaid, the Bankruptcy Court erroneously concluded that CalGen Lenders are entitled to damages for breach of the no-call provisions.

Further, the Bankruptcy Court's award of damages cannot stand because damages are not provided for in the CalGen Indentures. The Bankruptcy Court properly recognized that the CalGem Indentures do not provide for a make-whole premium in the event of prepayment during the no-call period or if the debt is repaid upon acceleration. By awarding damages, the Bankruptcy Court effectively wrote into the CalGen Indentures additional protections for the CalGen Lenders that were not bargained for. While the CalGen Lenders could have negotiated for a provision in the indentures providing for a make-whole premium to be paid if the no-call is unenforceable or if the debt is paid upon acceleration, they did not. Accordingly, the Bankruptcy Court's award of expectation damages should be reversed.[2]

## BASIS OF APPELLATE JURISDICTION

This matter is a core proceeding pursuant to 28 U.S.C. §157(b). The United States District Court for the Southern District of New York has jurisdiction of this appeal pursuant to 28 U.S.C. §158(a), which provides this Court with jurisdiction to hear appeals from final judgments, orders, and decrees of the Bankruptcy Court of the United States.

## ISSUES PRESENTED

Whether the Bankruptcy Court erred in holding that the Debtors' repayment of prepetition debt to the CalGen Lenders constituted a breach of the CalGen loan agreements and

---

[2] The Equity Committee also joins in the arguments contained in the appellate briefs filed concurrently herewith by the Debtors and the Official Committee of Unsecured Creditors.

indentures and that the CalGen Lenders were entitled to damages for this purported breach, despite having correctly held that (a) the relevant "no-call" provisions forbidding the repayment are not enforceable in bankruptcy, and (b) the debt had been accelerated and matured upon the commencement of the bankruptcy by the terms of the loan agreements and indentures and by operation of the Bankruptcy Code.

## STANDARD OF APPELLATE REVIEW

A bankruptcy court's conclusions of law are reviewed de novo and findings of fact are review for clear error.  Fed. R. Bankr. P. 8013; Bank Brussels Lambert v. Coan (In re AroChem Corp.), 176 F.3d 610, 620 (2d Cir. 1999); Official Comm. Of Unsecured Creditors v. Manufacturers & Traders Trust Co. (In re Bennett Funding Group), 146 F.3d 136, 138 (2d Cir. 1998).  Mixed questions of law and fact are subject to de novo review.  See Babitt  v Vebeliunas (In re Vebeliunas), 332 F.3d 85 (2d Cir. 2003).   All of the issues presented in this appeal are questions of law.

## STATEMENT OF THE CASE

I.      FACTUAL HISTORY

On March 23, 2004, CalGen issued the CalGen Secured Debt in the aggregate amount of $2.605 billion through a series of first, second and third-lien financings.  DA - Tab E at 5.[3]  As of

---

[3] CalGen's first lien debt is comprised of (a) the $235,000,000 First Priority Secured Floating Rate Notes Due 2009; (b) the $600,000,000 First Priority Secured Institutional Terms Loans Due 2009; and (c) the $200,000,000 First Priority Revolving Loans (collectively, the "First Lien Notes").  CalGen's second lien debt is comprised of (a) the $640,000,000 Second Priority Secured Floating Rate Notes Due 2010 and (b) the $100,000,000 Second Priority Secured Term Loans Due 2010 (collectively, the "Second Lien Notes").  CalGen's third lien debt is comprised of (a) the $680,000,000 Third Priority Secured Floating Rate Notes Due 2011 and (b) the $150,000,000 11.5% Third Priority Secured Notes Due 2011 (collectively, the "Third Lien Notes").

January 2007, approximately $2.516 billion of CalGen Secured Debt remained outstanding. DA - Tab E, Exh. C at 2.

Six of the seven tranches of CalGen Secured Debt contain purported prepayment prohibitions, or "no-call" clauses, which bar voluntary prepayment or optional redemption of debt within certain time periods. The no-call provisions state as follows:

> $235,000,000 First Priority Secured Floating Rate Notes Due 2009. Section 3.07 of the First Priority Indenture, entitled "Optional Redemption," states that the "Issuers may not redeem all or any part of the Notes prior to April 1, 2007."
>
> $600,000,000 First Priority Secured Institutional Term Loans Due 2009. Section 2.10 of the First Priority Credit and Guarantee Agreement, entitled "Voluntary Prepayments," states that the First Lien Term Loans "may not be voluntarily prepaid at any time on or prior to April 1, 2007."
>
> $640,000,000 Second Priority Secured Floating Rate Notes Due 2010. Section 3.07 of the Second Priority Indenture, entitled "Optional Redemption," states that the "Issuers may not redeem all or any part of the Notes prior to April 1, 2008."
>
> $100,000,000 Second Priority Secured Institutional Term Loans Due 2010. Section 2.10 of the Second Priority Credit and Guarantee Agreement, entitled "Voluntary Prepayments," states that the Second Lien Term Loans "may not be voluntarily prepaid at any time on or prior to April 1, 2008."
>
> $680,000,000 Third Priority Secured Floating Rate Notes Due 2011. Section 3.07 of the Third Priority Indenture, entitled "Optional Redemption," states that the "Notes are not redeemable at the option of the Issuers."
>
> $150,000,000 11.5% Third Priority Secured Notes Due 2011. Section 3.07 of the Third Priority Indenture, entitled "Optional Redemption," states that the "Notes are not redeemable at the option of the Issuers."

DA - Tab E, Exh. D.

The CalGen Indentures also include acceleration clauses, which provide for automatic acceleration of the underlying debt upon an event of default, including commencement of a chapter 11 case by CalGen. The relevant acceleration provisions state as follows:

- 4 -

<u>$235,000,000 First Priority Secured Floating Rate Notes Due 2009</u>.  Section 6.01 of the First Priority Indenture, entitled "Events of Default," provides that commencing a voluntary bankruptcy case is an Event of Default.  Section 6.02, entitled "Acceleration," provides that "[i]n the case of an Event of Default [due to bankruptcy] . . . . all outstanding Notes will become ***due and payable immediately*** without further action or notice."  (Emphasis Added).

<u>$600,000,000 First Priority Secured Institutional Term Loans Due 2009</u>.  Section 7.01 of the First Priority Credit and Guarantee Agreement, entitled "Events of Default," provides that commencing a voluntary bankruptcy case is an Event of Default.  Section 7.02, entitled "Acceleration," provides that "[i]n the case of any Event of Default [due to bankruptcy] . . . with respect to the Borrower or any of its Subsidiaries, the outstanding First Priority Term Loans shall become ***due and payable immediately*** without further action or notice." (Emphasis Added).

<u>$640,000,000 Second Priority Secured Floating Rate Notes Due 2010</u>.  Section 6.01 of the Second Priority Indenture, entitled "Events of Default," provides that commencing a voluntary bankruptcy case is an Event of Default.  Section 6.02, entitled "Acceleration," provides that "[i]n the case of an Event of Default [due to bankruptcy] . . . all outstanding Notes will become ***due and payable immediately*** without further action or notice." (Emphasis Added).

<u>$100,000,000 Second Priority Secured Institutional Term Loans Due 2010</u>.  Section 7.01 of the Second Priority Credit and Guarantee Agreement, entitled "Events of Default," provides that commencing a voluntary bankruptcy case is an Event of Default.  Section 7.02, entitled "Acceleration," provides that "[i]n the case of any Event of Default [due to bankruptcy] . . . with respect to the Borrower or any of its Subsidiaries, the outstanding Second Priority Term Loans shall become ***due and payable immediately*** without further action or notice." (Emphasis Added).

<u>$680,000,000 Third Priority Secured Floating Rate Notes Due 2011</u>.  Section 6.01 of the Third Priority Indenture, entitled "Events of Default," provides that commencing a voluntary bankruptcy case is an Event of Default.  Section 6.02, entitled "Acceleration," provides that "[i]n the case of an Event of Default [due to bankruptcy] . . . all outstanding Notes will become ***due and payable immediately*** without further action or notice." (Emphasis Added).

<u>$150,000,000 11.5% Third Priority Secured Notes Due 2011</u>.  Section 6.01 of the Third Priority Indenture, entitled "Events of Default," provides that commencing a voluntary bankruptcy case is an Event of Default.  Section 6.02, entitled "Acceleration," provides that "[i]n the case of an Event of Default [due to bankruptcy] . . . all outstanding Notes will become ***due and payable immediately*** without further action or notice." (Emphasis Added).

DA - Tab E, Exh. D.

None of the CalGen Indentures provide for payment of a make-whole premium if the underlying debt is paid prior to April 1, 2007. Two of the CalGen Indentures provide for payment of a make-whole premium if the underlying debt is voluntarily repaid during the year following March 31, 2007, and two of the indentures provide for the payment of a make-whole premium if the underlying debt is voluntarily repaid during the year following March 31, 2008. The make-whole provisions state as follows:

> $235,000,000 First Priority Secured Floating Rate Notes Due 2009. Section 3.07 of the First Priority Indenture, entitled "Optional Redemption," states that "***[o]n or after April 1, 2007***, the Issuers may redeem all or part of the Notes, upon not less than 30 nor more than 60 days prior notice, at the redemption prices (expressed at percentages of principal amount) set forth below plus accrued and unpaid interest and Special Interest, if any, on the notes redeemed . . . ." (Emphasis Added).
>
> $600,000,000 First Priority Secured Institutional Term Loans Due 2009. Section 2.10 of the Credit and Guarantee Agreement, entitled "Voluntary Prepayments," states that "[t]he Borrower may . . . [prepay] the First Priority Term Loans, if such prepayment is ***after April 1, 2007***, but on or before April 1, 2008, in an amount equal to 102.5% of the principal amount so prepaid . . . ." (Emphasis Added).
>
> $640,000,000 Second Priority Secured Floating Rate Notes Due 2010. Section 3.07 of the Second Priority Indenture, entitled "Optional Redemption," states that "***[o]n or after April 1, 2008***, the Issuers may redeem all or part of the Notes, upon not less than 30 nor more than 60 days prior notice, at the redemption prices (expressed at percentages of principal amount) set forth below plus accrued and unpaid interest and Special Interest, if any, on the notes redeemed . . . ." (Emphasis Added).
>
> $100,000,000 Second Priority Secured Institutional Term Loans Due 2010. Section 2.10 of the Credit and Guarantee Agreement, entitled "Voluntary Prepayments," states that "[t]he Borrower may . . . [prepay] the Second Priority Term Loans, if such prepayment is ***after April 1, 2008***, but on or before April 1, 2009, in an amount equal to 103.5% of the principal amount so prepaid . . . ." (Emphasis Added).

DA - Tab E, Exh. D.

II. <u>PROCEDURAL HISTORY</u>

On December 20, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, accelerating the maturity of the CalGen Secured Debt to the Petition Date.

On January 26, 2007, the Debtors filed their Motion for Order (I) Authorizing Debtors to Obtain Postpetition Financing to (A) Refinance Existing Postpetition Financing and (B) Repay Prepetition Debt; (II) Allowing Debtors' Limited Objection to Claim; and (III) Determining Value of Secured Claims (the "Refinancing Motion").  DA - Tab E.  By the Refinancing Motion, the Debtors sought to obtain $5.0 billion in replacement debtor-in-possession financing to refinance the Debtors' existing debtor-in-possession facility and to repay approximately $2.516 billion of CalGen Secured Debt.  DA - Tab E at 2.

On February 16, 2007, each of the CalGen Lenders filed objections to the Refinancing Motion, contending that they were entitled to make-whole premiums and general contract damages because the Debtors were prohibited from repaying the CalGen Secured Debt during the no-call periods.

On February 27, 2007, the Bankruptcy Court held a hearing on the Refinancing Motion. The Bankruptcy Court issued the Opinion and entered the Repayment Order on March 5, 2007 and March 26, 2007, respectively.  Pursuant to the Opinion and Repayment Order, the Bankruptcy Court granted the Refinancing Motion but held that the CalGen Lenders were entitled to an unsecured damage claim for breach of the CalGen Indentures in the amount of (i) 2.5% of the principal amount of the First Lien Notes, (ii) 3.5% of the principal amount of the

- 8 -

Second Lien Notes, and (iii) 3.5% of the principal amount of the Third Lien Notes. DA - Tab A at 11.

On March 29, 2007, Calpine repaid approximately $2.516 billion of CalGen Secured Debt.

**ARGUMENT**

I. THE DEBTORS' REPAYMENT OF THE CALGEN SECURED DEBT DID NOT CONSTITUTE A BREACH OF THE INDENTURES BECAUSE THE NO-CALL PROVISIONS ARE UNENFORCEABLE IN BANKRUPTCY.

    A.    The Bankruptcy Court correctly determined that the no-call provisions are unenforceable against the Debtors.

The Bankruptcy Court permitted the Debtors to repay the CalGen Secured Debt based upon its finding that the no-call provisions in the CalGen Indentures are not legally enforceable in bankruptcy. As the Bankruptcy Court properly recognized, giving effect to a prohibition against the optional or voluntary prepayment of debt would undermine the purpose of the Bankruptcy Code to enable a debtor to reorganize. DA - Tab E at 6-7. One of the primary reasons that debtors file for bankruptcy protection under chapter 11 is to restructure debt. Denying a debtor the opportunity to pay down burdensome debt due to a lender's contractual right to prevent prepayment would thwart its ability to maximize estate assets by restructuring its balance sheet. Continental Secs. Corp. v. Shenandoah Nursing Home P'ship., 188 B.R. 205, 213 (W.D. Va. 1995) ("[i]t would violate the purpose behind the Bankruptcy Code to deny a debtor the ability to reorganize because a creditor has contractually forbidden it."); see also In re Calpine Corp., 2007 WL 57879, at *8 (S.D.N.Y. Jan. 9, 2007) (authorizing repayment of debt despite presence of no-call provision where repayment resulted in interest rate savings and "stopped the unnecessary loss of funds from the debtors' estates").

In light of such policy considerations, courts have routinely held that no-call provisions are unenforceable against chapter 11 debtors. <u>In re Vest Assocs.</u>, 217 B.R. 696, 699 (Bankr. S.D.N.Y. 1998); <u>In re Skyler Ridge</u>, 80 B.R. 500, 502 (Bankr. C.D. Cal. 1987) (prohibition on prepayment "is not enforceable in a bankruptcy case"); <u>Continental Secs. Corp. v. Shenandoah Nursing Home Pshp</u>, 193 B.R. 769, 774 (W.D. Va. 1996). Accordingly, the Bankruptcy Court properly determined that the no-call provisions in the CalGen Indentures could not be enforced to preclude the Debtors from repaying the CalGen Secured Debt.

      B.    <u>The Bankruptcy Court correctly determined that repayment of the CalGen Secured Debt does not constitute a prepayment because the debt was accelerated by CalGen's bankruptcy filing.</u>

The Bankruptcy Court also correctly held that the Debtors were permitted to repay the CalGen Secured Debt because it had been accelerated by virtue of the Debtors' bankruptcy filing. DA - Tab A at 8. Each of the CalGen Indentures provide that commencement of a bankruptcy case by CalGen is an event of default resulting in automatic acceleration of the underlying debt. Further, it is well established that prepetition debt is automatically accelerated upon the filing of a bankruptcy case. <u>In re Manville Forest Products Corp.</u>, 43 B.R. 293, 297 (Bankr. S.D.N.Y. 1984); <u>United States Trust Co. v LTV Steel Co.</u>, 150 B.R. 529, 542 (Bankr. S.D.N.Y. 1993); <u>In re LHD Realty Corp.</u>, 726 F.2d 327, 330-31 (7th Cir. 1984). As such, repayment of the CalGen Secured Debt must be treated as payment after maturity pursuant to the terms of the CalGen Indentures and by operation of bankruptcy law. DA - Tab A at 8-9.

Given the automatic acceleration of the CalGen Secured Debt, the no-call provisions in the CalGen Indentures would not be applicable even if they were enforceable. The no-call provisions prohibit voluntary prepayment or optional redemption of the underlying debt, which is an impossibility if the debt has become immediately due and payable upon acceleration

- 9 -

pursuant to a bankruptcy filing.  In re LHD Reality Corp., 726 F.2d at 330-31 ("acceleration, by definition, advances the maturity date of the debt so that payment thereafter is not prepayment but instead payment after maturity."); In re Ridgewood Apartments, 174 B.R. 712, 720 (Bankr. S.D. Ohio 1994) (stating that it would be "anomalous for acceleration of an obligation to be construed as a prepayment").  Therefore, any repayment of the CalGen Secured Debt is a mandatory repayment after maturity and cannot be construed as a voluntary prepayment in violation of the no-call provisions.

        C.      The Debtors' excused compliance with the no-call provision cannot give rise to damages for breach of contract.

Despite having correctly found that (a) the no-call provision in the CalGen Indentures is unenforceable against the Debtors and (b) the CalGen Secured Debt had been accelerated upon the Debtors' bankruptcy filing, the Bankruptcy Court improperly determined that the Debtors' excused compliance with the no-call provision gave rise to damages for breach of contract.

It is a general principle of contract law that a damage claim for breach of contract will not lie where the underlying contract is legally unenforceable.  See Restatement (Second) of Contracts § 346 (1981) ("The injured party has a right to damages for any breach by a party *against whom the contract is enforceable*") (emphasis added); see also In re R.H. Macy & Co., 170 B.R. 69, 77 (Bankr. S.D.N.Y. 1994) (concluding that creditor could not demonstrate breach of contractual provision because such provision was unenforceable against the debtor); see also In re Jamesway Corp., 201 B.R. 73, 79 (Bankr. S.D.N.Y. 1996) (denying lessor's claim for lease proceeds where profit sharing provisions of leases were unenforceable under the Bankruptcy Code); Sheline v. Dun & Bradstreet, Inc., 1991 U.S. Dist. LEXIS 9473, at *12 (N.D. Tex. Mar. 7, 1991) ("Defendant cannot breach an unenforceable contract.").

- 10 -

Here, the Bankruptcy Court correctly ruled that the no-call provisions in the CalGen Indentures are legally unenforceable in bankruptcy, excusing the Debtors from complying with the no-call provisions. As a result, it is therefore wholly inconsistent and contrary to applicable contract law for the Bankruptcy Court to award damages based on the Debtors' excused compliance with an unenforceable contractual provision. Well v. Rambam, 300 A.D.2d 580, 581 (N.Y. App. Div. 2d Dep't 2002) (dismissing cause of action for breach of contract upon determining that contract was unenforceable). Accordingly, the Bankruptcy Court's award of contract damages should be reversed.

II.     THERE IS NO LEGAL BASIS FOR AN AWARD OF EXPECTATION DAMAGES BECAUSE THE CALGEN LENDERS CANNOT RECOVER ANY DAMAGES THAT ARE NOT EXPLICITLY PROVIDED FOR IN THE CALGEN INDENTURES.

The Bankruptcy Court's award of expectation damages is equally inconsistent and cannot be reconciled with the Bankruptcy Court's finding that the express terms of the CalGen Indentures do not provide for damages in the event of (a) repayment during the no-call period or (b) repayment of accelerated debt. Because none of the CalGen Indentures included a make-whole premium for repayment made prior to April 1, 2007, the Bankruptcy Court properly recognized that the CalGen Lenders did not have a contractual remedy for damages under the express terms of the CalGen Indentures and therefore could not add a prepayment premium to the amount of their secured claim. Nevertheless, the Bankruptcy Court erroneously concluded that the CalGen Lenders were entitled to unsecured damages of a like amount based on their "expectation of an uninterrupted payment stream." DA - Tab A at 10.

The Bankruptcy Court's award of expectation damages is both contrary to reason and contrary to law. First, it amounts to a back door amendment to the CalGen Indentures. By awarding damages, the Bankruptcy Court impermissibly expanded the scope of the make-whole

clauses in the CalGen Indentures to include involuntary repayment during the no-call period or repayment of accelerated debt. The Bankruptcy Court recognized that such court-imposed modification of the CalGen Indentures is not permissible in the context of a secured claim, DA - Tab A at 9, and this Court should not permit the Bankruptcy Court to accomplish the same modification by awarding the CalGen Lenders an unsecured claim. In fact, the very cases the Bankruptcy Court cited in denying the CalGen Lenders a secured claim for the make-whole premiums support the proposition that a court may not award contract damages for prepayment of debt where the underlying agreement does not include an express prepayment penalty. In re Vest Assocs., 217 B.R. 696, 699 (Bankr. S.D.N.Y. 1998) ("The [lenders] have conceded that because the note does not include a damage or penalty provision in the event of the Debtor's prepayment, they cannot recover damages for any lost interest opportunity or other damages resulting from the prepayment."); Continental Secs. Corp., 188 B.R. 205, 215-216 (W.D. Va. 1995) (affirming bankruptcy court's denial of general contract damages for prepayment of note that did not include express provision for prepayment penalty and noting "there is no reported decision which allows a prepayment premium in the absence of a prepayment forumula provision being set forth in the instrument").

Similarly, the cases relied on by the Bankruptcy Court in awarding expectation damages are entirely inapplicable. For example, Harsco v. Segui, 91 F.3d 337 (2d Cir. 1996) does not even address expectation damages but instead deals with dismissal of claims for fraud and breach of contract. Likewise, United States v. Winstar Corp., 518 U.S. 839, 844 (1996) involved breach of a government contract for failure to comply with indemnification provisions. Additionally, In re 360 Inns, Ltd., 76 B.R. 573 (Bankr. N.D. Tex. 1987) and Noonan v. Fremont Fin. (In re

Lappin Elec. Co.), 245 B.R. 326 (Bankr. E.D. Wis. 2000) involve the enforcement of valid make-whole provisions providing for prepayment penalties during no-call periods.

Further, general contract law is not an available recourse for damages because the automatic acceleration of debt as a result of a bankruptcy filing absolutely defeats a damage claim for voluntary prepayment during a no-call period, whether such claim is for a make-whole premium or expectation damages. As stated above, there can be no voluntary prepayment where the underlying debt has matured by virtue of acceleration. In re LHD Realty Corp., 726 F.2d at 330-31; In re Ridgewood Apartments, 174 B.R. at 720. Therefore, even if the CalGen Indentures had provided for a make-whole premium upon voluntary prepayment or optional redemption during the no-call period, it would be inapplicable. For the same reason, a claim for expectation damages in lieu of an applicable make-whole premium must also fail.

In order to avoid this result by operation of law, some lenders have sought to contract around it by crafting indentures that expressly provide for a premium or penalty upon involuntary repayment during a no-call period or repayment of accelerated debt. See In re Vanderveer Estates Holdings, Inc., 283 B.R. 122 (Bankr. E.D.N.Y. 2002) (enforcing provision for payment of a make-whole premium in the event of prepayment of the loan, "whether the prepayment is voluntary or involuntary (in connection with holder hereof's acceleration of the unpaid principal balance of [the] Note"); Anchor Resolution Corp. v. State St. Bank & Trust Co. of Am. (In re Anchor Resolution Corp.), 221 B.R. 330, 333 (Bankr. D. Del. 1998); In re AE Hotel Venture, 321 B.R. 209, 219 (Bankr. N.D. Ill. 2005) ("Because the loan documents here expressly provide for a prepayment premium even when the debt is accelerated, the premium is 'provided for under the agreement.'"); In re 360 Inns, Ltd., 76 B.R. 573, 575 (Bankr. N.D. Tex. 1987) (note provided for an involuntary prepayment penalty of 10%); DA - Tab A at 8 n. 6

(noting that the financing agreement for the Debtors' Aries Facility required payment of a make-whole premium if an event of default accelerated the outstanding debt).

Unfortunately for the CalGen Lenders, the CalGen Indentures do not contain a similar provision that would entitle them to a premium as a result of acceleration or involuntary repayment during the no-call period. The Bankruptcy Court noted this deficiency in the CalGen Indentures, calling them "antiquated" and stating that "[m]odern indentures generally provide for prepayment provisions or penalties even during a no-call period or if the facility is accelerated." DA - Tab A at 8. However, the Bankruptcy Court improperly made up for this deficiency by awarding general contract damages where it had no basis to do so.

Finally, there is no question that the CalGen Lenders are sophisticated parties who had every opportunity to negotiate for a penalty following involuntary prepayment or an event of default accelerating the underlying debt. Indeed, the CalGen Indentures were executed merely three years ago, a time when such protections were already commonplace. See DA – Tab F at Exh. A. The CalGen Indentures' silence on this point demonstrates that the CalGen Lenders did not contemplate payment of a make-whole premium upon commencement of a chapter 11 filing. Accordingly, the CalGen Lenders should not be awarded one now in the form of expectation damages.

## **CONCLUSION**

For the foregoing reasons, the Equity Committee respectfully requests that this Court reverse the Bankruptcy Court's award of damages to the CalGen Lenders and grant such other relief at it deems appropriate.

Dated: New York, New York  
        June 1, 2007

**FRIED, FRANK, HARRIS, SHRIVER &  
   JACOBSON LLP**

  /s/ Gary Kaplan  
Brad Eric Scheler (BS-8019)  
Gary Kaplan (GK-4542)  
Adrian Feldman (AF-2478)  
One New York Plaza  
New York, NY 10004  
Telephone: (212) 859-8000  
Facsimile:   (212) 859-4000

Counsel for the Official Committee of Equity Security Holders

587618