UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Calpine Corporation, et al.,<br><br>              Debtors. | )<br>)<br>) Chapter 11<br>)<br>) Case No. 05-60200 (BRL)<br>) Jointly Administered<br>) |

**AMENDED ORDER (I) GRANTING DEBTORS LIMITED OBJECTION TO CLAIM NUMBERS 2664, 3275, 3393 THROUGH 3421 (INCLUSIVE), 3546 THROUGH 3554 (INCLUSIVE), 3586 THROUGH 3588 (INCLUSIVE), 3731, 4073, 5653 THROUGH 5730 (INCLUSIVE), 5791, AND 5792; (II) DETERMINING THE VALUE OF THE CALGEN SECURED DEBT PURSUANT TO RULE 3012 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; AND (III) AUTHORIZING REPAYMENT OF CALGEN SECURED DEBT**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") seeking entry of an Order (a) granting the Debtors' limited objection to the CalGen Lenders' Claims, (b) determining the value of the CalGen Lenders' Claims pursuant to Rule 3012 of the Federal Rules of Bankruptcy Procedures, and (c) authorizing the Debtors to repay the CalGen Secured Debt (Docket No. 3481);[1] it appearing that the relief requested is in the best interest of the Debtors' estates, their creditors and other parties in interest; it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); it appearing that venue of this proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; notice of this Motion and the opportunity for a hearing on this Motion were appropriate under the particular circumstances and that no other or further

---

[1] Capitalized terms not defined herein shall have the meaning provided in the Motion.

notice need be given; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED

1. The Motion is granted to the extent set forth in the Memorandum Decision and Order Granting, In Part, Debtors' Motion for an Order (I) Authorizing Debtors to Obtain Replacement Postpetition Financing to (A) Refinance Existing Postpetition Financing and (B) Repay Prepetition Debt; (II) Allowing Debtors' Limited Objection to Claims; and (III) Determining Value of Secured Claims, entered March 5, 2007 (Docket No. 3875) (the "Memorandum Decision").

2. Claim numbers 3275, 3393 through 3421 (inclusive), 3546 through 3554 (inclusive), 3586 through 3588 (inclusive), 3731, 4073, 5653 through 5730 (inclusive), 5791, and 5792 are hereby disallowed to the extent that such claims request amounts beyond the Repayment Amounts (as defined below).

3. Pursuant to Rule 3012 of the Federal Rules of Bankruptcy Procedures, the value of the CalGen Lenders' Claims is hereby determined as the amount of outstanding principal, plus unpaid interest under the CalGen Secured Debt through the date of repayments, as calculated by the Debtors (the "Repayment Amounts"). The Debtors are authorized to repay immediately all of the Repayment Amounts.

4. For the purposes of this Order, the Repayment Amounts will include unpaid interest calculated at the non-default contract rate under the CalGen Indentures. As provided in the Memorandum Decision, the Court will determine at a later date whether the CalGen Lenders are entitled to interest through the date of payment of the Repayment Amounts calculated at the default rate.

5. Pursuant to the Memorandum Decision, the CalGen Lenders shall have the following unsecured claims to the extent the Debtors repay the respective Repayment Amounts prior to April 1, 2007: (A) the holders of the CalGen First Lien Notes shall receive an amount equal to 2.5% of the First Lien Notes principal so repaid; (B) the holders of the CalGen Second Lien Notes shall receive an amount equal to 3.5% of the Second Lien Notes principal so repaid; and (C) the holders of the CalGen Third Lien Notes shall receive an amount equal to 3.5% of the Third Lien Notes principal so repaid. These unsecured claims will receive the treatment provided for in an appropriate plan of reorganization and shall not be included in the Repayment Amounts.

6. Upon payment of the Repayment Amounts, claim numbers 3275, 3393 through 3421 (inclusive), 3546 through 3554 (inclusive), 3586 through 3588 (inclusive), 3731, 4073, 5653 through 5730 (inclusive), 5791, and 5792 shall be expunged and disallowed; <u>provided, however,</u> that the CalGen Lenders may continue to assert claims for the difference between interest calculated at the default rate and interest paid at the non-default rate through the date of payment of the Repayment Amounts, pending the Court's ruling on this issue.

7. In settlement of the objection to the Motion filed by The Bank of Nova Scotia as Administrative Agent ("<u>BNS</u>") under the Amended and Restated Credit Agreement dated as of March 23, 2004 (the "<u>LC Credit Agreement</u>") among BNS, Calpine Generating Company, LLC ("<u>CalGen</u>"), certain guarantors, and certain lenders (the "<u>LC Lenders</u>"), the Debtors shall pay to BNS, in addition to its share of the Repayment Amounts and at the same time as the Repayment Amounts are paid, fifty percent (50%) of the incremental interest that has accrued through the repayment date at the Default Rate set forth in the LC Credit Agreement. Along with the aggregate principal amounts drawn under letters of credit during the pendency of these cases (the

"Reimbursement Obligations"), which shall be included in the Repayment Amounts, the additional interest payable to BNS hereunder (including interest on the Reimbursement Obligations, interest on overdue interest, and interest on late-paid fees, all at the Default Rate) shall constitute an allowed prepetition secured claim against CalGen (such that the value of the claims filed by BNS shall not be limited to its share of the Repayment Amounts, notwithstanding any other provision of this order). In the event that the Debtors, at any time in the future (whether before or after this Court's adjudication of the Motion), agree to pay more than 50% of the post-petition default interest sought by any CalGen Lender, Calpine Second Lien Holder (as defined in the Motion), or agent, trustee or other representative of any CalGen Lender or Calpine Second Lien Holder, the Debtors shall supplement the amount paid to BNS (and the corresponding allowed claim) such that the percent of disputed interest paid to BNS, for the benefit of the LC Lenders, is equal to the percent of default interest paid to such lender or representative. BNS, on behalf of the LC Lenders, reserves the right to seek to collect interest owing under the LC Credit Agreement but not payable under this order from other prepetition lenders to CalGen pursuant to the Collateral Trust and Intercreditor Agreement dated as of March 23, 2004. If the letters of credit outstanding under the LC Credit Agreement (the "Outstanding LCs") are not returned or terminated undrawn at or prior to the closing of the Replacement DIP Facility (as defined in the Motion), then the Debtors will cause one or more letters of credit (the "Back-to-Back LCs") to be issued under the Replacement DIP Facility in favor of BNS or its designated affiliate as issuer of the Outstanding LCs. The aggregate face amount of the Back-to-Back LCs will be 102% of the face amount of the Outstanding LCs and will otherwise be in form and substance reasonably satisfactory to The Bank of Nova Scotia. The Debtors will continue to pay all fees and expenses of The Bank of Nova Scotia and the LC

Lenders in accordance with the LC Credit Agreement until such time as all obligations to BNS and the LC Lenders are satisfied and the Outstanding LCs are returned and terminated.

8. Except as provided for in paragraph 7, the Debtors are authorized to discontinue all payments to the CalGen Lenders' professionals under the Cash Collateral Order as of the date the Repayment Amounts are paid; provided, however, that any reasonable professionals' fees incurred with respect to the litigation of default interest (before the Bankruptcy Court only) will be paid pursuant to the Cash Collateral Order.

9. Upon entry of this Order, the Debtors and the CalGen Lenders (including all trustees, depositary agents, or any other administrators of the CalGen Secured Debt) shall be authorized to take all appropriate steps or measures to cause or secure the distribution of the Repayment Amounts pursuant to the terms of this Order to the appropriate parties on a ratable basis. For the purposes of distribution of the Repayment Amounts, the record date shall be the date that the Debtors transfer the Repayment Amounts. Any delays caused by, for instance, having to obtain subsequent orders to clarify any distribution mechanics, or any other issues that may be arise upon the Debtors transfer of the Repayment Amounts, shall not affect the record date, which shall remain the date the Debtors transfer the Repayment Amounts.

10. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

11. The terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

12. The requirement set forth in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that any motion or other request for relief be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Application.

13. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: New York, New York
      March 26, 2007

                                        /s/Burton R. Lifland
                                        Honorable Burton R. Lifland
                                        United States Bankruptcy Judge