AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, NY 10022-2524
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002
Michael S. Stamer (MS 4900)
Fred S. Hodara (FH 7947)
Robert A. Johnson (RJ 6553)
Deborah J. Newman (DN 3272)

Counsel to the Official Committee of Unsecured
Creditors of Calpine Corporation, et al.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re<br>CALPINE CORPORATION, et al.,<br><div align="right">Debtors.</div> | Chapter 11<br>Case No. 05-60200 (BRL)<br>(Jointly Administered) |
| HSBC BANK USA, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, THE BANK OF NEW YORK, AS ADMINISTRATIVE AGENT, WILMINGTON TRUST FSB, AS INDENTURE TRUSTEE, WILMINGTON TRUST COMPANY, AS ADMINISTRATIVE AGENT, WILMINGTON TRUST COMPANY, AS COLLATERAL AGENT, AND MANUFACTURERS & TRADERS TRUST COMPANY, AS INDENTURE TRUSTEE,<br><div align="right">Appellants,</div><div align="center">v.</div>CALPINE CORPORATION, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CALPINE CORPORATION, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS,<br><div align="right">Appellees.</div> | Case No. 1:07-cv-3088 (GBD)<br><br>BRIEF OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF ITS APPEAL |
| CALPINE CORPORATION, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CALPINE CORPORATION, AND THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS,<br><div align="right">Appellants,</div><div align="center">v.</div>HSBC BANK USA, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, THE BANK OF NEW YORK, AS ADMINISTRATIVE AGENT, WILMINGTON TRUST FSB, AS INDENTURE TRUSTEE, WILMINGTON TRUST COMPANY, AS ADMINISTRATIVE AGENT, WILMINGTON TRUST COMPANY, AS COLLATERAL AGENT, AND MANUFACTURERS & TRADE TRUST COMPANY, AS INDENTURE TRUSTEE,<br><div align="right">Appellees.</div> | |

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT OF THE BASIS OF APPELLATE JURISDICTION ........................... 1

STATEMENT OF ISSUES PRESENTED ........................................................... 2

STANDARD OF APPELLATE REVIEW ............................................................ 2

STATEMENT OF THE CASE ........................................................................... 3

I.     Course of the Proceedings ...................................................................... 3

II.    Disposition in the Bankruptcy Court ........................................................ 3

III.   Statement of Facts ................................................................................. 7

SUMMARY OF ARGUMENT ........................................................................... 9

ARGUMENT ................................................................................................ 10

I.     THE BANKRUPTCY COURT ERRED IN AWARDING "EXPECTATION"
       DAMAGES .......................................................................................... 10

       A.     The Bankruptcy Court's Award of Expectation
              Damages Directly Conflicts with the Plain Language
              of the CalGen Secured Debt Agreements ..................................... 10

       B.     An Award of "Expectation" Damages Would Create
              Absurdities In This and Other Bankruptcy Cases .......................... 16

II.    THE BANKRUPTCY COURT ERRED WHEN IT HELD THAT REPAYMENT
       OF THE CALGEN SECURED DEBT WAS A BREACH OF THE CALGEN
       SECURED DEBT AGREEMENTS ENTITLING THE CALGEN SECURED
       LENDERS TO DAMAGES WHERE THE "NO-CALL" PROVISIONS WERE
       CORRECTLY FOUND TO BE UNENFORCEABLE ..................................... 20

CONCLUSION ............................................................................................. 24

i

# TABLE OF AUTHORITIES

Page

## CASES

*In re 360 Inns, Ltd.*, 76 B.R. 573 (Bankr. N.D. Tex. 1987) .................................................... 15, 22

*In re Adelphia Communications Corp.*, 342 B.R. 142 (Bankr. S.D.N.Y. 2006) ............... 12, 13, 18

*Continental Sec. Corp. v. Shenandoah Nursing Home P'ship*,
193 B.R. 769 (W.D. Va. 1996) ....................................................................................... 5, 11, 12, 22

*Galli v. Metz*, 973 F.2d 145 (2d Cir. 1992) .................................................................................. 22

*Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996) ................................................................ 13, 14

*In re LHD Realty Corp.*, 726 F.2d 327 (7th Cir. 1984) .......................................................... 20, 21, 22

*In re Manville Forest Prods. Corp.*, 43 B. R. 293 (Bankr. S.D.N.Y. 1984) ................................. 21

*Noonan v. Fremont Fin. (In re Lappin Elec. Co.)*,
245 B.R. 326 (Bankr. E.D. Wis. 2000) ........................................................................................ 15

*Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481 (2d Cir. 1999) ...................... 13

*In re Ridgewood Apts.*, 174 B. R. 712 (Bankr. S.D. Ohio 1994) ............................................ 13, 21

*Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115 (2d Cir. 2003) ...................................... 22

*Slevin Container Corp. v. Provident Fed. Sav. & Loan Ass'n*,
424 N.E. 2d 939 (Ill. App. Ct. 3d Dist. 1981) ............................................................................ 21

*Sound Stage Studios v. Life Investors Ins. Co.*,
1988 WL 138827 (Tenn. Ct. App. Dec 30, 1988) ....................................................................... 20

*Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.)*,
377 F.3d 209 (2d Cir. 2004) .......................................................................................................... 2

*United Merchs. & Mfg., Inc v. Equitable Life Assur. Soc'y of the United States
(In re United Merchs. & Mfrs., Inc.)*, 674 F.2d 134 (2d Cir. 1982) ............................................ 15

*United States Lines v. American S. S. Owners Mut. Prot. & Indem. Ass'n
(In re United States Lines, Inc.)*, 197 F.3d 631 (2d Cir. 1999) ..................................................... 3

*United States Trust Co. v. LTV Steel Co. (In re Chateaugay Corp.),*
150 B.R. 529 (Bankr. S.D.N.Y. 1993), *aff'd,* 170 B.R. 551 (S.D.N.Y. 1994)................................21

*United States v. Winstar,* 518 U.S. 839 (1996) ................................................................16

*In re Vest Assocs.,* 217 B.R. 696 (Bankr. S.D.N.Y. 1998)....................................6, 11, 13, 14, 22

*Zervos v. Verizon N. Y., Inc.,* 252 F.3d 163 (2d Cir. 2001),
*rev'd on other grounds,* 277 F.3d 635 (2d Cir. 2002) ................................................................2

## STATUTES

11 U.S.C. § 101(5)(A) ................................................................17

11 U.S.C. § 502(a)................................................................17

11 U.S.C. § 502(b) ................................................................17

11 U.S.C. § 502(b)(1)................................................................18

11 U.S.C. § 506(b) ................................................................18

28 U.S.C. § 158(a)(1)................................................................1

## OTHER AUTHORITIES

Fed. R. Bankr. P. 8013 ................................................................2

*Collier on Bankruptcy Law,* Vol. 4, § 502.03 (15th ed. 2007)....................................18

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of Calpine Corporation et al. ("Calpine" or the "Debtors") files this brief in support of its consolidated appeals numbered 01:07-cv-3263, 01:07-cv-3264, and 01:07-cv-3265.

This is a consolidated appeal from three interrelated orders by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). In a Memorandum Decision and Order dated March 5, 2007 (the "Bankruptcy Court Decision"), the Bankruptcy Court (a) properly authorized Calpine to incur new debtor in possession ("DIP") indebtedness (the "New DIP Facility"); (b) properly authorized Calpine to use the proceeds of the New DIP Facility to repay approximately $2.516 billion of secured prepetition debt (the "CalGen Secured Debt") of Calpine Generating Company, LLC ("CalGen"), one of the Debtors' largest operating subsidiaries; but (c) erroneously awarded the holders of the CalGen Secured Debt (the "CalGen Secured Lenders") damages because their "expectation of an uninterrupted payment stream has been dashed giving rise to damages." DA Tab A at 10.[1] The Bankruptcy Court then entered orders on March 12 and March 26, 2007 implementing the Bankruptcy Court Decision. *See* DA Tab B; DA Tab D (collectively, with the Bankruptcy Court Decision, the "Orders"). The Creditors' Committee appeals the Orders to the extent they award damages to the CalGen Secured Lenders.

### STATEMENT OF THE BASIS
### OF APPELLATE JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) because the Orders are final in that they dispositively determine an award of damages to the CalGen Secured Lenders.

---

[1] To avoid unnecessary duplication, the Creditors' Committee's citations to the record refer to the opening appendix filed by the Debtors-Appellants on June 1, 2007, using the format "DA Tab ___ ."

## STATEMENT OF ISSUES PRESENTED

1.      Whether the Bankruptcy Court erred in concluding that there was "an expectation of an uninterrupted payment stream" by the CalGen Secured Lenders following the commencement of a bankruptcy proceeding, where the Bankruptcy Court concluded correctly that the commencement of the bankruptcy proceeding had caused the debt to be matured and accelerated and where the Bankruptcy Court concluded that the governing documents did not contain the language of "modern indentures" providing "for prepayment provisions or penalties even during a no-call period or if the facility is accelerated."

2.      Whether the Bankruptcy Court erred by holding that the Debtors' repayment of prepetition debt to the CalGen Secured Lenders constituted a breach of the Debtors' loans and indentures, and awarding damages for this purported breach, despite having correctly held that (a) the relevant "no-call" provisions that forbid repayment are not even enforceable in bankruptcy, and (b) the debt had been accelerated and matured upon bankruptcy by the terms of the loan documents and indentures and by operation of the Bankruptcy Code.

## STANDARD OF APPELLATE REVIEW

The Bankruptcy Court Decision involved an erroneous conclusion of law made by the Bankruptcy Court. This Court may review the Bankruptcy Court's conclusions of law *de novo* and may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013; *Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.)*, 377 F.3d 209, 212 (2d Cir. 2004). *De novo* review is review without deference, *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 168 (2d Cir. 2001), *rev'd on other grounds*, 277 F.3d 635 (2d Cir. 2002), and applies to questions of law, as well as to mixed

questions of fact and law. *United States Lines v. American S. S. Owners Mut. Prot. & Indem. Ass'n (In re United States Lines, Inc.)*, 197 F.3d 631, 640-41 (2d Cir. 1999).

## STATEMENT OF THE CASE

### I.    Course of the Proceedings

On or about December 20, 2005 (the "Original Petition Date"), February 3, 2006 or May 2, 2006[2] (collectively with the Original Petition Date, the "Petition Date"), each of the Debtors filed with the Bankruptcy Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases are being jointly administered and have been consolidated for procedural purposes only.

On January 26, 2007, the Debtors filed a "Motion for Order (I) Authorizing Debtors to Obtain Replacement Postpetition Financing to (A) Refinance Existing Postpetition Financing and (B) Repay Prepetition Debt; (II) Allowing Debtors' Limited Objection to Claims; and (III) Determining Value of Secured Claims" (the "Motion"). The Creditors' Committee filed a Qualified Statement in support of the Motion. Numerous objections (the "Objections") to the Motion were filed by the CalGen Secured Lenders. Responsive pleadings to the Objections were filed by the Debtors and the Creditors' Committee.

The Bankruptcy Court conducted a hearing on the Motion on February 27, 2007 and issued the Bankruptcy Court Decision on March 5, 2007.

### II.    Disposition in the Bankruptcy Court

The Bankruptcy Court characterized the principal issue before it as "whether a trust indenture drafting omission relieves the debtors of the obligation to pay 'prepayment premiums'

or similar 'make-whole' damages upon repayment in full of principal and accrued interest short of the original maturity dates." DA Tab A at 1.

The Bankruptcy Court noted that the CalGen Secured Debt consisted of first-, second-, and third-lien financings, the first and second of which comprised a term loan portion and a bond portion, and the third of which comprised only a bond portion. The first-lien financing also included a revolving credit line. The Bankruptcy Court noted further:

> Six of the seven tranches of CalGen Secured Debt contain prepayment prohibitions, or so-called "no-call" clauses that purport to bar repayment of the debt within certain time periods. More specifically:

> - $235,000,000 First Priority Secured Floating Rate Notes Due 2009. Section 3.07 of the First Priority Indenture, entitled "*Optional Redemption*," states that the "Issuers may not redeem all or any part of the Notes prior to April 1, 2007."

> - $600,000,000 First Priority Secured Institutional Term Loans Due 2009. Section 2.10 of the First Priority Credit and Guarantee Agreement, entitled "*Voluntary Prepayments*," states [in subsection (b)(i)] that the "First Priority Term Loans may not be voluntarily prepaid at any time on or prior to April 1, 2007."

> - $640,000,000 Second Priority Secured Floating Rate Notes Due 2010. Section 3.07 of the Second Priority Indenture, entitled "*Optional Redemption*," states that the "Issuers may not redeem all or any part of the Notes prior to April 1, 2008."

> - $100,000,000 Second Priority Secured Institutional Term Loans Due 2010. Section 2.10 of the Second Priority Credit and Guarantee Agreement, entitled "*Voluntary Prepayments*," states [in subsection (b)(i)] that the "Second Priority Term Loans may not be voluntarily prepaid at any time on or prior to April 1, 2008."

> - $680,000,000 Third Priority Secured Floating Rate Notes Due 2011. Section 3.07 of the Third Priority Indenture, entitled "*Optional Redemption*," states that the "Notes are not redeemable at the option of the Issuers."

---

[2] Each of the Debtors filed petitions for relief on or about December 20, 2005, except Geysers Power Company LLC and Silverado Geothermal Resources, Inc., each of which filed petitions for relief on February 3, 2006, and Calpine Geysers Company, L.P., which filed a petition for relief on May 2, 2006.

- $150,000,000 11½% Third Priority Secured Notes Due 2011. Section 3.07 of the Third Priority Indenture, entitled "*Optional Redemption*," states that the "Notes are not redeemable at the option of the Issuers."

*Id.* at 6.[3]

However, the Bankruptcy Court also noted that all of this indebtedness had been accelerated due to the bankruptcy filings: "It should be noted that the Secured Debt is now matured by the occurrence of an Event of Default, i.e., the filing of the chapter 11 petitions." *Id.* at 5-6. The Bankruptcy Court stated further:

> In addition, each of the CalGen Secured Debt agreements provides that a bankruptcy filing by CalGen is an event of default resulting in an automatic acceleration of debt. As such, the CalGen Secured Debt has been accelerated by virtue of the Debtors' bankruptcy filing and thus is "due and payable immediately."

*Id.* at 8. The Bankruptcy Court also noted that, even absent such contractual provisions, a bankruptcy filing on its own accelerates all of a debtor's obligations. *Id.* Finally, the Bankruptcy Court concluded that "no-call provisions that purport to prohibit optional repayment of debt are unenforceable in chapter 11 cases." *Id.* at 6.

With regard to the purported prepayment premiums claimed by the CalGen Secured Lenders, the Bankruptcy Court determined that, under the plain language of the CalGen Secured Debt Agreements, none were applicable. The Bankruptcy Court stated:

> With respect to the purported prepayment premiums, none of the agreements governing the CalGen Secured Debt require a prepayment premium for repayment prior to April 1, 2007. Thus, pursuant to the terms of the agreements, so long as the refinancing is completed prior to April 1, 2007, no prepayment premium is due. *See, e.g., Continental Secs. Corp. v. Shenandoah Nursing Home P'ship*, 193 B.R. at 774 (loan had two-year lockout but no prepayment penalty provision). Apparently the CalGen Secured

---

[3] The First Priority Indenture, First Priority Credit and Guarantee Agreement, Second Priority Indenture, Second Priority Credit and Guarantee Agreement and Third Priority Indenture shall hereinafter be collectively referred to as the "CalGen Secured Debt Agreements."

indentures were somewhat "antiquated" or, as one party described
"Model T" indentures, because they fail to contain some up-to-date
commonly found bondholder protective provisions. Modern
indentures generally provide for prepayment provisions or
penalties even during a no-call period or if the facility is
accelerated.

*Id.* at 7-8.

In a citation to *In re Vest Assocs.*, the Bankruptcy Court went on to note that a "Court

cannot 'read into a contract damage provisions which the parties themselves had [sic] failed to

insert regarding the liquidation or calculation of damages arising out of the prepayment of a

loan.'" *Id.* at 9 (quoting *In re Vest Assocs.*, 217 B.R. 696, 699-700 (Bankr. S.D.N.Y. 1998)).

Nevertheless, despite the Bankruptcy Court's well-reasoned and correct conclusions, the

Bankruptcy Court went on to award "expectation" damages for the Debtors' repayment of the

CalGen Secured Debt under a breach of contract theory. The Bankruptcy Court wrote:

The CalGen Secured Lenders' expectation of an uninterrupted
payment stream has been dashed giving rise to damages, albeit not
measurable as the Lenders would wish. Accordingly, while the
agreements do not provide a premium or liquidated damages for
repayment during the period the Debtors propose, the CalGen
Secured Lenders still have an unsecured claim for damages for the
Debtors' breach of the agreements.

*Id.* at 10 (citations omitted).

The Bankruptcy Court then made the following conclusion as to the quantum of

damages:

Based on the testimony and evidence presented at the hearing, I
find that the 2.5% prepayment premium of the First Lien Notes and
the 3.5% prepayment premium provided in the Second Lien Notes
are reasonable proxies for measures of damages to be awarded to
those creditors. While the Third Lien Notes do not provide for a
premium, based on the calculations submitted by all of the experts
I find that a 3.5% premium is also a reasonable proxy of damages
to be awarded in respect of the Third Lien Note agreements.

*Id.* at 11 (citations omitted).

III.    **Statement of Facts**

As noted above, six of the seven tranches of CalGen Secured Debt contain "no-call" provisions that purport to bar any redemption or "prepayment" prior to various dates, the earliest being April 1, 2007. *See* DA Tab E at Exh. D. The seventh tranche of debt purports to bar "prepayment" prior to the contractual due date of the debt. *See id.* These "no-call" provisions are set forth above. *See supra* at pp. 4-5.

In addition, "Events of Default" and "Acceleration" clauses in each of the CalGen Secured Debt Agreements establish that a bankruptcy filing is an "Event of Default" that results in the automatic acceleration of the debt. *See* DA Tab E at Exh. D. None of the CalGen Secured Debt Agreements, however, provides for payment of a "make whole" amount, premium, or any other damages in the event of a bankruptcy-caused acceleration, even when such acceleration results in the debt being due and subsequently repaid prior to the pre-acceleration no-call dates. *See id.* More specifically:

- $235,000,000 First Priority Secured Floating Rate Notes Due 2009. Section 6.01 of the First Priority Indenture, entitled "*Events of Default*," provides in subsection (10) that commencement of a voluntary bankruptcy case is an Event of Default. Section 6.02, entitled "*Acceleration*," provides that "[i]n the case of an Event of Default [due to bankruptcy] . . . all outstanding Notes will become ***due and payable immediately without further action or notice***."

- $600,000,000 First Priority Secured Institutional Term Loans Due 2009. Section 7.01 of the First Priority Credit and Guarantee Agreement, entitled "*Events of Default*," provides in subsection (j) that commencement of a voluntary bankruptcy case is an Event of Default. Section 7.02, entitled "*Acceleration*," provides that [i]n the case of an Event of Default [due to bankruptcy], with respect to the Borrower or any of its Subsidiaries, the outstanding First Priority Term Loans shall become ***due and payable immediately without further action or notice***."

- $640,000,000 Second Priority Secured Floating Rate Notes Due 2010. Section 6.01 of the Second Priority Indenture, entitled "*Events of Default*," provides in subsection (10) that commencement of a voluntary bankruptcy case is an Event of Default. Section 6.02, entitled "*Acceleration*,"

provides that "[i]n the case of an Event of Default [due to bankruptcy] . . . all outstanding Notes will become *due and payable immediately without further action or notice*."

- $100,000,000 Second Priority Secured Institutional Term Loans Due 2010. Section 7.01 of the Second Priority Credit and Guarantee Agreement, entitled "*Events of Default*," provides in subsection (j) that commencement of a voluntary bankruptcy case is an Event of Default. Section 7.02, entitled "*Acceleration*," provides that [i]n the case of an Event of Default [due to bankruptcy], with respect to the Borrower or any of its Subsidiaries, the outstanding Second Priority Term Loans shall become *due and payable immediately without further action or notice*."

- $680,000,000 Third Priority Secured Floating Rate Notes Due 2011. Section 6.01 of the Third Priority Indenture, entitled "*Events of Default*," provides in subsection (10) that commencement of a voluntary bankruptcy case is an Event of Default. Section 6.02, entitled "*Acceleration*," provides that "[i]n the case of an Event of Default [due to bankruptcy] . . . all outstanding Notes will become *due and payable immediately without further action or notice*."

- $150,000,000 11½% Third Priority Secured Notes Due 2011. Section 6.01 of the Third Priority Indenture, entitled "*Events of Default*," provides in subsection (10) that commencement of a voluntary bankruptcy case is an Event of Default. Section 6.02, entitled "*Acceleration*," provides that "[i]n the case of an Event of Default [due to bankruptcy] . . . all outstanding Notes will become *due and payable immediately without further action or notice*."

*See id.* (emphasis supplied).

By contrast, other Calpine debt documents entered into within just a few days of the execution of the CalGen Secured Debt Agreements did contain an acceleration clause specifically requiring payment of damages in the form of a "Make-Whole Amount" where an event of default causes acceleration. *See* DA Tab A at 8, n.6. The applicable language from these loan documents (the "Aries Loan Document"), which relates to a power plant known as the Aries Facility, is in stark contrast to that of the CalGen Secured Debt Agreements. Specifically, Section 11.1 of the Aries Loan Document, entitled "*Remedies of the Security Agent*," provides in

subsection (a) that in the event of an Event of Default caused by a bankruptcy filing, automatically and without notice,

> the entire principal amount of all Term Loans, (together with all unpaid interest thereon *and Make-Whole Amount,* if any, . . . ) . . . shall immediately become due and payable without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived by the Borrower.

DA Tab F at Exh. A (Emphasis supplied). As the Bankruptcy Court noted, "[t]he Aries loan documents and the CalGen Secured Debt indentures were executed within days of each other but contained very different terms." DA Tab A at 8, n.6. Thus, in contrast to the situation presented here, the Debtors entered into a settlement with the Aries Facility lenders that included an amount in respect of make-whole damages. *Id.*

Following entry of the Orders implementing the Bankruptcy Court Decision, the Debtors closed the transaction by which they obtained the New DIP Financing, and the CalGen Secured Lenders were repaid the full amount of their principal and accrued interest on March 29, 2007.

## SUMMARY OF ARGUMENT

The Bankruptcy Court erred in awarding damages to the CalGen Secured Lenders for two reasons. First, it was error to award "expectation" damages where the CalGen Secured Debt Agreements expressly provided that the sole remedy for the CalGen Secured Lenders upon the Debtors' commencement of their bankruptcy proceedings was the acceleration of the CalGen Secured Debt – causing the CalGen Secured Debt to become immediately due and payable. Indeed, the CalGen Secured Debt Agreements did not provide for any damages in favor of the CalGen Secured Lenders following such acceleration. Accordingly, the award of "expectation" damages as a result of the Debtors' repayment of the CalGen Secured Debt following acceleration provided the CalGen Secured Lenders with a far greater remedy than that which

could have been expected pursuant to the terms of the contract. Moreover, the Bankruptcy

Court's unprecedented departure from well-settled law holding that a creditor's contractual

entitlements shall be determined by the terms of its contract could lead to absurd results in this

and other bankruptcy cases, by providing creditors with any number of claims for "expectation

damages" over and above those provided for in the relevant agreements.

Additionally, the Bankruptcy Court's award of expectation damages should be reversed

because it is in direct conflict with the Bankruptcy Court's well-founded and correct holdings

that (i) the "no-call" provisions in the CalGen Secured Debt Agreements are unenforceable, (ii)

the CalGen Secured Debt was "due and payable" as a result of the Debtors' bankruptcy filing,

and (iii) no premium or liquidated damages provision applied to the Debtors' repayment of the

CalGen Secured Debt. Given these findings, the Bankruptcy Court's subsequent conclusion that

that the Debtors' repayment of the CalGen Secured Debt constituted a breach of the CalGen

Secured Debt Agreements giving rise to expectation damages is not only illogical, but also

constitutes an error of law that cannot stand.

## ARGUMENT[4]

### I.   THE BANKRUPTCY COURT ERRED IN AWARDING "EXPECTATION" DAMAGES

#### A.   The Bankruptcy Court's Award of Expectation Damages Directly Conflicts with the Plain Language of the CalGen Secured Debt Agreements

The expectation of the Debtors and the CalGen Secured Lenders is set forth explicitly in

the CalGen Secured Debt Agreements. The CalGen Secured Lenders agreed that, upon a default

---

[4] The Creditors' Committee also joins in the arguments set forth in the appellate briefs filed by the Debtors and the Official Committee of Equity Security Holders.

by reason of the Debtors' filing of a chapter 11 bankruptcy petition, the Debtors' obligations under the CalGen Secured Debt Agreements would be immediately accelerated. The CalGen Secured Debt Agreements clearly provide that "[i]n the case of an Event of Default [due to bankruptcy] . . . all outstanding debt will become ***due and payable immediately without further action or notice.***" DA Tab E at Exh. D (emphasis supplied). Additionally, as noted, the CalGen Secured Debt Agreements do not impose any premiums or penalties in the event of such an acceleration.

This is in stark contrast to the language that appeared in the Aries Loan Document, which, as the Bankruptcy Court noted, explicitly provided in Section 11.1(a) that upon a default, "the Administrative Agent shall declare . . . the entire principal amount of all Term Loans, (together with all unpaid interest thereon ***and Make-Whole Amount***, if any, . . . ) . . . to be forthwith due and payable, whereupon such amounts shall immediately become due and payable without presentment, demand, protest or notice of any kind . . . ." DA Tab F at Exh. A (emphasis supplied).

The law is well-settled that where, as here, an agreement does not include a prepayment penalty or liquidated damages clause, a secured party is prohibited from incorporating such amounts into its allowed claim. *See In re Vest Assocs.*, 217 B.R. 696, 699-700 (Bankr. S.D.N.Y. 1998) (holding that the Bankruptcy Court cannot "read into a contract damage provisions which the parties themselves have failed to insert regarding the liquidation or calculation of damages arising out of the prepayment of a loan"); *Continental Sec. Corp. v. Shenandoah Nursing Home P'ship.*, 193 B.R. 769, 778 (W.D. Va. 1996) (affirming bankruptcy court's holding that although the contract contained a prepayment prohibition, the oversecured creditor was not entitled to a prepayment penalty since there was no prepayment penalty provision in the contract). The

Bankruptcy Court's award of damages in amounts equal to the prepayment penalties that may have applied under different circumstances (and which the Bankruptcy Court explicitly ruled do not apply here) stands in clear derogation of this well-established law.

Moreover, the Bankruptcy Court's award of expectation damages improperly imposes contractual obligations on the Debtors that are unsupported by the contracts themselves. In *In re Adelphia Communications Corp.*, the debtors were parties to prepetition secured credit agreements providing that the interest rates thereunder were to be computed based on the debtors' reported financial condition. 342 B.R. 142, 145 (Bankr. S.D.N.Y. 2006). Following the revelation that the debtors had inaccurately reported their financial condition prepetition, the bank lenders argued that they had a contractual entitlement to the incremental interest they would have received had the information been accurately reported. *Id.* The court disagreed. *Id.* at 153. The court noted that while the credit agreements allowed the bank lenders to declare a default in light of the misrepresentations, thereby entitling them to default interest (which the bank lenders had previously waived), the agreements did not provide for an automatic and retroactive readjustment of the interest rate. *Id.* This was so, the court found, "even though, significantly, the credit agreements did provide for an automatic readjustment of the interest rate in the event of another borrower offense." *Id.* The court stated further:

> The drafters of the credit agreements provided for a different remedy – an even greater one – which is, of course, their right. But if the bank lenders wished to contract for additional remedies (which likewise was their right, if their contract counterparty was agreeable to providing such), the bank lenders could have done so.

*Id.* Thus, the court concluded that it could not "agree that claims, and especially secured claims, can be defined so broadly as 'inherently encompassing' expectancy rights not provided for in the agreements in question." *Id.* at 154 (quoting *Continental Sec. Corp.*, 193 B.R. at 778 (footnote omitted)).

The same basic contract analysis is required here. If the CalGen Secured Lenders had intended to contract for a penalty to be paid in the event that the debt was accelerated pursuant to a chapter 11 filing, as the lenders did in the Aries Loan Document, they could have (assuming CalGen would have been "agreeable to providing such"). *See In re Adelphia*, 342 B.R. at 153; *In re Ridgewood Apts.*, 174 B.R. 712, 720 (Bankr. S.D. Ohio 1994) ("Had [the lender] intended the penalty to be payable upon acceleration, the Addendum [governing prepayment] should have stated that specifically"). Instead, the remedy for a chapter 11 filing provided in the CalGen Secured Debt Agreements is acceleration, with all outstanding loans or notes becoming due and payable immediately and without further action or notice. By providing for expectation damages *in addition to* the contractual remedy of acceleration of the principal and interest actually due under the terms of the CalGen Secured Debt Agreements, the Bankruptcy Court's decision impermissibly awarded the CalGen Secured Lenders a far greater remedy than that for which they had bargained. *See In re Vest Assocs.*, 217 B.R. at 699 (holding that a bankruptcy court may not "read into a contract damage provisions which the parties themselves have failed to insert regarding the liquidation or calculation of damages arising out of the prepayment of a loan or note"); *In re Adelphia,* 342 B.R. at 154 ("[N]o party can make a contractual claim that goes beyond its contractual rights"); *see also Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999) ("If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself").

The only case cited by the Bankruptcy Court in support of its award of "expectation" damages is completely inapplicable to the point of the Bankruptcy Court's award of damages. *Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996), has nothing to do with "expectation"

damages. In *Harsco*, the plaintiff was a sophisticated company that brought suit for securities fraud, breach of contract, indemnification, and related causes of action arising out of a detailed purchase and sale agreement. *Id.* at 339. The district court dismissed the lawsuit in its entirety, and the Second Circuit affirmed the dismissal. *Id.* at 348-49. The issues in *Harsco* relate to sufficiency of pleading, the antiwaiver provision of the securities laws, and reasonableness of reliance on representations explicitly disavowed under the purchase and sale agreement. *Id.* at 341, 342-43. At the particular pinpoint citation provided by the Bankruptcy Court, the Second Circuit discussed – and affirmed – the dismissal of the breach of contract and indemnification claims. *Id.* at 348. The Second Circuit held that the district court did not have diversity jurisdiction over these claims, and could not have exercised supplemental jurisdiction over them because the related federal securities claims had been properly dismissed. *Id.* There is absolutely nothing in *Harsco* that supports the Bankruptcy Court's illogical assertion that "expectation" damages should be awarded in this case.

A particularly ironic aspect of the Bankruptcy Court Decision is its citation to *In re Vest Assocs.*, as to which the Bankruptcy Court noted in a parenthetical: "Court[s] cannot 'read into a contract damage provisions which the parties themselves had [sic] failed to insert regarding the liquidation or calculation of damages arising out of the prepayment of a loan.'" DA Tab A at 9 (quoting *In re Vest Assocs.*, 217 B.R. at 699-700). Yet, this was exactly what the Bankruptcy Court did by awarding "expectation" damages where the CalGen Secured Debt Agreements did not provide for them.

The case law cited by the Bankruptcy Court in support of its holding that "while the agreements do not provide a premium or liquidated damages for repayment during the period the debtors propose, the CalGen Secured Lenders still have an unsecured claim for damages for the

Debtors' breach," *id.* at 10, is simply not analogous to the case at hand.  In contrast to the CalGen

Secured Debt Agreements, the debt instruments in the cited cases contained prepayment penalty

provisions or early termination liquidation damage clauses that were expressly enforceable by

their own terms at the time of repayment.  Specifically, unlike the CalGen Secured Debt

Agreements, in *United Merchants & Manufacturers, Inc. v. Equitable Life Assurance Society of*

*the United States (In re United Merchants & Manufacturers, Inc.)*, the applicable debt agreement

explicitly provided for the payment of a penalty in connection with a repayment of the debt post-

acceleration.  674 F.2d 134, 142-44 (2d Cir. 1982).  In *Noonan v. Fremont Financial (In re*

*Lappin Electric Co.)* and *In re 360 Inns, Ltd.*, the bankruptcy courts enforced contractual

provisions prohibiting the early termination of the applicable loans at the proposed time of

repayment without payment of an early termination fee or prepayment premium.  All of the loan

agreements contained valid prepayment penalty provisions or early termination liquidated

damages clauses.  *See Noonan v. Fremont Fin. (In re Lappin Elec. Co.)*, 245 B.R. 326, 330

(Bankr. E.D. Wis. 2000) (enforcing term loan provisions that required the payment of a $250,000

early termination fee in connection with the early termination of the term loan agreement at any

time during the term of the loan); *In re 360 Inns, Ltd.*, 76 B.R. 573, 575-76 (Bankr. N.D. Tex.

1987) (holding that the prepayment penalty must be included in the debtor's plan of

reorganization where the promissory note at issue provided for a 10% involuntary prepayment

penalty for the first ten years of the loan).  Thus, the courts in those cases held that lenders were

entitled to claims arising pursuant to properly drafted penalty or liquidated damages clauses

designed to apply in the specific instances presented.  *See In re Lappin Electric Co.*, 245 B.R. at

330; *In re 360 Inns Ltd.*, 76 B.R. at 575-76.  Conversely, here, as the Bankruptcy Court correctly

held, no prepayment penalty provision or liquidated damages clause applies to the Debtors' repayment of the CalGen Secured Debt.

*United States v. Winstar* also fails to support the expectation damages awarded by the Bankruptcy Court. *Winstar* is a Supreme Court case involving the "enforceability of contracts between the Government and participants in a regulated industry to accord them particular regulatory treatment in exchange for their assumption of liabilities that threatened to produce claims against the Government as insurer." 518 U.S. 839, 843 (1996). The Bankruptcy Court noted in a parenthetical *Winstar*'s holding that "damages are always the default remedy for breach of contract." DA Tab A at 10. As discussed in greater detail *supra*, however, pursuant to the plain language of the CalGen Secured Debt Agreements, the CalGen Secured Lenders' only remedy is acceleration of the full principal amount of the debt plus unpaid accrued interest.

The Bankruptcy Court failed to cite a single case – and the Creditors' Committee is aware of none – holding that lenders may collect damages for repayment of a debt where, as here, such debt has been accelerated and the debt instrument does *not* contain a valid liquidated damages or penalty provision. The Bankruptcy Court acknowledged that the debt instruments here do not contain the acceleration language that would justify the award; *in the first line of the opinion*, the Bankruptcy Court characterized the absence of the language as "a trust indenture drafting omission." *Id.* There is absolutely no justification for the Bankruptcy Court to read into the CalGen Secured Loan Agreements a term that has been omitted. Accordingly, the Bankruptcy Court's award of damages cannot stand under law and must be reversed.

### B.    An Award of "Expectation" Damages Would Create Absurdities In This and Other Bankruptcy Cases

Additionally, the Bankruptcy Court's award of "expectation" damages is completely erroneous and must be reversed because there is no authority under the Bankruptcy Code for

such an award. Sections 502 and 506 of the Bankruptcy Code do not authorize "expectation" damages where the underlying debt instruments and applicable non-bankruptcy law do not provide for the recovery sought. Indeed, permitting bankruptcy courts to craft entirely new damages awards completely inconsistent with the Bankruptcy Code and applicable non-bankruptcy law would lead to absurd results and hamper a debtor's ability to reorganize.

Under the Bankruptcy Code, a party that contends that a debtor has breached a contract has a claim against the debtor. A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5)(A). A claim is then either allowed or disallowed pursuant to section 502, in the case of unsecured claims, or section 506, in the case of secured claims. Here, the Bankruptcy Court found that the CalGen Secured Lenders have an unsecured claim for their "expectation" damages, so section 502 applies.

Bankruptcy Code section 502 sets forth the mechanism by which claims are determined. They are deemed allowed unless a party objects, as the Debtors did here. *See* 11 U.S.C. § 502(a). Then, "if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that" any of nine enumerated exceptions applies. 11 U.S.C. § 502(b). It is important to note that the unsecured claim is to be determined "as of the date of the filing of the petition." *Id.* On the Petition Date, the CalGen Secured Lenders were holders of debt that was accelerated pursuant to the terms of the CalGen Secured Debt Agreements and by operation of law. As discussed above, those debt instruments limited the remedy available to the lenders only to acceleration of the principal and accrued interest under the CalGen Secured Debt and not for payment of any

additional damages or premiums. As such, there was no claim for "prepayment" as of the Petition Date. Accordingly, the CalGen Secured Lenders could not possibly have had "expectations" of a future stream of payments on the Petition Date, because the CalGen Secured Debt was accelerated and required by its terms to be immediately due and payable.

Moreover, Bankruptcy Code section 502(b)(1) provides that a claim shall not be allowed to the extent that "such claim is unenforceable against the debtor . . . under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). For purposes of determining whether a claim is enforceable under section 502(b)(1), "the validity and legality of claims generally is determined by applicable nonbankruptcy law." *Collier on Bankruptcy Law*, Vol. 4, § 502.03 (15th ed. 2007). As noted above, applicable non-bankruptcy law requires that if a contract provides a remedy, the parties are bound to that remedy alone – here, acceleration. As the court noted in *In re Adelphia*, *supra*, expectation damages are not permissible where the contract provides a remedy and the remedy does not include such damages. *See In re Adelphia*, 342 B.R. at 153-54. Thus, both the CalGen Secured Debt Agreements and applicable non-bankruptcy law make it clear that the CalGen Secured Lenders' claim for "expectation" damages cannot be allowed under section 502(b)(1).[5]

If the Bankruptcy Court's holding were permitted to stand, secured and unsecured creditors alike could attempt to seek additional unjustifiable claims for any purported violation of an indenture or loan agreement that gave rise to alleged "dashed expectations." This could lead to absurd results in this and every other bankruptcy case (whether pending now or in the future).

---

[5] Nor would such a claim be permitted under Bankruptcy Code section 506, which governs secured claims. Section 506 makes reference to the claim, "interest on such claim, and any reasonable fees, costs or charges *provided for under the agreement* . . . ." 11 U.S.C. § 506(b) (emphasis added). Again, the analysis turns to the language of the acceleration clauses of the debt instruments, and as amply shown above, the acceleration clauses do not provide for a further stream of payments or for any penalties or premiums.

For example, debt holders (either secured or unsecured) who would otherwise receive a full recovery on account of their claims either during the course of a chapter 11 proceeding or under a plan of reorganization may argue that, based on the Bankruptcy Court Decision, in addition to payment in full of all principal and interest due, they should also be awarded damages for their "dashed expectations" of future income as the debt would be repaid prior to the initial stated maturity.  Or, for that matter, debt holders who are to receive only cents on the dollar pursuant to a plan of reorganization or a liquidation of an insolvent debtor could argue that they too are entitled to a claim enlarged beyond mere principal and interest accrued to the petition date in respect of their "dashed expectation" of an uninterrupted income stream to the initial stated maturity date.  Indeed, in the case of either a full recovery or a cents on the dollar recovery, such debt holders could attempt to assert additional expectation damage claims for the breach of change of control or other typical debt agreement provisions that have not heretofore been recognized as a valid basis of claim in a bankruptcy proceeding.  Creditors might also attempt to unjustifiably seek "dashed expectation" damages in situations relating to executory contracts, employment agreements, intellectual property licenses, option agreements, and numerous other breached agreements.

The Bankruptcy Court's decision to award expectation damages even after concluding that the purported expectations were based on unenforceable and omitted contract provisions may have been based on a "Solomonic" impulse.  But, such decisions often have unintended consequences and rarely more so than here, where the Bankruptcy Court's damage award blazes new territory, contradicting decades of well-settled precedent.  The ramifications of permitting this ill-founded decision to stand are serious and should not be permitted to occur.

**II.    THE BANKRUPTCY COURT ERRED WHEN IT HELD THAT REPAYMENT OF THE CALGEN SECURED DEBT WAS A BREACH OF THE CALGEN SECURED DEBT AGREEMENTS ENTITLING THE CALGEN SECURED LENDERS TO DAMAGES WHERE THE "NO-CALL" PROVISIONS WERE CORRECTLY FOUND TO BE UNENFORCEABLE**

The portion of the Bankruptcy Court Decision awarding expectation damages must be reversed for the additional reason that it is unsupported by and conflicts with the portions of the decision in which the Bankruptcy Court appropriately found that: (i) the "no-call" provisions in the CalGen Secured Debt Agreements are unenforceable, (ii) the CalGen Secured Debt was "due and payable" as a result of the Debtors' bankruptcy filing, and (iii) no premium or liquidated damages provision applied to the Debtors' repayment of the CalGen Secured Debt. DA Tab A at 6, 8, 10. In light of these findings, which are amply supported by well-settled law, the Bankruptcy Court's award of expectation damages cannot stand.

As the Bankruptcy Court appropriately found, the "no-call" provisions do not prohibit the Debtors' repayment of the debt under the circumstances presented here. *See id.* at 6-9. The CalGen Secured Debt Agreements, by their express terms, prohibit redemption of the CalGen Secured Debt only in instances where the Debtors voluntarily elect to prepay or redeem the CalGen Secured Debt Agreements prior to maturity. *See id.* at 6. Repayment of the CalGen Notes subsequent to a bankruptcy Event of Default or upon acceleration, however, is clearly outside the scope of the "no-call" provisions. "Voluntary prepayment" or "optional redemption" presupposes payment prior to the maturity of the underlying debt. Acceleration, however, by definition changes the date of maturity from some time in the future to the present. *See In re LHD Realty Corp.*, 726 F.2d 327, 330-31 (7th Cir. 1984) (holding that "acceleration, by definition, advances the maturity date of the debt so that payment thereafter is not prepayment but instead is payment made after maturity"); *Sound Stage Studios v. Life Investors Ins. Co.*, 1988 WL 138827 at *3 (Tenn. Ct. App. Dec. 30, 1988) (denying post-acceleration premium claim

because "[w]e are persuaded that, absent some agreement to the contrary, payment of a debt after it has been accelerated is not a prepayment").

Here, the CalGen Secured Debt Agreements uniformly provide that the voluntary commencement of a bankruptcy proceeding constitutes an Event of Default, which accelerates the CalGen Secured Debt, rendering it immediately due and payable without any further action by the CalGen Secured Lenders. DA Tab E at Exh. D. Moreover, it is clear that debt is automatically accelerated upon the filing of a bankruptcy case by operation of law. *In re Manville Forest Products Corp.*, 43 B.R. 293, 297 (Bankr. S.D.N.Y. 1984) ("It is a basic tenet of the Bankruptcy Code that '[b]ankruptcy operates as the acceleration of the principal amount of all claims against the debtor' ") (internal citations omitted); *United States Trust Co. v. LTV Steel Co. (In re Chateaugay Corp.)*, 150 B.R. 529, 542 (Bankr. S.D.N.Y. 1993), *aff'd*, 170 B.R. 551 (Bankr. S.D.N.Y. 1994) (finding that the debtors' bankruptcy filing "automatically, by operation of bankruptcy law, accelerated the entire principal amount" of each of the relevant bonds). As such, both pursuant to the plain language of the CalGen Secured Debt Agreements and by operation of law, the filing of the Debtors' bankruptcy cases accelerated the maturity of the CalGen Secured Debt to the Petition Date. Accordingly, the Debtors' subsequent payment of the CalGen Secured Debt was not an "optional redemption" or "voluntary prepayment," but was instead "repayment" made subsequent to maturity. *See In re LHD Realty Corp.*, 726 F.2d at 330-31; *In re Ridgewood Apts.*, 174 B.R. 712 at 720 (stating that because the "essence of bankruptcy reorganization under Chapter 11 is to restructure debt ... [it] would be anomalous for acceleration of an obligation to be construed as a prepayment . . ."); *Slevin Container Corp. v. Provident Fed. Sav. & Loan Ass'n*, 424 N.E.2d 939, 941 (Ill. App. Ct. 3d Dist. 1981) (holding

that repayment after acceleration is a payment "made after maturity and by definition not prepayment").

Further, as noted, the "no-call" provisions in the CalGen Secured Debt Agreements were not designed to operate in conjunction with the acceleration provisions also contained therein. The fact that the CalGen Secured Debt has been accelerated renders the "no-call" provisions inapplicable for purposes of determining the Debtors' repayment obligations post-acceleration. Any other interpretation of these two provisions would be contrary to the most basic principles of contract interpretation, as it would render the express terms of the acceleration provisions meaningless. *See, e.g., Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 124 (2d Cir. 2003), quoting *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("[A]n interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible' ").

Additionally, "no-call" or "lockout" provisions seeking to preclude, or otherwise prohibit, the repayment of debt have been held by bankruptcy courts to be unenforceable against chapter 11 debtors. S*ee In re Vest Assocs.*, 217 B.R. at 699 (allowing repayment of note despite contractual prohibition on prepayment); *Continental Sec. Corp.*, 193 B.R. at 774 (affirming bankruptcy court's finding that a prepayment prohibition is not enforceable in bankruptcy); *In re 360 Inns, Ltd.*, 76 B.R. at 575-76 (Bankr. N.D. Tex. 1987) (same); *In re LHD Realty Corp.*, 726 F.2d at 329 (same).

Thus, the Bankruptcy Court was correct in its holding that "each of the CalGen Secured Debt agreements provides that a bankruptcy filing by CalGen is an event of default resulting in an automatic acceleration of debt. As such, the CalGen Secured Debt has been accelerated by virtue of the Debtors' bankruptcy filing and thus is 'due and payable immediately.' " DA Tab A

at 8.  The Bankruptcy Court also appropriately held that the applicable "no-call" provisions are "unenforceable in chapter 11 cases," and that the CalGen Secured Debt Agreements do not provide "a premium or liquidated damages for [the Debtors'] repayment."  *Id.* at 6, 10.

The fatal, illogical flaw in the Bankruptcy Court's holding, however, lies in its conclusion that the "CalGen Secured Lenders still have an unsecured claim for damages for the Debtors' breach of the agreements."  *Id.* at 10.  The Debtors cannot be liable for a breach of the CalGen Secured Debt Agreements as a result of the repayment of the debt due thereunder when the Bankruptcy Court itself explicitly – and correctly – found that the repayment (i) did not constitute a breach of the "no-call" provisions, (ii) was in full accordance with the CalGen Secured Debt Agreements, and (iii) was not subject to any penalty or liquidated damages clause.  While the Bankruptcy Court made reference to the CalGen Secured Lenders' "expectation of an uninterrupted payment stream," *id.*, it failed to cite a single provision of the CalGen Secured Debt Agreements supporting such an expectation, or showing that the CalGen Secured Debt Agreements were breached by the repayment.  The breach here was the specified Event of Default that was created by the Debtors' chapter 11 filing.  As detailed above, the remedy for such a breach is limited to that which is set forth in the contract:  acceleration, without any additional premiums or damages.  It was a clear error of law and judgment for the Bankruptcy Court to interpolate anything more into the CalGen Secured Loan Agreements.  The award of expectation damages must be reversed.

## CONCLUSION

For the foregoing reasons, the Creditors' Committee respectfully requests that the

portions of the Orders awarding damages to the CalGen Secured Lenders be reversed.


Dated: June 1, 2007                          Respectfully submitted,
New York, New York

                                             /s/ Michael S. Stamer
                                             Michael S. Stamer (MS 4900)
                                             Fred S. Hodara (FH 7947)
                                             Robert A. Johnson (RJ 6553)
                                             Deborah J. Newman (DN 3272)
                                             AKIN GUMP STRAUSS HAUER & FELD LLP
                                             590 Madison Avenue
                                             New York, New York  10022-2524
                                             Telephone:  (212) 872-1000
                                             Facsimile:  (212) 872-1002

                                             Counsel to the Official Committee of Unsecured
                                             Creditors of Calpine Corporation, et al.