**<u>EXHIBIT D</u>**

*Execution Version*

CALPINE GENERATING COMPANY, LLC

AND

CALGEN FINANCE CORP.

and each of the Guarantors named herein

FIRST PRIORITY SECURED FLOATING RATE NOTES DUE 2009

FIRST PRIORITY INDENTURE

Dated as of March 23, 2004

WILMINGTON TRUST FSB

Trustee

NY\876703.3

## CROSS-REFERENCE TABLE*

| Trust Indenture Act Section | Indenture Section |
| --- | --- |
| 310(a)(1) | 7.10 |
| (a)(2) | 7.10 |
| (a)(3) | N.A. |
| (a)(4) | N.A. |
| (a)(5) | 7.10 |
| (b) | 7.10 |
| (b) | 7.11 |
| (c) | N.A. |
| 311(a) | 7.11 |
| (b) | 7.11 |
| (c) | N.A. |
| 312(a) | 2.05 |
| (b) | 12.03 |
| (c) | 12.03 |
| 313(a) | 7.06 |
| (b)(1) | 10.03 |
| (b)(2) | 7.06, 7.07 |
| (c) | 7.06, 10.03; 12.02 |
| (d) | 7.06 |
| 314(a) | 4.03;12.02;12.05 |
| (b) | 10.02 |
| (c)(1) | 12.04 |
| (c)(2) | 12.04 |
| (c)(3) | N.A. |
| (d) | N.A. |
| (e) | 10.03, 10.04, 10.05 |
| (f) | 12.05 |
| 315(a) | N.A. |
| (b) | 7.01 |
| (c) | 7.05,12.02 |
| (d) | 7.01 |
| (d) | 7.01 |
| (d) | 6.11 |
| (d) | 2.09 |
| 316(a) (last sentence) | 2.09 |
| (a)(1)(A) | 6.05 |
| (a)(1)(B) | 6.04 |
| (a)(2) | N.A. |
| (b) | 6.07 |
| (c) | 2.12 |
| 317(a)(1) | 6.08 |
| (a)(2) | 6.09 |
| (b) | 2.04 |
| 318(a) | 12.01 |
| (b) | N.A. |
| (c) | 12.01 |

N.A. means not applicable.
* This Cross Reference Table is not part of the Indenture.

NY\876703.3

The Trustee will promptly notify the Company in writing of the Notes selected for redemption or purchase and, in the case of any Note selected for partial redemption or purchase, the principal amount thereof to be redeemed or purchased. Notes and portions of Notes selected will be in amounts of $1,000 or whole multiples of $1,000, except that if all of the Notes of a Holder are to be redeemed or purchased, the entire outstanding amount of Notes held by such Holder, even if not a multiple of $1,000, shall be redeemed or purchased. Except as provided in the preceding sentence, provisions of this Indenture that apply to Notes called for redemption or purchase also apply to portions of Notes called for redemption or purchase.

Section 3.03    Notice of Redemption.

Subject to the provisions of Section 3.09, at least 30 days but not more than 60 days before a redemption date, the Company will mail or cause to be mailed, by first class mail, a notice of redemption to each Holder whose Notes are to be redeemed at its registered address, except that redemption notices may be mailed more than 60 days prior to a redemption date if the notice is issued in connection with a defeasance of the Notes or a satisfaction and discharge of this Indenture pursuant to Article 8 or 12 of this Indenture. Notices of redemption may not be conditional.

The notice will identify the Note(s) to be redeemed and will state:

(1)    the redemption date;

(2)    the redemption price;

(3)    if any Note is to be redeemed in part only, the portion of the principal amount of such Note to be redeemed and that, after the redemption date upon surrender of such Note, a new Note or Notes in principal amount equal to the unredeemed portion will be issued upon cancellation of the original Note;

(4)    the name and address of the Paying Agent;

(5)    that Notes called for redemption must be surrendered to the Paying Agent to collect the redemption price;

(6)    that, unless the Issuers default in making such redemption payment, interest on Notes called for redemption ceases to accrue on and after the redemption date;

(7)    the paragraph of the Notes and/or Section of this Indenture pursuant to which the Notes called for redemption are being redeemed; and

(8)    that no representation is made as to the correctness or accuracy of the CUSIP number, if any, listed in such notice or printed on the Notes.

At the Company's request, the Trustee will give the notice of redemption in the Company's name and at its expense; provided, however, that the Company has delivered to the Trustee, at least 45 days prior to the redemption date, an Officer's Certificate requesting that the Trustee give such notice and setting forth the information to be stated in such notice as provided in the preceding paragraph.

Section 3.04    Effect of Notice of Redemption.

Once notice of redemption is mailed in accordance with Section 3.03, Notes called for redemption become irrevocably due and payable on the redemption date at the redemption price. A notice of redemption may not be conditional.

Section 3.05    Deposit of Redemption or Purchase Price.

Not less than one Business Day prior to the redemption or purchase price date, the Issuers will deposit with the Trustee or with the Paying Agent money sufficient to pay the redemption or purchase price of and accrued interest and Special Interest, if any, on all Notes to be redeemed or purchased on that date. The Trustee or the Paying Agent will promptly return to the Issuers any money deposited with the Trustee or the Paying Agent by the Issuers in excess of the amounts necessary to pay the redemption or purchase price of, and accrued interest and Special Interest, if any, on, all Notes to be redeemed or purchased.

If the Issuers comply with the provisions of the preceding paragraph, on and after the redemption or purchase date, interest will cease to accrue on the Notes or the portions of Notes called for redemption or purchase. If a Note is redeemed or purchased on or after an interest record date but on or prior to the related interest payment date, then any accrued and unpaid interest shall be paid. If any Note called for redemption or purchase shall not be so paid upon surrender for redemption or purchase because of the failure of the Issuers to comply with the preceding paragraph, interest shall be paid on the unpaid principal, from the redemption or purchase date until such principal is paid, and to the extent lawful on any interest not paid on such unpaid principal, in each case at the rate provided in the Notes and in Section 4.01.

Section 3.06    Notes Redeemed or Purchased in Part.

Upon surrender of a Note that is redeemed or purchased in part, the Issuers will issue and, upon receipt of an Authentication Order, the Trustee will authenticate for the Holder, at the expense of the Company, a new Note equal in principal amount to the unredeemed or unpurchased portion of the Note surrendered.

Section 3.07    Optional Redemption.

The Issuers may not redeem all or any part of the Notes prior to April 1, 2007. On or after April 1, 2007, the Issuers may redeem all or a part of the Notes, upon not less than 30 nor more than 60 days prior notice, at redemption prices (expressed as percentages of principal amount) set forth below plus accrued and unpaid interest and Special Interest, if any, on the Notes redeemed, to the applicable redemption date, if redeemed during the twelve-month period beginning on April 1 of the years indicated below, subject to the rights of the Holders on the relevant record date to receive interest on the relevant interest payment date:

| Year | Percentage |
| --- | --- |
| 2007............................... | 102.5% |
| 2008, and thereafter............ | 100.0% |

Unless the Company defaults in the payment of the redemption price, interest will cease to accrue on the Notes or portions thereof called for redemption on the applicable redemption date.

Any redemption pursuant to this Section 3.07 shall be made pursuant to the provisions of Sections 3.01 through 3.06.

Section 3.08    Mandatory Redemption.

This Section 5.01 will not apply to (A) a merger of the Company with an Affiliate solely for the purpose of reincorporating the Company in another jurisdiction or (B) any sale, assignment, transfer, conveyance, lease or other disposition of assets between or among the Company and the Guarantors.

Notwithstanding the foregoing, the Company is permitted to reorganize as a corporation in accordance with the procedures established herein, provided, that the Company shall have delivered to the Trustee an Opinion of Counsel in the United States reasonably acceptable to the Trustee confirming that such reorganization is not adverse to Holders (it being recognized that such reorganization shall not be deemed adverse to the Holders solely because (i) of the accrual of deferred tax liabilities resulting from such reorganization or (ii) the Company or surviving corporation (a) is subject to income tax as a corporate entity or (b) is considered to be an "includible corporation" of an affiliated group of corporations within the meaning of the Internal Revenue Code of 1986, as amended or any similar state or local law), and the Company delivers to the Trustee such other certificates and other documents reasonably requested by the Trustee in connection therewith.

Section 5.02   *Successor Corporation Substituted.*

Upon any consolidation or merger, or any sale, assignment, transfer, lease, conveyance or other disposition of all or substantially all of the assets of the Company and its Subsidiaries taken as a whole in a transaction that is subject to, and that complies with the provisions of, Section 5.01, the successor corporation formed by such consolidation or into or with which the Company is merged or to which such sale, assignment, transfer, lease, conveyance or other disposition is made shall succeed to, and be substituted for (so that from and after the date of such consolidation, merger, sale, lease, conveyance or other disposition, the provisions of this Indenture referring to the "Company" shall refer instead to the successor corporation and not to the Company), and may exercise every right and power of the Company under this Indenture with the same effect as if such successor Person had been named as the Company herein; *provided, however,* that the predecessor Company shall not be relieved from the obligation to pay the principal of and interest on the Notes except in the case of a sale of all of the Company's assets in a transaction that is subject to, and that complies with the provisions of, Section 5.01.

ARTICLE 6.
DEFAULTS AND REMEDIES

Section 6.01   *Events of Default.*

Each of the following is an "Event of Default":

(1)   default for 30 days in the payment when due of interest on, or Special Interest, if any, with respect to, any of the Notes;

(2)   default in the payment when due of the principal of, or premium, if any, on any of the Notes;

(3)   failure by the Company or any of its Subsidiaries to comply with the covenants contained in Sections 3.09, 4.10, 4.15 and 4.19;

(4)   failure by the Company or any of its Subsidiaries for 30 days after written notice from the Trustee or the Holders of at least 25% in aggregate principal amount of outstanding Notes to comply with any of the agreements in this Indenture or the Security Documents;

(5)   default under any mortgage, indenture or instrument under which there may be issued or by which there may be secured or evidenced any Indebtedness for money borrowed by the Company or any of its Subsidiaries (or the payment of which is guaranteed by the Company or any of its Subsidiaries), whether such Indebtedness or guarantee existed on the Closing Date or is created after the Closing Date, if that default

(a)   is caused by a failure to pay principal of, or interest or premium, if any, on such Indebtedness prior to the expiration of the grace period provided in such Indebtedness on the date of such default (a "Payment Default"); or

(b)   results in the acceleration of such Indebtedness prior to its express maturity,

and, in such case, the principal amount of any such Indebtedness, together with the principal amount of any other such Indebtedness under which there has been a Payment Default or the maturity of which has been so accelerated, aggregate $25.0 million or more, and such default shall not have been cured or waived or any such acceleration rescinded, or such Indebtedness repaid, within 20 days of the Company or the applicable Subsidiary becoming aware of such default;

(6)   failure by the Company or any of its Subsidiaries to pay final judgments aggregating in excess of $25.0 million (excluding those covered by insurance), which judgments are not paid, discharged or stayed for a period of 60 days;

(7)   the repudiation by CalGen Holdings, the Company or any of its Subsidiaries of any of its obligations under the Security Documents or the unenforceability of the Security Documents against CalGen Holdings, the Company or any of its Subsidiaries for any reason; *provided,* that such repudiation or unenforceability relates to Collateral with a Fair Market Value of $25.0 million or more;

(8)   except as permitted by this Indenture, any Subsidiary Guarantee shall be held in any judicial proceeding to be unenforceable or invalid or shall cease for any reason to be in full force and effect or any Guarantor, or any Person acting on behalf of any Guarantor, shall deny or disaffirm its obligations under its Subsidiary Guarantee, and such condition shall not have been cured within 30 days after written notice from the Trustee or the Holders of at least 25% in aggregate principal amount of outstanding Notes;

(9)   breach by any Person (other than the Company or any of its Subsidiaries) of its obligations under, or termination or failure to be in full force and effect of, a Major Project Document (unless such breach, termination or failure to be in full force and effect would not, when taken together with all other such breaches, terminations or failures since the Closing Date (other than those that have been cured) be a Material Adverse Effect, including by entering into a replacement agreement, as evidenced by an Officer's Certificate of the chief financial officer of the Company), unless with respect to any Major Project Document such breach is cured, or such Major Project Document is replaced with a substantially similar agreement (it being understood that (a) an agreement will be considered substantially similar if it would not be Materially Adverse and (b) the use of an Affiliate of the Company as the counterparty under an agreement replacing the Index Hedge will not by itself be considered Materially Adverse), within 60 days (or 120 days with respect to the Index Hedge) thereafter; and

(10) the Company, any of its Subsidiaries that is a Significant Subsidiary or any group of its Subsidiaries that taken together would constitute a Significant Subsidiary, pursuant to or within the meaning of Bankruptcy Law;

    (a) commences a voluntary case,

    (b) consents to the entry of an order for relief against it in an involuntary case,

    (c) consents to the appointment of a custodian of it or for all or substantially all of its property,

    (d) makes a general assignment for the benefit of its creditors, or

    (e) generally is not paying its debts as they become due, or

(11) a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that:

    (a) is for relief against the Company, any of its Subsidiaries that is a Significant Subsidiary or any group of its Subsidiaries that taken together would constitute a Significant Subsidiary, in an involuntary case;

    (b) appoints a custodian of the Company, any of its Subsidiaries that is a Significant Subsidiary or any group of its Subsidiaries that taken together would constitute a Significant Subsidiary, or for all or substantially all of the property of the Company, any of its Subsidiaries that is a Significant Subsidiary or any group of its Subsidiaries that taken together would constitute a Significant Subsidiary; or

    (c) orders the liquidation of the Company, any of its Subsidiaries that is a Significant Subsidiary or any group of its Subsidiaries that taken together would constitute a Significant Subsidiary;

and the order or decree remains unstayed and in effect for 60 consecutive days;

Section 6.02  *Acceleration.*

In the case of an Event of Default specified in clause (10) or (11) of Section 6.01, all outstanding Notes will become due and payable immediately without further action or notice. If any other Event of Default occurs and is continuing, the Trustee or the Holders of at least 25% in aggregate principal amount of the then outstanding Notes may declare all the Notes to be due and payable immediately. Upon any such declaration, the Notes shall become due and payable immediately.

The Holders of a majority in aggregate principal amount of the then outstanding Notes by written notice to the Trustee may, on behalf of all of the Holders, rescind an acceleration and its consequences if the rescission would not conflict with any judgment or decree and if all existing Events of Default (except nonpayment of principal, interest or premium or Special Interest, if any, that has become due solely because of the acceleration) have been cured or waived.

Section 6.03  *Other Remedies.*

83

---

If an Event of Default occurs and is continuing, the Trustee may pursue any available remedy to collect the payment of principal, premium, if any, and interest and Special Interest, if any, on the Notes or to enforce the performance of any provision of the Notes or this Indenture.

The Trustee may maintain a proceeding even if it does not possess any of the Notes or does not produce any of them in the proceeding. A delay or omission by the Trustee or any Holder of a Note in exercising any right or remedy accruing upon an Event of Default shall not impair the right or remedy or constitute a waiver of or acquiescence in the Event of Default. All remedies are cumulative to the extent permitted by law.

Section 6.04  *Waiver of Past Defaults.*

Holders of a majority in aggregate principal amount of the then outstanding Notes by written notice to the Trustee may, on behalf of the Holders of all of the Notes, waive an existing Default or Event of Default and its consequences hereunder, except a continuing Default or Event of Default in the payment of the principal of, premium and Special Interest, if any, or interest on, the Notes (including in connection with an offer to purchase). Upon any such waiver, such Default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other Default or impair any right consequent thereon.

Section 6.05  *Control by Majority.*

Subject to the provisions of the Collateral Trust Agreement, Holders of a majority in aggregate principal amount of the then outstanding Notes may direct the time, method and place of conducting any proceeding for exercising any remedy available to the Trustee or exercising any trust or power conferred on it. However, the Trustee may refuse to follow any direction that conflicts with law or this Indenture, that the Trustee determines may be unduly prejudicial to the rights of other Holders of Notes or that may involve the Trustee in personal liability.

Section 6.06  *Limitation on Suits.*

Except to enforce the right to receive payment of principal, premium, if any, or interest or Special Interest, if any, when due, no Holder may pursue any remedy with respect to this Indenture or the Notes unless:

    (1) such Holder has previously given the Trustee notice that an Event of Default is continuing;

    (2) Holders of at least 25% in aggregate principal amount of the then outstanding Notes have requested that the Trustee pursue the remedy;

    (3) such Holders have offered the Trustee reasonable security or indemnity against any loss, liability or expense;

    (4) the Trustee has not complied with such request within 60 days after the receipt thereof and the offer of security or indemnity; and

    (5) Holders of a majority in aggregate principal amount of the Notes then outstanding have not given the Trustee a direction inconsistent with such request within such 60-day period.

84

*Execution Version*

THE NOTES ISSUED UNDER THIS SECOND PRIORITY INDENTURE ARE ISSUED WITH ORIGINAL ISSUE DISCOUNT FOR UNITED STATES FEDERAL INCOME TAX PURPOSES AND ARE SUBJECT TO TREASURY REGULATIONS REGARDING THE REPORTING OF ORIGINAL ISSUE DISCOUNT. HOLDERS MAY CONTACT THE CHIEF FINANCIAL OFFICER OF THE COMPANY AT 50 WEST SAN FERNANDO STREET, 5TH FLOOR, SAN JOSE, CALIFORNIA 95113, WHO WILL PROVIDE UPON REQUEST INFORMATION RELATING TO ORIGINAL ISSUE DISCOUNT, INCLUDING THE ISSUE PRICE, THE AMOUNT OF ORIGINAL ISSUE DISCOUNT, THE ISSUE DATE, AND THE YIELD TO MATURITY.

CALPINE GENERATING COMPANY, LLC

AND

CALGEN FINANCE CORP.

and each of the Guarantors named herein

SECOND PRIORITY SECURED FLOATING RATE NOTES DUE 2010

SECOND PRIORITY INDENTURE

Dated as of March 23, 2004

WILMINGTON TRUST FSB

Trustee

NY:575764.3

---

CROSS-REFERENCE TABLE*

| Trust Indenture Act Section | Indenture Section |
| --- | --- |
| 310(a)(1) | 7.10 |
| (a)(2) | 7.10 |
| (a)(3) | N.A. |
| (a)(4) | N.A. |
| (a)(5) | 7.10 |
| (b) | 7.10 |
| 311(a) | 7.11 |
| (b) | 7.11 |
| 312(a) | N.A. |
| (b) | 2.05 |
| (c) | 12.03 |
| 313(a) | 12.03 |
| (b) | 7.06 |
| (c) | 10.03 |
| (d) | 7.06; 7.07 |
| 314(a) | 7.06; 10.03; 12.02 |
| (a)(4) | 7.06 |
| (b) | 4.03;12.02; 12.05 |
| (c)(1) | 10.02 |
| (c)(2) | 12.04 |
| (c)(3) | 12.04 |
| (d) | N.A. |
| (e) | 10.03, 10.04, 10.05 |
| (f) | 12.05 |
| 315(a) | N.A. |
| (b) | 7.01 |
| (c) | 7.05;12.02 |
| (d) | 7.01 |
| (e) | 7.01 |
| 316(a) (last sentence) | 6.11 |
| (a)(1)(A) | 2.09 |
| (a)(1)(B) | 6.05 |
| (a)(2) | 6.04 |
| (b) | N.A. |
| (c) | 6.07 |
| 317(a)(1) | 2.12 |
| (a)(2) | 6.08 |
| (b) | 6.09 |
| 318(a) | 2.04 |
| (b) | 12.01 |
| (c) | N.A. |
| (d) | 12.01 |

N.A. means not applicable.

* This Cross Reference Table is not part of the Indenture.

NY:575764.3

Upon surrender of a Note that is redeemed or purchased in part, the Issuers will issue and, upon receipt of an Authentication Order, the Trustee will authenticate for the Holder, at the expense of the Company, a new Note equal in principal amount to the unredeemed or unpurchased portion of the Note surrendered.

Section 3.07   *Optional Redemption.*

The Issuers may not redeem all or any part of the Notes prior to April 1, 2008. On or after April 1, 2008, the Issuers may redeem all or a part of the Notes, upon not less than 30 nor more than 60 days prior notice, at the redemption prices (expressed as percentages of principal amount) set forth below plus accrued and unpaid interest and Special Interest, if any, on the Notes redeemed, to the applicable redemption date, if redeemed during the twelve-month period beginning on April 1 of the years indicated below, subject to the rights of the Holders on the relevant record date to receive interest on the relevant interest payment date:

| Year | Percentage |
| --- | --- |
| 2008.......................... | 105.5% |
| 2009, and thereafter........... | 100.0% |

Unless the Company defaults in the payment of the redemption price, interest will cease to accrue on the Notes or portions thereof called for redemption on the applicable redemption date.

Any redemption pursuant to this Section 3.07 shall be made pursuant to the provisions of Sections 3.01 through 3.06.

Section 3.08   *Mandatory Redemption.*

The Issuers are not required to make mandatory redemption or sinking fund payments with respect to the Notes.

Section 3.09   *Offer to Purchase by Application of Net Proceeds.*

In the event that, pursuant to Section 4.10, the Issuers are required or elect to commence an Asset Sale Offer, they will follow the procedures specified below.

Within 30 days following the receipt by the Company or any of its Subsidiaries of Net Proceeds from an Asset Sale, Casualty Event or Condemnation Event, in the case of an Asset Sale Offer described in clause (1) of the second paragraph of Section 4.10, or upon completion of a prior required Asset Sale Offer (and any associated mandatory purchase, prepayment or redemption), in the case of an Asset Sale Offer described in clause (2) or (3) of the second paragraph of Section 4.10, the Issuers will mail a notice to the Holders and each Holder regarding such Asset Sale Offer. The notice will contain all instructions and materials necessary to enable the Holders to tender Notes pursuant to the Asset Sale Offer. The notice, which will govern the terms of the Asset Sale Offer, will state:

(1)   that the Asset Sale Offer is being made pursuant to this Section 3.09 and Section 4.10;

(2)   the amount of Net Proceeds being offered to purchase Notes and other Second Priority Lien Obligations (the "*Offer Amount*"), the purchase price and the date on which the purchase will be made (the "*Purchase Date*"), which date will be no earlier than 30 and no later than 60 days from the date the notice is mailed;

63

NY\8763.3

interest;

(3)   that any Note not tendered or accepted for payment will continue to accrue interest;

(4)   that, unless the Issuers default in making such payment, any Note purchased pursuant to an Asset Sale Offer will cease to accrue interest after the Purchase Date;

(5)   that Holders electing to have a Note purchased pursuant to any Asset Sale Offer may elect to have Notes purchased in integral multiples of $1,000 only;

(6)   that Holders electing to have a Note purchased pursuant to any Asset Sale Offer will be required to surrender the Note, with the form entitled "Option of Holder to Elect Purchase" on the reverse of the Note completed, or transfer by book-entry transfer, to the Company, the Depositary or the Paying Agent at the address specified in the notice at least three Business Days before the Purchase Date;

(7)   that Holders will be entitled to withdraw their election if the Company, the Depositary or the Paying Agent, as the case may be, receives, not later than two Business Days before the Purchase Date, a facsimile transmission or letter setting forth the name of the Holder, the principal amount of the Note the Holder delivered for purchase and a statement that such Holder is withdrawing his election to have such Note purchased;

(8)   that, if the aggregate principal amount of Notes and other Second Priority Lien Obligations tendered in the Asset Sale Offer (or required to be purchased, prepaid or redeemed) exceeds the Offer Amount, the Company will select the Notes and other Second Priority Lien Obligations to be purchased, prepaid or redeemed on a pro rata basis based on the principal amount of Notes and such other Second Priority Lien Obligations tendered (or required to be purchased, prepaid or redeemed), with such adjustments as may be deemed appropriate by the Company so that only Notes in denominations of $1,000, or integral multiples thereof, will be purchased, prepaid or redeemed; and

(9)   that Holders whose Notes were purchased only in part will be issued new Notes equal in principal amount to the unpurchased portion of the Notes surrendered (or transferred by book-entry transfer).

On or before the Purchase Date, the Issuers will, to the extent lawful, accept for payment, on a pro rata basis to the extent necessary, the Offer Amount of Notes and other Second Priority Lien Obligations or portions thereof tendered pursuant to the Asset Sale Offer (or required to be purchased, prepaid or redeemed), or if less than the Offer Amount has been tendered (or is required to be purchased, prepaid or redeemed), all Notes and other Second Priority Lien Obligations tendered (or required to be purchased, prepaid or redeemed), and will deliver or cause to be delivered to the Trustee the Notes properly accepted together with an Officer's Certificate stating that such Notes or portions thereof were accepted for payment by the Issuers in accordance with the terms of this Section 3.09. Payment for any Notes so purchased will be made in the same manner as interest payments are made. The Issuers, the Depositary or the Paying Agent, as the case may be, will promptly (but in any case not later than five days after the Purchase Date) mail or deliver to each tendering Holder an amount equal to the purchase price of the Notes tendered by such Holder and accepted by the Issuers for purchase, and the Issuers will promptly issue a new Note, and the Trustee, upon written request from the Issuers, will authenticate and mail or deliver (or cause to be transferred by book entry) such new Note to such Holder, in a principal amount equal to any unpurchased portion of the Note surrendered. Any Note not so accepted shall be promptly mailed or delivered by the Issuers to the Holder thereof. The Issuers will publicly announce the results of the Asset Sale Offer on the Purchase Date.

64

NY\8763.3

(d)   Section 4.13 (Business Activities); and

(f)   clause (9) under Section 6.01 (Events of Default).

Notwithstanding the foregoing, if the rating assigned to the Third Priority Notes by either Moody's or S&P should subsequently decline to below Baa3 or BBB-, respectively, the foregoing covenants (and the Event of Default) will be reinstated with respect to the Notes as of and from the date of such rating decline. Calculations under reinstated Section 4.07 will be made as if such covenant had been in effect since the Closing Date except that no Default will be deemed to have occurred solely by reason of a Restricted Payment made while such covenant was suspended.

## ARTICLE 5.
## SUCCESSORS

Section 5.01   *Merger, Consolidation, or Sale of Assets.*

The Company will not, directly or indirectly:

(1)   consolidate or merge with or into another Person (whether or not the Company is the surviving corporation); or

(2)   sell, assign, transfer, convey or otherwise dispose of all or substantially all of the properties or assets of the Company and its Subsidiaries taken as a whole, in one or more related transactions, to another Person; or

(3)   lease all or substantially all of its properties or assets, in one or more related transactions, to any other Person.

This Section 5.01 will not apply to (A) a merger of the Company with an Affiliate solely for the purpose of reconstituting the Company in another jurisdiction; or (B) any sale, assignment, transfer, conveyance, lease or other disposition of assets between or among the Company and the Guarantors.

Notwithstanding the foregoing, the Company is permitted to reorganize as a corporation in accordance with the procedures established herein, provided, that the Company shall have delivered to the Trustee an Opinion of Counsel in the United States reasonably acceptable to the Trustee confirming that such reorganization is not adverse to Holders (it being recognized that such reorganization shall not be deemed adverse to the Holders solely because (i) of the accrual of deferred tax liabilities resulting from such reorganization or (ii) the successor or surviving corporation (x) is subject to income tax as a corporate entity or (b) is considered to be an "includable corporation" of an affiliated group of corporations within the meaning of the Internal Revenue Code of 1986, as amended or any similar state or local law), and the Company delivers to the Trustee such other certificates and other documents reasonably requested by the Trustee in connection therewith.

Section 5.02   *Successor Corporation Substituted.*

Upon any consolidation or merger, or any sale, assignment, transfer, lease, conveyance or other disposition of all or substantially all of the assets of the Company and its Subsidiaries taken as a whole in a transaction that is subject to, and that complies with the provisions of, Section 5.01, the successor corporation formed by such consolidation or into or with which the Company is merged or to which such sale, assignment, transfer, lease, conveyance or other disposition is made shall succeed to, and be substituted for (so that from and after the date of such consolidation, merger, sale, lease, conveyance or

81

other disposition, the provisions of this Indenture referring to the "Company" shall refer instead to the successor corporation and not to the Company), and may exercise every right and power of the Company under this Indenture with the same effect as if such successor Person had been named as the Company herein; *provided, however,* that the predecessor Company shall not be relieved from the obligation to pay the principal of and interest on the Notes except in the case of a sale of all of the Company's assets in a transaction that is subject to, and that complies with the provisions of, Section 6.01.

## ARTICLE 6.
## DEFAULTS AND REMEDIES

Section 6.01   *Events of Default.*

Each of the following is an "Event of Default":

(1)   default for 30 days in the payment when due of interest on, or Special Interest, if any, with respect to, any of the Notes;

(2)   default in the payment when due of the principal of, or premium, if any, on any of the Notes;

(3)   failure by the Company or any of its Subsidiaries to comply with the covenants contained in Sections 3.09, 4.10, 4.15 and 4.19;

(4)   failure by the Company or any of its Subsidiaries for 30 days after written notice from the Trustee or the Holders of at least 25% in aggregate principal amount of outstanding Notes to comply with any of the agreements in this Indenture or the Security Documents;

(5)   default under any mortgage, indenture or instrument under which there may be issued or by which there may be secured or evidenced any Indebtedness for money borrowed by the Company or any of its Subsidiaries (or the payment of which is guaranteed by the Company or any of its Subsidiaries) whether such Indebtedness or guarantee existed on the Closing Date or is created after the Closing Date, if that default:

(a)   is caused by a failure to pay principal of, or interest or premium, if any, on such Indebtedness prior to the expiration of the grace period provided in such Indebtedness on the date of such default (a "Payment Default"); or

(b)   results in the acceleration of such Indebtedness prior to its express maturity,

and, in each case, the principal amount of any such Indebtedness, together with the principal amount of any other such Indebtedness under which there has been a Payment Default or the maturity of which has been so accelerated, aggregates $25.0 million or more, and such default shall not have been cured or waived or any such acceleration rescinded, or such Indebtedness repaid, within 20 days of the Company or the applicable Subsidiary becoming aware of such default;

(6)   failure by the Company or any of its Subsidiaries to pay final judgments aggregating in excess of $25.0 million (excluding those covered by insurance), which judgments are not paid, discharged or stayed for a period of 60 days;

82

(7) the repudiation by CalGen Holdings, the Company or any of its Subsidiaries of any of its obligations under the Security Documents or the unenforceability of the Security Documents against CalGen Holdings, the Company or any of its Subsidiaries for any reason; provided, that such repudiation or unenforceability relates to Collateral with a Fair Market Value of $25.0 million or more;

(8) except as permitted by this Indenture, any Subsidiary Guarantee shall be held in any judicial proceeding to be unenforceable or invalid or shall cease for any reason to be in full force and effect or any Guarantor, or any Person acting on behalf of any Guarantor, shall deny or disaffirm its obligations under its Subsidiary Guarantee, and such condition shall not have been cured within 30 days after written notice from the Trustee or the Holders of at least 25% in aggregate principal amount of outstanding Notes;

(9) breach by any Person (other than the Company or any of its Subsidiaries) of its obligations under, or termination or failure to be in full force and effect of, a Major Project Document (unless such breach, termination or failure to be in full force and effect would not, when taken together with all other such breaches, terminations or failures since the Closing Date (other than those that have been cured as contemplated below, including by entering into a replacement agreement), be Materially Adverse, as evidenced by an Officer's Certificate of the chief financial officer of the Company), unless with respect to any Major Project Document such breach is cured, or such Major Project Document is replaced with a substantially similar agreement (it being understood that (a) an agreement will be considered substantially similar if it would not be Materially Adverse and (b) the use of an Affiliate of the Company as the counterparty under an agreement replacing the Index Hedge will not by itself be considered Materially Adverse), within 60 days (or 120 days with respect to the Index Hedge) thereafter; and

(10) the Company, any of its Subsidiaries that is a Significant Subsidiary or any group of its Subsidiaries that taken together would constitute a Significant Subsidiary, pursuant to or within the meaning of Bankruptcy Law:

(a) commences a voluntary case,

(b) consents to the entry of an order for relief against it in an involuntary case,

(c) consents to the appointment of a custodian of it or for all or substantially all of its property,

(d) makes a general assignment for the benefit of its creditors, or

(e) generally is not paying its debts as they become due; or

(11) a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that:

(a) is for relief against the Company, any of its Subsidiaries that is a Significant Subsidiary or any group of its Subsidiaries that taken together would constitute a Significant Subsidiary, in an involuntary case;

(b) appoints a custodian of the Company, any of its Subsidiaries that is a Significant Subsidiary or any group of its Subsidiaries that taken together would

83

constitute a Significant Subsidiary, for all or substantially all of the property of the Company, any of its Subsidiaries that is a Significant Subsidiary or any group of its Subsidiaries that taken together would constitute a Significant Subsidiary; or

(c) orders the liquidation of the Company, any of its Subsidiaries that is a Significant Subsidiary or any group of its Subsidiaries that taken together would constitute a Significant Subsidiary;

and the order or decree remains unstayed and in effect for 60 consecutive days;

Section 6.02. *Acceleration.*

In the case of an Event of Default specified in clause (10) or (11) of Section 6.01, all outstanding Notes will become due and payable immediately without further action or notice. If any other Event of Default occurs and is continuing, the Trustee or the Holders of at least 25% in aggregate principal amount of the then outstanding Notes may declare all the Notes to be due and payable immediately. Upon any such declaration, the Notes shall become due and payable immediately.

The Holders of a majority in aggregate principal amount of the then outstanding Notes by written notice to the Trustee may, on behalf of all of the Holders, rescind an acceleration and its consequences if the rescission would not conflict with any judgment or decree and if all existing Events of Default (except nonpayment of principal, interest or premium or Special Interest, if any, that has become due solely because of the acceleration) have been cured or waived.

Section 6.03. *Other Remedies.*

If an Event of Default occurs and is continuing, the Trustee may pursue any available remedy to collect the payment of principal, premium, if any, and interest and Special Interest, if any, on the Notes or to enforce the performance of any provision of the Notes or this Indenture.

The Trustee may maintain a proceeding even if it does not possess any of the Notes or does not produce any of them in the proceeding. A delay or omission by the Trustee or any Holder of a Note in exercising any right or remedy accruing upon an Event of Default shall not impair the right or remedy or constitute a waiver of or acquiescence in the Event of Default. All remedies are cumulative to the extent permitted by law.

Section 6.04. *Waiver of Past Defaults.*

Holders of a majority in aggregate principal amount of the then outstanding Notes by written notice to the Trustee may, on behalf of the Holders of all of the Notes, waive an existing Default or Event of Default and its consequences hereunder, except a continuing Default or Event of Default in the payment of the principal of, premium and Special Interest, if any, or interest on, the Notes (including in connection with an offer to purchase). Upon any such waiver, such Default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other Default or impair any right consequent thereon.

Section 6.05. *Control by Majority.*

Subject to the provisions of the Collateral Trust Agreement, Holders of a majority in aggregate principal amount of the then outstanding Notes may direct the time, method and place of conducting any

84

Execution Version

CALPINE GENERATING COMPANY, LLC

AND

CALGEN FINANCE CORP.

and each of the Guarantors named herein

THIRD PRIORITY SECURED FLOATING RATE NOTES DUE 2011

11⅛% THIRD PRIORITY SECURED NOTES DUE 2011

THIRD PRIORITY INDENTURE

Dated as of March 23, 2004

WILMINGTON TRUST FSB

Trustee

CROSS-REFERENCE TABLE*

| Trust Indenture Act Section | Indenture Section |
| --- | --- |
| 310(a)(1) | 7.10 |
| (a)(2) | 7.10 |
| (a)(3) | N.A. |
| (a)(4) | N.A. |
| (a)(5) | 7.10 |
| (b) | 7.10 |
| (c) | N.A. |
| 311(a) | 7.11 |
| (b) | 7.11 |
| (c) | N.A. |
| 312(a) | 2.05 |
| (b) | 12.03 |
| (c) | 12.03 |
| 313(a) | 7.06 |
| (b)(1) | 10.03 |
| (b)(2) | 7.06; 10.03; 12.02 |
| (c) | 7.06; 10.03; 12.02 |
| (d) | 7.06 |
| 314(a) | 4.03;12.02; 12.05 |
| (b) | N.A. |
| (c)(1) | 12.04 |
| (c)(2) | 12.04 |
| (c)(3) | N.A. |
| (d) | N.A. |
| (e) | 10.03, 10.04, 10.05 |
| (f) | 12.05 |
| 315(a) | N.A. |
| (b) | 7.01 |
| (c) | 7.05;12.02 |
| (d) | 7.01 |
| (e) | 7.01 |
| 316(a) (last sentence) | 6.11 |
| (a)(1)(A) | 2.09 |
| (a)(1)(B) | 6.05 |
| (a)(2) | 6.04 |
| (b) | 6.07 |
| (c) | 2.12 |
| 317(a)(1) | 6.08 |
| (a)(2) | 6.09 |
| (b) | 2.04 |
| 318(a) | 12.01 |
| (b) | N.A. |
| (c) | 12.01 |

N.A. means not applicable.
* This Cross Reference Table is not part of the Indenture.

NY8759173

to the redemption or purchase date by the Trustee from the outstanding Notes not previously called for redemption or purchase.

The Trustee will promptly notify the Company in writing of the Notes selected for redemption or purchase and, in the case of any Note selected for partial redemption or purchase, the principal amount thereof to be redeemed or purchased. Notes and portions of Notes selected will be in amounts of $1,000 or whole multiples of $1,000, except that if all of the Notes of a Holder are to be redeemed or purchased, the entire outstanding amount of Notes held by such Holder, even if not a multiple of $1,000, shall be redeemed or purchased. Except as provided in the preceding sentence, provisions of this Indenture that apply to Notes called for redemption or purchase also apply to portions of Notes called for redemption or purchase.

Section 3.03    Notice of Redemption.

Subject to the provisions of Section 3.09, at least 30 days but not more than 60 days before a redemption date, the Company will mail or cause to be mailed, by first class mail, a notice of redemption to each Holder whose Notes are to be redeemed at its registered address, except that redemption notices may be mailed more than 60 days prior to a redemption date if the notice is issued in connection with a defeasance of the Notes or a satisfaction and discharge of this Indenture pursuant to Article 8 or 12 of this Indenture. Notices of redemption may not be conditional.

The notice will identify the Note(s) to be redeemed and will state:

(1)    the redemption date;

(2)    the redemption price;

(3)    if any Note is to be redeemed in part only, the portion of the principal amount of such Note to be redeemed and that, after the redemption date upon surrender of such Note, a new Note or Notes in principal amount equal to the unredeemed portion will be issued upon cancellation of the original Note;

(4)    the name and address of the Paying Agent;

(5)    that Notes called for redemption must be surrendered to the Paying Agent to collect the redemption price;

(6)    that, unless the Issuers default in making such redemption payment, interest on Notes called for redemption ceases to accrue on and after the redemption date;

(7)    the paragraph of the Notes and/or Section of this Indenture pursuant to which the Notes called for redemption are being redeemed; and

(8)    that no representation is made as to the correctness or accuracy of the CUSIP number, if any, listed in such notice or printed on the Notes.

At the Company's request, the Trustee will give the notice of redemption in the Company's name and at its expense; provided, however, that the Company has delivered to the Trustee, at least 45 days prior to the redemption date, an Officer's Certificate requesting that the Trustee give such notice and setting forth the information to be stated in such notice as provided in the preceding paragraph.

Section 3.04    Effect of Notice of Redemption.

Once notice of redemption is mailed in accordance with Section 3.03, Notes called for redemption, become irrevocably due and payable on the redemption date at the redemption price. A notice of redemption may not be conditional.

Section 3.05    Deposit of Redemption or Purchase Price.

Not less than one Business Day prior to the redemption or purchase price date, the Issuers will deposit with the Paying Agent money sufficient to pay the redemption or purchase price of and accrued interest and Special Interest, if any, on all Notes to be redeemed or purchased on that date. The Trustee or the Paying Agent will promptly return to the Issuers any money deposited with the Trustee or the Paying Agent by the Issuers in excess of the amounts necessary to pay the redemption or purchase price of, and accrued interest and Special Interest, if any, on, all Notes to be redeemed or purchased.

If the Issuers comply with the provisions of the preceding paragraph, on and after the redemption or purchase date, interest will cease to accrue on the Notes or the portions of Notes called for redemption or purchase. If a Note is redeemed or purchased on or after an interest record date but on or prior to the related interest payment date, then any accrued and unpaid interest shall be paid. If any Note called for redemption or purchase is not so paid upon surrender for redemption or purchase because of the failure of the Issuers to comply with the preceding paragraph, interest shall be paid on the unpaid principal, from the redemption or purchase date until such principal is paid, and to the extent lawful on any interest not paid on such unpaid principal, in each case at the rate provided in the Notes and in Section 4.01.

Section 3.06    Notes Redeemed or Purchased in Part.

Upon surrender of a Note that is redeemed or purchased in part, the Issuers will issue and, upon receipt of an Authentication Order, the Trustee will authenticate for the Holder, at the expense of the Company, a new Note equal in principal amount to the unredeemed or unpurchased portion of the Note surrendered.

Section 3.07    Optional Redemption.

The Notes are not redeemable at the option of the Issuers.

Section 3.08    Mandatory Redemption.

The Issuers are not required to make mandatory redemption or sinking fund payments with respect to the Notes.

Section 3.09    Offer to Purchase by Application of Net Proceeds.

In the event that, pursuant to Section 4.10, the Issuers are required or elect to commence an Asset Sale Offer, they will follow the procedures specified below.

Within 30 days following the receipt by the Company or any of its Subsidiaries of Net Proceeds from an Asset Sale, Casualty Event or Condemnation Event, in the case of an Asset Sale Offer described in clause (1) of the second paragraph of Section 4.10, or upon completion of a required Asset Sale Offer (and any associated mandatory purchase, prepayment or redemption), in the case of an Asset Sale Offer described in clause (2) or (3) of the second paragraph of Section 4.10, the Issuers will mail a notice

the principal of and interest on the Notes except in the case of a sale of all of the Company's assets in a transaction that is subject to, and that complies with the provisions of, Section 5.01.

## ARTICLE 6.
## DEFAULTS AND REMEDIES

Section 6.01  *Events of Default.*

Each of the following is an "Event of Default":

(1)  default for 30 days in the payment when due of interest on, or Special Interest, if any, with respect to, any of the Notes;

(2)  default in the payment when due of the principal of, or premium, if any, on any of the Notes;

(3)  failure by the Company or any of its Subsidiaries to comply with the covenants contained in Sections 3.09, 4.10, 4.15 and 4.19;

(4)  failure by the Company or any of its Subsidiaries for 30 days after written notice from the Trustee or the Holders of at least 25% in aggregate principal amount of outstanding Notes to comply with any of the agreements in this Indenture or the Security Documents;

(5)  default under any mortgage, indenture or instrument under which there may be issued or by which there may be secured or evidenced any Indebtedness for money borrowed by the Company or any of its Subsidiaries (or the payment of which is guaranteed by the Company or any of its Subsidiaries), whether such Indebtedness or guarantee existed on the Closing Date or is created after the Closing Date, if that default:

(a)  is caused by a failure to pay principal of, or interest or premium, if any, on such Indebtedness prior to the expiration of the grace period provided in such Indebtedness on the date of such default (a "Payment Default"); or

(b)  results in the acceleration of such Indebtedness prior to its express maturity,

and, in each case, the principal amount of any such Indebtedness, together with the principal amount of any other such Indebtedness under which there has been a Payment Default or the maturity of which has been so accelerated, aggregates $25.0 million or more, and such default shall not have been cured or waived or any such acceleration rescinded, or such Indebtedness repaid, within 20 days of the Company or the applicable Subsidiary becoming aware of such default;

(6)  failure by the Company or any of its Subsidiaries to pay final judgments aggregating in excess of $25.0 million (excluding those covered by insurance), which judgments are not paid, discharged or stayed for a period of 60 days;

(7)  the repudiation by CalGen Holdings, the Company or any of its Subsidiaries of any of its obligations under the Security Documents or the unenforceability of the Security Documents against CalGen Holdings, the Company or any of its Subsidiaries for any reason;

*provided,* that such repudiation or unenforceability relates to Collateral with a Fair Market Value of $25.0 million or more;

(8)  except as permitted by this Indenture, any Subsidiary Guarantee shall be held in any judicial proceeding to be unenforceable or invalid or shall cease for any reason to be in full force and effect or any Guarantor, or any Person acting on behalf of any Guarantor, shall deny or disaffirm its obligations under its Subsidiary Guarantee, and such condition shall not have been cured within 30 days after written notice from the Trustee or the Holders of at least 25% in aggregate principal amount of outstanding Notes;

(9)  breach by any Person (other than the Company or any of its Subsidiaries) of its obligation under, or termination or failure to be in full force and effect of, a Major Project Document (unless such breach, termination or failure to be in full force and effect would not, when taken together with all other such breaches, terminations or failures since the Closing Date (other than those that have been cured as contemplated below, including by entering into a replacement agreement), be Materially Adverse, as evidenced by an Officer's Certificate of the chief financial officer of the Company), unless with respect to any Major Project Document such breach is cured, or such Major Project Document is replaced with a substantially similar agreement (it being understood that (a) an agreement will be considered substantially similar if it would not be Materially Adverse and (b) the use of an Affiliate of the Company as the counterparty under an agreement replacing the Index Hedge will not by itself be considered Materially Adverse), within 60 days (or 120 days with respect to the Index Hedge) thereafter; and

(10)  the Company, any of its Subsidiaries that is a Significant Subsidiary or any group of its Subsidiaries that taken together would constitute a Significant Subsidiary, pursuant to or within the meaning of Bankruptcy Law:

(a)  commences a voluntary case,

(b)  consents to the entry of an order for relief against it in an involuntary case,

(c)  consents to the appointment of a custodian of it or for all or substantially all of its property,

(d)  makes a general assignment for the benefit of its creditors, or

(e)  generally is not paying its debts as they become due; or

(11)  a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that:

(a)  is for relief against the Company, any of its Subsidiaries that is a Significant Subsidiary or any group of its Subsidiaries that taken together would constitute a Significant Subsidiary, in an involuntary case;

(b)  appoints a custodian of the Company, any of its Subsidiaries that is a Significant Subsidiary or any group of its Subsidiaries that taken together would constitute a Significant Subsidiary, or for all or substantially all of the property of the Company, any of its Subsidiaries that is a Significant Subsidiary or any group of its Subsidiaries that taken together would constitute a Significant Subsidiary; or

(e)    orders the liquidation of the Company, any of its Subsidiaries that is a Significant Subsidiary or any group of its Subsidiaries that taken together would constitute a Significant Subsidiary;

and the order or decree remains unstayed and in effect for 60 consecutive days;

Section 6.02    *Acceleration.*

In the case of an Event of Default specified in clause (10) or (11) of Section 6.01, all outstanding Notes will become due and payable immediately without further action or notice. If any other Event of Default occurs and is continuing, the Trustee or the Holders of at least 25% in aggregate principal amount of the then outstanding Notes may declare all the Notes to be due and payable immediately. Upon any such declaration, the Notes shall become due and payable immediately.

The Holders of a majority in aggregate principal amount of the then outstanding Notes by written notice to the Trustee may, on behalf of all of the Holders, rescind an acceleration and its consequences if the rescission would not conflict with any judgment or decree and if all existing Events of Default (except nonpayment of principal, interest or premium or Special Interest, if any, that has become due solely because of the acceleration) have been cured or waived.

Section 6.03    *Other Remedies.*

If an Event of Default occurs and is continuing, the Trustee may pursue any available remedy to collect the payment of principal, premium, if any, and interest and Special Interest, if any, on the Notes or to enforce the performance of any provision of the Notes or this Indenture.

The Trustee may maintain a proceeding even if it does not possess any of the Notes or does not produce any of them in the proceeding. A delay or omission by the Trustee or any Holder of a Note in exercising any right or remedy accruing upon an Event of Default shall not impair the right or remedy or constitute a waiver of or acquiescence in the Event of Default. All remedies are cumulative to the extent permitted by law.

Section 6.04    *Waiver of Past Defaults.*

Holders of a majority in aggregate principal amount of the then outstanding Notes may by written notice to the Trustee may, on behalf of the Holders of all of the Notes, waive an existing Default or Event of Default and its consequences hereunder, except a continuing Default or Event of Default in the payment of the principal of, premium and Special Interest, if any, or interest on, the Notes (including in connection with an offer to purchase). Upon any such waiver, such Default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other Default or impair any right consequent thereon.

Section 6.05    *Control by Majority.*

Subject to the provisions of the Collateral Trust Agreement, Holders of a majority in aggregate principal amount of the then outstanding Notes may direct the time, method and place of conducting any proceeding for exercising any remedy available to the Trustee or exercising any trust or power conferred on it. However, the Trustee may refuse to follow any direction that conflicts with law or this Indenture, that the Trustee determines may be unduly prejudicial to the rights of other Holders of Notes or that may involve the Trustee in personal liability.

83

NY#359713

Section 6.06    *Limitation on Suits.*

Except to enforce the right to receive payment of principal, premium, if any, or interest or Special Interest, if any, when due, no Holder may pursue any remedy with respect to this Indenture or the Notes unless:

(1)    such Holder has previously given the Trustee notice that an Event of Default is continuing;

(2)    Holders of at least 25% in aggregate principal amount of the then outstanding Notes have requested that the Trustee pursue the remedy;

(3)    such Holders have offered the Trustee reasonable security or indemnity against any loss, liability or expense;

(4)    the Trustee has not complied with such request within 60 days after the receipt thereof and the offer of security or indemnity; and

(5)    Holders of a majority in aggregate principal amount of the Notes then outstanding have not given the Trustee a direction inconsistent with such request within such 60-day period.

A Holder of a Note may not use this Indenture to prejudice the rights of another Holder of a Note or to obtain a preference or priority over another Holder of a Note.

Section 6.07    *Rights of Holders of Notes to Receive Payment.*

Notwithstanding any other provision of this Indenture, the right of any Holder of a Note to receive payment of principal, premium and Special Interest, if any, and interest on the Note, on or after the respective due dates expressed in the Note (including in connection with an offer to purchase), or to bring suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such Holder; provided, that a Holder shall have the right to institute any such suit for the enforcement of payment if and to the extent that the institution or prosecution thereof or the entry of judgment therein would, under applicable law, result in the surrender, impairment, waiver or loss of the Lien of this Indenture upon any property subject to such Lien.

Section 6.08    *Collection Suit by Trustee.*

If an Event of Default specified in Section 6.01(1) or (2) occurs and is continuing, the Trustee is authorized to recover judgment in its own name and as trustee of an express trust against the Company for the whole amount of principal of, premium and Special Interest, if any, and interest remaining unpaid on the Notes and interest on overdue principal and, to the extent lawful, interest and such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel.

Section 6.09    *Trustee May File Proofs of Claim.*

The Trustee is authorized to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel) and the Holders of the Notes allowed in any judicial proceedings relative to the Company (or any other obligor

84

NY#359713

*EXECUTION VERSION*

**$600,000,000**

**FIRST PRIORITY SECURED INSTITUTIONAL TERM LOANS DUE 2009**

# CREDIT AND GUARANTEE AGREEMENT

Dated as of March 23, 2004

among

## CALPINE GENERATING COMPANY, LLC
The Borrower

## THE GUARANTORS PARTY HERETO FROM TIME TO TIME
The Guarantors

## THE LENDERS PARTY HERETO FROM TIME TO TIME
The Lenders

## MORGAN STANLEY SENIOR FUNDING, INC.
Administrative Agent

and

## MORGAN STANLEY SENIOR FUNDING, INC.
Sole Lead Arranger and Sole Bookrunner

otherwise prejudice or limit any rights or remedies of the Administrative Agent, the Collateral Agent or any Lender.

SECTION 2.08.    *Fees.*  The Borrower agrees to pay to each Agent such fees in the amounts and at the times separately agreed upon by the Borrower and such Agent in writing.

SECTION 2.09.    *Payments.*  The principal amounts of the First Priority Term Loans (reduced in connection with any voluntary or mandatory prepayments of the First Priority Term Loans, in accordance with Sections 2.10 (Voluntary Prepayments) and 2.11 (Mandatory Repayment Offers), as applicable) shall be repaid by the Borrower in accordance with the repayment schedule set forth on Schedule 2.09, with any remaining unpaid principal, interest, fees and costs due and payable in full on the Maturity Date.

SECTION 2.10.    *Voluntary Prepayments.*

(a)    Voluntary Prepayments.

(i)    The Borrower may not voluntarily prepay First Priority Term Loans except as provided in clause (b) below.  In the event of any voluntary prepayment in accordance with clause (b), the Borrower may prepay any such First Priority Term Loans on any Business Day in whole or in part, in an aggregate minimum amount of $5,000,000 and integral multiples of $1,000,000 (or the remaining amount outstanding) in excess of that amount.

(ii)    All such prepayments shall be made:

(A)    upon not less than one Business Day's prior written, email or telephonic notice in the case of Base Rate Loans; and

(B)    upon not less than three Business Days' prior written, email or telephonic notice in the case of LIBOR Rate Loans;

in each case given to the Administrative Agent by 1:00 p.m. (New York City time) on the date required and, if given by telephone, promptly confirmed in writing to the Administrative Agent (and the Administrative Agent will promptly transmit such telephonic or original notice, by telefacsimile or telephone to each Lender).  Upon the giving of any such notice, the principal amount of the First Priority Term Loans specified in such notice shall become due and payable on the prepayment date specified therein.  Any prepayment of any First Priority Term Loan pursuant to this Section shall be applied in inverse order of maturities and otherwise in accordance with Section 2.12 (General Provisions Regarding Payments).

(b)    First Priority Term Loan Call Protection.

(i)    The First Priority Term Loans may not be voluntarily prepaid at any time on or prior to April 1, 2007;

53

(ii)    The Borrower may, at its option, upon notice as provided in clause (a) above, prepay at any time all, or from time to time any part of, the First Priority Term Loans, if such prepayment is after April 1, 2007 but on or before April 1, 2008, in an amount equal to 102.5% of the principal amount so prepaid, *plus* all other amounts owed hereunder in connection with such prepayment, including amounts payable under Sections 2.05 (Interest) and 2.14 (Making or Maintaining First Priority Term Loans) hereof; and

(iii)    Subject to clause (a) above, First Priority Term Loans may be prepaid at any time without premium or penalty after April 1, 2008.

SECTION 2.11.    *Mandatory Repayment Offers.*

(a)    In the event that, pursuant to Section 5.07 (Asset Sales; Application of Net Proceeds) or Section 5.12 (Offer to Prepay Upon Change of Control), the Borrower shall elect to repay or be required to offer to prepay First Priority Term Loans, then the Borrower shall make an offer to each Lender (a "Mandatory Repayment Offer") in accordance with the following the procedures specified below:

(i)    The Mandatory Repayment Offer shall be made by the Borrower within 30 days following (A) the receipt by the Borrower or any of its Subsidiaries of Net Proceeds from an Asset Sale, Casualty Event or Condemnation Event or (B) a Change of Control, as applicable, and shall remain open until 5:00 p.m. (New York City time) on the date specified in such Mandatory Repayment Offer, which date shall be no earlier than 30 days and no later than 60 days from the date such Mandatory Repayment Offer was made, except to the extent that a longer period is required by applicable law (the "Offer Period");

(ii)    The Borrower shall make the Mandatory Repayment Offer by sending a notice to the Administrative Agent (for delivery to each Lender).  The notice shall contain all instructions and materials necessary to enable the Lenders to accept the Mandatory Repayment Offer for all of their First Priority Term Loans pursuant to the Mandatory Repayment Offer.  The Mandatory Repayment Offer shall be made to all Lenders.  The notice, which shall govern the terms of the Mandatory Repayment Offer, shall state:

(A)    that the Mandatory Repayment Offer is being made pursuant to this Section 2.11 and Section 5.07 (Asset Sales; Application of Net Proceeds) or Section 5.12 (Offer to Prepay Upon Change of Control), as applicable, and the date on which the Mandatory Repayment Offer shall end;

(B)    the total amount the Borrower is offering to prepay (the "Offer Amount") and the Repayment Date therefor;

(C)    that, unless the Borrower defaults in making such payment, any First Priority Term Loan with respect to which a Lender accepts the Mandatory Repayment Offer shall cease to accrue interest from and after the Repayment Date;

SD\428761:4

SECTION 6.02.    *Successor Corporation Substituted.*  Upon any consolidation or merger, or any sale, assignment, transfer, lease, conveyance or other disposition of all or substantially all of the assets of the Borrower in a transaction that is subject to, and that complies with the provisions of, Section 6.01 (Merger, Consolidation, or Sale of Assets), the successor corporation formed by such consolidation or into or with which the Borrower is merged or to which such sale, assignment, transfer, lease, conveyance or other disposition is made shall succeed to, and be substituted for (so that from and after the date of such consolidation, merger, sale, lease, conveyance or other disposition, the provisions of this Agreement referring to the "Borrower" shall refer instead to the successor corporation and not to the Borrower), and may exercise every right and power of the Borrower under this Agreement with the same effect as if such successor Person had been named as the Borrower herein; *provided, however,* that the predecessor Borrower shall not be relieved from the obligation to pay the principal of and interest on or other amounts in respect of the First Priority Term Loans.

## ARTICLE VII.

## DEFAULTS AND REMEDIES

SECTION 7.01.    *Events of Default.*

Each of the following is an "Event of Default":

(a)    default for 30 days in the payment when due of interest on the First Priority Term Loans;

(b)    default in payment when due of the principal of, or premium, if any, on the First Priority Term Loans;

(c)    failure by the Borrower or any of its Subsidiaries to comply with Section 5.07 (Asset Sales; Application of Net Proceeds), 5.12 (Offer to Prepay Upon Change of Control) or 5.16 (Deposit of Revenues);

(d)    failure by Holdings, the Borrower or any of its Subsidiaries for 30 days after written notice from the Administrative Agent or the Lenders holding at least 50% in outstanding aggregate principal amount of the First Priority Term Loans then outstanding to comply with any of the agreements in this Agreement or the other First Priority Term Loan Documents;

(e)    default under any mortgage, indenture or instrument under which there may be issued or by which there may be secured or evidenced any Indebtedness for money borrowed by the Borrower or any of its Subsidiaries (or the payment of which is guaranteed by the Borrower or any of its Subsidiaries) whether such Indebtedness or guarantee now exists, or is created after the date of this Agreement, if that default:

(i)    is caused by a failure to pay principal of, or interest or premium, if any, on such Indebtedness prior to the expiration of the grace period provided in such Indebtedness on the date of such default (a "Payment Default"); or

92

(ii)    results in the acceleration of such Indebtedness prior to its express maturity,

and, in each case, the principal amount of any such Indebtedness, together with the principal amount of any other such Indebtedness under which there has been a Payment Default or the maturity of which has been so accelerated, aggregates $25,000,000 or more, and such default shall not have been cured or waived or any such acceleration rescinded, or such Indebtedness repaid, within 20 days of the Borrower or the applicable Subsidiary becoming aware of such default;

(f)    failure by the Borrower or any of its Subsidiaries to pay final judgments aggregating in excess of $25,000,000 (excluding those covered by insurance), which judgments are not paid, discharged or stayed for a period of 60 days;

(g)    the repudiation by Holdings, the Borrower or any of its Subsidiaries of any of its obligations under the Security Documents or the unenforceability of the Security Documents against Holdings, the Borrower or any of its Subsidiaries for any reason; *provided* that such repudiation or unenforceability relates to Collateral having a Fair Market Value of $25,000,000 or more;

(h)    except as permitted by this Agreement, any First Priority Term Loan Guarantee shall be held in any judicial proceeding to be unenforceable or invalid or shall cease for any reason to be in full force and effect or any Guarantor, or any Person acting on behalf of any Guarantor, shall deny or disaffirm its obligations under its First Priority Term Loan Guarantee, and such condition shall not have been cured within 30 days after written notice from the trustee or the holders of at least 50% in aggregate principal amount of outstanding First Priority Term Loans;

(i)    breach by any Person (other than the Borrower or any of its Subsidiaries) of its obligations under, or termination or failure to be in full force and effect of, a Major Project Document (unless such breach, termination or failure to be in full force and effect would not, when taken together with all other such breaches, terminations or failures since the date of this Agreement (other than those that have been cured as contemplated below, including by entering into a replacement agreement), be Materially Adverse, as evidenced by a certificate of the chief financial officer of the Borrower), unless with respect to any Major Project Document such breach is cured, or such Major Project Document is replaced with a substantially similar agreement (it being understood that (a) an agreement will be considered substantially similar if it would not be Materially Adverse and (b) the use of an Affiliate of the Borrower as the counterparty under an agreement replacing the Index Hedge will not by itself be considered Materially Adverse), within 60 days thereafter (or 120 days with respect to the Interest Hedge); and

(j)    the Borrower, any of its Subsidiaries that is a Significant Subsidiary or any group of Subsidiaries that, taken together would constitute a Significant Subsidiary, suffer a Bankruptcy Event.

SECTION 7.02.    *Acceleration.*  In the case of an Event of Default specified in clause (j) of Section 7.01 (Events of Default), with respect to the Borrower or any of its Subsidiaries, the

outstanding First Priority Term Loans shall become due and payable immediately without further action or notice. If any other Event of Default occurs and is continuing, the Administrative Agent or the Requisite Lenders may declare all the First Priority Term Loans to be due and payable immediately. Upon any such declaration, the First Priority Term Loans shall become due and payable immediately.

SECTION 7.03.    *Other Remedies.*

(a)    Subject to the Collateral Trust Agreement, if an Event of Default occurs and is continuing, the Administrative Agent may pursue any available remedy to collect the payment of principal, premium, if any, and interest on the First Priority Term Loan Obligations or to enforce the performance of this Agreement and any other First Priority Term Loan Document.

(b)    The Administrative Agent may maintain a proceeding even if it does not possess any of the First Priority Term Loan Obligations. A delay or omission by the Administrative Agent or any Lender in exercising any right or remedy accruing upon an Event of Default shall not impair the right or remedy or constitute a waiver of or acquiescence in the Event of Default. All remedies are cumulative to the extent permitted by law.

SECTION 7.04.    *Waiver of Past Defaults; Rescission.* The Requisite Lenders by notice to the Administrative Agent may on behalf of the Lenders waive an existing Default or Event of Default and its consequences hereunder. Upon any such waiver, such Default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured for every purpose of this Agreement; but no such waiver shall extend to any subsequent or other Default or Event of Default or impair any right consequent thereon. The Requisite Lenders, by written notice to the Administrative Agent, may on behalf of all of the Lenders rescind an acceleration and its consequences if the rescission would not conflict with any judgment or decree and if all existing Events of Default (except nonpayment of principal, interest or premium that has become due solely because of the acceleration) have been cured or waived.

SECTION 7.05.    *Control by Majority.* The Requisite Lenders may direct the time, method and place of conducting any proceeding for exercising any remedy available to the Administrative Agent or exercising any trust or power conferred on it. However, the Administrative Agent may refuse to follow any direction that conflicts with law, this Agreement, the other First Priority Term Loan Documents, that the Administrative Agent determines may be unduly prejudicial to the rights of other Lenders, that may involve the Administrative Agent in personal liability, or that is inconsistent with the Collateral Trust Agreement.

SECTION 7.06.    *Collection Suit by Administrative Agent.* If an Event of Default specified in Section 7.01(a) or (b) (Events of Default) occurs and is continuing, the Administrative Agent is authorized to recover judgment in its own name and as trustee of an express trust against the Borrower for the whole amount of principal of, premium, if any, and interest remaining unpaid on the First Priority Term Loans and interest on overdue principal and, to the extent lawful, interest and such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Administrative Agent, its agents and counsel.

94

*EXECUTION VERSION*

THE LOANS TO BE MADE HEREUNDER SHALL BE ISSUED WITH ORIGINAL ISSUE DISCOUNT FOR UNITED STATES FEDERAL INCOME TAX PURPOSES AND ARE SUBJECT TO TREASURY REGULATIONS REGARDING THE REPORTING OF ORIGINAL ISSUE DISCOUNT. FURTHER INFORMATION MAY BE OBTAINED BY SUBMITTING A REQUEST TO THE CHIEF FINANCIAL OFFICER OF THE COMPANY AT 50 WEST SAN FERNANDO STREET, 5TH FLOOR, SAN JOSE, CALIFORNIA 95113.

$100,000,000

**SECOND PRIORITY SECURED INSTITUTIONAL TERM LOANS DUE 2010**

# CREDIT AND GUARANTEE AGREEMENT

Dated as of March 23, 2004

among

## CALPINE GENERATING COMPANY, LLC
The Borrower

## THE GUARANTORS PARTY HERETO FROM TIME TO TIME
The Guarantors

## THE LENDERS PARTY HERETO FROM TIME TO TIME
The Lenders

## MORGAN STANLEY SENIOR FUNDING, INC.
Administrative Agent

and

## MORGAN STANLEY SENIOR FUNDING, INC.
Sole Lead Arranger and Sole Bookrunner

the applicable Second Priority Term Loans or (b) in the case of any such fees and other amounts, at a rate that is 2% per annum in excess of the interest rate then otherwise payable under this Agreement for Base Rate Loans (the "Default Rate"); *provided* that if an Event of Default has occurred and is continuing on the expiration date of the Interest Period for any LIBOR Rate Loans, then such LIBOR Rate Loans shall thereupon become Base Rate Loans and shall thereafter bear interest payable upon demand at a rate that is 2% per annum in excess of the interest rate then otherwise payable under this Agreement for Base Rate Loans. Payment or acceptance of the increased rates of interest provided for in this Section 2.07 is not a permitted alternative to timely payment and shall not constitute a waiver of any Event of Default or otherwise prejudice or limit any rights or remedies of the Administrative Agent, the Collateral Agent or any Lender.

SECTION 2.08.     *Fees.*  The Borrower agrees to pay to each Agent such fees in the amounts and at the times separately agreed upon by the Borrower and such Agent in writing.

SECTION 2.09.     *Payments.*  The principal amounts of the Second Priority Term Loans (reduced in connection with any voluntary or mandatory prepayments of the Second Priority Term Loans, in accordance with Sections 2.10 (Voluntary Prepayments) and 2.11 (Mandatory Repayment Offers), as applicable) shall be repaid by the Borrower in accordance with the repayment schedule set forth on Schedule 2.09, with any remaining unpaid principal, interest, fees and costs due and payable in full on the Maturity Date.

SECTION 2.10.     *Voluntary Prepayments.*

(a)     <u>Voluntary Prepayments</u>.

(i)     The Borrower may not voluntarily prepay Second Priority Term Loans except as provided in clause (b) below.  In the event of any voluntary prepayment in accordance with clause (b), the Borrower may prepay any such Second Priority Term Loans on any Business Day in whole or in part, in an aggregate minimum amount of $5,000,000 and integral multiples of $1,000,000 (or the remaining amount outstanding) in excess of that amount.

(ii)     All such prepayments shall be made:

(A)     upon not less than one Business Day's prior written, email or telephonic notice in the case of Base Rate Loans; and

(B)     upon not less than three Business Days' prior written, email or telephonic notice in the case of LIBOR Rate Loans;

in each case given to the Administrative Agent by 1:00 p.m. (New York City time) on the date required and, if given by telephone, promptly confirmed in writing to the Administrative Agent (and the Administrative Agent will promptly transmit such telephonic or original notice, by telefacsimile or telephone to each Lender).  Upon the giving of any such notice, the principal amount of the Second Priority Term Loans specified in such notice shall become due and payable on the prepayment date specified therein. Any prepayment of any Second Priority Term Loan pursuant to this Section shall be applied in inverse order of

53

maturities and otherwise in accordance with Section 2.12 (General Provisions Regarding Payments).

(b)    Second Priority Term Loan Call Protection.

(i)    The Second Priority Term Loans may not be voluntarily prepaid at any time on or prior to April 1, 2008;

(ii)    The Borrower may, at its option, upon notice as provided in clause (a) above, prepay at any time all, or from time to time any part of, the Second Priority Term Loans, if such prepayment is after April 1, 2008 but on or before April 1, 2009, in an amount equal to 103.5% of the principal amount so prepaid, *plus* all other amounts owed hereunder in connection with such prepayment, including amounts payable under Sections 2.05 (Interest) and 2.14 (Making or Maintaining Second Priority Term Loans) hereof; and

(iii)    Subject to clause (a) above, Second Priority Term Loans may be prepaid at any time without premium or penalty after April 1, 2009.

SECTION 2.11.    *Mandatory Repayment Offers.*

(a)    In the event that, pursuant to Section 5.07 (Asset Sales; Application of Net Proceeds) or Section 5.12 (Offer to Prepay Upon Change of Control), the Borrower shall elect to repay or be required to offer to prepay Second Priority Term Loans, then the Borrower shall make an offer to each Lender (a "Mandatory Repayment Offer") in accordance with the following procedures specified below:

(i)    The Mandatory Repayment Offer shall be made by the Borrower within 30 days following (A) the receipt by the Borrower or any of its Subsidiaries of Net Proceeds from an Asset Sale, Casualty Event or Condemnation Event or (B) a Change of Control, as applicable, and shall remain open until 5:00 p.m. (New York City time) on the date specified in such Mandatory Repayment Offer, which date shall be no earlier than 30 days and no later than 60 days from the date such Mandatory Repayment Offer was made, except to the extent that a longer period is required by applicable law (the "Offer Period");

(ii)    The Borrower shall make the Mandatory Repayment Offer by sending a notice to the Administrative Agent (for delivery to each Lender). The notice shall contain all instructions and materials necessary to enable the Lenders to accept the Mandatory Repayment Offer for all of their Second Priority Term Loans pursuant to the Mandatory Repayment Offer. The Mandatory Repayment Offer shall be made to all Lenders. The notice, which shall govern the terms of the Mandatory Repayment Offer, shall state:

(A)    that the Mandatory Repayment Offer is being made pursuant to this Section 2.11 and Section 5.07 (Asset Sales; Application of Net Proceeds) or Section 5.12 (Offer to Prepay Upon Change of Control), as applicable, and the date on which the Mandatory Repayment Offer shall end;

54

reorganization shall not be deemed adverse to the Lenders solely because (i) of the accrual of deferred tax liabilities resulting from such reorganization or (ii) the successor or surviving corporation (A) is subject to income tax as a corporate entity or (B) is considered to be an "includable corporation" of an affiliated group of corporations within the meaning of the Code or any similar state or local law).

SECTION 6.02.    *Successor Corporation Substituted.*    Upon any consolidation or merger, or any sale, assignment, transfer, lease, conveyance or other disposition of all or substantially all of the assets of the Borrower in a transaction that is subject to, and that complies with the provisions of, Section 6.01 (Merger, Consolidation, or Sale of Assets), the successor corporation formed by such consolidation or into or with which the Borrower is merged or to which such sale, assignment, transfer, lease, conveyance or other disposition is made shall succeed to, and be substituted for (so that from and after the date of such consolidation, merger, sale, lease, conveyance or other disposition, the provisions of this Agreement referring to the "Borrower" shall refer instead to the successor corporation and not to the Borrower), and may exercise every right and power of the Borrower under this Agreement with the same effect as if such successor Person had been named as the Borrower herein; *provided, however*, that the predecessor Borrower shall not be relieved from the obligation to pay the principal of and interest on or other amounts in respect of the Second Priority Term Loans.

## ARTICLE VII.

## DEFAULTS AND REMEDIES

SECTION 7.01.    *Events of Default.*

Each of the following is an "Event of Default":

(a)    default for 30 days in the payment when due of interest on the Second Priority Term Loans;

(b)    default in payment when due of the principal of, or premium, if any, on the Second Priority Term Loans;

(c)    failure by the Borrower or any of its Subsidiaries to comply with Section 5.07 (Asset Sales; Application of Net Proceeds), 5.12 (Offer to Prepay Upon Change of Control) or 5.16 (Deposit of Revenues);

(d)    failure by Holdings, the Borrower or any of its Subsidiaries for 30 days after written notice from the Administrative Agent or the Lenders holding at least 50% in outstanding aggregate principal amount of the Second Priority Term Loans then outstanding to comply with any of the agreements in this Agreement or the other Second Priority Term Loan Documents;

(e)    default under any mortgage, indenture or instrument under which there may be issued or by which there may be secured or evidenced any Indebtedness for money borrowed by the Borrower or any of its Subsidiaries (or the payment of which is guaranteed by the Borrower or any of its Subsidiaries) whether such Indebtedness or guarantee now exists, or is created after the date of this Agreement, if that default:

92

(i)    is caused by a failure to pay principal of, or interest or premium, if any, on such Indebtedness prior to the expiration of the grace period provided in such Indebtedness on the date of such default (a "Payment Default"); or

(ii)    results in the acceleration of such Indebtedness prior to its express maturity,

and, in each case, the principal amount of any such Indebtedness, together with the principal amount of any other such Indebtedness under which there has been a Payment Default or the maturity of which has been so accelerated, aggregates $25,000,000 or more, and such default shall not have been cured or waived or any such acceleration rescinded, or such Indebtedness repaid, within 20 days of the Borrower or the applicable Subsidiary becoming aware of such default;

(f)    failure by the Borrower or any of its Subsidiaries to pay final judgments aggregating in excess of $25,000,000 (excluding those covered by insurance), which judgments are not paid, discharged or stayed for a period of 60 days;

(g)    the repudiation by Holdings, the Borrower or any of its Subsidiaries of any of its obligations under the Security Documents or the unenforceability of the Security Documents against Holdings, the Borrower or any of its Subsidiaries for any reason; *provided* that such repudiation or unenforceability relates to Collateral having a Fair Market Value of $25,000,000 or more;

(h)    except as permitted by this Agreement, any Second Priority Term Loan Guarantee shall be held in any judicial proceeding to be unenforceable or invalid or shall cease for any reason to be in full force and effect or any Guarantor, or any Person acting on behalf of any Guarantor, shall deny or disaffirm its obligations under its Second Priority Term Loan Guarantee, and such condition shall not have been cured within 30 days after written notice from the trustee or the holders of at least 50% in aggregate principal amount of outstanding Second Priority Term Loans;

(i)    breach by any Person (other than the Borrower or any of its Subsidiaries) of its obligations under, or termination or failure to be in full force and effect of, a Major Project Document (unless such breach, termination or failure to be in full force and effect would not, when taken together with all other such breaches, terminations or failures since the date of this Agreement (other than those that have been cured as contemplated below, including by entering into a replacement agreement), be Materially Adverse, as evidenced by a certificate of the chief financial officer of the Borrower), unless with respect to any Major Project Document such breach is cured, or such Major Project Document is replaced with a substantially similar agreement (it being understood that (a) an agreement will be considered substantially similar if it would not be Materially Adverse and (b) the use of an Affiliate of the Borrower as the counterparty under an agreement replacing the Index Hedge will not by itself be considered Materially Adverse), within 60 days thereafter (or 120 days with respect to the Interest Hedge); and

SDW4290513

(j)      the Borrower, any of its Subsidiaries that is a Significant Subsidiary or any group of Subsidiaries that, taken together would constitute a Significant Subsidiary, suffer a Bankruptcy Event.

SECTION 7.02.      *Acceleration.*  In the case of an Event of Default specified in clause (j) of Section 7.01 (Events of Default), with respect to the Borrower or any of its Subsidiaries, the outstanding Second Priority Term Loans shall become due and payable immediately without further action or notice.  If any other Event of Default occurs and is continuing, the Administrative Agent or the Requisite Lenders may declare all the Second Priority Term Loans to be due and payable immediately.  Upon any such declaration, the Second Priority Term Loans shall become due and payable immediately.

SECTION 7.03.      *Other Remedies.*

(a)      Subject to the Collateral Trust Agreement, if an Event of Default occurs and is continuing, the Administrative Agent may pursue any available remedy to collect the payment of principal, premium, if any, and interest on the Second Priority Term Loan Obligations or to enforce the performance of this Agreement and any other Second Priority Term Loan Document.

(b)      The Administrative Agent may maintain a proceeding even if it does not possess any of the Second Priority Term Loan Obligations.  A delay or omission by the Administrative Agent or any Lender in exercising any right or remedy accruing upon an Event of Default shall not impair the right or remedy or constitute a waiver of or acquiescence in the Event of Default. All remedies are cumulative to the extent permitted by law.

SECTION 7.04.      *Waiver of Past Defaults; Rescission.*  The Requisite Lenders by notice to the Administrative Agent may on behalf of the Lenders waive an existing Default or Event of Default and its consequences hereunder.  Upon any such waiver, such Default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured for every purpose of this Agreement; but no such waiver shall extend to any subsequent or other Default or Event of Default or impair any right consequent thereon.  The Requisite Lenders, by written notice to the Administrative Agent, may on behalf of all of the Lenders rescind an acceleration and its consequences if the rescission would not conflict with any judgment or decree and if all existing Events of Default (except nonpayment of principal, interest or premium that has become due solely because of the acceleration) have been cured or waived.

SECTION 7.05.      *Control by Majority.*  The Requisite Lenders may direct the time, method and place of conducting any proceeding for exercising any remedy available to the Administrative Agent or exercising any trust or power conferred on it.  However, the Administrative Agent may refuse to follow any direction that conflicts with law, this Agreement, the other Second Priority Term Loan Documents, that the Administrative Agent determines may be unduly prejudicial to the rights of other Lenders, that may involve the Administrative Agent in personal liability, or that is inconsistent with the Collateral Trust Agreement.

SECTION 7.06.      *Collection Suit by Administrative Agent.*  If an Event of Default specified in Section 7.01(a) or (b) (Events of Default) occurs and is continuing, the Administrative Agent is authorized to recover judgment in its own name and as trustee of an express trust against the

94

*EXECUTION VERSION*

$200,000,000

FIRST PRIORITY SECURED REVOLVING LOANS

# AMENDED AND RESTATED CREDIT AGREEMENT

Dated as of March 23, 2004

among

## CALPINE GENERATING COMPANY, LLC
The Borrower

## THE GUARANTORS PARTY HERETO FROM TIME TO TIME
The Guarantors

## THE LENDERS PARTY HERETO FROM TIME TO TIME
The Lenders

## THE BANK OF NOVA SCOTIA
Administrative Agent, LC Bank, Lead Arranger and Sole Bookrunner

## BAYERISCHE LANDESBANK CAYMAN ISLANDS BRANCH
Arranger and Co-Syndication Agent

## CREDIT LYONNAIS NEW YORK BRANCH
Arranger and Co-Syndication Agent

## ING CAPITAL LLC
Arranger and Co-Syndication Agent

## TORONTO DOMINION (TEXAS) INC.
Arranger and Co-Syndication Agent

and

## UNION BANK OF CALIFORNIA, N.A.
Arranger and Co-Syndication Agent

SDV424816.8

payable upon demand at a rate that is 2% per annum in excess of the interest rate then otherwise payable under this Agreement for Base Rate Loans. Payment or acceptance of the increased rates of interest provided for in this Section 2.1.7 is not a permitted alternative to timely payment and shall not constitute a waiver of any Event of Default or otherwise prejudice or limit any rights or remedies of the Administrative Agent, the Collateral Agent or any Lender.

Section 2.1.8  *Fees.*

(a)    Fee Letter.  The Borrower agrees to pay to each Agent and each applicable Lender the fees in the amounts and at the times set forth herein and any other fees as separately agreed upon by the Borrower and such Agent or such Lender (as applicable) in writing.

(b)    Revolving Loan Commitment Fees.  On the last Business Day in each calendar quarter (where all or any portion of such calendar quarter occurs on or after the Closing Date and prior to the Maturity Date) and on the Maturity Date (or, if the Total Loan Commitment is canceled prior to such date, on the date of such cancellation), the Borrower shall pay to the Administrative Agent, for the benefit of the Lenders, accruing from the Closing Date or the first day of such quarter, as the case may be, a commitment fee (the "Commitment Fee") for such quarter (or portion thereof) then ending equal to the product of (a) 0.75% *times* (b) the daily average Available Loan Commitment for such quarter (or portion thereof) *times* (c) a fraction, the numerator of which is the number of days in such quarter (or portion thereof) and the denominator of which is the number of days in that calendar year (365 or 366, as the case may be).

Section 2.1.9  *Payments.*  The principal amounts of the Revolving Loans (reduced in connection with any voluntary or mandatory prepayments of the Revolving Loans, in accordance with Sections 2.1.10 (Voluntary Prepayments), 2.1.11 (Mandatory Repayments and Commitment Reductions) and Section 5.7 (Asset Sales; Application of Net Proceeds), as applicable) shall be repaid from time to time in the discretion of the Borrower, but in any event in full on the Maturity Date.

Section 2.1.10  *Voluntary Prepayments; Voluntary Commitment Reductions.*

(a)    The Borrower may voluntarily prepay (without premium or penalty) Revolving Loans on any Business Day, in whole or in part, in an aggregate minimum amount of $2,000,000 and integral multiples of $500,000 (or the remaining amount outstanding) in excess of that amount.

(b)    All such prepayments shall be made:

(i)    upon not less than one Business Day's prior written, email or telephonic notice in the case of Base Rate Loans; and

(ii)    upon not less than three Business Days' prior written, email or telephonic notice in the case of LIBOR Rate Loans;

in each case given to the Administrative Agent by 1:00 p.m. (New York City time) on the date required and, if given by telephone, promptly confirmed in writing to the Administrative Agent (and

the Administrative Agent will promptly transmit such telephonic or original notice, by telefacsimile or telephone to each Lender). Upon the giving of any such notice, the principal amount of the Revolving Loans specified in such notice shall become due and payable on the prepayment date specified therein. Any prepayment of any Revolving Loan pursuant to this Section shall be applied in inverse order of maturities and otherwise in accordance with Section 2.1.12 (General Provisions Regarding Payments).

(c)     The Borrower may, upon not less than five Business Days' prior written notice to Administrative Agent, at any time and from time to time terminate in whole or permanently reduce in part, without premium or penalty, the Total Loan Commitment; *provided* that any such partial reduction of the Total Loan Commitment shall be in an aggregate minimum amount of $2,000,000 and integral multiples of $500,000 in excess of that amount. The Borrower's notice to the Administrative Agent shall designate the date (which shall be a Business Day) of such termination or reduction and the amount of any partial reduction, and such termination or reduction of the Total Loan Commitment shall be effective on the date specified in the Borrower's notice and shall reduce the Revolving Loan Commitment of each Lender proportionately to its Pro Rata Share. Notwithstanding anything to the contrary herein, the Borrower may not terminate in whole or permanently reduce in part the Total Loan Commitment if, after giving effect to any such termination or reduction, such termination or reduction would result in the aggregate amount of the Total Loan Commitment being at such time less than the sum of (i) the aggregate principal amount of outstanding Revolving Loans at such time and (ii) the Aggregate Stated LC Amount and all outstanding Reimbursement Obligations at such time. Together with the delivery by the Borrower to the Administrative Agent of its notice of intent to terminate or reduce the Total Loan Commitment, the Borrower shall deliver an Officer's Certificate certifying to the foregoing.

Section 2.1.11 *Mandatory Repayments and Commitment Reductions.* The Borrower shall prepay the Revolving Loans with the Net Proceeds of an Asset Sale, Casualty Event or Condemnation Event as and to the extent required by Section 5.7(c). Each such prepayment shall be made on a *pro rata* basis with the First Priority Term Loans and the First Priority Notes. The Total Loan Commitment shall be permanently reduced by the amount of each such prepayment, and each Lender's Revolving Loan Commitment shall be correspondingly reduced in proportion to its Pro Rata Share (provided, if after giving effect to any such reduction, the Total Loan Commitment is less than the sum of (i) the aggregate principal amount of all Revolving Loans outstanding at such time and (ii) the aggregate Stated LC Amount and Reimbursement Obligations at such time, then the Borrower shall immediately prepay such Revolving Loans and cash collateralize (pursuant to a cash collateral agreement in form and substance reasonable satisfactory to the Administrative Agent) such Letters of Credit or Reimbursement Obligations to the extent necessary to cause the Total Loan Commitment to be equal to or greater than the amounts specified in clauses (i) and (ii) above).

Section 2.1.12 *General Provisions Regarding Payments.*

(a)     All payments by the Borrower or any Guarantor of principal, interest, fees and other Revolving Loan Obligations shall be made in Dollars in same day funds, without defense, setoff or counterclaim, free of any restriction or condition, and delivered to the Administrative Agent not later than 1:00 p.m. (New York City time) on the date due at the Administrative

56

disposition, the provisions of this Agreement referring to the "Borrower" shall refer instead to the successor corporation and not to the Borrower), and may exercise every right and power of the Borrower under this Agreement with the same effect as if such successor Person had been named as the Borrower herein; *provided, however,* that the predecessor Borrower shall not be relieved from the obligation to pay the principal of and interest on or other amounts in respect of the Revolving Loans.

## ARTICLE VII.
## DEFAULTS AND REMEDIES

SECTION 7.1    Events of Default.

Each of the following is an "Event of Default":

(a)    default for 5 days in the payment when due of interest or fees on the Revolving Loans;

(b)    default in payment when due of the principal of, or premium, if any, on the Revolving Loans;

(c)    the occurrence of a Change of Control;

(d)    failure by the Borrower or any of its Subsidiaries to comply with Section 5.7 (Asset Sales; Application of Net Proceeds) or 5.15 (Deposit of Revenues);

(e)    failure by Holdings, the Borrower or any of its Subsidiaries for 30 days after written notice from the Administrative Agent or the Lenders holding at least 50% in outstanding aggregate principal amount of the Revolving Loans then outstanding to comply with any of the agreements in this Agreement or the other Revolving Loan Documents;

(f)    default under any mortgage, indenture or instrument under which there may be issued or by which there may be secured or evidenced any Indebtedness for money borrowed by the Borrower or any of its Subsidiaries (or the payment of which is guaranteed by the Borrower or any of its Subsidiaries) whether such Indebtedness or guarantee now exists, or is created after the date of this Agreement, if that default:

(i)    is caused by a failure to pay principal of, or interest or premium, if any, on such Indebtedness prior to the expiration of the grace period provided in such Indebtedness on the date of such default (a "Payment Default"); or

(ii)    results in the acceleration of such Indebtedness prior to its express maturity,

and, in each case, the principal amount of any such Indebtedness, together with the principal amount of any other such Indebtedness under which there has been a Payment Default or the maturity of which has been so accelerated, aggregates $25,000,000 or more, and such default shall not have been cured or waived or any such acceleration rescinded, or such Indebtedness repaid, within 20 days of the Borrower or the applicable Subsidiary becoming aware of such default;

102

SD\424816.8

(g)    failure by the Borrower or any of its Subsidiaries to pay final judgments aggregating in excess of $25,000,000 (excluding those covered by insurance), which judgments are not paid, discharged or stayed for a period of 60 days;

(h)    the repudiation by Holdings, the Borrower or any of its Subsidiaries of any of its obligations under the Security Documents or the unenforceability of the Security Documents against Holdings, the Borrower or any of its Subsidiaries for any reason; *provided* that such repudiation or unenforceability relates to Collateral having a Fair Market Value of $25,000,000 or more;

(i)    except as permitted by this Agreement, any Revolving Loan Guarantee shall be held in any judicial proceeding to be unenforceable or invalid or shall cease for any reason to be in full force and effect or any Guarantor, or any Person acting on behalf of any Guarantor, shall deny or disaffirm its obligations under its Revolving Loan Guarantee, and such condition shall not have been cured within 30 days after written notice from the trustee or the holders of at least 50% in aggregate principal amount of outstanding Revolving Loans;

(j)    breach by any Person (other than the Borrower or any of its Subsidiaries) of its obligations under, or termination or failure to be in full force and effect of, a Major Project Document (unless such breach, termination or failure to be in full force and effect would not, when taken together with all other such breaches, terminations or failures since the date of this Agreement (other than those that have been cured as contemplated below, including by entering into a replacement agreement), be Materially Adverse, as evidenced by a certificate of the chief financial officer of the Borrower), unless with respect to any Major Project Document such breach is cured, or such Major Project Document is replaced with a substantially similar agreement (it being understood that an agreement will be considered substantially similar if it would not be Materially Adverse), within 60 days thereafter (or 120 days with respect to the Interest Hedge); and

(k)    the Borrower, any of its Subsidiaries that is a Significant Subsidiary or any group of Subsidiaries that, taken together would constitute a Significant Subsidiary, suffer a Bankruptcy Event.

SECTION 7.2    Acceleration.  In the case of an Event of Default specified in clause (k) of Section 7.1 (Events of Default), with respect to the Borrower or any of its Subsidiaries, the outstanding Revolving Loans and Reimbursement Obligations shall become due and payable immediately without further action or notice.  If any other Event of Default occurs and is continuing, the Administrative Agent or the Requisite Lenders may declare all the Revolving Loans and Reimbursement Obligations to be due and payable immediately.  Upon any such declaration, the Revolving Loans and Reimbursement Obligations shall become due and payable immediately.

SECTION 7.3    Other Remedies.

(a)    Subject to the Collateral Trust Agreement, if an Event of Default occurs and is continuing, the Administrative Agent may pursue any available remedy to collect the payment of

103