(d)     The guarantee contained in this Section 9 shall remain in full force and effect until all the Obligations and the obligations of each Guarantor under the guarantee contained in this Section 9 shall have been satisfied by payment in full (other than contingent indemnification obligations which have not been asserted), no Letter of Credit shall be outstanding and the Commitments shall be terminated, notwithstanding that from time to time during the term of this Agreement the Borrower may be free from any Obligations.

(e)     No payment made by the Borrower, any of the Guarantors, any other guarantor or any other Person or received or collected by the Administrative Agent or any Lender from the Borrower, any of the Guarantors, any other guarantor or any other Person by virtue of any action or proceeding or any set-off or appropriation or application at any time or from time to time in reduction of or in payment of the Obligations shall be deemed to modify, reduce, release or otherwise affect the liability of any Guarantor hereunder which shall, notwithstanding any such payment (other than any payment made by such Guarantor in respect of the Obligations or any payment received or collected from such Guarantor in respect of the Obligations), remain liable for the Obligations up to the maximum liability of such Guarantor hereunder until the Obligations are paid in full (other than contingent indemnification obligations which have not been asserted), no Letter of Credit shall be outstanding and the Commitments are terminated.

9.2.   Right of Contribution.  Each Guarantor hereby agrees that to the extent that a Guarantor shall have paid more than its proportionate share of any payment made hereunder, such Guarantor shall be entitled to seek and receive contribution from and against any other Guarantor hereunder which has not paid its proportionate share of such payment. Each Guarantor's right of contribution shall be subject to the terms and conditions of Section 9.3.  The provisions of this Section 9.2 shall in no respect limit the obligations and liabilities of any Guarantor to the Administrative Agent and the Lenders, and each Guarantor shall remain liable to the Administrative Agent and the Lenders for the full amount guaranteed by such Guarantor hereunder.

9.3.   No Subrogation.  Notwithstanding any payment made by any Guarantor hereunder or any set-off or application of funds of any Guarantor by the Administrative Agent or any Lender, no Guarantor shall be entitled to be subrogated to any of the rights of the Administrative Agent or any Lender against the Borrower or any other Guarantor or any collateral security or guarantee or right of offset held by the Administrative Agent or any Lender for the payment of the Obligations, nor shall any Guarantor seek or be entitled to seek any contribution or reimbursement from the Borrower or any other Guarantor in respect of payments made by such Guarantor hereunder, until all amounts owing to the Administrative Agent and the Lenders by the Borrower on account of the Obligations are paid in full, no Letter of Credit shall be outstanding and the Commitments are terminated. If any amount shall be paid to any Guarantor on account of such subrogation rights at any time when all of the Obligations shall not have been paid in full, such amount shall be held by such Guarantor in trust for the Administrative Agent and the Lenders, segregated from other funds of such Guarantor, and shall, forthwith upon receipt by such Guarantor, be turned over to the Administrative Agent in the exact form received by such Guarantor (duly indorsed by such Guarantor to the Administrative Agent, if required), to be applied against the Obligations, whether matured or unmatured, in accordance with the terms of this Agreement.

9.4.   Amendments, etc. with respect to the Obligations.  Each Guarantor shall remain obligated hereunder notwithstanding that, without any reservation of rights against any Guarantor and without notice to or further assent by any Guarantor, any demand for payment of any of the Obligations made by the Administrative Agent or any Lender may be rescinded by the Administrative Agent or such Lender and any of the Obligations continued, and the Obligations, or the liability of any other Person upon or for any part thereof, or any collateral security or guarantee therefor or right of offset with respect thereto, may, from time to time, in whole or in part, be renewed, extended, amended, modified,

accelerated, compromised, waived, surrendered or released by the Administrative Agent or any Lender, and this Agreement and the other Loan Documents and any other documents executed and delivered in connection herewith or therewith may be amended, modified, supplemented or terminated, in whole or in part, as the Administrative Agent (or the Required Lenders or all Lenders, as the case may be) may deem advisable from time to time, and any collateral security, guarantee or right of offset at any time held by the Administrative Agent or any Lender for the payment of the Obligations may be sold, exchanged, waived, surrendered or released. Neither the Administrative Agent nor any Lender shall have any obligation to protect, secure, perfect or insure any Lien at any time held by it as security for the Obligations or for the guarantee contained in this Section 9 or any property subject thereto.

9.5. <u>Guarantee Absolute and Unconditional</u>. Each Guarantor waives to the extent permitted by law any and all notice of the creation, renewal, extension or accrual of any of the Obligations and notice of or proof of reliance by the Administrative Agent or any Lender upon the guarantee contained in this Section 9 or acceptance of the guarantee contained in this Section 9; the Obligations, and any of them, shall conclusively be deemed to have been created, contracted or incurred, or renewed, extended, amended or waived, in reliance upon the guarantee contained in this Section 9; and all dealings between the Borrower and any of the Guarantors, on the one hand, and the Administrative Agent and the Lenders, on the other hand, likewise shall be conclusively presumed to have been had or consummated in reliance upon the guarantee contained in this Section 9. Each Guarantor waives to the extent permitted by law diligence, presentment, protest, demand for payment and notice of default or nonpayment to or upon the Borrower or any of the Guarantors with respect to the Obligations. Each Guarantor understands and agrees that the guarantee contained in this Section 9 shall be construed as a continuing, absolute and unconditional guarantee of payment without regard to (a) the validity or enforceability of this Agreement or any other Loan Document, any of the Obligations or any other collateral security therefor or guarantee or right of offset with respect thereto at any time or from time to time held by the Administrative Agent or any Lender, (b) any defense, set-off or counterclaim (other than a defense of payment or performance) which may at any time be available to or be asserted by the Borrower or any other Person against the Administrative Agent or any Lender, or (c) any other circumstance whatsoever (with or without notice to or knowledge of the Borrower or such Guarantor) which constitutes, or might be construed to constitute, an equitable or legal discharge of the Borrower for the Obligations, or of such Guarantor under the guarantee contained in this Section 9, in bankruptcy or in any other instance. When making any demand hereunder or otherwise pursuing its rights and remedies hereunder against any Guarantor, the Administrative Agent or any Lender may, but shall be under no obligation to, make a similar demand on or otherwise pursue such rights and remedies as it may have against the Borrower, any other Guarantor or any other Person or against any collateral security or guarantee for the Obligations or any right of offset with respect thereto, and any failure by the Administrative Agent or any Lender to make any such demand, to pursue such other rights or remedies or to collect any payments from the Borrower, any other Guarantor or any other Person or to realize upon any such collateral security or guarantee or to exercise any such right of offset, or any release of the Borrower, any other Guarantor or any other Person or any such collateral security, guarantee or right of offset, shall not relieve any Guarantor of any obligation or liability hereunder, and shall not impair or affect the rights and remedies, whether express, implied or available as a matter of law, of the Administrative Agent or any Lender against any Guarantor. For the purposes hereof "demand" shall include the commencement and continuance of any legal proceedings.

9.6. <u>Reinstatement</u>. The guarantee contained in this Section 9 shall continue to be effective, or be reinstated, as the case may be, if at any time payment, or any part thereof, of any of the Obligations is rescinded or must otherwise be restored or returned by the Administrative Agent or any Lender upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of any Loan Party, or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar

78

officer for, any Loan Party or any substantial part of its property, or otherwise, all as though such payments had not been made.

9.7. Payments. Each Guarantor hereby guarantees that payments hereunder will be paid to the Administrative Agent without set-off or counterclaim in Dollars at its Funding Office.

SECTION 10

MISCELLANEOUS

10.1. Amendments and Waivers.

(a) None of this Agreement, any Note, any other Loan Document, nor any terms hereof or thereof may be amended, supplemented or modified except in accordance with the provisions of this Section 10.1. The Required Lenders may, or, with the written consent of the Required Lenders, the Administrative Agent may, from time to time, (I) enter into with the Loan Parties written amendments, supplements or modifications hereto, to the Notes and to the other Loan Documents for the purpose of adding any provisions to this Agreement, the Notes or the other Loan Documents or changing in any manner the rights of the Lenders or of the Loan Parties hereunder or thereunder or (II) waive, on such terms and conditions as the Required Lenders or the Administrative Agent, as the case may be, may specify in such instrument, any of the requirements of this Agreement, the Notes or the other Loan Documents or any Default or Event of Default and its consequences; provided, however, that no such waiver and no such amendment, supplement or modification shall (A) reduce the amount or extend the scheduled date of any amortization payment or maturity of any Loan or other Extension of Credit or Note, or the date for payment of any reimbursement obligations in respect of Letters of Credit or reduce the stated rate of any interest or fee payable hereunder (provided, however, that only the consent of the Required Lenders shall be necessary for the waiver of payment of default interest) or extend the scheduled date of any payment thereof or increase the amount or extend the expiration date of any Lender's Commitment, or modify the Superpriority Claim status of the Lenders in respect of any Extensions of Credit, in each case without the consent of each Lender directly affected thereby (it being understood that a waiver of any Event of Default or Default shall not be deemed to be an increase in the amount of any Lender's Commitments), (B) without the written consent of the Swingline Lender, amend, modify or waive any provision of Section 2.6 or 2.7; (C) without the consent of all the Lenders, (i) amend, modify or waive any provision of this Section 10.1 or any other provision of any Section hereof expressly requiring the consent of all the Lenders, (ii) reduce the percentage specified in or otherwise change the definition of Required Lenders and Supermajority Lenders or Majority Facility Lenders, (iii) release all or substantially all of the Collateral for the Obligations, release all or substantially all of the Guarantors or release the Superpriority Claim of the Administrative Agent, the Collateral Agent and the Lenders in respect of all or substantially all of the Debtors or (iv) consent to the assignment or transfer by any Loan Party of any of its rights and obligations under this Agreement and the other Loan Documents, (D) without the consent of the Majority Facility Lenders under the Revolving Facility, waive the condition precedent set forth in Section 4.2(c), (E) amend, modify or waive any provision of Section 2.20 or Section 15(g) of the Security and Pledge Agreement without the written consent of the Majority Facility Lenders in respect of each Facility adversely affected thereby, (F) amend, modify or waive any provision of (i) Sections 2.8 through 2.10 without the consent of the Fronting Bank or (ii) Section 8 or any other provision of this Agreement or the other Loan Documents which affects, the rights, duties or obligations of the Administrative Agent without the written consent of the Administrative Agent, (G) reduce the percentage specified in the definition of Majority Facility Lenders with respect to any Facility without the written consent of all Lenders under such Facility and (H) require consent of any Person to an Incremental Commitment Supplement or other amendment to this Agreement made pursuant to Section 2.33 other than the Borrower, the Guarantors, each Lender agreeing to provide a commitment to such

Incremental Term Loans, each New Lender with respect thereto and the Administrative Agent. Any such waiver and any such amendment, supplement or modification shall apply equally to each of the Lenders and shall be binding upon the Loan Parties, the Lenders, the Administrative Agent and all future holders of the Notes. In the case of any waiver, the Loan Parties, the Lenders and the Administrative Agent shall be restored to their former position and rights hereunder and under the outstanding Notes and any other Loan Documents, and any Default or Event of Default waived shall be deemed to have not occurred or to be cured and not continuing, as the parties may agree; but no such waiver shall extend to any subsequent or other Default or Event of Default, or impair any right consequent thereon. Any such amendment, supplement or modification of this Agreement shall amend, supplement or modify the Exit Facility Agreement as may be mutually agreed by the Administrative Agent and the Borrower without further action by any other party hereto.

(b) Notwithstanding anything to the contrary contained in Section 10.1(a), in the event that the Borrower requests that this Agreement be modified or amended in a manner which would require the unanimous consent of all of the Lenders and/or each Lender directly affected thereby and such modification or amendment is agreed to by the Supermajority Lenders, then with the consent of the Borrower and the Supermajority Lenders, the Borrower and the Supermajority Lenders shall be permitted to amend the Agreement without the consent of the Lender or Lenders which did not agree to the modification or amendment requested by the Borrower (such Lender or Lenders, the "Minority Banks") to provide for (w) the termination of the Commitment of each of the Minority Banks, (x) the addition to this Agreement of one or more other financial institutions (each of which shall be an Eligible Assignee), or an increase in the Commitment of one or more of the Supermajority Lenders with consent of such Lender, so that the Total Commitment after giving effect to such amendment shall be in the same amount as the Total Commitment immediately before giving effect to such amendment, (y) if any Loans or other Extensions of Credit are outstanding at the time of such amendment, the making of such additional Loans by such new financial institutions or Supermajority Lender or Lenders, as the case may be, as may be necessary to repay in full the outstanding Obligations of the Minority Banks immediately before giving effect to such amendment and (z) such other modifications to this Agreement as may be appropriate.

10.2. Notices. All notices, requests and demands to or upon the respective parties hereto to be effective shall be in writing (including by telecopy), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when received, addressed as follows in the case of the Loan Parties and the Administrative Agent, and as set forth in the administrative questionnaire delivered to the Administrative Agent in the case of the Lenders, or to such other address as may be hereafter notified by the respective parties hereto and any future holders of the Notes:

The Borrower and the Guarantors:   Calpine Corporation
50 West San Fernando Street
San Jose, CA 95113
Attention: Chief Financial Officer
Telecopier No.: 408-995-0505

with copies (which shall not constitute notice) to:

50 West San Fernando Street
San Jose, CA 95113
Attention: General Counsel
Telecopier No.: 408-995-0505

Kirkland & Ellis LLP
Citigroup Center

80

                                         153 East 53rd Street
                                         New York, NY 10022
                                         Attention: Rick Cieri, Esq.
                                         Telecopier No.: 212-446-4900

The Administrative Agent:         Credit Suisse
                                         Eleven Madison Avenue
                                         New York, NY 10010
                                         Attention: James Moran
                                         Telecopier No.: 212-743-1878

                                         with a copy to:

                                         Simpson Thacher & Bartlett LLP
                                         425 Lexington Avenue
                                         New York, NY 10017
                                         Attention: Peter V. Pantaleo, Esq.
                                         Telecopier No.: 212-455-2502

The Fronting Bank
and Swingline Lender:

       10.3. <u>No Waiver; Cumulative Remedies</u>. No failure to exercise and no delay in exercising, on the part of the Administrative Agent or any Lender, any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law.

       10.4. <u>Survival of Representations and Warranties</u>. All representations and warranties made herein and in any document, certificate or statement delivered pursuant hereto or in connection herewith shall survive the execution and delivery of this Agreement and the Notes.

       10.5. <u>Payment of Expenses and Taxes</u>. The Borrower agrees (a) to pay or reimburse the Administrative Agent, the Collateral Agent, the Joint Lead Arrangers and each Lender for all its out-of-pocket costs and expenses reasonably incurred in connection with the development, preparation and execution of, any amendment, supplement or modification to this Agreement, the Notes, the other Loan Documents, the DIP Refinancing Order and any other documents prepared in connection herewith or therewith, in the case of the Administrative Agent and the Collateral Agent, the consummation and administration of the transactions contemplated hereby and thereby, and the reasonable fees and disbursements of counsel to the Administrative Agent and the Collateral Agent and professionals engaged by the Administrative Agent and the Collateral Agent, (b) to pay or reimburse the Administrative Agent, the Collateral Agent and each Lender for all its costs and expenses reasonably incurred in connection with the enforcement or preservation of any rights under this Agreement, the Notes, the other Loan Documents, the DIP Refinancing Order and any such other documents following the occurrence and during the continuance of a Default or an Event of Default, including without limitation, the reasonable fees and disbursements of counsel to the Administrative Agent, the Collateral Agent and each Lender and professionals engaged by the Administrative Agent, the Collateral Agent and the Lenders, (c) to pay, and indemnify and hold harmless each Lender, the Collateral Agent and the Administrative Agent from, any and all recording and filing fees and any and all liabilities with respect to, or resulting from any delay in

paying, stamp, excise and other taxes, if any, which may be payable or determined to be payable in connection with the execution and delivery of, or consummation or administration of any of the transactions contemplated by, or any amendment, supplement or modification of, or any waiver or consent under or in respect of, this Agreement, the Notes, the other Loan Documents, the DIP Refinancing Order and any such other documents, (d) to pay all the actual and reasonable out-of-pocket expenses of the Administrative Agent related to this Agreement, the other Loan Documents, the DIP Refinancing Order, the Loans or the Letters of Credit in connection with the Cases (including without limitation, the on-going monitoring by the Administrative Agent of the Cases, including attendance by the Administrative Agent and counsel at hearings or other proceedings and the on-going review of documents filed with the Bankruptcy Court) and (e) to pay, and indemnify and hold harmless each Lender, the Collateral Agent and the Administrative Agent (and their respective directors, officers, employees and agents) from and against any and all other liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever with respect to the execution, delivery, enforcement, performance, preservation of rights and administration of this Agreement, the Notes, the other Loan Documents, the DIP Refinancing Order or the use of the proceeds of the Extensions of Credit, including without limitation, any of the foregoing relating to the violation of, noncompliance with or liability under, any Environmental Law applicable to the operations of the Loan Parties or any of their respective properties (all the foregoing in this clause (e), collectively, the "indemnified liabilities"), provided that the Borrower shall have no obligation hereunder to the Administrative Agent, the Collateral Agent or any Lender (or their respective directors, officers, employees and agents) with respect to indemnified liabilities determined by the final judgment of a court of competent jurisdiction to have resulted from the bad faith, gross negligence or willful misconduct of the Administrative Agent, the Collateral Agent or such Lender or their respective directors, officers, employees and agents; provided, further, that the Borrower shall in no event be responsible for punitive damages pursuant to this Section 10.5 except such punitive damages required to be paid by any indemnified party in respect of any indemnified liabilities. The agreements in this subsection shall survive repayment of the Loans and all other Obligations payable hereunder.

        10.6. Successors and Assigns; Participations; Purchasing Lenders.

        (a)      This Agreement shall be binding upon and inure to the benefit of the Loan Parties, the Lenders, the Administrative Agent, the Fronting Bank, all future holders of the Notes and their respective successors and assigns, except that neither the Borrower nor any Guarantor may assign or transfer any of its rights or obligations under this Agreement without the prior written consent of each Lender.

        (b)      Any Lender may, without notice to or consent of the Administrative Agent and the Borrower, in the ordinary course of its lending business and in accordance with applicable law, at any time sell to one or more banks or other entities ("Participants") participating interests in any Loan owing to such Lender, any Note held by such Lender, any Commitment of such Lender or any other interest of such Lender hereunder and under the other Loan Documents. In the event of any such sale by a Lender of a participating interest to a Participant, such Lender's obligations under this Agreement to the other parties to this Agreement shall remain unchanged, such Lender shall remain solely responsible for the performance thereof, such Lender shall remain the holder of any such Note for all purposes under this Agreement and the other Loan Documents, and the Borrower and the Administrative Agent shall continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under this Agreement and the other Loan Documents. No Lender shall grant any participation under which the Participant shall have the right to require such Lender to take or omit to take any action hereunder or approve any amendment to or waiver of this Agreement or the Notes or any other Loan Document, except to the extent such amendment or waiver would: (i) extend the final maturity date of, or extend any date for payment of any principal, interest or fees applicable to, the Loans, Letters of Credit or Commitments

022537-0132-10632-NY01.2620245.16

82

in which such Participant is participating, (ii) reduce the interest rate or the amount of principal or fees applicable to the Loans or the Letters of Credit in which such Participant is participating or (iii) release any Lien granted pursuant to Section 2.28 hereof and the DIP Refinancing Order (or the Final DIP Refinancing Order, as applicable) on all or substantially all of the Collateral. The Borrower agrees that if amounts outstanding under this Agreement and the Notes are due or unpaid, or shall have been declared or shall have become due and payable upon the occurrence of an Event of Default, each Participant shall be deemed to have the right of set-off in respect of its participating interest in amounts owing under this Agreement and any Note to the same extent as if the amount of its participating interest were owing directly to it as a Lender under this Agreement or any Note, <u>provided</u> that, in purchasing such participating interest, such Participant shall be deemed to have agreed to share with the Lenders the proceeds thereof as provided in Section 10.7(a) as fully as if it were a Lender hereunder. The Borrower also agrees that each Participant shall be entitled to the benefits of Sections 2.21, 2.22 and 2.23 with respect to its participation in the Commitments and the Loans outstanding from time to time as if it were a Lender; and <u>provided</u> that the Participant and the transferor Lender shall not be entitled to receive in the aggregate any greater amount pursuant to such subsections than the transferor Lender would have been entitled to receive in respect of the amount of the participation transferred by such transferor Lender to such Participant had no such transfer occurred.

       (c)     Any Lender may, in the ordinary course of its business of making or investing in loans and in accordance with applicable law, at any time sell to any Lender or to one or more Eligible Assignees (each a "<u>Purchasing Lender</u>") all or any part of its rights and obligations under this Agreement and the Notes pursuant to an Assignment and Acceptance, substantially in the form of Exhibit D, executed by such Purchasing Lender, such transferor Lender (and, in the case of a Purchasing Lender that is not then a Lender, by the Administrative Agent) and delivered to the Administrative Agent for its acceptance and recording in the Register; <u>provided</u> that (i) other than in the case of a sale to a Purchasing Lender that is an Affiliate of the transferor Lender or to another Lender, or to an Affiliate or Related Fund of any Lender (collectively, a "<u>Related Party Transfer</u>"), the consent of the Administrative Agent shall be required (which consent shall not be unreasonably withheld or delayed), (ii) if such Purchasing Lender is not then a Lender, such sale must be to either (A) a commercial bank having total assets in excess of $5,000,000,000, (B) a finance company, insurance company or other financial institution or fund which is regularly engaged in the making of, purchasing or investing in, loans and having total assets in excess of $100,000,000 or (C) such other Person approved by the Administrative Agent (which approval shall not be unreasonably withheld or delayed) (each, an "<u>Eligible Assignee</u>"), (iii) unless such sale is to another Lender, Related Fund or Affiliate of any Lender, or involves less than all of the transferor Lender's rights and obligations under this Agreement, (A) the amount of the rights and obligations so sold shall, unless otherwise agreed to in writing by the Administrative Agent, not be less than $1,000,000 and (B) after giving effect to such assignment, the Commitment of each of the transferor Lender and the transferee Lender shall be at least $1,000,000, or such lesser amount agreed to by the Administrative Agent, (iv) in the case of any sale under the Revolving Facility (other than to another Lender, Related Fund or Affiliate of any Lender), the consent of the Fronting Bank and the Swingline Lender shall be required and (v) and in any case, the sale is not to an entity which is restricted from making future advances under a revolving credit facility if the sale is under the Revolving Facility or in any case, to an entity that has filed for relief under the Bankruptcy Code or that is a financially distressed company. Upon such execution, delivery, acceptance and recording of an Assignment and Acceptance, from and after the effective date of such transfer determined pursuant to and as defined in such Assignment and Acceptance, (x) the Purchasing Lender thereunder shall be a party hereto and, to the extent provided in such Assignment and Acceptance, have the rights and obligations of a Lender hereunder with a Commitment as set forth therein, and (y) the transferor Lender thereunder shall, to the extent provided in such Assignment and Acceptance, be released from its obligations under this Agreement (and, in the case of a Assignment and Acceptance covering all or the remaining portion of a transferor Lender's rights and obligations under this Agreement, such transferor Lender shall cease to be a party hereto). Such Assignment and Acceptance shall be

deemed to amend this Agreement (including Schedule 1.1A hereof) to the extent, and only to the extent, necessary to reflect the addition of such Purchasing Lender and the resulting adjustment of the Commitment Percentage and Commitment of each of the transferor Lender and the Purchasing Lender arising from the purchase by such Purchasing Lender of all or a portion of the rights and obligations of such transferor Lender under this Agreement and the Notes. To the extent requested in writing by the transferor Lender or the Purchasing Lender on or prior to the effective date of such transfer determined pursuant to such Assignment and Acceptance, the Borrower, at its own expense, shall execute and deliver to the Administrative Agent in exchange for the Note of the transferor Lender a new Note to the order of such Purchasing Lender in an amount equal to the Commitment assumed by it pursuant to such Assignment and Acceptance and, if the transferor Lender has retained a Commitment hereunder, a new Note to the order of the transferor Lender in an amount equal to the Commitment retained by it hereunder. Such new Notes shall be dated the Closing Date and shall otherwise be in the form of the Note replaced thereby. To the extent the transferor Lender requested a Note, the Note surrendered by the transferor Lender shall be returned by the Administrative Agent to the Borrower marked "cancelled".

(d) The Administrative Agent, acting on behalf of the Borrower, shall maintain at its address referred to in Section 10.2 a copy of each Assignment and Acceptance delivered to it and a register (the "Register") for the recordation of the names and addresses of the Lenders and the Commitment of, and principal amount of the Loans owing to, each Lender from time to time. The entries in the Register shall be conclusive, in the absence of manifest error, and the Borrower, the Administrative Agent and the Lenders may treat each Person whose name is recorded in the Register as the owner of the Loans recorded therein for all purposes of this Agreement. The Register shall be available for inspection by the Borrower or any Lender at any reasonable time and from time to time upon reasonable prior notice. Any assignment of any Loan whether or not evidenced by a Note shall be effective only upon appropriate entries with respect thereto being made in the Register (and each Note shall expressly so provide). Any assignment or transfer of all or part of a Loan evidenced by a Note shall be registered on the Register only upon surrender for registration of assignment or transfer of the Note evidencing such Loan, accompanied by a duly executed Assignment and Acceptance, and thereupon one or more new Notes in the same aggregate principal amount shall be issued to the designated Purchasing Lender and the old Notes shall be returned by the Administrative Agent to the Borrower marked "cancelled".

(e) Upon its receipt of an Assignment and Acceptance executed by a transferor Lender and a Purchasing Lender (and, in the case of a Purchasing Lender that is not then a Lender, by the Administrative Agent, the Fronting Bank, the Swingline Lender and the Borrower to the extent required under paragraph (c) above) together with payment to the Administrative Agent of a registration and processing fee of $3,500 (except such fees shall not be payable with respect to assignments by CS), the Administrative Agent shall (i) promptly accept such Assignment and Acceptance, (ii) on the effective date of such transfer determined pursuant thereto record the information contained therein in the Register and (iii) give notice of such acceptance and recordation to the Lenders and the Borrower.

(f) Subject to Section 10.12, the Borrower authorizes each Lender to disclose to any Participant or Purchasing Lender (each, a "Transferee") and any prospective Transferee (in each case which agrees to comply with the provisions of Section 10.12 hereof) any and all financial information in such Lender's possession concerning the Borrower and its Affiliates which has been delivered to such Lender by or on behalf of the Borrower pursuant to this Agreement or any other Loan Document or which has been delivered to such Lender by or on behalf of the Borrower in connection with such Lender's credit evaluation of the Borrower and its Affiliates prior to becoming a party to this Agreement.

(g) Nothing herein shall prohibit any Lender from pledging or assigning any Note to any Federal Reserve Bank in accordance with applicable law. In the case of any Lender that is a fund that invests in bank loans, such Lender may, without the consent of the Borrower or the Administrative Agent,

84

assign or pledge all or any portion of its Notes or any other instrument evidencing its rights as a Lender under this Agreement to any trustee for, or any other representative of, holders of obligations owed or securities issued, by such fund, as security for such obligations or securities; provided that any foreclosure or similar action by such trustee or representative shall be subject to the provisions of this Section 10.6 concerning assignments.

10.7. Adjustments; Set-off.

(a) If any Lender (a "Benefited Lender") shall at any time receive any payment of all or part of its Aggregate Outstandings of Revolving Extensions of Credit or First Priority Term Loans, or interest thereon, or receive any collateral in respect thereof (whether voluntarily or involuntarily, by set-off or otherwise), in a greater proportion than any such payment to or collateral received by any other Lender, if any, in respect of such Extensions of Credit or Loans as it pertains to such other Lender's Aggregate Outstandings of Revolving Extensions of Credit or First Priority Term Loans, or interest thereon, such Benefited Lender shall purchase for cash from the other Lenders a participating interest in such portion of each such other Lender's Loans or the Letter of Credit Outstandings owing to it, or shall provide such other Lenders with the benefits of any such payment or collateral, or the proceeds thereof, as shall be necessary to cause such Benefited Lender to share the excess payment or benefits of such payment or collateral or proceeds ratably with each of the Lenders; provided, however, that if all or any portion of such excess payment or benefits is thereafter recovered from such Benefited Lender, such purchase shall be rescinded, and the purchase price and benefits returned, to the extent of such recovery, but without interest.

(b) Subject to (i) the Carve-Out, (ii) the DIP Refinancing Order and (iii) the giving of the notice as described Section 7, notwithstanding the provisions of Section 362 of the Bankruptcy Code and any other rights and remedies of the Lenders provided by law, each Lender shall have the right upon the occurrence and during the continuance of an Event of Default to set-off and apply against the Obligations, whether matured or unmatured, of the Loan Parties under this Agreement, the Notes or any other Loan Document, any amount owing from such Lender to any Loan Party at any time following the occurrence and during the continuance of any Event of Default subject in each case to Section 7 of this Agreement.

10.8. Counterparts. This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts, and all of said counterparts taken together shall be deemed to constitute one and the same instrument.

10.9. GOVERNING LAW. THIS AGREEMENT, THE NOTES AND THE OTHER LOAN DOCUMENTS AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT, THE NOTES AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK AND, TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.

10.10. Submission To Jurisdiction; Waivers. Each party hereto hereby irrevocably and unconditionally:

(a) submits for itself and its property in any legal action or proceeding relating to this Agreement and the other Loan Documents to which it is a party, or for recognition and enforcement of any judgment in respect thereof, to the non-exclusive general jurisdiction of the Bankruptcy Court and, if the Bankruptcy Court does not have (or abstains from) jurisdiction, to the non-exclusive general jurisdiction of any State or Federal court of competent jurisdiction sitting in New York County, New York;

      (b)    consents that any such action or proceeding may be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same;

      (c)    agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to such party, as the case may be at its address set forth in Section 10.2 or at such other address of which the Administrative Agent shall have been notified pursuant thereto;

      (d)    agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction;

      (e)    waives, to the maximum extent not prohibited by law, any right it may have to claim or recover in any legal action or proceeding referred to in this Section any special, exemplary, punitive or consequential damages; and

      (f)    waives trial by jury in any legal action or proceeding referred to in this Section and any counterclaim therein.

      10.11.    <u>Absence of Prejudice to the Lenders with Respect to Matters Before the Bankruptcy Court</u>. Each Loan Party acknowledges that the Bankruptcy Code and Federal Rules of Bankruptcy Procedure require it to seek Bankruptcy Court authorization for certain matters that may also be addressed in this Agreement. No Loan Party will without the express consent of the Administrative Agent (a) mention in any pleading or argument before the Bankruptcy Court in support of, or in any way relating to, a position that Bankruptcy Court authorization should be granted on the ground that such authorization is permitted by this Agreement (unless a Person opposing any such pleading or argument relies on this Agreement to assert or question the propriety of such) or (b) in any way attempt to support a position before the Bankruptcy Court based on the provisions of this Agreement. The Administrative Agent or any Lender shall be free to bring, oppose or support any matter before the Bankruptcy Court no matter how treated in this Agreement.

      10.12.    <u>Confidentiality</u>. Each Lender agrees to keep confidential all non-public information provided to it by any Loan Party pursuant to this Agreement; <u>provided</u> that nothing herein shall prevent any Lender from disclosing any such information (a) to the Administrative Agent, the Fronting Bank, or any other Lender, (b) to any Transferee or prospective Transferee which agrees to comply with the provisions of this subsection, (c) to its Affiliates, employees, directors, agents, attorneys, accountants and other professional advisors who are bound by this or other confidentiality provisions (including professional ethics), (d) upon the request or demand, or in accordance with the requirements (including reporting requirements), of any Governmental Authority having jurisdiction over such Lender, <u>provided</u> that such Lender shall use commercially reasonable efforts to notify the applicable Loan Party of such disclosure, (e) in response to any court or other Governmental Authority or as may otherwise be required pursuant to any Requirement of Law or other legal process, <u>provided</u> that such Lender shall use commercially reasonable efforts to notify the applicable Loan Party of such disclosure, (f) which has been publicly disclosed other than in breach of this Agreement, (g) in connection with the exercise of any remedy under any Loan Document to the extent disclosure is material to such claim or exercise of remedies, (h) which was available to the Administrative Agent or such Lender prior to its disclosure to the Administrative Agent or such Lender, as the case may be, by such Loan Party or (i) to any direct or indirect contractual counterparty in any swap, hedge or similar agreement (or to any such contractual counterparty's professional advisor), so long as such contractual counterparty (or such professional advisor) agrees to be bound by the provisions of this Section 10.12.

86

      10.13.    <u>U.S.A. Patriot Act</u>. Each Lender that is subject to the requirements of the Patriot Act hereby notifies the Borrower that pursuant to the requirements of the Patriot Act, it is required to obtain, verify and record information that identifies the Borrower, which information includes the name and address of the Borrower and other information that will allow such Lender to identify the Borrower in accordance with the Patriot Act.

      10.14.    <u>Judgment Currency</u>. The Obligations of the Borrower and any other Loan Party in respect of any sum due to the Fronting Bank hereunder, or under or in respect of any other Loan Document shall, notwithstanding any judgment in a currency (the "<u>Judgment Currency</u>") other than the currency in which such sum was originally denominated (the "<u>Original Currency</u>"), be discharged only to the extent that on the Business Day following receipt by the Fronting Bank of any sum adjudged to be so due in the Judgment Currency, the Fronting Bank, in accordance with normal banking procedures, purchases the Original Currency with the Judgment Currency. If the amount of Original Currency so purchased is less than the sum originally due to the Fronting Bank, the Borrower agrees as a separate obligation and notwithstanding any such judgment, to indemnify the Fronting Bank against such loss, and if the amount of Original Currency so purchased exceeds the sum originally due to the Fronting Bank, the Fronting Bank agrees to remit any excess to the applicable Loan Party. If, for the purpose of obtaining judgment in any court, it is necessary to convert a sum due under any Loan Document in another currency into Dollars, the parties hereto agree, to the fullest extent that they may effectively do so, that the rate of exchange used shall be that at which, in accordance with normal banking procedures, the Fronting Bank could purchase such other currency with Dollars, in New York, at the close of business on the Business Day immediately preceding the day on which final judgment is given, together with any premiums and costs of exchange payable in connection with such purchase.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and the year first written.

<u>BORROWER</u>:

CALPINE CORPORATION

By: _____
     Name:
     Title:

GUARANTORS:

[_____]

By: _____
    Name:
    Title:

AGENTS AND LENDERS:

CREDIT SUISSE, as Administrative Agent and as a Lender

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

[_____],


By: _____
    Name:
    Title: