

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1995 WL 311764 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

▷
In re Ames Dept. Stores, Inc.
S.D.N.Y.,1995.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
In re AMES DEPARTMENT STORES, INC.,
Eastern Retailers Service Corporation, et al.,
Debtors.
ARGONAUT INSURANCE COMPANY,
Appellant,
v.
AMES DEPARTMENT STORES, INC., Appellee.
No. 93 Civ. 4014 (KMW).

May 18, 1995.

OPINION AND ORDER
KIMBA M. WOOD, District Judge.

*1 Argonaut Insurance Company ("Argonaut") appeals from an order of the Bankruptcy Court for the Southern District of New York, dated April 12, 1993, in which Judge Francis G. Conrad denied Argonaut's motion for summary judgment and granted Ames Department Stores' ("Ames") motion for summary judgment in the above-captioned adversary proceeding. For the reasons stated below, the order of the bankruptcy court is affirmed in all respects.

I. Background

This action stems from commercial general liability insurance policies issued by Argonaut to Ames for the period beginning October 1, 1988 through September 30, 1989. Coverage was renewed for the following year, and the policies expired on October 1, 1990. The policies contained a $50,000 deductible provision pursuant to which Ames was responsible for payment of all defense and indemnity costs up to $50,000 per occurrence of bodily injury or property damage.

On April 25, 1990 Ames and its fifty-two affiliates filed petitions under Chapter 11 of the United States Bankruptcy Code. The Third Amended Joint Plan of Reorganization ("the Plan") was confirmed by the Bankruptcy Court on December 18, 1992.

After the Chapter 11 petitions were filed, Argonaut was named as a direct defendant in four personal injury cases arising out of its general liability coverage of Ames. In two other actions, brought in states that require the insured to be named as a defendant, Ames allowed modification of the automatic stay to allow the claimants to proceed against Argonaut. According to Argonaut, Ames has refused to defend any of these actions.

On December 3, 1992, Argonaut commenced this adversary proceeding seeking declarations (1) that Argonaut is not responsible for defense, administration or payment of any personal injury claim in cases where Ames refuses to accept responsibility for the first $50,000 in defense costs, and (2) that Argonaut is not responsible for any payments within the $50,000 deductible in connection with claims in which a timely proof of claim has not been filed.

The parties agreed that there were no factual issues in dispute, and both moved for summary judgment. The Bankruptcy Judge found for Ames, ruling (1) that the bankruptcy court did not have jurisdiction to determine the obligation of Argonaut to pay amounts within the deductible in the various pending state court actions, and (2) that any claim Argonaut may have as a consequence of its having to pay amounts within the deductible, including payment for defense costs, is a pre-petition, unsecured claim, subject to treatment in accordance with the Plan.

II. Discussion

On appeal, the district court may affirm, modify, or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03088-GBD   Document 26-3   Filed 06/01/2007   Page 2 of 4

Not Reported in F.Supp.                                                                                    Page 2
Not Reported in F.Supp., 1995 WL 311764 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

reverse a bankruptcy judge's order. Bankruptcy Rule 8013. Because only the bankruptcy judge's conclusions of law are in dispute, I review his decision de novo. *In re One Times Square Associates Ltd. Partnership,* 165 B.R. 773 (S.D.N.Y.), *aff'd,* 41 F.3d 1502 (2d Cir. 1994), *rev'd on other grounds,* 115 S. Ct. 1107 (1995).

*2 Argonaut raises several objections to the order of the bankruptcy court. Chiefly, Argonaut argues that the bankruptcy judge exceeded his authority by effectively rewriting the contracts of insurance at issue, imposing requirements on Argonaut that were not part of the parties' bargain. Additionally, Argonaut argues that the insurance policies at issue are executory contracts that have been assumed by Ames under 11 U.S.C. § 365, and, in the alternative, that any costs incurred by Argonaut for the defense of claims within the deductible would qualify for administrative expense treatment under 11 U.S.C. § 503(b).

*Rewriting of the contract*

The parties agree that according to their contract, embodied in the insurance policies and the parties' course of dealing, Ames has the responsibility to defend and administer claims within the $50,000 deductible. Argonaut argues that the effect of the bankruptcy court's order was a rewriting of this contract because it imposed on Argonaut the obligation to assume the defense of claims within the deductible. Although Argonaut is correct that a bankruptcy court does not have the power to rewrite contracts, (Br. of Appellant at 14-16 (citing cases)), Argonaut's argument fails because the bankruptcy court did not rewrite the parties' contract in this case.

Argonaut argues that if Ames is allowed to abandon the defense of claims, Argonaut will have no alternative but to assume their defense because it will be liable for amounts over $50,000. Argonaut points out that "[e]ven a $5,000 personal injury claim, if permitted to proceed undefended, can quickly proliferate into a judgment well in excess of the $50,000 deductible." (*Id.* at 11). However, while Argonaut argues persuasively that it may well be in Argonaut's own best interest to defend those claims, the decision of the bankruptcy court does not suggest that it is Argonaut's duty to do so.

By failing to defend claims within the $50,000 deductible, Ames may be breaching its contract with Argonaut. But, a post-petition breach of a contract executed pre-petition gives rise only to pre-petition liability. *In re Chateaugay Corp.,* 87 B.R. 779, 796 (S.D.N.Y. 1988). The bankruptcy judge therefore was correct in ruling that Argonaut has at best a pre-petition claim for any defense costs it chooses to expend. There is no doubt that a post-petition breach by a debtor may impose a burden on the other party to the contract because the law allows for compensation only in bankruptcy dollars. However, Argonaut's attempt to transform the unpleasant consequences it faces as a result of such a post-petition breach into a rewriting of the contract by the bankruptcy court is unavailing.

The bankruptcy court did not rewrite the contract between the parties or impose extra-contractual obligations on Argonaut. Consequently, I agree with Ames that any claims Argonaut may have against Ames for payment of defense costs within the $50,000 deductible are entitled to full payment only if (i) they arise under executory contracts that have been assumed under 11 U.S.C. § 365; or (ii) they meet the requirements for administrative expense priority under 11 U.S.C. § 503(b).

*Executory Contracts*

*3 The generally accepted definition of an executory contract in bankruptcy was given by Professor Countryman: an executory contract within the meaning of the Bankruptcy Act is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Vern Countryman, *Executory Contracts in Bankruptcy, Part I,* 57 Minn. L. Rev. 439, 460 (1973); *see In re Chateaugay Corp.,* 130 B.R. 162, 164 (S.D.N.Y. 1991) (collecting cases adopting the Countryman definition). Courts considering insurance policies in which the policy periods have expired and the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                              Page 3
Not Reported in F.Supp., 1995 WL 311764 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

initial premiums have been paid routinely find that they are not executory contracts despite continuing obligations on the part of the insured. See *In re Texscan Corp.*, 976 F.2d 1269, 1271-73 (9th Cir. 1992); *In re Sudbury, Inc.*, 153 B.R. 776, 778-780 (Bankr. N.D. Ohio 1993); *In re Firearms Import and Export Corp.*, 131 B.R. 1009, 1013-14 (Bankr. S.D. Fla. 1991); *In re Federal Press Co.*, 104 B.R. 56 (Bankr. N.D. Ind. 1989). These courts have reasoned that the failure of the insured to perform those continuing obligations would not excuse the insurer from being required to perform and, consequently, that the Countryman definition of an executory contract would not be satisfied.

Argonaut seeks to distinguish *In re Firearms Import and Export Corp.* and *In re Federal Co.* by asserting that in those cases "the debtor's obligation . . . was limited to *funding* [a] self-insured retention, not in actively undertaking defense and administration of claims." (Reply Br. at 8) Even assuming, *arguendo*, that the distinction urged by Argonaut were relevant to this matter, Argonaut's version of the holding of the cited cases is not accurate. In particular, in *In re Federal Co.*, the court specifically found that by the terms of the policies at issue, the insured *was* required to defend matters brought against it and to pay defense costs up to the amount of its retained limit. 104 B.R. at 62. Nevertheless, the court found that the failure of the insured to fulfill its obligations did not excuse the insurer from being required to perform.

Argonaut has failed to cite a single case, and the court has found none, in which insurance policies, executed pre-petition, whose policy periods expired prior to the confirmation of the plan of reorganization, were deemed to be executory contracts.[FN1] Rather, courts have consistently found that such policies were not executory contracts, regardless of the continuing obligations that remained. Argonaut has not shown that a different result should be reached in this case.

*Administrative Expense Priority*

A claim merits administrative expense treatment under section 503(b) if it (1) arises from a transaction between the creditor and the debtor-in-possession, and (2) is beneficial to the debtor-in-possession in the operation of its business. *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986). Argonaut concedes that its obligation to provide insurance coverage arises from pre-petition transactions, but argues that by defending claims within the deductible it would have expanded that coverage post-petition, in a way beneficial to the estate, warranting administrative expense treatment.

*4 Any post-petition expansion of coverage, however, would not be undertaken as a result of a post-petition agreement with Ames for the benefit of the estate, but rather because it would be in Argonaut's own best interest to defend claims. Consequently, Argonaut's costs should not be afforded administrative expense priority. See *In re Firearms Import and Export Corp.*, 131 B.R. at 1015-16 (denying administrative expense treatment for insurer's defense costs when debtor failed to fund self-insured retention). In fact, Argonaut's position has been rejected, by implication, by the Second Circuit Court of Appeals. In *Green v. Welsh*, 956 F.2d 30 (2d Cir. 1992), the court noted with approval the reasoning in *In re Jet Florida Systems, Inc.*, 883 F.2d 970 (11th Cir. 1989), where the court held that a tort claim could survive a permanent injunction pursuant to 11 U.S.C. § 524(a) to allow the claimant to recover from debtor's insurer. The court reasoned that this holding would not conflict with the fresh-start policy embodied in the Bankruptcy Code because "the practical and economic realities compel the *insurance company* to defend the underlying action." 883 F.2d at 976. The court concluded that "the possibility that the debtor will be responsible to pay any amount associated with defending this action is so remote that the fresh-start policy is simply not defeated." *Id.* Implicit in the conclusion that the debtor faced only a "remote" possibility of having to pay for the defense costs is the court's assumption that the insurance company could not claim administrative expense priority for those costs.

III. Conclusion

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                Page 4

Not Reported in F.Supp., 1995 WL 311764 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

I have considered Argonaut's other arguments and found them without merit. For the reasons stated above, the court affirms the Order of the Bankruptcy Court dated April 12, 1993. The Clerk of the Court is directed to close this case.

SO ORDERED.

FN1. The policies issued for the period of October 1, 1988 through September 30, 1989 expired prior to the filing of the bankruptcy petition. The policies issued for the period of October 1, 1989 through September 30, 1990 expired after the filing of the petition, but prior to the confirmation of the Plan. This distinction, despite Argonaut's arguments to the contrary, is not relevant to the court's decision. *See In re Texscan Corp.,* 976 F.2d at 1271-73.

S.D.N.Y.,1995.
In re Ames Dept. Stores, Inc.
Not Reported in F.Supp., 1995 WL 311764 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.