**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x

In re                                                        :
                                                             :    Chapter 11
CALPINE CORPORATION, *et al.*,                               :    Cases Nos. 05-60200(BRL)
                                                             :
                              Debtors.                       :    (Jointly Administered)
------------------------------------------------------------------ x
HSBC Bank USA, National Association, as Indenture            :
Trustee, *et al.*,                                           :    Case No. 1:07-cv-03088 (GBD)
                                                             :
                              Appellants,                    :
                                                             :
                   -against-                                 :
                                                             :
Calpine Corporation, *et al.*,                               :
                                                             :
                              Appellees.                     :
------------------------------------------------------------------ x
Calpine Corporation, *et al.*,                               :
                                                             :
                              Appellants,                    :
                                                             :
                   -against-                                 :
                                                             :
HSBC Bank USA, National Association, as Indenture            :
Trustee, *et al.*,                                           :
                                                             :
                              Appellees.                     :
------------------------------------------------------------------ x

## REPLY BRIEF OF APPELLANTS HSBC BANK USA, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, AND THE BANK OF NEW YORK, AS ADMINISTRATIVE AGENT

Mark I. Bane (MB-4883)
Mark R. Somerstein (MS-9721)
David S. Elkind (DE-4054)
Amy E. Vanderwal (AV-1712)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036-8704
Telephone:  (212) 596-9000
Facsimile:  (212) 596-9090

Attorneys for Appellants
HSBC BANK USA, NATIONAL
ASSOCIATION, as INDENTURE TRUSTEE
and THE BANK OF NEW YORK, as
ADMINISTRATIVE AGENT

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT..........................................................................................................................4

I . THE OBJECTORS' CONTENTION THAT THE SECOND LIEN
REPRESENTATIVES ARE NOT ENTITLED TO CLAIMS FOR DAMAGES
FOR BREACH OF THE PREPAYMENT PREMIUM AND "NO CALL"
PROVISIONS BECAUSE THOSE PROVISIONS ARE NOT ENFORCEABLE
THROUGH THE REMEDY OF SPECIFIC PERFORMANCE ARE BASELESS .........4

II . THE OBJECTORS' CLAIM THAT THE CALGEN DEBTORS HAVE NO
LIABILITY FOR THE PREPAYMENT PREMIUM AND DAMAGES BECAUSE
OF THE "AUTOMATIC ACCELERATION" IS WITHOUT MERIT ..........................12

III . THE BANKRUPTCY COURT ERRED IN HOLDING THAT THE SECOND
LIEN REPRESENTATIVES WERE NOT ENTITLED TO SECURED CLAIMS
ARISING OUT OF THE DEBTORS' BREACHES OF THE NO CALL AND
PREPAYMENT PREMIUM PROVISIONS OF THE AGREEMENTS ........................19

IV . EVEN IF THE SECOND LIEN REPRESENTATIVES ARE NOT ENTITLED TO
SECURED CLAIMS FOR THE FULL AMOUNT OF THEIR DAMAGES, THE
SECOND LIEN REPRESENTATIVES ARE ENTITLED TO UNSECURED
CLAIMS FOR ALL AMOUNTS UNDER SECTION 502.............................................24

V . THE BANKRUPTCY COURT ERRED IN (I) FAILING TO AWARD THE
SECOND LIEN REPRESENTATIVES CLAIMS FOR THE FULL AMOUNTS
OF THEIR DAMAGES, (II) FAILING TO AWARD THEM SECURED CLAIMS,
(III) IMPROPERLY DISALLOWING THEIR CONTRACTUAL CLAIMS FOR
FEES AND EXPENSES, AND (IV) IMPROPERLY EXPUNGING THEIR
GUARANTY CLAIMS AGAINST THE DEBTOR GUARANTORS...........................28

    A.    The Bankruptcy Court Failed to Award the Second Lien Representatives
          Claims for the Full Amounts of Their Damages .....................................................28

    B.    The Bankruptcy Court Erred in Limiting the Claims of the Second Lien
          Representatives For their Fees and Expenses and in Expunging Their Claims
          Against the Debtor Guarantees Pursuant to the Written Guarantees......................31

CONCLUSION.....................................................................................................................32

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*In re 360 Inns*,
    76 B.R. 573 (Bankr. N.D. Tex. 1987)................................................6, 8, 20, 21, 27

*In re 433 South Beverly Drive*,
    117 B.R. 563 (Bankr. C.D. Calif. 1990) ..........................................................7, 16

*In re A.J. Lane & Co.*,
    113 B.R. 821 (Bankr. D. Mass. 1990) ..........................................................16, 20

*In re Adelphia Commc'ns. Corp.*,
    342 B.R. 142 (Bankr. S.D.N.Y. 2006)........................................................21, 22, 23

*In re American Homepatient, Inc.*,
    309 B.R. 738 (M.D. Tenn. 2004).......................................................................26

*Anchor Resolution Corp.* v. *State Street Bank and Trust Co. of Connecticut (In re*
    *Anchor Resolution Corp.)*,
    221 B.R. 330 (Bankr. D. Del. 1998)............................................................10, 27

*Bankruptcy Receivables Mgmt.* v. *Lopez (In re Lopez)*,
    345 F.3d 701 (9th Cir. 2003) ...........................................................................9

*Bausch & Lomb Inc.* v. *Bressler*,
    977 F.2d 720 (2d Cir. 1992) ..........................................................................28

*Brecher* v. *Laikin*,
    430 F. Supp. 103 (S.D.N.Y. 1977) ..................................................................30

*Butner* v. *United States*,
    440 U.S. 48 (1979)........................................................................................26

*In re Chipwich, Inc.*,
    54 B.R. 427 (Bankr. S.D.N.Y. 1985)..................................................................5

*Citicorp Venture Capital, Ltd.* v. *Committee of Creditors Holding Unsecured Claims*,
    160 F.3d 982 (3rd Cir. 1998) .........................................................................12

*Continental Securities Corp.* v. *Shenandoah Nursing Home P'ship.*,
    193 B.R. 769 (W.D. Va. 1996) ..............................................................8, 9, 21, 25

*Di Pierro* v. *Taddeo (In re Taddeo)*,
    685 F.2d 24 (2d Cir. 1982) (Chapter 13) ...........................................................14

## TABLE OF AUTHORITIES

**Page(s)**

*In re Enron Corp.*,
   349 B.R. 96 (Bankr. S.D.N.Y. 2006).....................................................................5

*In re Grace Indus., Inc.*,
   341 B.R. 399 (Bankr. E.D.N.Y. 2006) ...............................................................6

*In re Imperial Coronado Partners, Ltd.*,
   96 B.R. 997 (B.A.P. 9th Cir. 1989) ...................................................7, 15, 18, 20

*In the Matter of American Biometals Corp.*,
   954 F.2d 919 (3d Cir. 1992) ..............................................................................3

*In the Matter of Fesco Plastics Corp. Inc.*,
   996 F.2d 152 (7th Cir. 1993) ...........................................................................27

*In re Indian Palms Assocs. Ltd.*,
   61 F.3d 197 (3d Cir. 1995) ................................................................................3

*Indu Craft, Inc.* v. *Bank of Baroda*,
   47 F.3d 490 (2d. Cir. 1995) .............................................................................26

*In re Jamesway Corp.*,
   201 B.R. 73 (Bankr. S.D.N.Y. 1996) .................................................................9

*Joseph F. Sanson Inv. Co.* v. *268 Ltd. (In re 268 Ltd.)*,
   789 F.2d 674 (9th Cir. 1986) ..........................................................................24

*Kaiser-Frazer Corp.* v. *Otis & Co.*,
   195 F.2d 838 (2d Cir. 1952) ..............................................................................9

*In re Kroh Bros. Dev. Co.*,
   88 B.R. 997 (Bankr. W.D. Mo. 1988) ..............................................................27

*Kucin* v. *Devan*,
   251 B.R. 269 (D. Md. 2000)..............................................................................6

*In re LDH Realty Corp.*,
   726 F.2d 327 (7th Cir. 1984) ..................................................................8, 17, 18

*In re Lappin Elec. Co.*,
   245 B.R. 326 (Bankr. E.D. Wisc. 2000)...................................................7, 27, 30

*In re Madeline Marie Nursing Homes*,
   694 F.2d 433 (6th Cir. 1982) ..........................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

*In re Manville Forest Products Corp.*,
  43 B.R. 293 (Bankr. S.D.N.Y. 1984).................................................................13, 19

*In re Mid-American Waste Systems, Inc.*,
  284 B.R. 53 (Bankr. D. Del. 2002).........................................................................12

*Montgomery Ward & Co.* v. *Meridian Leasing Corp. (In re Montgomery Ward Holding Corp.)*,
  269 B.R. 1 (D. Del. 2001)........................................................................................11

*In re Morse Tool, Inc.*,
  87 B.R. 745 (Bankr. D. Mass. 1988) .......................................................................7

*N.L.R.B.* v. *Bildisco and Bildisco*,
  465 U.S. 513, 104 S. Ct. 1188 (1984)......................................................................5

*In re O.P.M. Leasing Services, Inc.*,
  79 B.R. 161 (S.D.N.Y. 1987) ............................................................................5, 28

*In re Orion Pictures Corp.*,
  4 F.3d 1095 (2d Cir. 1993) ......................................................................................5

*Palazzetti Import/Export, Inc.* v. *Morson*,
  No. 98 Civ 722 (FM), 2001 WL. 1568317 (S.D.N.Y. Dec. 6, 2001) ....................27

*In re PCH Associates*,
  122 B.R. 181 (Bankr. S.D.N.Y. 1990).....................................................................13

*In re R.H. Macy*,
  170 B.R. 69 (Bankr. S.D.N.Y. 1994)........................................................................11

*Raleigh* v. *Illinois Dep't of Rev.*,
  530 U.S. 15 (2000)...................................................................................................26

*In re Ridgewood Apts. of DeKalb County, Ltd.*,
  174 B.R. 712 (Bankr. S.D. Ohio 1994) ..................................................................18

*Rothenberg* v. *Security Management Co. Inc.*,
  667 F.2d 958 (11th Cir. 1982) .................................................................................3

*Royal Ins. Co., of America* v. *CNF Constructors, Inc.*,
  1995 WL. 4204 (S.D.N.Y.).....................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

*In re Schaumberg Hotel Owner Ltd. P'ship.*,
    97 B.R. 943 (Bankr. N.D. Ill. 1989) ....................................................................30

*Scherer* v. *Equitable Life Assurance Society of U.S.*,
    347 F.3d 394 (2d Cir. 2003) .............................................................................3

*Sir Speedy, Inc.* v. *L&P Graphics, Inc.*,
    957 F.2d 1033 (2d. Cir. 1992) ..........................................................................26

*In re Skyler Ridge*,
    80 B.R. 500 (Bankr. C.D. Calif. 1987) ..............................................8, 14, 15, 18

*In re Stewart Foods, Inc.*,
    64 F.3d 141 (4th Cir. 1995) ..............................................................................5

*Teachers Insurance and Annuity Assoc. of America* v. *Butler*,
    626 F. Supp. 1229 (S.D.N.Y. 1986) .......................................................10, 28, 29

*Teachers Insurance and Annuity Assoc. of America* v. *Coaxial Comm. Of Central Ohio*,
    799 F. Supp. 16 (S.D.N.Y. 1992) ..........................................................11, 29, 30

*Teachers Insurance and Annuity Assoc. of America* v. *Ormesa Geothermal*,
    791 F. Supp. 401 (S.D.N.Y. 1991) ...................................................10, 28, 29, 30

*Travelers Cas. & Sur. Co.* v. *Pac. Gas & Elec. Co.*,
    127 S. Ct. 1199 (2007).....................................................................................26

*U.S.* v. *Winstar*,
    518 U.S. 839 (1996)........................................................................................26

*In re United Merchants and Manufacturers, Inc.*,
    674 F.2d 134 (2d Cir. 1982) ....................................................................6, 10, 27

*United States* v. *Gonzalez*,
    442 F.2d 698 (2d Cir. 1971) ..............................................................................3

*United States* v. *Noland*,
    517 U.S. 535 (1986)........................................................................................12

*United States* v. *Ron Pair Enterprises Inc.*,
    489 U.S. 235 (1989).................................................................................22, 27

*In re Vanderveer Estates Holding, LLC*,
    328 B.R. 18 (Bankr. E.D.N.Y. 2005) ..................................................................6

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

*In re Vanderveer Estates Holdings, Inc.*,
   283 B.R. 122 (Bankr. E.D.N.Y. 2002) ........................................................................7, 10, 27

*In re Vest Assoc.*,
   217 B.R. 696 (Bankr. S.D.N.Y. 1998)....................................................................................21

*In re Western Real Estate Fund, Inc.*,
   922 F.2d 592 (10th Cir. 1991) ..............................................................................................26

*In re WorldCom, Inc.*,
   357 B.R. 223 (S.D.N.Y. 2006) ...............................................................................................9

### STATE CASES

*446 West 44th St., Inc.* v. *Riverland Holding Corp.*,
   267 App. Div. 135, 44 N.Y.S.2d 766 (1943) .........................................................................17

*Arthur* v. *Burkich*,
   520 N.Y.S.2d 638 (N.Y. App. Div. 1987) .............................................................................10

*Carols Equities Corp.* v. *Villnave*,
   57 A.D.2d 1044 (4th Dep't. 1977) .........................................................................................30

*Cowper Co.* v. *Buffalo Hotel Development Venture*,
   115 A.D. 436 (4th Dep't. 1986) .............................................................................................27

*Excess Ins. Co. Ltd. v. Factory Mutual Ins. Co.*, 3 N.Y. 3d 577, 582 (N.Y. 2004) .......................21

*Freund* v. *Washington Square Press, Inc.*,
   34 N.Y.2d 379 (N.Y. 1974) ..................................................................................................27

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs.*, 6 N.Y. 3d 371, 374
   (N.Y. 2006)..........................................................................................................................21

*Sound Stage Studios, Inc.* v. *Life Investors Ins. Co. of America*,
   1988 WL. 138827 (Tenn. Ct. App. 1988).............................................................................19

*Terminal Central, Inc.* v. *Henry Modell & Company, Inc.*,
   212 A.D.2d 213 (1st Dep't. 1995).........................................................................................27

*Travel Masters, Inc.* v. *Star Tours, Inc.*,
   827 S.W.2d 830 (Tex. 1991) ..................................................................................................9

## TABLE OF AUTHORITIES

**Page(s)**

*Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.,*
  1 N.Y. 3d 470, 475 (N.Y. 2004)......................................................................................21

### FEDERAL STATUTES

11 U.S.C. § 1124(2) ......................................................................................................14

11 U.S.C. § 362(a) ........................................................................................................13

11 U.S.C. § 502(a) ........................................................................................................26

11 U.S.C. § 506(b) ........................................................................................................20

Fed. R. Evid. 201 ...........................................................................................................3

### STATE STATUTES

UCC § 2A-504   ...........................................................................................................11

### OTHER

4 N.Y. Prac., Com. Litig .............................................................................................26

## PRELIMINARY STATEMENT

In their initial briefs on this appeal, the Debtors, the Unsecured Creditors'
Committee, and the Equity Committee (together with the Unsecured Creditors' Committee and
the Debtors, the "**Objectors**") persist in arguing that the Second Priority Indenture Trustee and
the Second Priority Administrative Agent (collectively, the "**Second Lien Representatives**") are
not entitled to claims resulting from the CalGen Debtors' breaches of the prepayment premium
and "no call" provisions of the Second Priority Indenture and Second Priority Term Loan
Agreement (collectively, the "**Second Lien Documents**").  In support of their effort, the
Objectors advance a series of meritless arguments which have been squarely and repeatedly
rejected by the courts, which are contrary to long established principles of bankruptcy law, and
which are not supported by any of the cases upon which the Objectors purport to rely.

The Objectors contend, first, that the Second Lien Representatives are not entitled
to claims for the prepayment premium and damages because the "no call" provisions of the
Second Lien Documents are unenforceable and, thus, the CalGen Debtors are allegedly permitted
to repay their debt without consequence.  That claim is simply baseless.  The Objectors are
correct that, if the bankruptcy court authorizes it to do so, a debtor is entitled to breach, reject, or
fail to specifically perform an ongoing contract, including a credit agreement with a "no call"
provision, which the debtor believes is burdensome to the debtor's estate.  However, the law is
clear that the consequence of that decision is that the injured creditor or lender is entitled to a
claim for its damages.  Similarly, contrary to the Objectors' contention, the fact that a bankruptcy
court may permit a debtor to breach, rather than specifically perform, a contract which is
burdensome to a debtor's estate does not mean that the contract is "illegal."  There is nothing
"illegal" about "no call" or prepayment premium provisions; the courts have allowed debtors to

breach "no call" provisions, but have repeatedly upheld lenders' claims for breach of contract damages when such provisions are breached.

Next, the Objectors contend that the CalGen Debtors have no liability for the prepayment premium and damages because the Second Lien Debt was "automatically accelerated" as the result of the Debtors' *own actions* in filing chapter 11 petitions.  That very same argument has been uniformly and repeatedly rejected by the courts and is not supported by a single one of the decisions upon which the Objectors rely.  As the courts have held, a chapter 11 debtor is under no obligation to pay its outstanding debt notwithstanding any "automatic" or other acceleration of the debt.  To the contrary, a creditor is automatically stayed from taking any steps to attempt to collect the debt, and a debtor has an absolute right to reinstate the debt and decelerate (or reverse any acceleration of) the debt under Bankruptcy Code section 1124(2).  Accordingly, where a debtor voluntarily elects to pay its outstanding debt, as did the CalGen Debtors here, the cases are clear, and they are uniform, in holding that the creditor is entitled to a claim for its prepayment premium and damages under a voluntary prepayment provision such as that involved here, notwithstanding any "automatic acceleration" of the debt.

The Objectors' other arguments are equally unfounded and unsupported by the cases upon which the Objectors rely.  The Objectors mistakenly argue that claims of the Second Lien Representatives are not entitled to secured status.  Moreover, ignored is the fact that, even if the claims of the Second Lien Representatives are not entitled, in any part, to *secured* status, the Second Lien Representatives are surely entitled to allowed *unsecured* claims under Bankruptcy Code section 502.

On June 20, 2007, the Debtors filed a Joint Plan of Reorganization (the "**Chapter 11 Plan**") and Disclosure Statement (the "**Disclosure Statement**").  (Copies of the Debtors'

Chapter 11 Plan and the Disclosure Statement are submitted in our Supplemental Joint Appendix ("SJA")).[1]  As reflected in the Chapter 11 Plan, the Debtors themselves propose to pay all creditors in full, together with postpetition interest on their claims, and to provide a significant recovery to Calpine's shareholders.[2]  It is wholly inequitable to limit the contractual claims of the holders of CalGen Secured Debt, and to circumvent well established standards of creditors' rights, to provide additional benefits to CalGen's shareholders and to the shareholders of its parent corporation, Calpine.

The Second Lien Representatives are entitled to (i) claims for the full amount of their prepayment premium and damages, (ii) claims for their costs and expenses, as provided in the Second Lien Documents, and (iii) claims against the Debtor Guarantors pursuant to the written guarantees.  All such claims should be allowed as secured claims, and, to the extent not allowed as secured claims, should be allowed in full as unsecured claims.

---

[1]  This Court may take judicial notice of the Debtors' filings of their Plan of Reorganization and Disclosure Statement pursuant to Fed. R. Evid. 201.  *See, e.g.*, *Scherer v. Equitable Life Assurance Society of U.S.*, 347 F.3d 394,402 (2d Cir. 2003) (an appellate court is free to take judicial notice of subsequent developments in cases that are a matter of public record and are relevant to the appeal, *quoting Rothenberg v. Security Management Co. Inc.*, 667 F.2d 958,961 fn. 8 (11th Cir. 1982)); *United States v. Gonzalez*, 442 F.2d 698, 707 (2d Cir. 1971) (when adequate information is available for the taking of judicial notice, an appellate court should use such information); *In the Matter of American Biometals Corp.*, 954 F.2d 919, 922 (3d Cir. 1992) (Court of Appeals took judicial notice of a new development since the conclusion of the trial court proceeding); *In re Indian Palms Assocs. Ltd.*, 61 F.3d 197, 205 (3d Cir. 1995) (an appellate court may take judicial notice of an adjudicative fact that is not subject to dispute as long as it is not unfair to the other party to do so and as long as it does not undermine the trial court's fact-finding authority).

[2]  Specifically, the Debtors' proposed Chapter 11 Plan proposes to distribute to the shareholders of Calpine, on account of their old Calpine stock, shares of the Reorganized Calpine valued by the Debtors at a recovery to Calpine shareholders of $1.80 per share for their old Calpine stock, and possibly as high as $3.53 per share.  (SJA 1473; 1573)

## ARGUMENT

### I.

### THE OBJECTORS' CONTENTION THAT THE SECOND LIEN REPRESENTATIVES ARE NOT ENTITLED TO CLAIMS FOR DAMAGES FOR BREACH OF THE PREPAYMENT PREMIUM AND "NO CALL" PROVISIONS BECAUSE THOSE PROVISIONS ARE NOT ENFORCEABLE THROUGH THE REMEDY OF SPECIFIC PERFORMANCE ARE BASELESS

The Second Lien Documents clearly and expressly provide both (i) that the Second Lien Debt should not be repaid prior to April 1, 2008, and (ii) that the CalGen Debtors were obligated to pay a 3.5% prepayment premium for a permitted repayment during a period after that date.

The Objectors argue that the Second Lien Representatives are not entitled to assert claims for damages arising out of the CalGen Debtors' breaches of the "no call" and prepayment premium provisions because those contract provisions are allegedly "unenforceable."  The position of the Objectors is entirely without merit.  While a Bankruptcy Court has the power to permit a debtor to prepay its debt notwithstanding a "no call" or prepayment premium provision, the law is clear that the lender is entitled to a claim for its prepayment premium and damages which result.  The Objectors do not cite a single case which supports their argument to the contrary.

The applicable principles are well established.  Where the continuing performance of an ongoing contract would be burdensome to a debtor's estate, the bankruptcy court has the equitable power to relieve the debtor of its ongoing obligation to perform a contract by permitting the debtor to breach or to reject the contract, or by refusing to order the debtor to specifically perform.  However, as Judge Lifland properly held in rejecting the Objectors' "unenforceability" argument, where the bankruptcy court permits a debtor to breach, terminate or

reject an ongoing contract, the other party to the contract is entitled to a claim for its damages resulting from the debtor's breach. *See* Decision, JA 10.

Bankruptcy law clearly contemplates that a debtor will be afforded choices regarding the estate's ongoing contractual obligations, and that if the debtor choses not to honor an ongoing contract because it is burdensome to the estate, the creditor will have a claim for its damages. For example, pursuant to Bankruptcy Code section 365, a debtor may either assume or reject an executory contract. If the debtor elects to reject the contract, the debtor will suffer a prepetition damage claim obligation, calculated in accordance with applicable, non-bankruptcy law. *See, e.g., In re Enron Corp.*, 349 B.R. 96, 106 (Bankr. S.D.N.Y. 2006) (Although debtor was permitted to reject agreements obligating debtor to make ongoing, future sales of gas, the non-debtor contract party was entitled to a claim for its damages arising out of the debtor's breach);[3] *In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993) (When a court permits a debtor to reject an ongoing licensing agreement, other party to agreement is entitled to a claim for its damages); *In re Chipwich, Inc.*, 54 B.R. 427, 431 (Bankr. S.D.N.Y. 1985) (Where a debtor rejects a contract, creditor is entitled to a claim for damages).[4]

This same principles apply where the debtor elects to terminate its obligations under ongoing non-executory contracts. As the Fourth Circuit wrote in *In re Stewart Foods, Inc.*, 64 F.3d 141, 145-46 (4th Cir. 1995):

---

[3]  As the Court wrote in *Enron*:

> Rejection of a contract by the debtor amounts to a breach immediately before the petition date.... The other party then holds a general unsecured claim for rejection damages against the debtor.

349 B.R. at 106.

[4]  *See also*, *In re O.P.M. Leasing Services, Inc.,* 79 B.R. 161, 163 (S.D.N.Y. 1987) (Where debtor rejects an executory contract, creditor is entitled to a claim for damages); *N.L.R.B. v. Bildisco and Bildisco,* 465 U.S. 513, 528, 531, 104 S. Ct. 1188, 1197 (1984) (Although right of debtor to reject a burdensome executory contract under section 365 of the Bankruptcy Code is "vital to the basic purpose of a chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations," creditor is entitled to a claim for damages resulting from any rejection of the agreement).

> [R]egardless of the nature of the contract [i.e., whether executory or not], if at the time of the bankruptcy filing the debtor has an obligation under the contract to pay money to the non-debtor party, that obligation is handled as a prepetition claim in the bankruptcy proceedings.
>
> \* \* \*
>
> [A] debtor's obligation to pay money under a contract, whether executory or non-executory, creates a claim against the debtor's estate that should be handled within the bankruptcy.

*See also Kucin v. Devan*, 251 B.R. 269 (D. Md. 2000) (Debtor's obligation to make deferred compensation payments were non-executory, but if debtor elected to cease making payments, the creditor had a claim for future payments); *In re Grace Indus., Inc.*, 341 B.R. 399, 402 (Bankr. E.D.N.Y. 2006) (Where debtor terminated ongoing payments to insurer under a non-executory insurance agreement, insurer was entitled to a claim for unpaid future premiums);[5] *In re Vanderveer Estates Holding, LLC*, 328 B.R. 18, 25 (Bankr. E.D.N.Y. 2005) (same).

  Applying these well settled and fundamental principles of bankruptcy law, the courts have consistently held that, while a bankruptcy court may permit a debtor to pay its debt in violation of the "no call" provision of a credit agreement, the injured lender is entitled to a claim for its prepayment premium or damages resulting from the debtor's breach of those provisions. *See, e.g., In re 360 Inns,* 76 B.R. 573, 576 (Bankr. N.D. Tex. 1987) (While debtor could be permitted to prepay a note in violation of 10 year prohibition against prepayment, debtor was obligated to pay creditor damages for breach of the "no call" provision); *In re United Merchants and Manufacturers, Inc.,* 674 F.2d 134, 143-44 (2d Cir. 1982) (Provision requiring payment of prepayment premium was enforceable, rejecting debtor's claim that prepayment premium provision violated Bankruptcy "policy"):

---

[5] As the Court wrote in *Grace Industries,* 341 B.R. at 402, "[T]he insured's failure to perform [its] continuing obligations . . . gives rise to an unsecured claim by the insurer for any damages incurred by reason of the debtor's breach of the policy."

> As long as the provision is valid under state law, as is the case here, there is no warrant in the statutes or in the case law for rejecting it merely because it is triggered by the filing of a [bankruptcy] petition rather than by some other event of default.

*In re Imperial Coronado Partners, Ltd.,* 96 B.R. 997 (B.A.P. 9th Cir. 1989) (After debtor was permitted to prepay debt in violation of "no call" and prepayment premium provision, awarding lender damages based upon the difference between the market rate of interest on the prepayment date and the contractual rate of interest); *In re 433 South Beverly Drive,* 117 B.R. 563, 568 (Bankr. C.D. Calif. 1990) ("Nothing in title 11 [the Bankruptcy Code] automatically invalidates a provision for a Prepayment Premium which is otherwise enforceable under applicable non-bankruptcy law."); *In re Lappin Elec. Co.,* 245 B.R. 326, 329-31 (Bankr. E.D. Wisc. 2000) (Awarding creditor early termination fee for prepayment of debt); *In re Vanderveer Estates Holdings, Inc.,* 283 B.R. 122 (Bankr. E.D.N.Y. 2002) (Yield maintenance premium enforceable in bankruptcy); *In re Morse Tool, Inc.,* 87 B.R. 745, 751 (Bankr. D. Mass. 1988) (Lender entitled to recovery of reasonable early termination fee upon debtor's prepayment of debt). Indeed, a contractual provision providing for a prepayment premium is simply a form of liquidated damages which compensates a lender for the breach of a "no call" provision, and prepayment premiums would never be allowed if damage claims arising out of "no call" provisions were "illegal" or "unenforceable."

In accordance with the foregoing principles and cases, Judge Lifland properly rejected the position of the Objectors and held that the Second Lien Representatives were entitled to claims for their damages as the result of the CalGen Debtors' decision to breach their agreements. The suggestion that a debtor is entitled to breach a contract provision free of a claim for the consequential damages is simply wrong. Recognizing that the solvent nature of these cases would compel them to pay the damages claims of the Second Lien Representatives in full,

the Objectors persist in their effort to avoid recognition of the claims of the Second Lien

Representatives for the damages resulting from the CalGen Debtors' breaches.  In support of that

effort, the Objectors advance a series of spurious arguments and rely upon cases which lend no

support to their contentions.  They fail to cite a single case which holds, or even suggests, that a

creditor is denied a claim for damages under a "no call" or prepayment premium provision

because such provisions are "unenforceable."

   First, the Objectors mistakenly argue that, because the Bankruptcy Court may

permit a debtor to breach a "no call" agreement, the lender has no claim for damages when the

Bankruptcy Court permits it to prepay its debt.  In fact, the cases say just the opposite: Where a

Bankruptcy Court relieves a debtor of its performance obligation under an ongoing contract, the

creditor is entitled to a claim for its damages.  (*See* cases cited at pp. 5-7 above.)  While the

Objectors cite cases which stand for the proposition that a debtor may be permitted to prepay its

debt despite "no call" provisions, their own cases make clear that lenders may assert claims for

their damages which result.  *See*, *e.g.*, *360 Inns,* 76 B.R. at 576 (Debtor permitted to prepay note

in violation of ten year prohibition on repayment, but creditor due damages for breach of the "no

call" provision); *In re Skyler Ridge*, 80 B.R. 500, 507-08 (Bankr. C.D. Calif. 1987) (Squarely

*rejecting* a debtor's claim that the lender could have no damage claim for breach of prepayment

premium and "no call" provisions simply because the lender's debt was "automatically

accelerated"); *In re LDH Realty Corp.*, 726 F.2d 327 (7th Cir. 1984) (Absent waiver by lender,

lender entitled to a claim for damages arising out of debtor's prepayment of its debt);

*Continental Securities Corp. v. Shenandoah Nursing Home P'ship.*, 193 B.R. 769 (W.D. Va.

1996) (Holding that debtor permitted to pay its debt in violation of a "no call" provision, but not

addressing creditor's right to unsecured claim for damages).[6]

The Objectors also seek to preclude the damage claim of the Second Lien Representatives based upon the contention that a creditor can have no claim for damages when a contract is "illegal" (*i.e.,* a contract violates usury laws, constitutes an unlawful restraint of trade, or is part of a scheme to defraud) or where a creditor's right to damages is specifically prohibited by statute (*e.g.*, limitations on the recovery of damages for breaches of a lease under Bankruptcy Code section 502(b)(6)).  Neither of those arguments, or the cases which the Objectors cite in support of their "illegality" or statutory preclusion claims, has any relevance here.[7]  "No call"

---

[6]  The *Shenandoah* case does not hold that a creditor cannot assert a claim for damages arising out of the breach of a "no call" provision simply because the court will not grant specific enforcement preventing a debtor from prepaying its debt.  In the *Shenandoah* case, decided by the District Court in West Virginia and discussed at pp. 22-23 below, the lender conceded that the court could permit the debtor to prepay its debt despite the "no call" provision. 193 B.R. at 773.  In *Shenandoah*, the credit agreement, unlike the Second Priority Indenture and Second Priority Term Loan Agreement involved here, contained a "no call" provision but contained absolutely no prepayment premium provision.  *Id.* at 774. The Court held that, because there was no provision of any kind in the agreement for a prepayment premium, the creditor had no *secured claim* for its damages *under section 506(b).* The Court was not called upon to rule as to whether the creditor had an unsecured claim for its damages under section 502 of the Bankruptcy Code.  Moreover, the Court indicated that the creditor might even be entitled to a *secured* claim under section 506(b) for breach of the "no call" provision if the agreement contained some sort of provision for a prepayment premium, as in the *360 Inns* case.  *Id.* at 778 (*quoted* at pp. 22 below)  Indeed, to the extent that there is any discussion in the decision at all that could relate to the possibility of an unsecured claim, the Court stated that the lender had failed to show that it had a claim for damages under the state law applicable there, presumably West Virginia state law, for breach of the "no call" provision. Id. at 777 ("Continental [the lender] cites no case law for its proposition that the bankruptcy court's failure to enforce the lockout provision gives rise to an independent 'right to payment.'").  However, under New York law, which is applicable here, the law is clear that a lender has a breach of contract claim for its damages where a borrower breaches a "no call" provision.  *See* cases cited at pp. 10-11 and 26-27 below.

[7]  In support of their contentions, the Objectors cite "illegality" cases which have no relation to the issues here.  *See, e.g., In re WorldCom, Inc.,* 357 B.R. 223, 229 (S.D.N.Y. 2006) (Shareholder's contention that it had claim for a dividend which the debtor had declared prepetition but had not paid due to its insolvency was barred because state statute specifically prohibited the debtor from paying dividends to shareholders, and specifically prohibited shareholders from suing for dividends, when the debtor was insolvent); *Bankruptcy Receivables Mgmt. v. Lopez (In re Lopez),* 345 F.3d 701 (9th Cir. 2003) (Debt reaffirmation agreement between chapter 7 debtor and lender purporting to reaffirm debtor's debt after the debtor had obtained a discharge of the debt through bankruptcy was unenforceable under Bankruptcy Code section 524(c), which specifically voids all agreements reaffirming debts entered into after debtor has obtained a discharge); *In re Jamesway Corp.,* 201 B.R. 73 (Bankr. S.D.N.Y. 1996) (Provision of lease requiring chapter 11 debtor/lessee to pay fifty percent of all profits from sublease or assignment of premises as a condition for assignment of the lease violated Bankruptcy Code section 365(f)(1), which specifically invalidates any provision which "prohibits, restricts or conditions the assignment" of the lease by a chapter 11 debtor); *Travel Masters, Inc. v. Star Tours, Inc.,* 827 S.W. 2d 830 (Tex. 1991) (Covenant not to compete void on grounds of illegality); *Kaiser-Frazer Corp. v. Otis & Co.,* 195 F.2d 838 (2d Cir. 1952) (Securities underwriter was not liable for damages for failing to perform under a contract which was void because it violated the securities laws).

provisions and prepayment premium provisions are not "illegal" and there is no statute or law which limits a claim for damages when "no call" provisions are breached.  The Objectors fail to identify a single provision of the Bankruptcy Code (or of any other law, for that matter) which in any way limits or precludes a lender from asserting a damage claim when a borrower or a debtor breaches the "no call" or prepayment premium provisions of its credit agreement.  To the contrary, the cases establish that the inclusion of "no call" and prepayment premium provisions in credit agreements is a widely accepted practice and entirely proper, and that a creditor has a claim for damages when such provisions are breached.  (*See* cases cited at pp. 6-7 above.)

As the New York courts have repeatedly held, "no call" and prepayment premium provisions are also clearly enforceable under New York law.  *See*, *e.g.*, *In re United Merchants and Manufacturers, Inc.,* 674 F.2d at 143-144 (Allowing a claim for prepayment premium under New York law); *Vanderveer Estates Holdings*, 283 B.R. at 132-134 (same); *Anchor Resolution Corp. v. State Street Bank and Trust Co. of Connecticut (In re Anchor Resolution Corp.)*, 221 B.R. 330, 340-41 (Bankr. D. Del. 1998) (same); *Arthur v. Burkich*, 520 N.Y.S. 2d 638, 639 (N.Y. App. Div. 1987) (Lender entitled to damages under New York law for early redemption of debt);[8] *Teachers Insurance and Annuity Assoc. of America v. Ormesa Geothermal*, 791 F. Supp. 401, 404, 415-417 (S.D.N.Y. 1991) (Wood, J.) (Awarding lender damages under New York law for breach of agreement for long-term loan containing "no call" and prepayment premium provisions; noting that such provisions are "common in long-term lending to preserve for the lender the benefit of its bargain."); *Teachers Insurance and Annuity Assoc. of America v. Butler*, 626 F. Supp. 1229, 1235-36 (S.D.N.Y. 1986) (Weinfeld, J.) (Awarding lender damages for breach of agreement for long-term loan containing "no call" and prepayment premium

---

[8]    In fact, under New York law, even in the absence of a "no call" provision, a note may not be prepaid absent a provision giving the lender the right to do so, and a "no call" provision therefore reflects applicable common law rules.  *See, e.g., Arthur v. Burkich*, 520 N.Y.S. 2d at 639.

provisions; noting that such provisions protect lender from borrower's breach when interest rates decline); *Teachers Insurance and Annuity Assoc. of America v. Coaxial Comm. Of Central Ohio*, 799 F. Supp. 16, 18-19 (S.D.N.Y. 1992) (Broderick, J.) (Awarding lender damages for borrower's breach of loan agreement containing "no call" provision).

        Finally, the Objectors cite cases which involve completely different issues from those involved here. *See*, *e.g.*, *In re R.H. Macy*, 170 B.R. 69 (Bankr. S.D.N.Y. 1994) (Issue was whether creditor had a right to immediate payment under Bankruptcy Code section 365(d)(3) or an administrative claim under section 503(b)(1) entitling creditor to payment in full, not whether creditor had an unsecured claim which would entitle creditor to only a pro rata distribution; court held that the creditor did not have a claim under section 365(d)(3) or an administrative claim under section 503(b)(1) due to the fact that the creditor did not meet the requirements of section 365(d)(3), because the creditor did not object to a prior order of the court precluding an administrative claim, and because the creditor did not meet the requirements for an administrative claim under section 503(b)(1));[9] *Montgomery Ward & Co. v. Meridian Leasing Corp. (In re Montgomery Ward Holding Corp.*), 269 B.R. 1 (D. Del. 2001) (Liquidated damages provision in an agreement was unenforceable because it was void under Illinois state law, UCC § 2A-504, since the provision operated as a penalty and bore no relation to actual damages).

---

[9]   In *R.H. Macy*, the issue was whether the creditor landlord had a right to immediate payment under Bankruptcy Code section 365(d)(3) or an administrative claim entitling the creditor to payment in full, not whether creditor had an unsecured claim, where debtor had breached the covenant in a lease obligating the debtor-lessee to operate its store as a "Bullock's" store by closing the store and conducting a going-out-of-business sale  Under Section 365(d)(3), a landlord can assert a right to be paid immediately, and in full, for certain "obligations" such as the debtor's continuing obligation to pay rent and expenses, when a debtor continues to use and occupy leased space. The Bankruptcy Court held that a damage claim for failure to operate the store as a "Bullock's" was not the type of obligation which entitled a landlord to a claim under section 365(d)(3) for immediate payment. 170 B.R. at 76. The court further held that the creditor was not entitled to an administrative claim; an administrative claim, unlike a general unsecured claim, is a claim which entitles a creditor to be paid in full for goods or services provided postpetition which provide a debtor's estate with an actual benefit.  The Court held that the landlord could not assert an administrative claim for two reasons -- first, because the court had entered an order permitting the going-out-of-business sale and precluding claims relating to the sale, and the creditor had failed to object to that prior order; and, second, because the closing of the store as a "Bullock's" was not a service provided by a creditor which provide the estate with an actual benefit.  170 B.R. at 77-79.

There is no provision of the Bankruptcy Code, or any other law, which denies lenders the right to assert claims for their damages arising out of breach of "no call" or prepayment premium provisions, nor do the Objectors identify any such provision. Where Congress has not limited the rights of a creditor to assert a claim for its breach of contract damages, the courts should not impose such a limit; all creditors are entitled to claims for damages when their contracts are breached. As the Supreme Court emphasized in *United States v. Noland,* 517 U.S. 535, 539 (1986), in holding that bankruptcy courts should not equitably subordinate otherwise valid creditor claims under section 510 of the Bankruptcy Code on grounds of alleged "public policy," bankruptcy courts are not permitted to "adjust the legally valid claim of an innocent party who asserts the claim in good faith merely because the court perceives that the result is inequitable." *See Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims*, 160 F. 3d 982 (3rd Cir. 1998); *In re Mid-American Waste Systems, Inc.* 284 B.R. 53 (Bankr. D. Del. 2002).

In sum, where a bankruptcy court permits a debtor to prepay its debt, the lender is entitled a claim for its prepayment premium and damages resulting from the breach, and there is no bankruptcy rule or principle which disallows or precludes such claims.

## II.

### THE OBJECTORS' CLAIM THAT THE CALGEN DEBTORS HAVE NO LIABILITY FOR THE PREPAYMENT PREMIUM AND DAMAGES BECAUSE OF THE "AUTOMATIC ACCELERATION" IS WITHOUT MERIT

The Objectors contend that they have no liability for the prepayment premium and damages because the Second Priority Lien Debt was "automatically accelerated" as the result of the Debtors' *own actions* in filing chapter 11 petitions. Their argument is without merit. The Objectors' argument has been rejected by every court to which it has been made, and it is not supported by a single decision.

Aside from the fact that the Debtors' bankruptcy filings were voluntary, there can be no dispute that the CalGen Debtors were under no obligation to prepay the Second Lien Debt, and that they made an entirely voluntary decision to do so. The CalGen Debtors waited for more than a year after the filing of their chapter 11 petitions before deciding to prepay the debt. Only then, when interest rates had fallen, did they decide to pay the debt in order to save more than $100 million per year in interest costs. Had interest rates risen, there can be no doubt that the CalGen Debtors would not have prepaid their debt -- and the CalGen Debtors would have been under no obligation to do so.

The cases are clear that the "automatic acceleration" of a debt resulting from a debtor's chapter 11 simply means that a creditor may file a proof of claim for the full amount of its debt; such an acceleration does not entitle a creditor to immediate payment and does not obligate a debtor to make immediate payment. To the contrary, pursuant to section 362 of the Bankruptcy Code (the "automatic stay" provision), a debtor is under no obligation to pay its debt notwithstanding any automatic or other "acceleration" of the debt, and creditors are "automatically stayed" from taking any steps to collect, or even to demand payment of, the debt. *See* 11 U.S.C. §362(a);[10] *In re Manville Forest Products Corp.*, 43 B.R. 293, 297-98 (Bankr. S.D.N.Y. 1984), *rev'd on other grounds*, 60 B.R. 403 (S.D.N.Y. 1986) (Although bankruptcy accelerates debt for purposes of filing proofs of claim which can cover the entire amount of the debt, "the creditor is prevented, under Section 362 of the Code, from taking steps to enforce that claim."); *In re PCH Associates*, 122 B.R. 181, 198 (Bankr. S.D.N.Y. 1990) (same). Moreover,

---

[10] Section 362, the "automatic stay" provision of the Bankruptcy Code, provides, in pertinent part:

(a) ... [A] petition filed under section 301, 302, or 303 of [the Bankruptcy Code], or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of –

...

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code].

under Bankruptcy Code section 1124(2), a debtor has an absolute right to reinstate the debt according to its original terms, and to decelerate (or reverse) any prior acceleration or "automatic acceleration" of the debt.  *See* 11 U.S.C. §1124(2).[11]

Accordingly, as the courts have uniformly and repeatedly held, where a chapter 11 debtor elects to repay its outstanding debt, as the Debtors did here, the lender is entitled to a claim for its prepayment premium and damages pursuant to voluntary prepayment provisions of a credit agreement, such as those present here, notwithstanding any alleged "automatic acceleration" of the debt resulting from the debtor's own action in filing the chapter 11 petition or any other acceleration of the debt.

In *Skyler Ridge*, 80 B.R. at 502, for example, the lender's note provided that the debtor was obligated to pay a prepayment premium only if the prepayment was voluntary.  The *Skyler Ridge* debtor argued, among other things, that the lender was not entitled to its secured claim for the prepayment premium resulting from the debtor's voluntary prepayment because the debt had been "automatically accelerated" as a result of the debtor's chapter 11 filing.  In squarely rejecting the debtor's argument, the Court wrote:

> Debtor's argument is flawed.  The automatic acceleration of a debt upon the filing of a bankruptcy case is not the kind of acceleration that eliminates the right to a prepayment premium…. This acceleration is subject to deceleration in a plan under Chapter 11 or Chapter 13 of the Bankruptcy Code.  *See*, *e.g.*, *Manville Forest Products*, 43 Bankr. at 298 (Chapter 11); *Di Pierro v. Taddeo (In re Taddeo)*, 685 F. 2d 24, 26-29 (2d Cir. 1982) (Chapter 13).

---

[11]  Section 1124(2) provides, in pertinent part, as follows:

> Except as provided in section 1123(a)(4) of [the Bankruptcy Code], a class of claims or interests is impaired under a plan, unless, with respect to each claim or interest of such class, the plan –
>
> (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default –
>
> ...
>
> (B) reinstates the maturity of such claim or interest as such maturity existed before such default.

> If automatic acceleration of a debt defeats a prepayment clause, such a clause could never be enforced in a bankruptcy case. A debtor, under such a rule, could always avoid the effect of a prepayment clause by filing a bankruptcy case. Neither the Bankruptcy Code nor the case law compels so drastic a result.

80 B.R. at 507 (emphasis added).[12]

Similarly, in *Imperial Coronado*, 96 B.R. at 999, the lender's note provided that the lender was entitled to a prepayment premium only if the prepayment of the debt was voluntary. In *Imperial Coronado*, unlike this case, the lender had *itself* accelerated the underlying debt prior to the debtor's chapter 11 petition. After the debtor filed a chapter 11 petition and made a voluntary election to prepay the debt, the debtor argued that it was not obligated to pay the prepayment premium under the voluntary prepayment provision because the debt had been accelerated. Rejecting the debtor's arguments, and notwithstanding the lender's own prepetition acceleration, the Ninth Circuit emphasized that the debtor's decision to prepay the note was voluntary, and that the debtor was required to pay the prepayment premium, both (1) because the debtor had no obligation to prepay the note and (2) because the debtor was free to decelerate and reinstate the debt under Bankruptcy Code section 1124(2). *Id.*, at 1000. The Ninth Circuit wrote:

> [The debtor] argues that it could not afford to pay arrearages and reinstate the loan and that it would be "unfair and inequitable" to punish the Debtor for selling the [mortgaged] property [securing the loan] pursuant to § 363 of the Bankruptcy Code. We disagree on both counts. With respect to reinstatement, the question is not whether [the debtor] could, as a practical matter, afford to exercise its right, but whether it had the right to reinstate the loan. It did. With respect to deceleration, [the debtor] assessed its situation and decided that selling the property under § 363 [and paying the note] was a better business decision than attempting to refinance the property and decelerate the loan as part of a

---

[12] The *Skyler Ridge* court rejected the argument made here by the Objectors. The only reason that the *Skyler Ridge* court did not sustain the lender's claim was because it found that the prepayment premium there was an impermissible penalty under Kansas law. 80 B.R. at 504. No such assertion is made here. (*See* fn. 21 below.)

> reorganization plan.  As [the debtor] admits, this was a conscious decision on its part.  In our view, the decision to sell the property and pay off the loan was voluntary, and the prepayment premium is therefore enforceable.

*Id.*, at 1000.

Similarly, in *433 South Beverly Drive*, 117 B.R. at 567-569, the court held that the lender was entitled to the prepayment premium resulting from the debtor's voluntary prepayment even though, as in the *Imperial Coronado* case, the lender, itself, had accelerated the debt.  The Court wrote:

> The Debtor's contention that the Prepayment Premium is invalid because the sale [of the mortgaged property and pre-payment of debt] is "involuntary" is disingenuous.  First, the fact that Marathon accelerated its junior note one day prior to the commencement of the bankruptcy case does not make any subsequent sale "involuntary."  Second, the Debtor gives no reason or explanation in support of its related contention that 'given the fact that the note was accelerated under state law, Debtor does not believe that under section 1124(2) that it would be in a position to decelerate the debt to Marathon under a plan of reorganization." [cit. om.]  Third, the proposed sale [of the mortgaged property and pre-payment] was solicited by the Debtor, on the Debtor's terms and it is the Debtor which sought and received authority to complete the transaction.

*Id.* at 568.  *See also*, *In re A.J. Lane & Co.*, 113 B.R. 821, 826-27 (Bankr. D. Mass. 1990) (rejecting claim that debtor's prepayment of debt was not voluntary under voluntary prepayment provision where lender took no steps to foreclose upon or obtain payment of debt postpetition and debtor decided to prepay debt).

The Objectors fail to cite a single case which holds, or suggests, that a lender is not entitled to a prepayment premium or damages under a voluntary prepayment provision simply because a chapter 11 debtor's debt has been "automatically accelerated" as a result of the debtor's own action in filing a chapter 11 petition.  Unless a lender *itself* compels a debtor to prepay a note by obtaining relief from the automatic stay in the bankruptcy court and by

foreclosing (in which case the prepayment will not be considered "voluntary") or by otherwise forcing the debtor to prepay the note, a debtor's election to prepay a debt is deemed a voluntary prepayment, and the lender is entitled to its prepayment premium and damages, under the voluntary prepayment provision of the agreement.  (*See* pp. 23-27 of our Initial Brief; *cases* cited at pp. 14-16 above.)

Unlike the facts in this case, in *LDH Realty*, 726 F.2d 327, the principal case cited by the Objectors, the lender had itself made numerous applications to the bankruptcy court during the pendency of the chapter 11 case to force the debtor to pay the outstanding debt.  The Seventh Circuit found that the lender was not entitled to a prepayment premium because the lender had, itself, waived its right to the premium by filing the repeated demand applications in the chapter 11 case -- not because of the "automatic acceleration" of the debt resulting from the debtor's own chapter 11 petition.[13]  Indeed, the Seventh Circuit wrote:

> Thus, if the lender wishes to preserve its right to a premium, it must forebear from exercising its acceleration option and await the trustee's or debtor's decision [whether or not to prepay the debt].  Should the trustee or the debtor then decide to repay the loan, the

---

[13] As the Court emphasized in the *LDH Realty* case:

> When a lender has the option to accelerate, "'[i]t is only necessary that the mortgagee show an *unmistakable intention to exercise the option*, and this may be done by taking steps for foreclosure, filing foreclosure suit, sale pursuant to the mortgage, or advertisement of the property for sale pursuant to the terms of the mortgage.'". . . .*446 West 44th St., Inc. v Riverland Holding Corp.,* 267 App. Div. 135, 44 N.Y.S. 2d 766, 768 (1943) (election to accelerate "must consist either of notice of election to the mortgagor or of some unequivocal overt act manifesting an election....) (citation omitted).

> The point is, we think, that a lender may abandon or waive its claim to interest payable over a period of years and to what amounts to insurance against a decline in interest rates.  Thus, the lender, by its acts, may establish that it prefers accelerated payment to the opportunity to earn interest over a period of years.  It is not appropriate, under these circumstances, for the lender to receive a prepayment premium in lieu of the interest foregone since it has voluntarily waived the unpaid interest in the expectation of accelerated payment of the remaining principal.

> Thus, we think National exercised its option to accelerate no later than August 26, 1981, when it filed its request for relief from the automatic stay.... National's actions established that it preferred, sensibly no doubt, accelerated payment over the "opportunity" to earn interest from the LDH Loan over a period of years.

726 F. 2d at 331 (emphasis added).

<u>lender would presumably be able to enforce an otherwise valid prepayment premium.</u>

726 F.2d at 332 (emphasis added). Here, of course, the Second Lien Representatives took <u>no</u> steps whatsoever to force the Debtors to prepay the Second Lien Debt, and that the CalGen Debtors' prepayment, more than a year after the chapter 11 petition filings, was entirely voluntary.

As other courts have repeatedly noted, the *LDH Realty* case has no relation to circumstances such as those present here. As the court wrote in *Skyler Ridge*:

> *LDH Realty* is consistent with this view [that a creditor's right to a prepayment premium under a voluntary prepayment provision is not affected by an automatic acceleration where the debtor voluntarily elects to pay the debt in its chapter 11 case]. The court in *LDH Realty* held that the elimination of the prepayment penalty resulted only from the creditor's voluntary acceleration of the debt, and not from the automatic acceleration resulting from the bankruptcy filing. The court found that the creditor's filing of a motion for relief from stay to foreclose was a voluntary acceleration of the debt by the creditor. [*LDH Realty,*] 726 F.2d at 331.

80 B.R. at 507-08. Similarly, in *Imperial Coronado*, the Ninth Circuit, commented on *LDH Realt*y and other cases in which the lender had taken affirmative steps in a chapter 11 case to force the debtor to pay its debt:

> In those cases, however, it appears that the borrower had no choice but to pay the accelerated amount or lose the property. For instance, in *Tan*, the acceleration occurred through enforcement of a due-on-sale clause. There was no right to reinstate the loan or deaccelerate the amount due…. The situation in the case at bar is different because [the debtor] had the right to reinstate the loan . . . or to decelerate the loan under bankruptcy law.

*Imperial Coronado*, 96 B.R. at 1000.

The remaining cases cited by the Objectors are also inapplicable. *See*, *e.g.*, *In re Ridgewood Apts. of DeKalb County, Ltd.*, 174 B.R. 712 (Bankr. S.D. Ohio 1994) (Where the

lender had affirmatively accelerated the debt but the debt had, in fact, <u>not</u> been prepaid, lender had no right to claim a prepayment premium merely because debt was "accelerated," noting that the debtor had the right to decelerate any such acceleration); *Manville Forest Prods.*, 43 B.R. at 297-98 (Case having nothing to do with prepayment premium or "no call" provisions; noting that, although bankruptcy accelerates debt for purposes of filing proofs of claim, acceleration does not obligate debtor to pay debt and that "the creditor is prevented, under Section 362 of the Code, from taking steps to enforce that claim.").[14]

In an effort to deflect attention from the applicable law, the Objectors argue that the Second Lien Documents could have contained different provisions, such as those contained in other credit agreements. Their arguments are completely beside the point. As the cases cited at pp. 13-16 make clear, under voluntary prepayment provisions such as those contained in the Second Lien Documents, a debtor is liable for the prepayment premium and damages where the debtor voluntarily prepays its debt. That liability is in no way affected by the alleged "automatic acceleration" of its debt arising out of the Debtors' own actions in filing chapter 11 petitions.

## III.

### THE BANKRUPTCY COURT ERRED IN HOLDING THAT THE SECOND LIEN REPRESENTATIVES WERE NOT ENTITLED TO SECURED CLAIMS ARISING OUT OF THE DEBTORS' BREACHES OF THE NO CALL AND PREPAYMENT PREMIUM PROVISIONS OF THE AGREEMENTS

Much of the Objectors' respective opening briefs seek to apply Bankruptcy Code 506(b) to challenge the secured status of the claims of the Second Lien Representatives for their prepayment premium and no call damages. The Objectors' arguments in this regard lack merit for a variety of reasons. Moreover, as discussed in Point IV below, to the extent, if any, that any

---

[14] The Creditors' Committee also cites a Tennessee state court decision, *Sound Stage Studios, Inc. v. Life Investors Ins. Co. of America*, 1988 WL 138827 at *3 (Tenn. Ct. App. 1988). However, like their other cases, *Sound State* was a case in the lender had itself accelerated the debt, as stated in the very first sentence of the decision. *Id.* at *1. Moreover, *Sound State* was a case applying Tennessee state law, not Bankruptcy or New York law.

portion of the claims of the Second Lien Representatives are not entitled to secured status, the law is clear that such claims are allowable as unsecured claims under Bankruptcy Code section 502.

Bankruptcy Code section 506(b) provides that oversecured creditors (*i.e.*, creditors whose collateral value exceeds the amount of their claims) are entitled to secured claims for all amounts due under their agreements:

> (b) To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b).[15]

The Second Lien Documents expressly provide that the Second Priority Notes and Second Priority Term Loans may not be prepaid prior to April 1, 2008, and may be prepaid for a period thereafter only upon payment of a prepayment premium of 3.5%. Notwithstanding those provisions, the Objectors assert that the Second Lien Documents do not "provide for" payment of the prepayment premium or damages because the CalGen Debtors prepaid the Second Priority Lien Debt during the no call period, prior to April 1, 2008. As such, the Objectors contend that they can avoid liability for the secured claims of the Second Lien Representatives if the Second Lien Debt was paid one day, one week, or one year prior to April 1, 2008, in plain violation of the agreements.

Contrary to the Objectors' arguments, the prepayment premium and "no call" provision are each "provided for" under the Second Lien Documents and the violations of those

---

[15]  Here, it is undisputed that the Second Priority Notes and Second Priority Term Loans are oversecured by a substantial margin. The cases are also clear that a prepayment premium and damages for breach of a "no call" provision are "charges" under section 506(b). *See In re 360 Inns,* 76 B.R. at 576; *In re Imperial Coronado Partners, Ltd.*, 96 B.R. at 1000; *In re A.J. Lane & Co., Inc.,* 113 B.R. at 827.

provisions, therefore, creates secured claims under Bankruptcy Code section 506(b).  In fact, the

Second Lien Documents provide for the prepayment premium *and* provide that the Debtors

cannot avoid liability for that premium by prepaying the debt prior to April 1, 2008.  The

Debtors cannot seriously contend that they can avoid a secured claim for the prepayment

premium and damages simply by prepaying the Second Lien Debt prior to April 1, 2008.

       As the cases make clear, an agreement should not be given an interpretation or an

application under section 506(b) which would allow a debtor to circumvent the provisions of the

agreement.  *See*, *e.g.*, *360 Inns*, 76 B.R. at 576-78 (Where the lender and debtor were parties to

an agreement which barred a *voluntary* prepayment of debt during initial 10 years of the loan,

and provided that a prepayment premium of 10% would be due in the event of an *involuntary*

prepayment during the first 10 years, secured lender would have an allowed, secured claim for a

10% prepayment premium where the debtor *voluntarily* prepaid the loan during the first 10 year

period in violation of agreement).  *See also Excess Ins. Co. Ltd. v. Factory Mutual Ins. Co.*, 3

N.Y. 3d 577, 582 (N.Y. 2004) (The court should construe agreements so as to give full meaning

and effect to the material provisions); *God's Battalion of Prayer Pentecostal Church, Inc. v.*

*Miele Assocs.*, 6 N.Y. 3d 371, 374 (N.Y. 2006) (A reading of the contract should not render any

portion meaningless); *Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 1 N.Y. 3d 470,

475 (N.Y. 2004) (Construction of an unambiguous contract is a matter of law, and the intention

of the parties may be gathered from the four corners of the instrument and should be enforced

according to its terms).

       In support of their arguments, the Objectors rely upon the decisions interpreting

section 506(b) in *Continental Securities Corp. v. Shenendoah Nursing Home P'ship.*, 193 B.R.

769, *In re Vest Assoc.*, 217 B.R. 696, 699-700 (Bankr. S.D.N.Y. 1998) and *In re Adelphia*

*Commc'ns. Corp.*, 342 B.R. 142 (Bankr. S.D.N.Y. 2006).  Those cases are completely inapposite to the circumstances here.  To the extent that those cases would allow the CalGen Debtors to circumvent their clearly provided for contractual obligations here, the cases were wrongly decided and should not be followed.

In *Shenandoah* and *Vest*, unlike this case, the lenders sought to recover damages on the basis of credit agreements which had "no call" provisions, but which contained no prepayment premium provisions of any kind.  Here, the Second Lien Documents each contain express prepayment premium provisions which the Debtors surely should not be permitted to avoid by prepaying the loans prior to April 1, 2008, in plain violation of those agreements. Indeed, in *Shenandoah*, the court specifically distinguished its facts from circumstances such as those present here:

> Thus, the present note contains no formula, nor any specific figure, for calculating damages stemming from prepayment. Although the note in *360 Inns*, like the present note, did not contain a damages provision with respect to voluntary prepayment made within the first ten years of the loan, there was a concrete 10% damages figure in the note with respect to involuntary prepayment made within the same period.  Thus, the debtor, and the bankruptcy court for that matter, were able reasonably to calculate a damages figure for voluntary prepayment made within the first ten years by borrowing from another, analogous provision in the note itself -- *i.e.* the 10% figure applicable to involuntary prepayment made within the first ten years.  This court, in contrast, cannot enforce the lockout provision by simply supplying a prepayment penalty figure contained elsewhere in the note since no such figure exists.

342 B.R. at 777.[16]  Moreover, to the extent that the *Shenandoah* and *Vest* are considered relevant to the facts here, such decisions are at odds with the plain language of section 506(b) and should

---

[16]  Similarly, *United States v. Ron Pair Enterprises Inc.*, 489 U.S. 235 (1989), also cited by the Bankruptcy Court, lends no support to the court's decision. In *Ron Pair*, the Supreme Court held that, under Bankruptcy Code section 506(b), a secured creditor was entitled to postpetition interest on a secured claim even if it had *no* agreement entitling it to such interest.  Nothing in that decision holds or even suggests that an agreement such as this should be read as not "providing for" the payment of a prepayment premium provided for in the agreement.

not be followed. Section 506(b) provides that an oversecured creditor is entitled to a secured claim for any charge "provided for" in the agreement; the charges sought here are "provided for" in the agreements and cannot be circumvented.

The decision in *Adelphia*, another bankruptcy court decision applying section 506(b), is also inapposite.  In *Adelphia,* a group of prepetition lenders claimed that they were entitled to additional "Grid Interest" from the debtors on their loans because the debtors had delivered prepetition compliance certificates to the lenders which contained inaccurate financial information and upon which that "Grid Interest" was to be calculated.  In rejecting the claims, the *Adelphia* bankruptcy court held that the banks were not entitled to the additional interest because their credit agreements provided specific remedies for the breaches other than additional "Grid Interest," such as the right to recover default interest or to declare events of default, and the credit agreements further contained provisions specifically negating the right to additional "Grid Interest" based upon corrected compliance certificates.  *Adelphia*, 342 B.R. 142 at 152-153.  In other words, the credit agreements in *Adelphia* (i) provided specific remedies different from those being sought by the banks for the very breaches which the banks alleged, and (ii) provided that the banks were not entitled to the remedy which they were seeking.  By contrast, the Second Lien Documents contain no provisions which conflict with, preclude, or vary from the remedy sought by the Second Lien Representatives.  Rather, the Second Lien Documents expressly "provide for" a prepayment premium and provide that the debt cannot be prepaid prior to April 1, 2008.

Each of the Second Lien Documents provide for the prepayment premium and provide an express prohibition against prepayment prior to April 1, 2008.  Under Bankruptcy

Code section 506(b), the Second Lien Representatives are entitled to secured claims for their

prepayment premiums and the resulting damages.

## IV.

**EVEN IF THE SECOND LIEN REPRESENTATIVES ARE NOT ENTITLED
TO SECURED CLAIMS FOR THE FULL AMOUNT OF THEIR DAMAGES,
THE SECOND LIEN REPRESENTATIVES ARE ENTITLED
TO UNSECURED CLAIMS FOR ALL AMOUNTS UNDER SECTION 502**

As Bankruptcy Judge Lifland ruled, a party to a contract breached by a debtor is

entitled to an unsecured claim for its contract damages under Bankruptcy Code section 502 even

if its claim is not deemed to be a secured claim under section 506(b).  *See* Decision, JA 10; *see

also Joseph F. Sanson Inv. Co. v. 268 Ltd. (In re 268 Ltd.)*, 789 F.2d 674 (9th Cir. 1986) (holding

that, even if lender was not entitled to a secured claim for its damages under Bankruptcy Code

section 506(b), lender was entitled to unsecured claims for such damages).  To the extent, if any,

that the Second Lien Representatives are not entitled to secured claims for any portion of their

prepayment premium and damages, the law is clear that they are entitled to unsecured claims for

such amounts.  Indeed, the Objectors fail to present any valid argument as to why the Second

Lien Representatives should not be entitled to an unsecured claim for their damages and

prepayment premium.

In support of their opposition to the entitlement of the Second Lien

Representatives to unsecured claims, the Objectors cite the *Shenandoah, Vest,* and *Adelphia*

decisions for the proposition that a contract is required to have a liquidated damages provision in

order for a creditor to recover damages for breach of contract.  Their arguments are without

merit.  The cases cited say nothing of the sort, and the law is clear that a party is entitled to

damages for breach of a contract *whether or not the contract contains a provision specifically

setting forth the manner in which damages are to be calculated*.

As set forth at pp. 21-23 above, *Shenandoah, Vest,* and *Adelphia* -- each of which address wholly distinguishable circumstances -- were decisions analyzing the rights of creditors to <u>secured</u> claims under section 506(b) of the Bankruptcy Code.  In order for a creditor to have a *secured* claim for certain amounts, it must meet the requirements of section 506, which grants oversecured creditors secured claims for charges "provided for" under a contract.  The *Shenandoah, Vest,* and *Adelphia* cases do not address a creditor's rights to an <u>unsecured</u> claim under Bankruptcy Code section 502, as Judge Lifland correctly observed at the hearing on the Debtors' motions.[17]  Under section 502, a creditor is entitled to an unsecured claim for any damages that exist under applicable state law.  Under applicable state law, and under the Bankruptcy Code, there is no requirement that the contract contain a liquidated damages provision specifying how those damages are to be calculated for the creditor to be entitled to an unsecured claim arising out of the breach of its contract.  Indeed, to the extent that there is any discussion at all in the *Shenandoah* decision that could relate to the possibility of an unsecured claim, the *Shenandoah* court stated that the lender had failed to make any showing that it had a claim for damages for breach of the "no call" provision under the applicable state law, presumably West Virginia state law.[18]  Here, by contrast, New York is clear that a lender has a damage claim for breach of "no call" and prepayment premium provisions.  *See* cases cited at pp. 10-11 above and 29 below.

---

[17] Judge Lifland stated at the hearing on the Debtors' motions, the Objectors' reliance upon *Shenandoah*, *Vest*, and other cases to suggest that the CalGen Secured Debt representatives are not entitled to unsecured claims is totally unfounded, since those cases deal only with a lender's rights to a secured claim under section 506(b):  "They rely on *Vest*, among other cases.  And even in *Vest* the issue is not determined until the end of the case or some point further down. . . . [Judge Brozman] didn't deny [the unsecured claim]."  R. 50, pg. 215.

[18] As the Court stated in *Shenandoah* referring to the state law there, "Continental [the lender] cites no case law for its proposition that the bankruptcy court's failure to enforce the lockout provision gives rise to an independent 'right to payment'."  193 B.R. at 777.  Here, by contrast, New York law is clear that a lender does have a damage claim.  *See* cases cited at pp. 10-11 above and 29, below.

Where a debtor has breached a creditor's contractual rights, the creditor's unsecured claim under section 502 is governed by principles of state common law applicable to breach of contract claims.  *See*, *e.g.*, *Raleigh v. Illinois Dep't of Rev.*, 530 U.S. 15, 24 (2000); *Butner v. United States*, 440 U.S. 48, 54-56 (1979); *In re Western Real Estate Fund, Inc.* 922 F.2d 592, 595 (10th Cir. 1991); *In re Madeline Marie Nursing Homes,* 694 F.2d 433, 439 (6th Cir. 1982); *In re American Homepatient, Inc.* 309 B.R. 738, 742 (M.D. Tenn. 2004).  If a creditor has a valid claim for breach of contract under applicable state law, it is entitled to an allowed claim under section 502.  *See*, *e.g.*, *Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 127 S. Ct. 1199, 1204-05 (2007); *Raleigh*, 530 U.S. at 20; 11 U.S.C. § 502(a).

Under New York law, a party is entitled to damages for the breach of provisions in a contract, whether or not the contract contains a liquidated damages provision specifying how the damages are to be calculated.  There is no requirement that a contract contain a liquidated damages provision or a provision specifying how damages are to be calculated.  Absent express contract provisions dictating damages calculations, damages should be calculated in accordance with the applicable common law.  *See* 4 N.Y. Prac., Com. Litig.  In New York State Courts § 59:38 (2d ed. 2006) ("When a contract is silent on the issue of damages, the damages for breach of contract are usually the losses sustained and the gains prevented at the time and place of breach."); *Sir Speedy, Inc. v. L&P Graphics, Inc.,* 957 F.2d 1033 (2d. Cir. 1992) (Where contract contained provision requiring franchisor to provide "continuing assistance" to franchisee, but did not establish specific damage calculation in the event of a breach, non-breaching party could submit evidence of damages caused by breach); *U.S. v. Winstar*, 518 U.S. 839, 885 (1996) ("[T]he failure to specify remedies in the contract is no reason to find that the parties intended no remedies at all."); *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490 (2d. Cir.

1995) (Proper measure for damages is the amount necessary to put non-breaching party in the same economic position he would have been in had the breaching party fulfilled its contract); *Freund v. Washington Square Press, Inc.*, 34 N.Y.2d 379, 380 (N.Y. 1974) ("[A non-breaching party] is entitled to those damages which normally flow from the breach of contract which are direct and proximate.").

Indeed, even where a contract identifies particular remedies, the contract will not be deemed to preclude additional remedies under New York law absent an express provision in the contract limiting the available remedies. *See, e.g.*, *Terminal Central, Inc. v. Henry Modell & Company, Inc.*, 212 A.D. 2d 213, 218-19 (1st Dep't. 1995); *Cowper Co. v. Buffalo Hotel Development Venture*, 115 A.D. 436 (4th Dep't. 1986), *aff'd* 72 N.Y. 890 (1988) (Reference to certain remedies in a contract does not preclude additional remedies); *Palazzetti Import/Export, Inc. v. Morson*, No. 98 Civ 722 (FM), 2001 WL 1568317, at *9 (S.D.N.Y. Dec. 6, 2001) ("[U]nder New York law, contractual remedies are deemed to be nonexclusive absent some indication of contrary intent.").

In short, the Second Lien Representatives are entitled to claims for the full amount of their state breach of contract damages under Bankruptcy Code section 502. To the extent that any portion of such claims are not secured under section 506(b), such claims are unsecured claims under section 502.[19]

---

[19] Although none of the Objectors makes any claim in their opening briefs that the prepayment premium or damages constitute claims for "unmatured interest" under Bankruptcy Code section 502(b)(2), and no such claim was made by the Debtors before the Bankruptcy Court, the Bankruptcy Court properly rejected that claim when it was made by the Creditors Committee in support of the Debtors' Limited Objection. As the overwhelming case law in the Second Circuit, and in other circuits, makes clear, claims for prepayment premiums or for damages arising out of a breach of a "no call" agreement, do not constitute claims for "unmatured interest" which may be disallowed under section 502(b)(2). *See, e.g.*, *360 Inns*, 76 B.R. at 576 (claim arising out of breach of "no call" provision not a claim for "unmatured interest" since claim was triggered by debtor's breach); *United Merchants and Manufacturers*, 674 F.2d at 143 (a prepayment charge that is valid under state law is an enforceable liquidated damage clause); *In re Lappin Elec. Co., Inc.*, 245 B.R. at 330; *In re Vanderveer Estates Holdings, Inc.*, 283 B.R. at 133 (enforcing prepayment fee); *Anchor Resolution Corp. v. State Street Bank and Trust Co.*, 221 B.R. at 340-

## V.

### THE BANKRUPTCY COURT ERRED IN (I) FAILING TO AWARD THE SECOND LIEN REPRESENTATIVES CLAIMS FOR THE FULL AMOUNTS OF THEIR DAMAGES, (II) FAILING TO AWARD THEM SECURED CLAIMS, (III) IMPROPERLY DISALLOWING THEIR CONTRACTUAL CLAIMS FOR FEES AND EXPENSES, AND (IV) IMPROPERLY EXPUNGING THEIR GUARANTY CLAIMS AGAINST THE DEBTOR GUARANTORS

A.    **The Bankruptcy Court Failed to Award the Second Lien Representatives Claims for the Full Amounts of Their Damages**

As shown in the Initial Brief filed on behalf of the Second Lien Representatives, the Bankruptcy Court clearly erred in failing to award the Second Lien Representatives claims for the full amounts of their damages.

The Second Lien Documents clearly and expressly provide (i) that the Second Priority Notes and Second Priority Term Loans could not be prepaid prior to April 1, 2008, and (ii) that the obligations could only be prepaid for a period after that date with the payment of a 3.5% prepayment premium. The applicable principles for determining a party's breach of contract damages under New York law are well established: Damages should be calculated to put the aggrieved party in the same economic position it would have been absent the breach.[20] *See*, *e.g.*, *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, at 728-29 (2d Cir. 1992); *Teachers Insurance and Annuity Association of America v. Ormesa Geothermal*, 791 F. Supp. at 415-16; *Teachers Insurance and Annuity Association of America v. Butler*, 626 F. Supp. At 1235-36;

---

41 (applying a liquidated damage approach to a prepayment premium under New York law); *In re Kroh Bros. Dev. Co.,* 88 B.R. 997, 999 (Bankr. W.D. Mo. 1988) (same). Moreover, as the courts have held, if a claim for damages is discounted to present value, it no longer includes unmatured interest -- it simply includes lost interest. *See*, *e.g.*, *O.P.M. Leasing Servs.*, 79 B.R. at 164 (discounting a claim to present value to determine the amount of actual damages). Finally, where, as here, a debtor is solvent, creditors -- even unsecured creditors -- are entitled to recover amounts that would constitute "unmatured interest" under section 502(b)(2), since creditors are entitled to be paid postpetition interest on their claims before any distributions or value are provided to or retained by shareholders. *See*, *e.g.*, *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989); *In the Matter of Fesco Plastics Corp. Inc.*, 996 F.2d 152 (7th Cir. 1993).

[20] The Second Priority Indenture and Second Priority Term Loan Agreement each provide that they are to be governed by New York law. (Second Priority Indenture, Section 13.08, JA 426; Second Priority Term Loan Agreement Section 12.14, JA 973.)

*Teachers Insurance and Annuity Association of America v. Coaxial Comm. Of Central Ohio*, 799 F. Supp. at 17-18.

The proper measure of damages arising out of the prepayment of the Second Lien Debt is simple and straightforward: (A) For the period from the date of the payment on March 29, 2007, through March 31, 2008, the holders of the Second Lien Debt are entitled to be compensated for the difference between (i) the contractual rate of interest to which they were entitled and (ii) the rate they could obtain through a similar replacement investment, *see*, *e.g.*, *Teachers Insurance and Annuity Association v. Ormesa*, 791 F. Supp. at 415-16 (Awarding damages based upon difference between contract rate of interest and current rate of interest on a similar loan; *Teachers Insurance and Annuity Association of America v. Butler*, 626 F. Supp. at 1235-36 (same); *Teachers Insurance and Annuity Association of America v. Coaxial*, 799 F. Supp. at 19 (same);[21] and (B) the holders of the Second Lien Debt are entitled to the present value, as of the prepayment date, of the 3.5% premium which the Debtors would be required to pay to prepay the Second Lien Debt on April 1, 2008.

The Bankruptcy Court's decision clearly shows that the Bankruptcy Court failed to apply the proper measure of damages. The Bankruptcy Court awarded the Second Lien Representatives claims for the 3.5% premium for a prepayment after April 1, 2008, but failed to award any damages for the period from March 29, 2007, the date of the prepayment, through April 1, 2008. In essence, the Second Lien Representatives were awarded no claim for the substantial damages suffered as the result of the prepayment of the debt a full year prior to

---

[21] In the *Ormesa* and *Coaxial* cases, the parties had entered into binding agreements to provide financing at a fixed rate, pursuant to commitment letters which contained "no call" and prepayment premium provisions. After the agreements were entered into, interest rates fell, and the borrowers repudiated their contractual agreements to take out financing from the lenders. Applying New York law, the District Courts held that the lenders were entitled to recover, as its damages resulting from the borrower's breach of the contract, the difference between the contract rate to which it was entitled and the rate it could obtain making a similar new loan at the lower rates. 791 F. Supp. at 415-16; 799 F. Supp at 19.

April 1, 2008. *See*, *e.g.*, *Teachers Insurance and Annuity Association v. Ormesa*, 791 F. Supp. at 415-16 (Lenders entitled to recover difference between contractual rate of interest and rate of interest on replacement investment); *Teachers Insurance and Annuity Association of America v. Coaxial*, 799 F. Supp. at 415-417 (same).

By failing to award the Second Lien Representatives claims for their full damages, the Bankruptcy Court denied the Second Lien Representatives a significant portion of the claims to which they are entitled as a matter of law.  The damage claim of the holders of the Second Priority Notes arising out of breach of the "no call" provisions and prepayment premium provisions is $44,950,687, consisting of (i) damages for the period from the date of the prepayment through April 1, 2008, in the amount of $24,060,281 (representing the difference between the contract rate of interest and the return on a similarly loan having a similar credit rating), plus (ii) the present value of the 3.5% prepayment premium that would be due upon a prepayment after April 1, 2008.  (Jack HSBC Affid., JA 1191; R. 50, Tr. 135)  Similarly, the holders of the Second Priority Term Loans are entitled to a claim of $14,153,158 for breaches of the "no call" provisions and prepayment provisions, consisting of (i) damages for the period from the date of the prepayment through April 1, 2008, in the amount of $8,984,506, plus (ii) the present value of the 3.5% prepayment premium due upon a prepayment after April 1, 2008. (Jack BofNY Affidavit, JA 1205; R. 50, Tr. 134).[22]

---

[22] No claim is made by the Objectors in their briefs that the prepayment premium is void as an unreasonable liquidated damages provision under state law. Nor could such a claim be made.  As courts have held, a reasonable fixed-rate prepayment premium, such as that involved here, should be enforced, particularly where it represents the agreement between commercially sophisticated parties. In *In re Schaumberg Hotel Owner Ltd. P'ship.*, 97 B.R. 943 (Bankr. N.D. Ill. 1989), for example, the court enforced a fixed prepayment premium of 10%, and noted that:

> In determining the validity of a prepayment clause, the court must look to the damages that the parties could anticipate at the time the parties contracted.  The parties are not required to make the best estimation of damages, just one that is reasonable.  It is immaterial that the actual damages suffered are higher or lower than the amount specified in the clause.  However, if the damages are

**B.**     **The Bankruptcy Court Erred in Limiting the Claims of the Second Lien Representatives For their Fees and Expenses and in Expunging Their <u>Claims Against the Debtor Guarantors Pursuant to the Written Guarantees</u>**

Finally, as set forth in our initial Brief, the Bankruptcy Court erred in limiting the claims of the Second Lien Representatives for their fees and expenses pursuant to the Second Lien Documents, and in expunging, without explanation, their claims against the Debtor Guarantors pursuant to the written guarantees.

All of the claims of the Second Lien Representatives should be allowed as secured claims. To the extent that any portion of such claims is not allowed as secured, it should be allowed as an unsecured claim pursuant to Bankruptcy Code section 502(b).

---

easily calculable or the prepayment premium greatly exceeds a reasonable upper estimate of damages, that premium will be disallowed.

97 B.R. 943, 953-54 (internal citations omitted). *See also In re Lappin Electric Co.*, 245 B.R. at 326 (early termination fee of 3% of revolving loan's limit during the first year of the loan, 2% during the second year, and 1% during the third year held reasonable). As the Court held in *Schaumberg,* the fixed percentage approach to the prepayment premium was a reasonable estimate of potential damages at the time the parties entered into the loan agreement. Further, the amount of the prepayment premium was not so large as to be considered a penalty, and that enforcement of the prepayment premium would not result in a windfall to the secured creditor. *See* 97 B.R. 943 at 954. Here, the Second Lien Documents were arms-length transactions entered into between sophisticated parties represented by counsel. The 3.5% prepayment premium was, and is, a reasonable estimate of the damages which would be suffered by the holders of the Second Lien Debt as the result of a redemption after April 1, 2008. Moreover, even if the Court were to determine that the 3.5% prepayment premium was unenforceable for any reason, the holders of the Second Lien Debt would nonetheless be entitled to recover their full, actual breach of contract damages, and those damages would actually be greater than the damages calculated by using the prepayment premium to calculate a portion of the damages. New York law is clear that, where a liquidated damages provision is held to be unenforceable, the claimant is entitled to its actual damages for the breach of contract under applicable common law. *See, e.g.*, *Brecher v. Laikin*, 430 F. Supp. 103, 106 (S.D.N.Y. 1977) (where a liquidated damages provision found to be unenforceable, plaintiff is entitled to its actual damages); *Carols Equities Corp. v. Villnave*, 57 A.D. 2d 1044 (4th Dep't. 1977) (same); *Royal Ins. Co., of America v. CNF Constructors, Inc.*, 1995 WL 4204 (S.D.N.Y.) (same).  As shown in the Surreply Affidavit of Jason Jack, a Director with Giuliani Capital Advisors, LLC, if the damages of the Indenture Trustee and the Administrative Agent were calculated on the basis of their actual damages, rather than the prepayment premiums, their total damages resulting from the breach of the "no call" provisions would be $2.17 million and $2.3 million more, respectively, than the damages calculated using the prepayment premiums.  Accordingly, there can be no basis for a claim that the prepayment premium was an unreasonable liquidated damages provision for that portion of the damages arising on April 1, 2008.

## **CONCLUSION**

For the reasons set forth above and in our initial Brief, the Decision and Orders of the Bankruptcy Court should be reversed, with instructions to the Bankruptcy Court (i) to allow the claims of the Second Lien Representatives for the prepayment premium and damages for breach of the "no call" provisions for the full amounts sought, (ii) to allow the Second Lien Representatives secured claims for the full amount of their fees and expenses, (iii) to allow all of their claims as secured claims, and (iv) to allow their claims against the Debtor Guarantors pursuant to the written guarantees, together with such other and further relief as this Court may deem appropriate.

Respectfully submitted,

July 9, 2007                                ROPES & GRAY LLP


By:  __/s/ David S. Elkind____
     Mark I. Bane (MB-4883)
     Mark R. Somerstein (MS-9721)
     David S. Elkind (DE-4054)
     Amy E. Vanderwal (AV-1712)
1211 Avenue of the Americas
New York, New York 10036-8704
Telephone:  (212) 596-9000
Facsimile:  (212) 596-9090

Attorneys for Appellants HSBC BANK USA,
NATIONAL ASSOCIATION, as INDENTURE
TRUSTEE and THE BANK OF NEW YORK, as
ADMINISTRATIVE AGENT