UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
In re                                                           :
                                                                :   **Chapter 11**
                                                                :
CALPINE CORPORATION, *et al.*,                                  :   Case No. 05-60200 (BRL)
                                                                :
                                                                :   **(Jointly Administered)**
                                                                :
                                                                :
----------------------------------------------------------------x
HSBC BANK USA, NATIONAL                                         :
ASSOCIATION, AS INDENTURE                                       :
TRUSTEE, THE BANK OF NEW YORK,                                  :
AS ADMINISTRATIVE AGENT,                                        :   Case No. 1:07-cv-03088 (GBD)
WILMINGTON TRUST FSB, AS                                        :
INDENTURE TRUSTEE, WILMINGTON                                   :
TRUST COMPANY, AS ADMINISTRATIVE                                :
AGENT, AND MANUFACTURERS                                        :
& TRADERS TRUST COMPANY,                                        :
AS INDENTURE TRUSTEE,                                           :
                                                                :
        Appellants,                                             :
                                                                :
    – against –                                                 :
                                                                :
CALPINE CORPORATION, THE OFFICIAL                               :
COMMITTEE OF UNSECURED                                          :
CREDITORS OF CALPINE CORPORATION,                               :
AND THE OFFICIAL COMMITTEE OF                                   :
EQUITY SECURITY HOLDERS,                                        :
                                                                :
        Appellees.                                              :
----------------------------------------------------------------x   *caption continued on next page*

```
-----------------------------------------------------------x
CALPINE CORPORATION, THE OFFICIAL           :
COMMITTEE OF UNSECURED                      :
CREDITORS OF CALPINE CORPORATION,           :
AND THE OFFICIAL COMMITTEE OF               :
EQUITY SECURITY HOLDERS,                    :
                                            :
            Appellants,                     :
                                            :
       – against –                          :
                                            :
HSBC BANK USA, NATIONAL                     :
ASSOCIATION, AS INDENTURE                   :
TRUSTEE, THE BANK OF NEW YORK,              :
AS ADMINISTRATIVE AGENT,                    :
WILMINGTON TRUST FSB, AS                    :
INDENTURE TRUSTEE, WILMINGTON               :
TRUST COMPANY, AS ADMINISTRATIVE            :
AGENT, AND MANUFACTURERS                    :
& TRADERS TRUST COMPANY,                    :
AS INDENTURE TRUSTEE,                       :
                                            :
            Appellees.                      :
-----------------------------------------------------------
```

# REPLY BRIEF OF APPELLANT
## WILMINGTON TRUST COMPANY AS COLLATERAL AGENT

NIXON PEABODY LLP
Amanda D. Darwin, Esq. (AD 2719)
Richard C. Pedone, Esq. *(Admitted Pro Hac Vice)*
Dennis A. Murphy, Esq. (*Admitted Pro Hac Vice*)
100 Summer Street
Boston, MA 02110
Telephone: (617) 345-1000

- and -

Christopher M. Desiderio, Esq. (CD 6929)
437 Madison Avenue
New York, NY 10022
Telephone: (212) 940-3000

Attorneys for Wilmington Trust Company as Collateral Agent

10495958

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**……………………………………………….....1

**ARGUMENT**……………………………………………………………………..……2

I.     **THE BANKRUPTCY COURT IMPROPERLY SUBORDINATED THE COLLATERAL AGENT'S LIENS TO THE DEBTOR-IN-POSSESSION LIENS**………………………………………2

II.     **THE BANKRUPTCY COURT FAILED TO PROVIDE FOR ONGOING COMPENSATION OF THE COLLATERAL AGENT'S FEES AND EXPENSES**……………………………………………………4

**CONCLUSION**……………………………………………………………………..5

Wilmington Trust Company, in its capacity as collateral agent (the "Collateral Agent"), submits this reply brief in further support of its Opening Brief (Doc. No. 16). No party opposed the relief sought by the Collateral Agent in its Opening Brief.[1]

## PRELIMINARY STATEMENT

As demonstrated in the Opening Brief, the Bankruptcy Court erred by subordinating the Collateral Agent's liens to the Replacement DIP liens (except as to certain Disputed CalGen Claims as defined in the DIP Refinancing Order), and further erred by not providing for ongoing compensation of the Collateral Agent's fees and expenses for services that it remains contractually obligated to perform. Because the Collateral Agent's obligations have not been fully discharged, it was legal error for the Bankruptcy Court to alter the Collateral Agent's lien position, and not expressly provide for ongoing compensation of its fees and expenses.

Pursuant to the provisions of the Collateral Trust Agreement and Security Agreement, the Collateral Agent was granted a first priority lien on substantially all of the assets of the CalGen Debtors to secure the CalGen Secured Debt. (J.A. at 1043, 1134-37). Read together, these agreements provide that the Collateral Agent's liens may not be released or subordinated except upon payment in full and discharge of all outstanding CalGen Secured Debt. The Security Agreement grants to the Collateral Agent a "security interest and continuing lien," which "shall remain in full force and effect with respect to all Collateral until the Secured Obligations Termination Date." (J.A. at 1049-50, 1060-61). The "Secured Obligations Termination Date," in turn, is defined under the Collateral Trust Agreement to mean "the date on which all Secured Obligations . . . have been paid in full in cash." (J.A. at 1127). The Collateral Trust Agreement imposes an affirmative obligation on the Collateral Agent to "not release or subordinate any

---

[1] Defined terms used herein have the same meaning as in the Collateral Agent's Opening Brief.

10495958

Lien" or "consent to the release or subordination of any Lien" unless (among other exceptions not relevant) required by Article 5, which in turn provides for release of the Liens only upon "payment in full and discharge of all outstanding Secured Debt and all other Secured Obligations that are outstanding at the time all of the Secured Debt is paid in full and discharged . . . ." (J.A. at 1146, 1152). The Collateral Agent's first priority liens, therefore, remain in place until all Secured Obligations are paid in full and the CalGen Secured Debt is discharged.

In its March 12, 2007 DIP Refinancing Order, the Bankruptcy Court improperly diminished the rank of the Collateral Agent's pre-petition liens by making them junior to the liens that secure the DIP Obligations, except as to certain "Disputed CalGen Claims," which are defined in DIP Refinancing Order to include the pre-payment premium, interest, fees and expenses, and contract damage claims. (J.A. at 33). By ranking the liens securing the DIP Obligations senior to the Collateral Agent's liens except as to the four disputed categories, the Bankruptcy Court compromised the Collateral Agent's lien position in contravention of the plain terms of the Security Agreement and the Collateral Trust Agreement. The Bankruptcy Court further erred when it failed to preserve the Collateral Agent's right to continue collecting its fees and expenses for administering the collateral that secures the CalGen Secured Debt. Nothing in the Court's Orders expressly provides for the Collateral Agent to be compensated for its ongoing fees and expenses, even though it remains contractually obligated to continue performing.

## ARGUMENT

### I. THE BANKRUPTCY COURT IMPROPERLY SUBORDINATED THE COLLATERAL AGENT'S LIENS TO THE DEBTOR-IN-POSSESSION LIENS

The DIP Refinancing Order improperly subordinated the liens held by the Collateral Agent by ranking them junior to the liens securing the CalGen Secured Debt, except as to the four disputed CalGen Claims: "(i) CalGen Makewhole Payment, (ii) entitlement to interest

(whether default or otherwise) sought by or on account of CalGen Secured Debt, (iii) claims for fees and expenses that may ultimately be allowed, and (iv) any and all claims, including without limitation, contract damage claims." (J.A. at 33). Allowing the Collateral Agent's liens to retain priority for only the Disputed CalGen Claims is contrary to the terms of the Security Agreement, and the Collateral Trust Agreement, and does not adequately protect the Collateral Agent's security interests.

The Collateral Trust Agreement and Security Agreement grant the Collateral Agent first priority, continuing liens that survive until all secured obligations are satisfied. Under those agreements, the Collateral Agent's liens cannot be subordinated or discharged except upon payment in full and discharge of all outstanding Secured Obligations, which include all accrued interest, even if "not enforceable, allowable or allowed as a claim in such [insolvency] proceeding." (J.A. at 1127, 1152). Here, because the Bankruptcy Court deferred ruling on default interest (J.A. at 13), the Secured Obligations could not have not been paid in full and completely discharged. Therefore, under the clear terms of the Security Agreement and the Collateral Trust Agreement, the Collateral Agent's first priority, continuing liens should not have been released or subordinated by the Bankruptcy Court.

The Collateral Agent liens "shall remain in full force and effect with respect to <u>all</u> Collateral until the Secured Obligations Termination Date," which is "the date on which <u>all</u> Secured Obligations . . . have been paid in full in cash." (J.A. at 1049-50, 1060-61, 1127) (emphasis added). Nothing in either the Security Agreement or Collateral Trust Agreement contemplates <u>partial</u> release of the liens upon <u>partial</u> satisfaction of the Secured Obligations. There are good reasons why the parties structured the Collateral Agent's liens to remain in full force and effect until all debt was paid in full and finally discharged. For one thing, the

- 3 -

10495958

Collateral Agent's administrative duties monitoring the Collateral remain unabated until all obligations are completely satisfied.  For another, to avoid the difficultly inherent in valuing a partial satisfaction, the liens were to remain in full force and effect until all obligations were satisfied and the entire debt discharged.  The Collateral Agent's first priority liens thus were intended to remain in effect until all Secured Obligations are paid in full and discharged.

By limiting the Collateral Agent's liens to only the CalGen Disputed Claims, the Bankruptcy Court improperly subordinated the Collateral Agent's liens, contrary to the express terms of the Security Agreement and the Collateral Trust Agreement.  Accordingly, the Court's orders should be vacated and remanded to the Bankruptcy Court to restore the Collateral Agent's liens to the first priority position until all outstanding issues – including default interest – have been adjudicated, and all Secured Obligations fully satisfied and discharged.

## II.     THE BANKRUPTCY COURT FAILED TO PROVIDE FOR ONGOING COMPENSATION OF THE COLLATERAL AGENT'S FEES AND EXPENSES

The CalGen Debtors' agreement to pay the fees and expenses of the Collateral Agent, by its terms, "survive[s] repayment of all other Secured Obligations."  (J.A. at 1164-65).  The Collateral Agent's fees and expenses are secured by its liens.  (J.A. at 1050).  So long as the Collateral Agent remains obligated to continue servicing the collateral that secures the CalGen Senior Secured Debt, the CalGen Debtors must continue to pay the Collateral Agent's fees and expenses.  The Bankruptcy Court erred by not providing expressly for the ongoing payment of the Collateral Agent's secured fees and expenses.  Without such an explicit order, the Collateral Agent remains contractually obligated to service the Collateral without any assurance that it will be compensated for doing so.  The Court's Orders should therefore be amended to provide for the payment of the Collateral Agent's ongoing fees and expenses.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in the Collateral Agent's Opening Brief, the DIP Refinancing Order and the Amended Claims Order should be vacated, and this matter remanded to the Bankruptcy Court with instructions to restore the Collateral Agent's liens to their first priority position until full discharge of the CalGen Secured Debt, and until that time, to provide for ongoing payment of the Collateral Agent's fees and expenses, including the fees and costs associated with this appeal.

Dated: July 9, 2007

**WILMINGTON TRUST COMPANY,**
**as Collateral Agent**

By its attorneys

*/s/ Christopher M. Desiderio*
Amanda D. Darwin, Esq. (AD 2719)
Richard C. Pedone, Esq. (Admitted Pro Hac Vice)
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110
Telephone: (617) 345-1305
Facsimile: (617) 345-1300
Email: rpedone@nixonpeabody.com

and

Christopher M. Desiderio, Esq. (CD 6929)
Nixon Peabody LLP
437 Madison Avenue
New York, NY 10022
Tel. (212) 940-3000
Fax: (212) 940-3111
Email: cdesiderio@nixonpeabody.com