**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | |
|---|---|
| **In re** : | |
| : | **Chapter 11** |
| : | |
| **CALPINE CORPORATION,** *et al.*, : | **Case No. 05-60200 (BRL)** |
| : | |
| : | **(Jointly Administered)** |
| : | |

---------------------------------------------------------------x

| | |
|---|---|
| **HSBC BANK USA, NATIONAL** : | |
| **ASSOCIATION, AS INDENTURE** : | |
| **TRUSTEE, THE BANK OF NEW YORK,** : | **Case No. 1:07-cv-03088 (GBD)** |
| **AS ADMINISTRATIVE AGENT,** : | |
| **WILMINGTON TRUST FSB, AS** : | |
| **INDENTURE TRUSTEE, WILMINGTON** : | |
| **TRUST COMPANY, AS ADMINISTRATIVE** : | |
| **AGENT, AND MANUFACTURERS** : | |
| **& TRADERS TRUST COMPANY,** : | |
| **AS INDENTURE TRUSTEE,** : | |
| : | |
| **Appellants,** : | |
| : | |
| **– against –** : | |
| : | |
| **CALPINE CORPORATION, THE OFFICIAL** : | |
| **COMMITTEE OF UNSECURED** : | |
| **CREDITORS OF CALPINE CORPORATION,** : | |
| **AND THE OFFICIAL COMMITTEE OF** : | |
| **EQUITY SECURITY HOLDERS,** : | |
| : | |
| **Appellees.** : | |

---------------------------------------------------------------x    *caption continued on next page*

10620667

```
--------------------------------------------------------------x
CALPINE CORPORATION, THE OFFICIAL    :
COMMITTEE OF UNSECURED               :
CREDITORS OF CALPINE CORPORATION,    :
AND THE OFFICIAL COMMITTEE OF        :
EQUITY SECURITY HOLDERS,             :
                                     :
              Appellants,            :
                                     :
          – against –                :
                                     :
HSBC BANK USA, NATIONAL              :
ASSOCIATION, AS INDENTURE            :
TRUSTEE, THE BANK OF NEW YORK,       :
AS ADMINISTRATIVE AGENT,             :
WILMINGTON TRUST FSB, AS             :
INDENTURE TRUSTEE, WILMINGTON        :
TRUST COMPANY, AS ADMINISTRATIVE     :
AGENT, AND MANUFACTURERS             :
& TRADERS TRUST COMPANY,             :
AS INDENTURE TRUSTEE,                :
                                     :
              Appellees.             :
--------------------------------------------------------------x
```

## JOINT REPLY BRIEF OF APPELLANTS WILMINGTON TRUST FSB AS INDENTURE TRUSTEE AND WILMINGTON TRUST COMPANY AS ADMINISTRATIVE AGENT

**NIXON PEABODY LLP**
Amanda D. Darwin, Esq. (AD 2719)
Richard C. Pedone, Esq. *(Admitted Pro Hac Vice)*
Dennis A. Murphy, Esq. (*Admitted Pro Hac Vice*)
100 Summer Street
Boston, MA 02110
Telephone: (617) 345-1000

- and -

Christopher M. Desiderio, Esq. (CD 6929)
437 Madison Avenue
New York, NY 10022
Telephone: (212) 940-3000

Attorneys for
Wilmington Trust FSB as Indenture Trustee and
Wilmington Trust Company as Administrative Agent

10620667

## TABLE OF CONTENTS

PRELIMINARY STATEMENT…………………………………………………..................1

ARGUMENT………………………………………………………………………..……3

I.    IN THE ABSENCE OF STATUTORY AUTHORITY PERMITTING THE
      MODIFICATION OF STATE LAW RIGHTS, DEBTORS MUST HONOR THE
      STATE LAW RIGHTS OF CREDITORS……………………………………..............3

      A.    Bankruptcy Law Recognizes The Legally Cognizable Claims Of
            Creditors Arising Under State Law………………………………………………4

      B.    Bankruptcy Law Only Allows Prepayment In Breach Of A No-Call Provision
            Pursuant To A Confirmed Plan Of Reorganization …………………………..5

II.   DAMAGES FOR BREACH OF THE PREPAYMENT PROVISIONS
      WERE PROPERLY AWARDED BECAUSE THEY WERE NOT
      "UNLAWFUL" OR VOID FOR ILLEGALITY…..…………………………………6

      A.    The Prepayment Prohibitions Are Not Void For Illegality Or
            As Against Public Policy, So Damages Were Properly Awarded
            For Their Breach………………………………………………………………..7

      B.    Even If the No-Call Clauses Were Void, Damages Were Properly Awarded
            For Breach of the Remainder Of The Prepayment Provisions……………...9

III.  PREPAYMENT PREMIUMS ARE COLLECTABLE
      AFTER ACCELERATION……………………………………………………………11

      A.    Automatic Acceleration Of The Debt Upon Filing a Bankruptcy
            Petition Does Not Defeat The Prepayment Premiums………………………12

      B.    The Absence Of A Clause Specifically Providing For A Prepayment
            Premium Upon Acceleration Does Not Defeat A Claim For
            A Prepayment Premium………………………………………………………15

CONCLUSION………………………………………………………………………..19

## TABLE OF AUTHORITIES

### FEDERAL CASES

In re 360 Inns, Ltd., 76 B.R. 573 (Bankr. N.D. Tex. 1987)................................................7

In re 433 South Beverly Drive, 117 B.R. 563 (Bankr. C.D. Calif. 1990)................. passim

In re Adelphia Communications Corp., 342 B.R. 142 (Bankr. S.D.N.Y. 2006) ................6

In re AE Hotel Venture, 321 B.R. 209 (Bankr. N.D. Ill. 2005)................................. passim

In re Anchor Resolution Corp., 221 B.R. 330 (Bankr. D. Del. 1998) ................................7

Continental Sec. Corp., 193 B.R. 769 aff'd, 104 F.3d 359 (4th Cir. 1996) ........................7

In re Eastview Estates II, 713 F.2d 443 (9th Cir. 1983) .......................................................4

In re Fin. Ctr. Assocs. of E. Meadow, L.P., 140 B.R. 829 (Bankr. E.D.N.Y. 1992).........12

In re Imperial Coronado Partners, Ltd., 96 B.R. 997 (B.A.P. 9th Cir. 1989) ..........9, 10, 12

In re LHD Realty Corp., 726 F.2d 327 (7th Cir. 1984) ...........................................9, 10, 12

In re Ovetsky, 100 B.R. 115 (Bankr. N.D. Ga. 1989)...........................................................4

In re Ridgewood Apartments of Dekalb Co., Ltd., 174 B.R. 712 (Bankr. S.D.
    Ohio 1994) ...................................................................................................12, 13, 14

In re Skyler Ridge, 80 B.R. 500 (Bankr. C.D. Cal. 1987) ....................................10, 14, 18

Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co., 127 S. Ct. 1199 (2007)...................3, 4

U.S. v. Winstar, 518 U.S. 839 (1996) ..................................................................................6

United Merchants and Manufacturers, Inc. v. Equitable Life Assurance Soc'y, 674
    F.2d 134 (2d Cir. 1982)................................................................................................2

In re Vanderveer Estates Holdings, Inc., 283 B.R. 122 (Bankr. E.D.N.Y.
    2002) .........................................................................................................12, 13, 14

Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 67 S. Ct. 237,
    91 L. Ed. 162 (1946) ....................................................................................................4

In re Vest Associates, 217 B.R. 696 (Bankr. S.D.N.Y. 1998) ............................................7

## STATE CASES

Arthur v. Burkich, 131 A.D.2d 105 (N.Y. App. Div. 3d Dep't 1987) ................................2

Bilordeaux v. Bencke Lithographic Co., 9 N.Y.S. 507 (N.Y. Ct. Common Pleas 1889) ...........................................................................................................3

Bolivar v. Monnat, 232 A.D. 33 (N.Y. App. Div. 4th Dep't 1931) ...................................3

Caruso v. Allnet Comm'cn Servs., Inc., 242 A.D. 484 (N.Y. App. Div. 1st Dep't 1997) ...........................................................................................................5

Empire Magnetic Imaging, Inc. v. Comprehensive Care of N.Y., P.C., 271 A.D. 472 (N.Y. App. Div. 2d Dep't 2000)........................................................5

McCall v. Frampton, 415 N.Y.S.2d 752 (N.Y. Sup. Ct. 1979)........................................3, 4

Royal Ins. Co. of Am. v. CNF Constructors, Inc., 1995 WL. 4204 (S.D.N.Y. January 5, 1995)....................................................................................6

Town of Tonawanda v. Stapell, Mumm & Beals Corp, et. al., 240 A.D. 472 (4th Dep't 1934) aff'd 265 N.Y. 630 (1934) ........................................................6

## FEDERAL STATUTES

11 U.S.C. § 101(5) ...........................................................................................................4

11 U.S.C. §§ 1101 - 1174 .................................................................................................15

11 U.S.C. §§ 1121 - 1129 ...................................................................................................1

11 U.S.C. § 502(b) ................................................................................................... passim

11 U.S.C. § 506(b) ................................................................................................... passim

U.S. Const. Article 1, § 8, Clause 4 ...................................................................................3

Appellants Wilmington Trust FSB, as Indenture Trustee, and Wilmington Trust Company, as Administrative Agent (together, the "First Priority Debt Representatives"), submit this brief in opposition to the opening briefs of the Debtors (Doc. No. 20), the Unsecured Creditors' Committee (Doc. No. 22), and the Equity Committee (Doc. No. 19) (the Unsecured Creditors' Committee and the Equity Committee are collectively referred to herein as the "Committees") and in further support of the First Priority Representatives' Joint Opening Brief (Doc. No. 18) (the "First Priority Reps' Brief").[1]

## PRELIMINARY STATEMENT

All of the issues on appeal before this Court must be considered in light of the voluntary choices that the CalGen Debtors have made.  The facts related to these choices were not contested before the Bankruptcy Court.  In contrast with many of the cases that the Debtors and the Committees cite, the facts in this case involve: (i) Debtors that filed voluntary petitions before any CalGen lender even threatened, let alone acted on, any enforcement right, and (ii) Debtors that voluntarily sought leave to prepay the CalGen Secured Debt ahead of the maturity date and outside the plan confirmation process.  Here the Debtors voluntarily sought to seize the economic benefit of an early refinancing ahead of the plan process, and they asked the Bankruptcy Court, and now ask this Court, to allow them to escape the payment of the premiums and damages that they concede they would be contractually obligated to pay to the First Priority Debt Representatives outside of bankruptcy.  The Debtors prepaid the First Priority Indebtedness only a few days ahead of the contractually permitted date on which prepayment with premium could be made.  Notably, the Debtors and the Committees did not dispute that the First Priority Debt Representatives are wildly oversecured.

---

[1]    Defined terms used herein have the same meaning as in the First Debt Representatives' Joint Opening Brief.

In the First Priority Reps' Brief, we argued that the Bankruptcy Court improperly held that: (a) prepayment could take place outside of a plan of reorganization; and (b) the prepayment premium claims of the First Priority Debt Representatives were unsecured claims for damages instead of secured claims. In response, the Debtors and Committees contend that it was error for the Bankruptcy Court to award even unsecured damages. The Debtors and Committees claim that the Bankruptcy Court's enforcement of the pre-payment prohibition, or "no-call" provision, would have been "unlawful," and that no compensable damages resulted from their breach of that "unlawful" contract provision. (Debtors' Br. at 14). But the Debtors and Committees conflate the concept of an unlawful contract provision that is void due to illegality with an otherwise valid contract provision that cannot be specifically enforced in the context of Chapter 11 bankruptcy proceedings. The Bankruptcy Court did not "void" the pre-payment provision due to fraud or illegality under state law or the Bankruptcy Code. To the contrary, the Bankruptcy Court permitted the Debtors to refinance, but recognized that the First Priority Debt Representatives would suffer damages resulting from the breach of the pre-payment prohibition. For the reasons stated herein and in the First Priority Reps' Brief, such damages should have been awarded as secured claims. In the alternative, if not allowed as secured claims, the Bankruptcy Court's award of unsecured damages for the breach of the pre-payment prohibitions should not be disturbed on appeal.

In addition to their argument that the pre-payment prohibitions were "unlawful," the Debtors and Committees also argue that no prepayment premiums are due because the debt at issue had automatically accelerated and matured upon the voluntary filing of their Chapter 11 petitions. None of the cases cited by the Debtors or the Committees, however, support disallowing a prepayment premium solely because a debtor voluntary files a bankruptcy petition.

Moreover, even where debt instruments do not expressly provide for prepayment premiums post-acceleration, such payments may be awarded in accordance with the applicable standard under 11 U.S.C. § 506(b).  Nonetheless, even if automatic acceleration in bankruptcy does in fact defeat the premiums as allowable secured claims under section 506(b), then the First Priority Debt Representatives are entitled to damages caused by the default.

## ARGUMENT

I.    **IN THE ABSENCE OF STATUTORY AUTHORITY PERMITTING THE MODIFICATION OF STATE LAW RIGHTS, DEBTORS MUST HONOR THE STATE LAW RIGHTS OF CREDITORS**

The Bankruptcy Clause of the Constitution authorizes Congress to enact uniform laws governing bankruptcy.[2]  The current incarnation of the Bankruptcy Code was enacted in 1978.[3]  As the Supreme Court has repeatedly stated, rights arising under state law must be honored by bankruptcy courts unless Congress has elected to modify such rights.  This fundamental principle of federalism was reiterated as recently as March 20, 2007 by the Supreme Court in Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.[4]  The Debtors and Committees asked the Bankruptcy Court, and now they ask this Court, to disregard that bedrock principle and to modify state law rights where no statutory authority for such modification exists.  In essence, the Debtors and the Committees ask this Court to disregard the fact that the American bankruptcy system is code based, and the fundamental principle that if the Bankruptcy Code does not authorize the relief requested, then the Bankruptcy Court does not have the authority to grant it.

---

[2]    The U.S. Constitution grants Congress the authority to "establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States." U.S. CONST. ARTICLE 1, § 8, CLAUSE 4.

[3]    Although the Bankruptcy Code has been the subject of numerous amendments, including the 2005 Bankruptcy and Consumer Protection Act, such amendments did not change the overall regime instituted by the Bankruptcy Code.

[4]    127 S. Ct. 1199, 1204 (2007).

A.    **Bankruptcy Law Recognizes The Legally Cognizable Claims Of Creditors Arising Under State Law**

This appeal addresses two issues where bankruptcy law and state law intersect, namely: (1) can prohibitions against prepayment that are enforceable under state law be ignored in bankruptcy; and (2) are lenders entitled to damages when bankruptcy law allows otherwise enforceable provisions in loan documents to be breached?  Legally cognizable claims arising under applicable non-bankruptcy law must be honored in bankruptcy unless the Bankruptcy Code specifically disallows such claims.[5]  Congress has the ability to legislate alterations, limitations and bars to certain claims.  See, e.g., 11 U.S.C. § 502(b) (specifically limiting dollar amount of various claims).  Notably, no provision of the Bankruptcy Code modifies or invalidates claims for prepayment premiums that are otherwise valid under applicable state law. The Supreme Court in Travelers recently reaffirmed the rule that state law governs the substance of the allowance of claims in bankruptcy:

> [The] basic federal rule in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law. Accordingly, when the Bankruptcy Code uses the word "claim" -- which the Code itself defines as a "right to payment," 11 U.S.C. § 101(5)(A) -- it is usually referring to a right to payment recognized under state law. As we stated in Butner, "property interests are created and defined by state law," and "unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."[6]

---

[5]    Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co., 127 S. Ct. 1199, 1204 (2007) ("'Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code.'") (quoting Raleigh v. Illinois Dep't of Revenue, 530 U.S. 15, 20 (2000)).  It is well settled that the validity and legality of claims is generally determined by applicable nonbankruptcy law.  See, e.g., In re Eastview Estates II, 713 F.2d 443 (9th Cir. 1983); In re Ovetsky, 100 B.R. 115 (Bankr. N.D. Ga. 1989).

[6]    Travelers, 127 S. Ct. at 1205 (internal citations omitted) (citing Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 161, 67 S. Ct. 237, 91 L. Ed. 162 (1946) ("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law.").

As discussed more fully below, the prepayment premium claims of the First Priority Debt Representatives are cognizable under state law, and no provision in the Bankruptcy Code limits, eliminates, or alters the First Priority Debt Representatives' entitlement to have their claim amounts and their status as secured claimants, determined in accordance with applicable state law.

>   **B.      Bankruptcy Law Only Allows Prepayment In Breach Of A No-Call Provision Pursuant To A Confirmed Plan Of Reorganization**

The Bankruptcy Court permitted the CalGen Debtors to prepay $2.6 billion of secured debt and completely restructure the finances of the CalGen Debtors by the allowance of a motion.  While the Bankruptcy Code contains a carefully balanced statutory scheme that allows such restructurings to take place in connection with the confirmation of a plan of reorganization, no authority exists to permit mid-stream refinancing in breach of contractual prohibitions barring prepayment that are valid under applicable state law.  See 11 U.S.C. §§ 1121-1129.  Pursuant to the Bankruptcy Code, and as discussed more fully in the First Priority Reps' Brief, the First Priority Debt Representatives and the First Priority Debtholders were deprived of certain procedural and substantive protections that they would have been afforded had such alteration of their rights occurred in connection with a plan confirmation process.   In addition, it was only by virtue of this unauthorized procedural short-cut that the Debtors managed to obtain authority to prepay the First Priority Debt Representatives prior to April 2, 2007.  The Debtors concede that had they waited a mere four days, until April 2, 2007, to prepay the First Priority Debt Representatives, they would have been required to pay the 2.5% premium provided for in the agreements in full, and as a secured claim, just as the interest and principal was paid.

## II.  DAMAGES FOR BREACH OF THE PREPAYMENT PROVISIONS WERE PROPERLY AWARDED BECAUSE THEY WERE NOT "UNLAWFUL" OR VOID FOR ILLEGALITY

As a general matter, New York law forbids borrowers from prepaying debt unless provided for in the loan documents or otherwise authorized by statute.[7]  Furthermore, where so provided, prepayment premiums have been upheld as enforceable under New York law.[8]  The Debtors contend that the prepayment prohibitions, or "no-call" provisions, in the First Priority Loan Documents were "unlawful" and thus the Debtors breach does not give rise to a cognizable claim for damages.  (Debtors' Br. at 14).  But those contractual clauses are not "unlawful." Rather, those clauses merely reiterate an unremarkable proposition of New York law: that there is no right to prepayment "in the absence of a prepayment clause."  This "rule has been settled law since the early 19th century."[9]

It is without question that the First Priority Debt Representatives were harmed by the prepayment.  The Bankruptcy Court's awarding of "dashed expectation" damages were meant to make the First Priority Debt Representatives whole from the Debtors' breach, and such award is basic black-letter contract law.[10]

---

[7]     Arthur v. Burkich, 131 A.D.2d 105, 106 (N.Y. App. Div. 3d Dep't 1987).

[8]     United Merchants and Manufacturers, Inc. v. Equitable Life Assurance Soc'y, 674 F.2d 134, 142-44 (2d Cir. 1982).

[9]     Arthur, 131 A.D.2d at 105.

[10]    "Expectancy damages are damages sufficient to give the promissee the equivalent of the benefit of its bargain by awarding a sum that, to the extent possible, will put the promisee in as good a position as it would have been in had there been performance." COMMERCIAL LITIGATION IN NEW YORK STATE COURTS § 44:9 (2d ed. 2005).  Although the Debtors have referenced the awarded damages as invented "dashed expectation" damages, even the Committees acknowledge that the Court awarded the First Priority Debt Representatives expectation damages, which is a legally cognizable claim.  (Creditors' Committee Br. at 10; Equity Committee Br. at 11.)

### A.    The Prepayment Prohibitions Are Not Void For Illegality Or As Against Public Policy, So Damages Were Properly Awarded For Their Breach

The purportedly offending prepayment prohibition clauses state: "The Issuers may not redeem all or any part of the Notes prior to April 1, 2007"; and "The First Priority Term Loans may not be voluntarily prepaid at any time on or prior to April 1, 2007."  (J.A. at 141, 218, 721-22).  These terms embody the well-settled rule under New York law that prepayment is generally forbidden unless the loan documents expressly provide for prepayment.  Here, prepayment was contractually forbidden before April 2, 2007.  Thereafter, it was permitted subject to the 2.5% prepayment premium.  There is nothing unlawful about a contract provision that states the applicable default rule of law.

In stark contrast to the benign prepayment provisions, the New York reporters are filled with examples of "unlawful" contractual provisions that are void for illegality and therefore no action lies for their breach.  A personal services contract that called for performance on Sunday, for example, "in violation of an express statute, [which prohibited labor on Sundays] was therefore illegal and void; and neither party thereto can have redress against the other for a breach."[11]  Similarly, an action for breach of warranty from the sale of whiskey during Prohibition was held to lie for the buyer, but not the seller because the "National Prohibition Act makes the sale but not the purchase of liquor unlawful"[12]  There was also no action for breach of a contract where "plaintiff pleads as the consideration for this agreement the commission of adultery . . . . a class B misdemeanor."[13]

---

[11]   Bilordeaux v. Bencke Lithographic Co., 9 N.Y.S. 507, 508 (N.Y. Ct. Common Pleas 1889).

[12]   Bolivar v. Monnat, 232 A.D. 33, 38 (N.Y. App. Div. 4th Dep't 1931) ("If the contract was illegal and invalid as to both parties, there could be no warranty, either express or implied, connected therewith, and, if there was no such warranty, there could be no breach thereof.  A cause of action cannot arise out of an illegal contract.").

[13]   McCall v. Frampton, 415 N.Y.S.2d 752, 757 (N.Y. Sup. Ct. 1979) ("[I]t is the opinion of this court that the contract, as alleged by plaintiff, is clearly subject to the defense of illegality.  It is contrary to the public policy
*(Footnote continued on next page)*

7

New York law thus recognizes the defense of illegality to contract claims where agreements are contrary to public policy or against the law. Such unlawful or illicit provisions are void, and no action lies for their breach. Illegal contract provisions are voided to encourage parties to keep their agreements within the bounds of the law by denying the parties any redress for breach, as summarized by the court in the McCall case:

> It is settled that agreements against public policy are unlawful and void. This rule is not based on a desire to benefit the party who breaches an illegal contract, but on a desire to protect the common weal, the general welfare of society being damaged by the very making of such a contract. By refusing to enforce such a contract and leaving the parties without a legal remedy for breach, society is protected by discouraging the making of contracts contrary to the common good.

Id. at 758 (citations omitted).

According to the Debtors' and Committees' arguments, the prepayment prohibitions at issue here are no different than contracts involving adultery, selling alcohol during Prohibition, or working on Sundays when that too was against the law. Not surprisingly, neither the Debtors nor the Committees cite any law or public policy violated by the no-call provisions. To the contrary, the prepayment prohibitions reflect the longstanding New York rule prohibiting the prepayment of loans absent express permission to do so. Courts have consistently held that prepayment prohibitions and prepayment penalties do not violate public policy.[14] The Bankruptcy Court's damages award for breach of those provisions, therefore, should not be disturbed on appeal.

---

*(Footnote continued from previous page)*
of this state, which recognizes the state of marriage and the protection thereof as essential to the welfare of our society. It requires, in its performance, the commission of adultery, which remains a crime in this state. This contract as alleged . . . . is void and unenforceable.").

[14]   See, e.g., In re 433 South Beverly Drive, 117 B.R. 563, 568 (Bankr. C.D. Calif. 1990) ("Nothing in [the Bankruptcy Code] automatically invalidates a provision for a Prepayment Premium which is otherwise enforceable under applicable non-bankruptcy law.").

10620667

**B.    Even If The No-Call Clauses Were Void, Damages Were Properly Awarded For Breach Of The Remainder Of The Prepayment Provisions**

As discussed above, contractual provisions prohibiting prepayment and/or providing for the payment of premiums in connection with prepayment are enforceable under New York law. But, in the alternative, even if such provisions were deemed "unlawful," New York courts would not void an entire contract where the illegal provision could be severed.  Only the illegal clause would be void: "Rather than consider the illegal contract as void *in toto*, the better view is to sever the offending provision and validate the basic agreement; under this approach, there is a cause of action for breach of the valid remainder of the contract."[15]

Here, even if the prepayment prohibition in the first sentence were somehow invalidated, there would be an actionable claim for breach of the remainder of the Prepayment Provisions. The Prepayment Provisions do not stop after the first sentence.  They go on to provide a formula (2.5% of the unpaid principal) for calculating the Prepayment Premiums for the period after the prepayment prohibition.  The first sentence of the Prepayment Provisions prohibits prepayment before April 2, 2007, and the sentence that immediately follows it permits prepayment between April 2, 2007 and March 31, 2008, subject to the 2.5% Prepayment Premiums.  The Bankruptcy Court, the Debtors, and the Committees misconstrue those two consecutive sentences as separate, unrelated provisions, when, in fact, they are interrelated parts of the same section. Their reading of the Prepayment Provisions defies logic and common sense.  If their interpretation were correct, then the prepayment prohibition would become automatically void without any legal recourse simply by filing a petition for bankruptcy protection.  Neither the

---

[15]    See Caruso v. Allnet Comm'cn Servs., Inc., 242 A.D. 484, 485 (N.Y. App. Div. 1st Dep't 1997); accord Empire Magnetic Imaging, Inc. v. Comprehensive Care of N.Y., P.C., 271 A.D. 472, 478 (N.Y. App. Div. 2d Dep't 2000).

10620667

Bankruptcy Code nor any other statutory authority supports their position. The Bankruptcy Code does not allow oversecured debtors to walk away from their contractual obligations.

The Debtors cite <u>In re Adelphia Communications Corp.</u>[16] to support their argument that a lender cannot recover damages for a breach if that remedy is not expressly provided for in the agreement.  The Debtors fail to recognize that the First Priority Loan Documents did provide for a remedy, and that is precisely the remedy the Bankruptcy Court used – the 2.5% premium provided for under the First Priority Loan Documents.

Even if the Bankruptcy Court's decision not to specifically enforce the prepayment prohibition against the Debtors was correct, that decision does not eviscerate the Prepayment Provisions from the First Priority Loan Documents.  Just because the prepayment prohibition cannot be specifically enforced in the plan context in bankruptcy, it does not mean that the 2.5% Prepayment Premiums are void or invalid. [17]  For the reasons discussed in the First Priority Reps' Brief (pp. 13-24), the Prepayment Premiums should have been allowed as a secured claim under section 506(b).  However, even if the First Priority Loan Documents did not provide for a specific formula for damages, the First Priority Debt Representatives should be entitled to damages for the Debtors' voluntary breach of the agreement, and those damages are payable as secured claims under the guarantees and security documents at issue.[18]

---

[16]    342 B.R. 142 (Bankr. S.D.N.Y. 2006).

[17]    As discussed in Section I (B) of this Reply Brief, it remains the position of the First Priority Debt Representatives that the prepayment that took place was impermissible because it was not done in accordance with the statutory framework for plans of reorganization provided for by the Bankruptcy Code.

[18]    <u>See, e.g.,</u> <u>U.S. v. Winstar</u>, 518 U.S. 839, 885 (1996) (stating that, "damages are always the default remedy for breach of contract" even if a contract does not provide a specific remedy by its terms); <u>Town of Tonawanda v. Stapell, Mumm & Beals Corp, et. al.</u>, 240 A.D. 472, 473 (4th Dep't 1934) (holding, "[i]n an action for damages for breach of a contract the damages are such as ordinarily and naturally flow from the breach. 'The foundation upon which rules in relation to the measure of damages in actions for a breach of contract are based is that of indemnity to the injured party.'") (internal citations omitted) <u>aff'd</u> 265 N.Y. 630 (1934); <u>Royal Ins. Co. of Am. v. CNF Constructors, Inc.</u>, 1995 WL 4204 (S.D.N.Y. January 5, 1995) (holding, "to limit a party's right to consequential damages, the parties must do so *expressly* in the contract.") (emphasis in the original).

## III.    PREPAYMENT PREMIUMS ARE COLLECTIBLE AFTER ACCELERATION

In the First Priority Reps' Brief (pp. 17-21), the First Priority Debt Representatives surveyed the case law on prepayment premiums in the Chapter 11 context where the dispute centered on whether such premiums were "provided for under the agreement."  11 U.S.C. § 506(b).  The cases analyzing that issue under section 506(b) all follow the same pattern: prepayment premiums in debt instruments that include some formula from which damages may reasonably be calculated are allowed as secured claims;[19] those that fail to specify any number or formula anywhere in the document are not.[20]  (First Priority Reps' Brief at 17-21).  The Debtors and Committees cite the same cases, but fail to appreciate that not one of them supports their untenable position *vis-à-vis* the First Priority Debt Representatives.  (Debtors' Opening Br. at 13 fn. 13).

The Debtors and the Committees claim that the First Priority Indebtedness was, in fact, not prepaid because the maturity dates of the loans were accelerated automatically upon the bankruptcy filings such that they became due and payable immediately as of the Petition Date, December 20, 2005.  (Debtors' Opening Br. at 15).  The Debtors and Committees further contend that only debt instruments containing acceleration clauses that expressly provide for premiums upon the prepayment of accelerated debt can be enforced against debtors in

---

[19]    See In re 360 Inns, Ltd., 76 B.R. 573, 575 (Bankr. N.D. Tex. 1987) (allowing secured prepayment premium where the court could reasonably calculate damages by borrowing the figure from another provision in the note, even though the note did not specify any penalty for prepayment at issue; In re Anchor Resolution Corp., 221 B.R. 330, 333 (Bankr. D. Del. 1998) (same where the applicable note purchase agreement "include[d] a formula for computing the make-whole amount"); In re AE Hotel Venture, 321 B.R. 209, 213 (Bankr. N.D. Ill. 2005) (same where "the Note set [] out the formula for calculating any prepayment premium"); In re 433 S. Beverly Dr., 117 B.R. 563, 568 (Bankr. C.D. Cal. 1990) (same where the "amount of the Prepayment Premium is calculated pursuant to a formula set forth in the promissory note").

[20]    See Continental Sec. Corp., 193 B.R. 769, 777 aff'd, 104 F.3d 359 (4th Cir. 1996) (affirming confirmation of a reorganization plan allowing prepayment without any premium where the note contained "no prepayment damages formula whatsoever"; In re Vest Associates, 217 B.R. 696, 699 (Bankr. S.D.N.Y. 1998) (Brozman, C.J.) (disallowing premium under section 506(b), even though the note prohibited prepayment, where the note was "silent as to any penalties or damages that would arise from the breach of this provision").

11

bankruptcy. No court, including the Bankruptcy Court in this case, has ever found that the mere filing of a voluntary bankruptcy petition defeated a prepayment premium. Nor has any court held that the only way to preserve a post-acceleration premium was through artful drafting. Although the Debtors have belabored this point in the Prepayment Motion and in their Opening Brief, they fail to acknowledge that the First Priority Loan Documents do not contain a provision relieving them of the obligation to pay the premium following acceleration. Under applicable New York law, which generally bars prepayment absent such an express contractual provision authorizing it, this would be an appropriate, and possibly necessary, provision to avoid any premium associated with the prepayment of debt following acceleration. Accordingly, the Debtors' and Committees' novel attempt to make bankruptcy-induced acceleration synonymous with the maturity date is an argument that is not supported by the applicable loan agreements, and therefore must fail.

Judge Lifland's Memorandum Decision and Order found "the 2.5% prepayment premium" provided for in the First Priority Loan Documents to be a "reasonable prox[y]" for the damages it awarded to the First Priority Debt Representatives. (J.A. at 11). The fact that the Bankruptcy Court borrowed the 2.5% damages figure straight out of the loan documents puts this case squarely among those where prepayment premiums have been allowed as secured claims under section 506(b). The resolution of this narrow issue is no more complicated than that.

### A. Automatic Acceleration Of The Debt Upon Filing A Bankruptcy Petition Does Not Defeat The Prepayment Premiums

As demonstrated in the First Priority Reps' Brief (pp. 24-28), under the applicable case law, it was the creditor's voluntary actions to accelerate the debt and affirmatively collect the debt prior to maturity, not the mere fact of acceleration induced by a voluntary bankruptcy filing, that defeated the prepayment premiums. Universally, the cases addressing the issue have found

10620667

that it is only by electing to accelerate that creditors voluntarily waived their prepayment premiums. No case has ever inflicted harm upon a creditor, and deprived them of a premium provided for in the applicable agreement, when the acceleration was caused merely by the Debtors' voluntary filing of a bankruptcy petition.

In LHD Realty Corp., the creditor affirmatively triggered acceleration and filed a motion for relief from stay in the bankruptcy court in order to foreclose, and by that election "voluntarily waived" the prepayment premium:

> Thus, the lender, by its acts, may establish that it prefers accelerated payment to the opportunity to earn interest over a period of years. It is not appropriate, under these circumstances, for the lender to receive a prepayment premium in lieu of the interest foregone since it has voluntarily waived the unpaid interest in the expectation of accelerated payment of the remaining principal. [21]

Similarly, the mortgage holder in Imperial Coronado sought to foreclose (albeit pre-petition), but there the prepayment premium was enforceable because the borrower chose not to deaccelerate the loan and instead sold the property to satisfy the debt.[22] The actions of the respective parties determined the outcomes in those cases, not the kind of automatic acceleration that occurs upon filing bankruptcy.

Unlike the creditors in LHD Realty and Imperial Coronado, the First Priority Debt Representatives have never taken any action whatsoever to accelerate the First Priority Indebtedness. To the contrary, it was the Debtors who filed voluntary bankruptcy petitions. The First Priority Debt Representatives have taken no enforcement actions to cause acceleration of the First Priority Indebtedness and therefore have done nothing to waive their contractual rights.

---

[21]   In re LHD Realty Corp., 726 F.2d 327, 331 (7th Cir. 1984).

[22]   In re Imperial Coronado Partners, Ltd., 96 B.R. 997 (B.A.P. 9th Cir. 1989); see also In re 433 S. Beverly Dr., 117 B.R. at 568-69 (enforcing prepayment premium where there was "no significant difference between the facts of this case and those present in Imperial Coronado").

The Debtors and Committees misread the case law. Nothing in <u>LHD Realty</u> – or any other case, for that matter – holds that the simple filing of a bankruptcy petition, which accelerates the loan <u>automatically</u>, defeats a prepayment premium. If that were the rule, then every prepayment premium in a loan document containing an acceleration clause would be rendered invalid upon filing a petition in bankruptcy because payment in bankruptcy would never be a <u>pre</u>-payment since the bankruptcy filing accelerates the debt and advances the date of maturity to the petition date. That precise argument has already been considered by one bankruptcy court and rejected:

> If automatic acceleration of a debt defeats a prepayment premium clause, such a clause could never be enforced in a bankruptcy case. A debtor, under such a rule, could always avoid the effect of a prepayment premium clause by filing a bankruptcy case. Neither the Bankruptcy Code nor case law compels so drastic a result. No bankruptcy policy compels the invalidation of a properly drawn prepayment premium clause in all cases.[23]

Sound reason supports this rule. Any other interpretation would void all prepayment premiums upon the filing of a bankruptcy petition. If that were the intention, then Congress would have provided for automatic invalidation of prepayment premium claims as it did with certain landlord claims.[24] However, such an automatic invalidation rule would create an impermissible incentive to file bankruptcy for the purpose of avoiding an otherwise valid prepayment premium. The Bankruptcy Code was never intended to aid debtors seeking solely to avoid valid contractual obligations to oversecured creditors, especially when there is no evidence that they are insolvent.

---

[23]   <u>In re Skyler Ridge</u>, 80 B.R. 500, 507 (Bankr. C.D. Cal. 1987); <u>see also</u> <u>In re 433 S. Beverly Dr.</u>, 117 B.R. 563, at 568-69 ("Nothing in title 11 automatically invalidates a provision for a Prepayment Premium which is otherwise enforceable under applicable non-bankruptcy law") (citing <u>In re Imperial Coronado Partners, Ltd.</u>, 96 B.R. 997 (9th Cir. B.A.P. 1989)).

[24]   <u>See</u> 11 U.S.C. § 502(b)(6) (providing formula limiting dollar amount of claims otherwise allowable under applicable state law).

14

**B.**     **The Absence Of A Clause Specifically Providing For A Prepayment Premium Upon Acceleration Does Not Defeat A Claim For A Prepayment Premium**

A corollary to the Debtors' argument that prepayment premiums are automatically invalidated upon acceleration is the argument that prepayment premiums remain valid in bankruptcy only where a debt instrument explicitly provides for payment of a premium upon acceleration.  (Debtors' Br. at 16-17).  That argument sidesteps the issue presented here, i.e., whether the Prepayment Premiums due under the applicable First Priority Loan Documents remain valid absent such a post-acceleration clause.  Just because other debt instruments may clarify that a prepayment premium is due upon acceleration does not render one that is silent on the issue invalid.  None of the cases cited by the Debtors were required to decide the issue of the enforceability of a prepayment premium without such a clause.  Not one of the cases cited by the Debtors or Committees involved automatic acceleration of debt upon a bankruptcy filing.  All are distinguishable.

In AE Hotel Venture, for example, the loan documents "expressly provide[d] for a prepayment premium even when debt is accelerated."[25]  In that case, however, the prepayment premium was hardly litigated: "the dispute here is simple . . . . because the facts are uncontested and because AE Hotel offers only token opposition to the prepayment premium [the lender] seeks."  Id. at 217.  More importantly, the lender in AE Hotel accelerated the debt upon the debtor's default before any bankruptcy filing.  It was only after the lender sought to foreclose that the debtor filed its petition for Chapter 11 protection.  As the court noted, "[t]he obvious purpose of the bankruptcy was to gain time to sell the hotel property and other assets of the estate."  Id. at 214.  Here, the CalGen Debtors, out of their own volition, filed Chapter 11

---

[25]     In re AE Hotel Venture, 321 B.R. 209, 213 (Bankr. N.D. Ill. 2005).

15

petitions and sought to prepay the CalGen Debt.  No party took any affirmative action to collect, accelerate, or foreclose on such debt, and in fact, quite the opposite was true.  <u>AE Hotel</u>, like <u>LHD Realty</u> and <u>Imperial Coronado</u>, turned on the actions of the parties, and does not support the Debtors' unprecedented proposition that debt accelerated automatically by filing bankruptcy defeats an otherwise enforceable prepayment premium, absent a specific provision to the contrary.

Similarly, in <u>Financial Center Associates</u> the mortgage lender filed an action to foreclose <u>before</u> the debtor filed a voluntary petition under Chapter 11.[26]  Relying on <u>LHD Realty</u>, the debtor argued that a lender loses its right to a prepayment premium when it elects to accelerate the debt.  <u>Id.</u> at 835.  The court ruled the prepayment premium enforceable because the note provided for the premium even in the event of acceleration.  <u>Id.</u>  As with <u>AE Hotel</u>, <u>Financial Center Associates</u> says nothing at all about automatic acceleration that results from the filing of a bankruptcy petition.  In both of those cases, the lender elected to accelerate before the petition was filed in bankruptcy.  Here, of course, the First Priority Debt Representatives took no action whatsoever to accelerate – before or after the CalGen Debtors filed their bankruptcy petitions.

Two other cases cited by the Committees, <u>Ridgewood Apartments</u> and <u>Vanderveer Estates Holdings</u>, also fail to address the situation presented here.  At issue in both cases was the enforceability of a yield maintenance premium for prepayment of a mortgage.  Both cases involved nearly identical clauses that provided for a yield maintenance premium for any prepayment, whether voluntary or involuntary, upon acceleration.  But neither case was decided on the basis of acceleration.  Both cases were decided in the context of plan confirmation proceedings.  Both are equally inapposite for other reasons as well.

---

[26]  <u>In re Fin. Ctr. Assocs. of E. Meadow, L.P.</u>, 140 B.R. 829, 830 (Bankr. E.D.N.Y. 1992).

In the first case, <u>Ridgewood Apartments</u>, the plan did not contemplate a yield maintenance premium because, the debtor claimed, the lender waived its claim to prepayment by accelerating the debt.[27]  The court ruled, in the context of the plan confirmation process, that there was no pre-payment: "It would be anomalous for acceleration of an obligation to be construed as a prepayment which triggered the application of a penalty."  <u>Id.</u> at 720.  But the court's "determination on the enforceability of the prepayment penalty [was not] based solely upon an acceleration by the lender."  <u>Id.</u> at 721.  Among other reasons, the lender in that case was unsecured and did not have the same protections afforded secured lenders under the Bankruptcy Code as are available to the First Priority Debt Representatives.  <u>Id.</u>

In the second case, <u>Vanderveer Estates Holdings</u>, the lender accelerated pre-petition (just as in <u>AE Hotel Venture</u> and <u>Financial Center Associates</u>).[28]  In <u>Vanderveer</u> the debtor's proposed plan did not include the yield maintenance premium.  There, the court required payment of the premium in order to confirm the plan.  <u>Id.</u> at 127.  The <u>Vanderveer</u> court never needed to decide whether the yield maintenance premium arose upon acceleration because without the yield maintenance premium, the lender's claim would be impaired.  <u>Id.</u> (citing § 1129(a)(7) of the Code, which guarantees that creditors in a Chapter 11 restructuring receive as much as they would in a Chapter 7 liquidation).  Notably, <u>Vanderveer</u> was decided under section 502, not 506(b), because acceleration – and the claim for a yield maintenance premium – arose pre-petition.  <u>Id.</u> at 131.  As a pre-petition acceleration case where the yield maintenance premium was decided under a plan of reorganization, <u>Vanderveer</u> has no bearing on the issues presented

---

[27]    <u>In re Ridgewood Apartments of Dekalb Co., Ltd.</u>, 174 B.R. 712, 720-21 (Bankr. S.D. Ohio 1994).

[28]    <u>In re Vanderveer Estates Holdings, Inc.</u>, 283 B.R. 122, 126 (Bankr. E.D.N.Y. 2002).

here, i.e., the effect of post-petition acceleration on a prepayment premium decided prior to the plan confirmation process.

None of the cases relied on by the Debtors or the Committees – AE Hotel, Financial Center Associates, Ridgewood Apartments or Vanderveer – addressed what effect, if any, automatic acceleration upon filing bankruptcy has on prepayment premiums.  In those cases, the presence of a clause that made prepayment premiums payable even after acceleration made it unnecessary for the courts to decide the precise question presented here.  The absence of such a clause does not in any way impact the Debtors' obligation to pay a post-acceleration prepayment premium, particularly where acceleration occurs automatically upon the voluntary filing of a bankruptcy petition.  For the reasons elucidated by the court in the only case to have squarely addressed the issue, Skyler Ridge, the Debtors' and Committees' acceleration arguments should be rejected.[29]

The Debtors and Committees argue that no-call provisions cannot be specifically enforced against Chapter 11 debtors because to do so would effectively keep debtors in bankruptcy for years or even decades until the loan matures.  However, this argument ignores the fact that the First Priority Indebtedness was payable, by its terms, a mere four days after the prepayment was actually made.  In addition, this argument ignores the specific statutory tools the Bankruptcy Code provides a debtor seeking to reorganize.  These statutory tools, such as the ability of a debtor to fully reinstate debt under § 1124(b), or to impair creditors' rights, are carefully spelled out in Chapter 11 of the Bankruptcy Code.  11 U.S.C. §§ 1101 – 1174.  Here, in

---

[29]     In re Skyler Ridge, 80 B.R. at 507 ("If automatic acceleration of a debt defeats a prepayment premium clause, such a clause could never be enforced in a bankruptcy case. A debtor, under such a rule, could always avoid the effect of a prepayment premium clause by filing a bankruptcy case.  Neither the Bankruptcy Code nor case law compels so drastic a result. No bankruptcy policy compels the invalidation of a properly drawn prepayment premium clause in all cases.").

10620667

a rush to seize the financial benefit of the healthy capital markets, the Debtors elected to pursue a path of litigation instead of utilizing the statutory processes for prepayment that Congress provided.

Here, where the Debtors sought to prepay voluntarily, and the First Priority Debt Representatives never sought to accelerate the First Priority Indebtedness, the prepayment premiums should be found due as part of the secured claims of the First Priority Debt Representatives.  The absence of a clause specifically providing for prepayment premiums upon bankruptcy-induced acceleration is immaterial.  Judge Lifland's damages award should be allowed as a secured claim under section 506(b).

## CONCLUSION

For the foregoing reasons, and for the reasons stated in the First Priority Debt Representatives' Joint Opening Brief, this Court should:

(1) either (a) vacate the three Prepayment Orders and remand this case with an order (i) awarding the First Priority Debt Representatives the 2.5% Prepayment Premiums, and applicable interest and amounts due as secured claims in connection with the repayment of the First Priority Notes and First Priority Term Loan Notes; (ii) ordering a prompt hearing on the issue of default interest; and, (iii) reinstating all claims asserted in the First Priority Debt Representatives' proofs of claim; or (b) in the alternative, vacate and remand the three Prepayment Orders with instructions not to permit prepayment outside a plan of reorganization that provides for payment in full of all amounts sought in the First Priority Debt Representatives' proofs of claim; and,

10620667

(2) grant the First Priority Debt Representatives such other and further relief as this Court deems proper and just.

Dated: July 9, 2007                    **WILMINGTON TRUST FSB as Indenture Trustee**
                                        **and**
                                        **WILMINGTON TRUST COMPANY,**
                                        **as Administrative Agent**

                                        By its attorneys

                                        */s/ Christopher M. Desiderio*
                                        Amanda D. Darwin, Esq. (AD 2719)
                                        Richard C. Pedone, Esq. (Admitted Pro Hac Vice)
                                        Dennis A. Murphy, Esq. (Admitted Pro Hac Vice)
                                        Nixon Peabody LLP
                                        100 Summer Street
                                        Boston, MA 02110
                                        Telephone: (617) 345-1305
                                        Facsimile: (617) 345-1300
                                        Email: rpedone@nixonpeabody.com


                                        and

                                        Christopher M. Desiderio, Esq. (CD 6929)
                                        Nixon Peabody LLP
                                        437 Madison Avenue
                                        New York, NY 10022
                                        Tel. (212) 940-3000
                                        Fax: (212) 940-3111
                                        Email: cdesiderio@nixonpeabody.com

10620667