**Appellants Brief Appendix Part 1**

KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Richard M. Cieri (RC 6062)
Marc Kieselstein (admitted pro hac vice)
David R. Seligman (admitted pro hac vice)
Edward O. Sassower (ES 5823)
James J. Mazza, Jr. (admitted pro hac vice)
Chad J. Husnick (admitted pro hac vice)

Counsel for the Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | ) **CHAPTER 11** |
| | ) |
| **CALPINE CORPORATION, ET AL.,** | ) **CASE NO. 05-60200 (BRL)** |
| | ) **JOINTLY ADMINISTERED** |
| **DEBTORS.** | ) |
| | ) |

## DEBTORS' JOINT PLAN OF REORGANIZATION
## PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

Dated: June 20, 2007

## TABLE OF CONTENTS

Page

INTRODUCTION..................................................................................................................1

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME, AND GOVERNING LAW** .............................................1
    A.    Defined Terms ........................................................................................1
    B.    Rules of Interpretation and Computation of Time:................................23
    C.    Reference to Monetary Figures..............................................................24
    D.    Reference to the Debtors or Reorganized Debtors ................................24

**ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS**...........................................24
    A.    DIP Facility Claims...............................................................................24
    B.    Administrative Claims ..........................................................................24
    C.    Priority Tax Claims...............................................................................24

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS** ................................................................................................................24
    A.    Classification of Claims and Interests...................................................24
    B.    Treatment of Classes of Claims and Interests.......................................26
    C.    Class Voting Rights ..............................................................................32
    D.    Acceptance or Rejection of the Plan .....................................................33

**ARTICLE IV. PROVISIONS FOR IMPLEMENTATION OF THE PLAN** ........................34
    A.    Substantive Consolidation.....................................................................34
    B.    Sources of Consideration for Plan Distributions ...................................35
    C.    Corporate Existence ..............................................................................36
    D.    Vesting of Assets in the Reorganized Debtors ......................................36
    E.    Cancellation of Debt and Equity Securities and Related Obligations ....37
    F.    Restructuring Transactions ...................................................................37
    G.    Post-Confirmation Property Sales.........................................................38
    H.    Corporate Action...................................................................................38
    I.    Certificate of Incorporation and Bylaws...............................................38
    J.    Effectuating Documents, Further Transactions .....................................38
    K.    Exemption from Certain Transfer Taxes and Recording Fees...............39
    L.    Directors and Officers of Reorganized Calpine.....................................39
    M.    Directors and Officers of Reorganized Debtors Other Than Calpine.....39
    N.    Employee and Retiree Benefits.............................................................40
    O.    Management and Director Equity Incentive Plans .................................40
    P.    Creation of Professional Fee Escrow Account ......................................40
    Q.    Preservation of Rights of Action...........................................................40

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES** ......................................................................................................................41
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ..........41

-i-

**TABLE OF CONTENTS (cont'd)**

B.  Cure of Defaults for Assumed Executory Contracts and Unexpired Leases .........42
C.  Executory Contracts and Unexpired Leases Relating to Projects to be Sold or Surrendered ..............................................................43
D.  Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases ..............................................................43
E.  Claims Based on Rejection of Executory Contracts and Unexpired Leases .........44
F.  Intercompany Contracts, Contracts, and Leases Entered Into After the Petition Date ..............................................................44
G.  Guarantees Issued or Reinstated After the Petition Date ......................................44
H.  Modification of Executory Contracts and Unexpired Leases Containing Equity Ownership Restrictions ..............................................................44
I.  Modifications, Amendments, Supplements, Restatements, or Other Agreements ..............................................................44
J.  Reservation of Rights ..............................................................45
K.  Nonoccurrence of Effective Date ..............................................................45

ARTICLE VI. PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS ..............................................................45
A.  Allowance of Claims and Interests ..............................................................45
B.  Claims and Interests Administration Responsibilities ...........................................45
C.  Estimation of Claims and Interests ..............................................................45
D.  Adjustment to Claims Without Objection ..............................................................46
E.  Time to File Objections to Claims ..............................................................46
F.  Disallowance of Claims or Interests ..............................................................46
G.  Offer of Judgment ..............................................................47
H.  Amendments to Claims ..............................................................47

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ..............................................................47
A.  Total Enterprise Value for Purposes of Distributions Under the Plan and the New Calpine Stock Reserve ..............................................................47
B.  Distributions on Account of Claims and Interests Allowed as of the Effective Date ..............................................................47
C.  Distributions on Account of Claims and Interests Allowed After the Effective Date ..............................................................47
D.  Delivery of Distributions ..............................................................49
E.  Claims Paid or Payable by Third Parties ..............................................................53
F.  Treatment of Interests ..............................................................53

ARTICLE VIII. EFFECT OF CONFIRMATION OF THE PLAN ..............................................................54
A.  Discharge of Claims and Termination of Interests ..............................................................54
B.  Subordinated Claims ..............................................................54
C.  Compromise and Settlement of Claims and Controversies ..............................................................54
D.  **Releases by the Debtors** ..............................................................55
E.  **Exculpation** ..............................................................55
F.  **Releases by Holders of Claims and Interests** ..............................................................55
G.  **Injunction** ..............................................................56
H.  Protection Against Discriminatory Treatment ..............................................................56

-ii-

## TABLE OF CONTENTS (cont'd)

| | | |
|---|---|---|
| I. | Setoffs | 57 |
| J. | **Recoupment** | 57 |
| K. | **Release of Liens** | 57 |
| L. | Document Retention | 57 |
| M. | Reimbursement or Contribution | 58 |

**ARTICLE IX. ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS.........58**

| | | |
|---|---|---|
| A. | Professional Claims | 58 |
| B. | Other Administrative Claims | 59 |

**ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN.........60**

| | | |
|---|---|---|
| A. | Conditions to Confirmation | 60 |
| B. | Conditions Precedent to Consummation | 60 |
| C. | Waiver of Conditions Precedent | 60 |
| D. | Effect of Non-Occurrence of Conditions to Consummation | 61 |
| E. | Satisfaction of Conditions Precedent to Confirmation | 61 |

**ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN.........61**

| | | |
|---|---|---|
| A. | Modification and Amendments | 61 |
| B. | Effect of Confirmation on Modifications | 62 |
| C. | Revocation or Withdrawal of Plan | 62 |

**ARTICLE XII. RETENTION OF JURISDICTION.........62**

**ARTICLE XIII. MISCELLANEOUS PROVISIONS.........64**

| | | |
|---|---|---|
| A. | Immediate Binding Effect | 64 |
| B. | Additional Documents | 64 |
| C. | Payment of Statutory Fees | 64 |
| D. | Dissolution of Committees | 65 |
| E. | Reservation of Rights | 65 |
| F. | Successors and Assigns | 65 |
| G. | Service of Documents | 66 |
| H. | Term of Injunctions or Stays | 67 |
| I. | Entire Agreement | 67 |
| J. | Governing Law | 67 |
| K. | Exhibits | 67 |
| L. | Nonseverability of Plan Provisions | 68 |
| M. | Closing of Chapter 11 Cases | 68 |
| N. | **Waiver or Estoppel** | 68 |
| O. | Conflicts | 68 |

JA 1395

**INTRODUCTION**

Calpine Corporation and the other debtors in the above-captioned chapter 11 cases (collectively, the "Debtors") propose the following joint plan of reorganization (the "Plan") for the resolution of outstanding creditor claims against, and equity interests in, the Debtors pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101–1532. Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to such terms in ARTICLE I.A of the Plan. Reference is made to the Disclosure Statement, Filed contemporaneously with the Plan, for a discussion of the Debtors' history, businesses, assets, results of operations, and projections of future operations, as well as a summary and description of the Plan and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE PLAN PROVIDES FOR SUBSTANTIVE CONSOLIDATION OF THE ESTATES FOR ALL PURPOSES ASSOCIATED WITH CONFIRMATION AND CONSUMMATION. IN THE EVENT THE BANKRUPTCY COURT DOES NOT AUTHORIZE SUBSTANTIVE CONSOLIDATION OF ALL OF THE ESTATES, THE PLAN MAY CONSTITUTE SEPARATE PLANS OF REORGANIZATION FOR EACH DEBTOR WHOSE ESTATE IS NOT CONSOLIDATED, AND THE VOTES TO ACCEPT OR REJECT THE PLAN BY HOLDERS OF CLAIMS AND INTERESTS SHALL BE TABULATED AS VOTES TO ACCEPT OR REJECT SUCH SEPARATE PLANS OF REORGANIZATION.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.    Defined Terms: As used in the Plan, the capitalized terms below have the following meanings, except as expressly provided or unless the context otherwise requires. Any term used but not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

1.    4.0% Convertible Senior Notes Due 2006: The $1,200,000,000 4.0% Convertible Senior Notes due December 26, 2006, issued by Calpine pursuant to that certain Indenture, dated as of August 10, 2000, between Calpine and Wilmington Trust Company, as trustee, as supplemented by the First Supplemental Indenture, dated as of September 28, 2000.

2.    4.75% Convertible Senior Notes Due 2023: The $900,000,000 4.75% Convertible Senior Notes due November 15, 2023, issued by Calpine pursuant to that certain Amended and Restated Indenture, dated as of March 12, 2004, between Calpine and Wilmington Trust Company, as trustee.

3.    6.00% Contingent Convertible Notes Due 2014: The $736,000,000 6.00% Contingent Convertible Notes due September 30, 2014, issued by Calpine pursuant to that certain Indenture, dated as of August 10, 2000, between Calpine and Wilmington Trust

K&E 11469867.129

Company, as trustee, as supplemented by the Second Supplemental Indenture, dated as of September 30, 2004.

4.     7.625% Senior Notes Due 2006:  The $250,000,000 7.625% Senior Notes due April 15, 2006, issued by Calpine pursuant to that certain Indenture, dated as of March 29, 1999, between Calpine and The Bank of New York, as trustee, as supplemented by the First Supplemental Indenture, dated as of July 31, 2000, and the Second Supplemental Indenture, dated as of April 26, 2004.

5.     7.75% Contingent Convertible Notes Due 2015:  The $650,000,000 7.75% Contingent Convertible Notes Due June 1, 2015, issued by Calpine pursuant to that certain Indenture, dated as of August 10, 2000, between Calpine and Wilmington Trust Company, as trustee, as supplemented by the Third Supplemental Indenture, dated as of June 23, 2005.

6.     7.75% Senior Notes Due 2009:  The $350,000,000 7.75% Senior Notes due April 15, 2009, issued by Calpine pursuant to that certain Indenture, dated as of March 29, 1999, between Calpine and The Bank of New York, as trustee, as supplemented by the First Supplemental Indenture, dated as of July 31, 2000, and the Second Supplemental Indenture, dated as of April 26, 2004.

7.     7.875% Senior Notes Due 2008:  The $400,000,000 7.875% Senior Notes due April 1, 2008, issued by Calpine pursuant to that certain Indenture, dated as of March 31, 1998, between Calpine and The Bank of New York, as trustee, as supplemented by the First supplemental Indenture, dated as of July 24, 1998, the Second Supplemental Indenture, dated as of July 31, 2000, and the Third Supplemental Indenture, dated as of April 26, 2004.

8.     8.5% Second Priority Senior Secured Notes Due 2010:  The $1,150,000,000 8.5% Second Priority Senior Secured Notes due July 15, 2010, issued by Calpine pursuant to that certain Indenture dated as of July 16, 2003, between Calpine and Wilmington Trust Company, as trustee.

9.     8.5% Senior Notes Due 2011:  The $850,000,000 8.5% Senior Notes due February 15, 2011, issued by Calpine pursuant to that certain Indenture, dated as of August 10, 2000, between Calpine and Wilmington Trust Company, as trustee, as supplemented by the First Supplemental Indenture, dated as of September 28, 2000.

10.     8.625% Senior Notes Due 2010:  The $750,000,000 8.625% Senior Notes due August 15, 2010, issued by Calpine pursuant to that certain Indenture, dated as of August 10, 2000, between Calpine and Wilmington Trust Company, as trustee.

11.     8.75% Second Priority Senior Secured Notes Due 2013:  The $900,000,000 Second Priority 8.75% Senior Secured Notes due July 15, 2013, issued by Calpine pursuant to that certain Indenture dated as of July 16, 2003, between Calpine and Wilmington Trust Company, as trustee.

12.     8.75% Senior Notes Due 2007:  The $275,000,000 8.75% Senior Notes due July 15, 2007, issued by Calpine pursuant to that certain Indenture, dated as of July 8, 1997, between Calpine and The Bank of New York, as trustee, as supplemented by the First Supplemental

2

Indenture, dated as of September 10, 1997, the Second Supplemental Indenture, dated as of July 31, 2000, and the Third Supplemental Indenture, dated as of April 26, 2004.

13.    9.625% First Priority Senior Secured Notes Due 2014: The $785,000,000 9.625% First Priority Senior Secured Notes due September 30, 2014, issued by Calpine pursuant to that certain Indenture, dated as of September 30, 2004, between Calpine and Wilmington Trust Company, as trustee.

14.    9.875% Second Priority Senior Secured Notes Due 2011: The $400,000,000 9.875% Second Priority Senior Secured Notes due December 1, 2011, issued by Calpine pursuant to that certain Indenture, dated as of November 18, 2003, between Calpine and Wilmington Trust Company, as trustee.

15.    10.5% Senior Notes Due 2006: The $180,000,000 10.5% Senior Notes due May 15, 2006, issued by Calpine pursuant to that certain Indenture, dated as of May 16, 1996, between Calpine and U.S. Bank National Association, as successor trustee, as supplemented by the First Supplemental Indenture, dated as of August 1, 2000 and the Second Supplemental Indenture, dated as of April 26, 2004.

16.    Accrued Professional Compensation: At any given moment, all accrued fees and expenses (including success fees) for services rendered by all Professionals through and including the Effective Date, to the extent such fees and expenses have not been paid and regardless of whether a fee application has been Filed for such fees and expenses. To the extent there is a Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered Accrued Professional Compensation.

17.    Administrative Claim: A Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses Allowed pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and ending on the Confirmation Date; (c) all fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

18.    Administrative Claim Bar Date: The deadline for filing requests for payment of Administrative Claims, which shall be thirty days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, except with respect to Professional Claims, which shall be subject to the provisions of ARTICLE IX.

19.    Affidavit of Publication: An affidavit of a representative or agent of a publisher of a periodical certifying that notice has been served through publication in the publisher's periodical.

3

20.    <u>Affiliate</u>:  Excluding any Canadian Debtor: (a) an Entity that directly or indirectly owns, controls, or holds with power to vote, twenty percent or more of the outstanding voting securities of any of the Debtors, other than an Entity that holds such securities (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities or (ii) solely to secure a debt, if such Entity has not in fact exercised such power to vote; (b) a corporation twenty percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by any of the Debtors, or by an Entity that directly or indirectly owns, controls, or holds with power to vote, twenty percent or more of the outstanding voting securities of any of the Debtors, other than an Entity that holds such securities (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities or (ii) solely to secure a debt, if such Entity has not in fact exercised such power to vote; (c) an Entity whose business is operated under a lease or operating agreement by any of the Debtors, or an Entity substantially all of whose property is operated under an operating agreement with any of the Debtors; (d) an Entity that operates the business or substantially all of the property of any of the Debtors under a lease or operating agreement; or (e) the Debtors' domestic and non-domestic, wholly-owned, direct and indirect subsidiaries that have not commenced cases under chapter 11 of the Bankruptcy Code.

21.    <u>Allowed</u>:  With respect to Claims and Interests: (a) any Claim or Interest, proof of which is timely Filed by the applicable Bar Date (or that by the Bankruptcy Code or Final Order is not or shall not be required to be Filed); (b) any Claim or Interest that is listed in the Schedules as of the Effective Date as not disputed, not contingent, and not unliquidated, and for which no Proof of Claim or Interest has been timely Filed; or (c) any Claim Allowed pursuant to the Plan; <u>provided, however</u>, that with respect to any Claim or Interest described in clauses (a) or (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that (x) with respect to any Unsecured Convenience Class Claim, no objection to Allowance thereof has been interposed on or prior to the Effective Date, (y) with respect to any Claim or Interest that is not an Unsecured Convenience Class Claim, no objection to the Allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (z) such an objection is so interposed and the Claim or Interest shall have been Allowed for distribution purposes only by a Final Order; <u>provided further, however</u>, that the Claims and Interests described in clauses (a) and (b) above shall not include any (i) Claim or Interest on account of a right, option, warrant, right to convert, or other right to purchase an Equity Security and (ii) Interest held by or for the benefit of Calpine, including those Interests held pursuant to the DB Share Lending Agreement.  Except as otherwise specified in the Plan or a Bankruptcy Court order, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law.  Any Claim or Interest that has been or is hereafter listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim or Interest has been timely Filed, is not considered Allowed and shall be expunged without further action by the Reorganized Debtors and without any further notice to or action, order, or approval of the Bankruptcy Court.

22.    <u>Ballot or Ballots</u>:  The ballots upon which Holders of Impaired Claims or Interests entitled to vote shall cast their vote to accept or reject the Plan.

4

23.    Bankruptcy Code: Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable to the Chapter 11 Cases.

24.    Bankruptcy Court: The United States Bankruptcy Court for the Southern District of New York or any other court having jurisdiction over the Chapter 11 Cases.

25.    Bankruptcy Rules: The Federal Rules of Bankruptcy Procedure as applicable to the Chapter 11 Cases, promulgated pursuant to section 2075 of the Judicial Code and the general, local, and chambers rules and orders of the Bankruptcy Court.

26.    Bar Date: August 1, 2006, except as otherwise provided in the Plan or by Bankruptcy Court order.

27.    Beneficial Holder: The Entity holding the beneficial interest in a Claim or Interest.

28.    Business Day: Any day, other than a Saturday, Sunday, or Legal Holiday.

29.    CalGen: Calpine Generating Company, LLC, a Delaware limited liability company.

30.    CalGen 11.5% Third Priority Secured Notes Due 2011: The $150,000,000 11.5% Third Priority Secured Notes due April 4, 2011, issued by CalGen and CalGen Finance pursuant to that certain Third Priority Indenture, dated as of March 23, 2004, among CalGen, CalGen Finance, and Wilmington Trust Company FSB, as third priority trustee.

31.    CalGen Amended and Restated Credit Agreement: The $200,000,000 Amended and Restated Credit Agreement, dated as of March 23, 2004, among CalGen, the guarantors party thereto, the lenders party thereto, The Bank of Nova Scotia, as administrative agent, L/C bank, lead arranger and sole bookrunner, Bayerische Landesbank, Cayman Islands Branch, as arranger and co-syndication agent, Credit Lyonnais, New York Branch, as arranger and co-syndication agent, ING Capital LLC, as arranger and co-syndication agent, Toronto Dominion (Texas) Inc., as arranger and co-syndication agent, and Union Bank of California, N.A., as arranger and co-syndication agent.

32.    CalGen Finance: CalGen Finance Corporation, a Delaware corporation.

33.    CalGen First Priority Secured Floating Rate Notes Due 2009: The $235,000,000 First Priority Secured Floating Rate Notes due April 1, 2009, issued by CalGen and CalGen Finance pursuant to that certain First Priority Indenture, dated as of March 23, 2004, between CalGen, CalGen Finance, and Wilmington Trust FSB, as first priority trustee.

34.    CalGen First Priority Secured Institutional Term Loans Due 2009: The $600,000,000 First Priority Secured Institutional Term Loans due April 1, 2009, issued by CalGen pursuant to that certain Credit and Guarantee Agreement, dated as of March 23, 2004, between CalGen, the guarantor subsidiaries of CalGen listed therein, Morgan Stanley Senior Funding, Inc., as administrative agent, sole lead arranger, and sole bookrunner, and the various lenders named therein.

5

35.     CalGen Second Priority Secured Floating Rate Notes Due 2010:     The
$640,000,000 Second Priority Secured Floating Rate Notes due April 1, 2010, issued by CalGen
and CalGen Finance pursuant to that certain Second Priority Indenture, dated as of March 23,
2004, between CalGen, CalGen Finance, and Wilmington Trust FSB, as second priority trustee.

36.     CalGen Second Priority Secured Term Loans Due 2010:     The $100,000,000
Second Priority Second Term Loans due April 1, 2010, issued by CalGen pursuant to that certain
Credit and Guarantee Agreement, dated as of March 23, 2004, among CalGen, the guarantor
subsidiaries of CalGen listed therein, Morgan Stanley Senior Funding, Inc., as administrative
agent, sole lead arranger, and sole bookrunner, and the various lenders named therein.

37.     CalGen Third Priority Secured Floating Rate Notes Due 2011: The $680,000,000
Third Priority Secured Floating Rate Notes due April 1, 2011, issued by CalGen and CalGen
Finance pursuant to that certain Third Priority Indenture, dated as of March 23, 2004, among
CalGen, CalGen Finance, and Wilmington Trust Company FSB, as third priority trustee.

38.     CalGen Secured Makewhole Claim: Any Makewhole Claim on account of the
CalGen Amended and Restated Credit Agreement, the CalGen First Priority Secured Floating
Rate Notes Due 2009, the CalGen First Priority Secured Institutional Term Loans Due 2009, the
CalGen Second Priority Secured Floating Rate Notes Due 2010, the CalGen Second Priority
Secured Term Loans Due 2010, the CalGen 11.5% Third Priority Secured Notes Due 2011, and
the CalGen Third Priority Secured Floating Rate Notes Due 2011 determined by Bankruptcy
Court order to be Secured.

39.     CalGen Unsecured Makewhole Claim: Any Makewhole Claim on account of the
CalGen Amended and Restated Credit Agreement, the CalGen First Priority Secured Floating
Rate Notes Due 2009, the CalGen First Priority Secured Institutional Term Loans Due 2009, the
CalGen Second Priority Secured Floating Rate Notes Due 2010, the CalGen Second Priority
Secured Term Loans Due 2010, the CalGen 11.5% Third Priority Secured Notes Due 2011, and
the CalGen Third Priority Secured Floating Rate Notes Due 2011 determined by Bankruptcy
Court order not to be Secured.

40.     Calpine: Calpine Corporation, a Delaware corporation.

41.     Canadian Bar Date:     August 1, 2006, unless otherwise set in the CCAA
Proceedings.

42.     Canadian Court: The Court of Queen's Bench in Calgary, Alberta, Canada.

43.     Canadian Debtor: Any CCAA Applicant or CCAA Party.

44.     Canadian Guarantee Claim: Any Claim (except ULC1 Settlement Claims and
Subordinated Debt Securities Claims) based on a Debtor's guarantee of a Canadian Debtor's
debt that is not satisfied in full in the CCAA Proceedings.

45.     Canadian Intercompany Claim: A Claim by a Canadian Debtor or a Canadian
affiliate of the Debtors.

6

46.    Cash: Cash and cash equivalents.

47.    Cash Collateral Order: The Bankruptcy Court order entitled, "Second Amended Order Authorizing Use of Cash Collateral and Granting Adequate Protection," entered in the Chapter 11 Cases on February 24, 2006 [Docket No. 881].

48.    Cause of Action: Any claim, cause of action, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Cause of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any state law fraudulent transfer claim; and (f) any claim listed in the Plan Supplement.

49.    CBA: Any collective bargaining agreement as defined under section 1113 of the Bankruptcy Code to which one or more of the Debtors is a party.

50.    CCAA: Companies' Creditors Arrangement Act (Canada).

51.    CCAA Applicant: Each of Calpine Canada Energy Limited, Calpine Canada Power Ltd., Calpine Canada Energy Finance ULC, Calpine Energy Services Canada Ltd., Calpine Canada Resources Company, Calpine Canada Power Services Ltd., Calpine Canada Energy Finance II ULC, Calpine Natural Gas Services Limited, and 3094479 Nova Scotia Company.

52.    CCAA Party: Each of Calpine Energy Services Canada Partnership, Calpine Canada Natural Gas Partnership, and Calpine Canadian Saltend Limited Partnership.

53.    CCAA Proceedings: The proceedings initiated by the Canadian Debtors in the Canadian Court pursuant to the provisions of the CCAA, with action number 0501-17964, filed on December 20, 2005.

54.    CCAA Settlement: That certain settlement of disputes related to claims between the Debtors and the Canadian Debtors, which incorporates the ULC1 Settlement, approved by a Bankruptcy Court order on [XX] [Docket No. [XX]].

55.    Certificate: Any instrument evidencing a Claim or an Interest.

56.    Chapter 11 Cases: The chapter 11 bankruptcy cases Filed by the Debtors on the Petition Date in the Bankruptcy Court, with case numbers 05-06199 through 05-60218, 05-60221 through 05-60278, 05-60281 through 05-60363, 05-60365 through 05-60401, 05-60403 through 05-60441, 05-60443 through 05-60456, 05-60458 through 05-60460, 05-60463 through 05-60468, 05-60476, 05-60477, 06-10026 through 06-10032, 06-10034, 06-10039, 06-10197, 06-10198, and 06-10939.

7

57.    Claim:  Any: (a) claim as defined in section 101(5) of the Bankruptcy Code against a Debtor and (b) with respect to ARTICLES VIII.E, F, and G, any claim as defined in section 101(5) of the Bankruptcy Code against the applicable Entities referenced therein.

58.    Claims and Solicitation Agent:  Kurtzman Carson Consultants LLC, located at 2335 Alaska Avenue, El Segundo, California 90245, (888) 249-2792, retained as the Debtors' claims and solicitation agent by order dated December 22, 2005, entitled "Order Pursuant to 28 U.S.C. § 155(c) and Local Rule 5075-1 of the Local Rules for the Southern District of New York, Authorizing and Approving the Retention of Kurtzman Carson Consultants LLC as Notices, Claims and Balloting Agent to the Debtors" [Docket No. 59].

59.    Claims Register:  The official register of Claims and Interests maintained by the Claims and Solicitation Agent.

60.    Class:  A class of Holders of Claims or Interests as set forth in the Plan.

61.    CM/ECF:  The Bankruptcy Court's Case Management and Electronic Case Filing system, which can be accessed at https://ecf.nysb.uscourts.gov/cgi-bin/login.pl.

62.    Confirmation:  The entry of the Confirmation Order, subject to all conditions specified in ARTICLE X having been satisfied or waived pursuant to ARTICLE X.

63.    Confirmation Date:  The date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

64.    Confirmation Hearing:  The hearing at which the Confirmation Order is first considered by the Bankruptcy Court.

65.    Confirmation Hearing Notice:  The notice approved in the Solicitation Procedures Order that sets forth in detail the voting and objection deadlines with respect to the Plan.

66.    Confirmation Order:  The order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

67.    Consummation:  The occurrence of the Effective Date.

68.    Creditor:  A Holder of a Claim.

69.    Creditors' Committee:  The Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

70.    Cure:  The distribution in the ordinary course of business as soon as reasonably practicable following the Effective Date of Cash, or such other property as may be ordered by the Bankruptcy Court or agreed upon by the parties, in an amount equal to all unpaid monetary obligations under applicable law or such lesser amount as may be agreed upon by the parties, under an executory contract or unexpired lease assumed pursuant to section 365 of the Bankruptcy Code, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

8

71.    Cure Bar Date: The deadline for filing requests for payment of Cure, which shall be the later of: (a) thirty days after the Effective Date or (b) thirty days after the assumption of the applicable executory contract or unexpired lease, unless otherwise ordered by the Bankruptcy Court or agreed to by the Debtors and the counterparty to the applicable executory contract or unexpired lease.

72.    DB Share Lending Agreement: That certain Share Lending Agreement, dated as of September 28, 2004, by and among, Calpine Corporation, Deutsche Bank AG London, and Deutsche Bank Securities Inc.

73.    Debtor: Each of the following Entities, followed by a number in parentheses that has been assigned to each such Entity for purposes of identifying such Entity's Plan in ARTICLE III: Calpine Corporation (1); Amelia Energy Center, LP (2); Anacapa Land Company, LLC (3); Anderson Springs Energy Company (4); Androscoggin Energy, Inc. (5); Auburndale Peaker Energy Center, LLC (6); Augusta Development Company, LLC (7); Aviation Funding Corp. (8); Baytown Energy Center, LP (9); Baytown Power GP, LLC (10); Baytown Power, LP (11); Bellingham Cogen, Inc. (12); Bethpage Energy Center 3, LLC (13); Bethpage Fuel Management Inc.; (14) Blue Heron Energy Center LLC (15); Blue Spruce Holdings, LLC (16); Broad River Energy LLC (17); Broad River Holding, LLC (18); CalGen Equipment Finance Company, LLC; (19) CalGen Equipment Finance Holdings, LLC (20); CalGen Expansion Company, LLC (21); CalGen Finance Corp. (22); CalGen Project Equipment Finance Company One, LLC (23); CalGen Project Equipment Finance Company Three, LLC (24); CalGen Project Equipment Finance Company Two, LLC (25); Calpine Acadia Holdings, LLC (26); Calpine Administrative Services Company, Inc. (27); Calpine Agnews, Inc. (28); Calpine Amelia Energy Center GP, LLC (29); Calpine Amelia Energy Center LP, LLC (30); Calpine Auburndale Holdings, LLC (31); Calpine Baytown Energy Center GP, LLC (32); Calpine Baytown Energy Center LP, LLC (33); Calpine Bethpage 3 Pipeline Construction Company, Inc. (34); Calpine Bethpage 3, LLC (35); Calpine e* Power, Inc. (36); Calpine CalGen Holdings, Inc. (37); Calpine California Development Company, LLC (38); Calpine California Energy Finance, LLC (39); Calpine California Equipment Finance Company, LLC (40); Calpine Calistoga Holdings, LLC (41); Calpine Capital Trust (42); Calpine Capital Trust II (43); Calpine Capital Trust III (44); Calpine Capital Trust IV (45); Calpine Capital Trust V (46); Calpine Central Texas GP, Inc. (47); Calpine Central, Inc. (48); Calpine Central, LP (49); Calpine Central-Texas, Inc. (50); Calpine Channel Energy Center GP, LLC (51); Calpine Channel Energy Center LP, LLC (52); Calpine Clear Lake Energy GP, LLC (53); Calpine Clear Lake Energy, LP (54); Calpine Cogeneration Corporation (55); Calpine Construction Management Company, Inc. (56); Calpine Corpus Christi Energy GP, LLC (57); Calpine Corpus Christi Energy LP (58); Calpine Decatur Pipeline Inc. (59); Calpine Decatur Pipeline, L.P. (60); Calpine Dighton, Inc. (61); Calpine East Fuels, Inc. (62); Calpine East Fuels, LLC (63); Calpine Eastern Corporation (64); Calpine Energy Holdings, Inc. (65); Calpine Energy Services Holdings, Inc. (66); Calpine Energy Services, LP (67); Calpine Finance Company (68); Calpine Freestone Energy GP, LLC (69); Calpine Freestone Energy, LP (70); Calpine Freestone, LLC (71); Calpine Fuels Corporation (72); Calpine Gas Holdings LLC (73); Calpine Generating Company, LLC (74); Calpine Geysers Company, LP (75); Calpine Gilroy 1, Inc. (76); Calpine Gilroy 2, Inc. (77); Calpine Gilroy Cogen, L.P. (78); Calpine Global Services Company, Inc. (79); Calpine Gordonsville GP Holdings, LLC (80); Calpine Gordonsville LP Holdings, LLC (81); Calpine Gordonsville, LLC (82); Calpine Greenleaf Holdings, Inc. (83); Calpine Greenleaf, Inc. (84); Calpine Hidalgo

9

Design, L.P. (85); Calpine Hidalgo Energy Center, L.P. (86); Calpine Hidalgo Holdings, Inc. (87); Calpine Hidalgo Power GP, LLC (88); Calpine Hidalgo Power, LP (89); Calpine Hidalgo, Inc. (90); Calpine International Holdings, Inc. (91); Calpine International, LLC (92); Calpine Investment Holdings, LLC (93); Calpine Kennedy Airport, Inc. (94); Calpine Kennedy Operators, Inc. (95); Calpine KIA, Inc. (96); Calpine Leasing, Inc. (97); Calpine Long Island, Inc. (98); Calpine Lost Pines Operations, Inc. (99); Calpine Louisiana Pipeline Company (100); Calpine Magic Valley Pipeline, Inc. (101); Calpine Monterey Cogeneration, Inc. (102); Calpine MVP, Inc. (103); Calpine NCTP GP, LLC (104); Calpine NCTP, LP (105); Calpine Northbrook Corporation of Maine, Inc. (106); Calpine Northbrook Energy Holdings, LLC (107); Calpine Northbrook Energy, LLC (108); Calpine Northbrook Holdings Corporation (109); Calpine Northbrook Investors, LLC (110); Calpine Northbrook Project Holdings, LLC (111); Calpine Northbrook Services LLC (112); Calpine Northbrook Southcoast Investors, LLC (113); Calpine NTC, LP (114); Calpine Oneta Power I, LLC (115); Calpine Oneta Power II, LLC (116); Calpine Oneta Power, LP (117); Calpine Operating Services Company, Inc. (118); Calpine Operations Management Company, Inc. (119); Calpine Pastoria Holdings, LLC (120); Calpine Philadelphia, Inc. (121); Calpine Pittsburg, LLC (122); Calpine Power Company (123); Calpine Power Equipment, LP (124); Calpine Power Inc. (125); Calpine Power Management, Inc. (126); Calpine Power Management, LP (127); Calpine Power Services, Inc. (128); Calpine PowerAmerica - CA, LLC (129); Calpine PowerAmerica - CT, LLC (130); Calpine PowerAmerica - MA, LLC (131); Calpine PowerAmerica - ME, LLC (132); Calpine PowerAmerica, Inc. (133); Calpine PowerAmerica, LP (134); Calpine PowerAmerica-NH, LLC (135); Calpine PowerAmerica-NY, LLC (136); Calpine PowerAmerica-OR,LLC (137); Calpine Producer Services, LP (138); Calpine Project Holdings, Inc. (139); Calpine Pryor, Inc. (140); Calpine Rumford I, Inc. (141); Calpine Rumford, Inc. (142); Calpine Schuylkill, Inc. (143); Calpine Siskiyou Geothermal Partners, L.P. (144); Calpine Sonoran Pipeline, LLC (145); Calpine Stony Brook Operators, Inc. (146); Calpine Stony Brook Power Marketing, LLC (147); Calpine Stony Brook, Inc. (148); Calpine Sumas, Inc. (149); Calpine TCCL Holdings, Inc. (150); Calpine Texas Pipeline GP, Inc. (151); Calpine Texas Pipeline LP, Inc. (152); Calpine Texas Pipeline, L.P. (153); Calpine Tiverton I, Inc. (154); Calpine Tiverton, Inc. (155); Calpine ULC I Holding, LLC (156); Calpine University Power, Inc. (157); Calpine Unrestricted Funding, LLC (158); Calpine Unrestricted Holdings, LLC (159); Calpine Vapor, Inc. (160); Carville Energy LLC (161); CCFC Development Company, LLC (162); CCFC Equipment Finance Company, LLC (163);) CCFC Project Equipment Finance Company One, LLC (164); Celtic Power Corporation (165); CES GP, LLC (166); CGC Dighton, LLC (167); Channel Energy Center, LP (168); Channel Power GP, LLC (169); Channel Power LP (170); Clear Lake Cogeneration Limited Partnership (171); Cogenamerica Asia, Inc. (172); Cogenamerica Parlin Supply Corporation (173); Columbia Energy LLC (174); Corpus Christi Cogeneration, LP (175); CPN 3rd Turbine, Inc. (176); CPN Acadia, Inc. (177); CPN Berks Generation, Inc. (178); CPN Berks LLC (179); CPN Bethpage 3rd Turbine Inc. (180); CPN Cascade, Inc. (181); CPN Clear Lake, Inc. (182); CPN Decatur Pipeline, Inc. (183); CPN Energy Services GP, Inc. (184); CPN Energy Services LP, Inc. (185); CPN Freestone, LLC (186); CPN Funding, Inc. (187); CPN Morris, Inc. (188); CPN Oxford, Inc. (189); CPN Pipeline Company (190); CPN Pleasant Hill Operating, LLC (191); CPN Pleasant Hill, LLC (192); CPN Power Services GP, LLC (193); CPN Power Services, LP (194); CPN Pryor Funding Corporation (195); CPN Telephone Flat, Inc. (196); Decatur Energy Center, LLC (197); Deer Park Power GP, LLC (198); Deer Park Power, LP (199); Delta Energy Center, LLC (200); Dighton Power Associates, LP (201); East

10

Altamont Energy Center, LLC (202); Fond Du Lac Energy Center, LLC (203); Fontana Energy Center, LLC (204); Freestone Power Generation, LP (205); GEC Bethpage Inc. (206); Geothermal Energy Partners, LLC (207); Geysers Power Company II LLC (208); Geysers Power Company, LLC (209); Geysers Power I Company (210); Goldendale Energy Center, LLC (211); Hammond Energy LLC (212); Hillabee Energy Center, LLC (213); Idlewild Fuel Management Corp (214); JMC Bethpage, Inc. (215); KIAC Partners (216); Lake Wales Energy Center, LLC (217); Lawrence Energy Center, LLC (218); Lone Oak Energy Center, LLC (219); Los Esteros Critical Energy Facility, LLC (220); Los Medanos Energy Center, LLC (221); Magic Valley Gas Pipeline GP, LLC (222); Magic Valley Gas Pipeline LP (223); Magic Valley Pipeline, LP (224); MEP Pleasant Hill, LLC (225); MOAPA Energy Center, LLC (226); Mobile Energy LLC (227); Modoc Power, Inc. (228); Morgan Energy Center, LLC (229); Mount Hoffman Geothermal Company, LP (230); Mt. Vernon Energy LLC (231); Newsouth Energy LLC (232); Nissequogue Cogen Partners (233); Northwest Cogeneration, Inc. (234); NTC Five, Inc. (235); NTC GP, LLC (236); Nueces Bay Energy, LLC (237); O.L.S. Energy-Agnews, Inc. (238); Odyssey Land Acquisition Company (239); Pajaro Energy Center, LLC (240); Pastoria Energy Center, LLC (241); Pastoria Energy Facility, LLC (242); Philadelphia Biogas Supply Inc. (243); Phipps Bend Energy Center, LLC (244); Pine Bluff Energy, LLC (245); Power Investors, LLC (246); Power Systems Mfg. LLC (247); Quintana Canada Holdings, LLC (248); Rockgen Energy LLC (249); Rumford Power Associates, LP (250); Russell City Energy Center, LLC (251); San Joaquin Valley Energy Center, LLC (252); Silverado Geothermal Resources, Inc. (253); Skipanon Natural Gas, LLC (254); South Point Energy Center, LLC (255);    South Point Holdings, LLC (256); Stony Brook Cogeneration, Inc. (257); Stony Brook Fuel Management Corp. (258); Sutter Dryers, Inc. (259); TBG Cogen Partners (260); Texas City Cogeneration, LP (261); Texas Cogeneration Company (262); Texas Cogeneration Five, Inc. (263); Texas Cogeneration One Company (264); Thermal Power Company (265); Thomassen Turbine Systems America, Inc. (266); Tiverton Power Associates, LP (267); VEC Holdings, LLC (268); Venture Acquisition Company (269); Vineyard Energy Center, LLC (270); Wawayanda Energy Center, LLC (271); Whatcom Cogeneration Partners, LP (272); and Zion Energy LLC (273).

74.    Debtors in Possession: The Debtors, as debtors in possession in the Chapter 11 Cases, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

75.    DIP Facility: That certain Credit Agreement, by and among the Debtors and the DIP Lenders, dated as of March 29, 2007, and approved by the Bankruptcy Court in an order entitled, "Final Order Authorizing Debtors to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), and 364(e)" [Docket No. 635].

76.    DIP Facility Claim: Any Claim on account of the DIP Facility.

77.    DIP Lenders: General Electric Capital Corporation (including its successors), as sub-agent for the revolving lenders under the DIP Facility (in such capacity and including any successors); Credit Suisse, Goldman Sachs Credit Partners L.P., and JPMorgan Chase Bank, N.A., as co-documentation agents and as co-syndication agents; Credit Suisse, as administrative agent (in such capacity and including any successors) and as collateral agent (in such capacity and including any successors); and each of the financial institutions from time to time party to the DIP Agreement.

78.     Director Equity Incentive Plan: A post-Effective Date director compensation incentive plan on terms substantially set forth in the Plan Supplement.

79.     Disclosure Statement: The Disclosure Statement for the Plan describing the Plan, that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

80.     Disputed: With respect to any Claim or Interest, any Claim or Interest on the Claims Register that is not yet Allowed.

81.     Distribution Agent: The Reorganized Debtors, or the Entity or Entities chosen by the Reorganized Debtors to make or to facilitate distributions pursuant to the Plan.

82.     Distribution Date: The date occurring as soon as reasonably practicable after the Effective Date when distributions under the Plan shall commence, but not later than ten days after the Effective Date, without further Bankruptcy Court order.

83.     Distribution Record Date: The date for determining which Holders of Allowed Claims and Interests, except Holders of publicly traded Certificates, are eligible to receive distributions pursuant to the Plan, which shall be the Confirmation Date or such other date as designated in the Plan or a Bankruptcy Court order.

84.     District Court: The United States District Court for the Southern District of New York.

85.     Effective Date: The date selected by the Debtors (in consultation with the Creditors' Committee) that is a Business Day after the Confirmation Date on which the conditions as specified in the Plan have been satisfied or waived. Unless otherwise specifically provided in the Plan, anything required to be done by the Debtors on the Effective Date may be done on the Effective Date or as soon as reasonably practicable thereafter.

86.     Employment Agreement: An agreement, other than a CBA or PLA, between or among any of the Debtors and any directors, officers, or employees of any of the Debtors for such Person to serve in such capacity at any time; provided, however, that the assumption by the Debtors or the Reorganized Debtors, as applicable, or the agreement of the Debtors or the Reorganized Debtors, as applicable, in either case in consultation with the Creditors' Committee, to honor or affirm any Employment Agreement will not entitle any Person to any benefit or alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such benefit or alleged entitlement under any such policy, program, or plan.

87.     Entity: As defined in section 101(15) of the Bankruptcy Code.

88.     Equity Committee: The Official Committee of Equity Security Holders appointed in the Chapter 11 Cases.

89.     Equity Security: Any equity security as defined in section 101(16) of the Bankruptcy Code in a Debtor.

90.    Equity Security Holder:  A Holder of an Interest.

91.    Estate:  The bankruptcy estate of any Debtor created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

92.    Exculpated Claim:  Any Claim related to any act or omission in connection with, relating to, or arising out of the Debtors' in or out of court restructuring, the Debtors' Chapter 11 Cases, formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement or Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other agreement.

93.    Exculpated Party:  Each of: (a) the Debtors, the Reorganized Debtors, and their Affiliates; (b) the DIP Lenders in their capacities as such; (c) the Exit Lenders in their capacity as such; (d) with respect to each of the foregoing Entities in clauses (a) through (c), such Entities' successors and assigns; (e) any statutory committee and the members thereof in their capacity as such; (f) the Second Lien Ad Hoc Committee and the members thereof in their capacity as such; (g) the Indenture Trustees; and (h) with respect to each of the foregoing Entities in clauses (a) through (g), such Entities' subsidiaries, affiliates, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, in each case in their capacity as such, and only if serving in such capacity.

94.    Existing Exit Facility:  The DIP Facility, if converted under the terms thereof into an exit financing facility.

95.    Federal Judgment Rate:  The federal judgment rate of 4.34%, which was in effect as of the Petition Date.

96.    FERC:  Federal Energy Regulatory Commission.

97.    FERC Jurisdictional Contract:  Any contract to which one or more of the Debtors is a party containing rates, terms, or conditions subject to the jurisdiction of the FERC pursuant to the Federal Power Act, 16 U.S.C. §§ 824–824n, or the Natural Gas Act, 15 U.S.C. §§ 717–717z.

98.    File:  To file with the Bankruptcy Court in the Chapter 11 Cases, or in the case of Proofs of Claim or Interest, to file with the Claims and Solicitation Agent.

99.    Final Decree:  The decree contemplated under Bankruptcy Rule 3022.

100.    Final Order:  As applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from

13

which certiorari was sought; provided, however, that the Debtors or Reorganized Debtors, as applicable, reserve the right to waive any such appeal or similar conditions of a Final Order in consultation with the Creditors' Committee.

101.    First Lien Debt Claim: Any Claim (not including any First Lien Unsecured Makewhole Claims) on account of the 9.625% First Priority Senior Secured Notes Due 2014.

102.    First Lien Makewhole Claim: Any Makewhole Claim on account of the 9.625% First Priority Senior Secured Notes Due 2014.

103.    First Lien Repayment Order: The Bankruptcy Court order entitled, "Order Authorizing Repayment of Principal of First Lien Debt," entered in the Chapter 11 Cases on May 10, 2006 [Docket No. 1542].

104.    First Lien Secured Makewhole Claim: Any First Lien Makewhole Claim determined by Bankruptcy Court order to be Secured.

105.    First Lien Unsecured Makewhole Claim: Any First Lien Makewhole Claim determined by Bankruptcy Court order not to be Secured.

106.    General Note Claim: Any Claim (including any General Note Makewhole Claims, but not including any Subordinated Debt Securities Claims) on account of the: (a) 4.0% Convertible Senior Notes Due 2006; (b) 4.75% Convertible Senior Notes Due 2023; (c) 6.00% Contingent Convertible Notes Due 2014; (d) 8.5% Senior Notes Due 2011; and (e) 8.625% Senior Notes Due 2010.

107.    General Note Makewhole Claim: Any Makewhole Claim on account of the: (a) 4.0% Convertible Senior Notes Due 2006; (b) 4.75% Convertible Senior Notes Due 2023; (c) 6.00% Contingent Convertible Notes Due 2014; (d) 8.5% Senior Notes Due 2011; and (e) 8.625% Senior Notes Due 2010.

108.    General Unsecured Claim: Any Claim against any of the Debtors that is not a/an: (a) DIP Facility Claim; (b) Administrative Claim; (c) Priority Tax Claim; (d) First Lien Debt Claim; (e) Second Lien Debt Claim; (f) Other Secured Claim; (g) Other Priority Claim; (h) Senior Note Claim; (i) General Note Claim; (j) Subordinated Note Claim; (k) ULC1 Settlement Claim; (l) Canadian Guarantee Claim; (m) Canadian Intercompany Claim; (n) Rejection Damages Claim; (o) Unsecured Makewhole Claim; (p) Unsecured Convenience Class Claim; (q) Intercompany Claim; (r) Subordinated Equity Securities Claim; or (s) Subordinated Debt Securities Claim.

109.    Governmental Unit: As defined in section 101(27) of the Bankruptcy Code.

110.    Government Bar Date: August 1, 2006.

111.    Holder: An Entity holding a Claim or Interest, as applicable.

112.    Impaired: With respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

14

113.    Indemnification Obligation: A Debtor's obligation under an executory contract or otherwise to indemnify directors, officers, or employees of the Debtors who served in such capacity at any time, with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of any Debtor, pursuant to and to the maximum extent provided by the Debtors' respective articles of incorporation, certificates of formation, bylaws, similar corporate documents, and applicable law, as in effect as of the Effective Date.

114.    Indenture Trustees: In their capacity as such, the indenture trustees and their predecessors for the: (a) 4.0% Convertible Senior Notes Due 2006; (b) 4.75% Convertible Senior Notes Due 2023; (c) 6.00% Contingent Convertible Notes Due 2014; (d) 7.625% Senior Notes Due 2006; (e) 7.75% Senior Notes Due 2009; (f) 7.875% Senior Notes Due 2008; (g) 8.5% Second Priority Senior Notes Due 2010; (h) 8.5% Senior Notes Due 2011; (i) 8.625% Senior Notes Due 2010; (j) 8.75% Second Priority Senior Notes Due 2013; (k) 8.75% Senior Notes Due 2007; (l) 9.875% Second Priority Senior Secured Notes Due 2011; (m) Second Priority Senior Secured Floating Rate Notes Due 2007; (n) ULC1 8.5% Senior Notes Due 2008; and (o) ULC1 8.75% Senior Notes Due 2007.

115.    Insider: As defined in section 101(31) of the Bankruptcy Code.

116.    Intercompany Claim: A Claim (other than a ULC1 Settlement Claim) held by a Debtor or an Affiliate.

117.    Intercompany Contract: A contract between two or more Debtors or a contract between one or more Affiliates and one or more Debtors.

118.    Intercompany Interest: An Interest held by a Debtor or an Affiliate.

119.    Interest: Any: (a) Equity Security, including all issued, unissued, authorized, or outstanding shares of stock together with any warrants, options, or contractual rights to purchase or acquire such Equity Securities at any time and all rights arising with respect thereto and (b) partnership, limited liability company, or similar interest.

120.    Interest Accrual Limitation Date: The Effective Date.

121.    Interim Compensation Order: The order, entitled "Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals," entered by the Bankruptcy Court on January 25, 2006 [Docket No. 617], allowing Estate Professionals to seek interim compensation in accordance with the compensation procedures approved therein, as may have been modified by a Bankruptcy Court order approving the retention of the Professionals.

122.    Internal Revenue Code: Title 26 of the United States Code, 26 U.S.C. §§ 1–9833.

123.    Judicial Code: Title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

124.    Legal Holiday: As defined in Bankruptcy Rule 9006(a).

125.    Lien: As defined in section 101(37) of the Bankruptcy Code.

15

126.    Makewhole Claim:    Any Claim for any makewhole amount, prepayment premium, early termination fee, or other similar amount asserted on account of any notes, indentures, or other instruments issued by the Debtors prior to the Petition Date, including with respect to the: (a) 9.625% First Priority Senior Secured Notes Due 2014; (b) CalGen First Priority Secured Floating Rate Notes Due 2009; (c) CalGen First Priority Secured Institutional Term Loans Due 2009; (d) CalGen Second Priority Secured Floating Rate Notes Due 2010; (e) CalGen Second Priority Secured Term Loans Due 2010; (f) CalGen 11.5% Third Priority Secured Notes Due 2011; (g) CalGen Third Priority Secured Floating Rate Notes Due 2011; (h) 8.5% Second Priority Senior Secured Notes Due 2010; (i) 8.75% Second Priority Senior Secured Notes Due 2013; (j) 9.875% Second Priority Senior Secured Notes Due 2011; (k) 8.625% Senior Notes Due 2010; and (l) 8.5% Senior Notes Due 2011.

127.    Management Equity Incentive Plan:    A post-Effective Date management compensation incentive plan intended for certain management employees of certain of the Reorganized Debtors on the terms substantially set forth in the Plan Supplement.

128.    Master Ballots:    The master ballots upon which the applicable Nominee or other holder of record shall submit on behalf of the Beneficial Holders it represents the votes cast by such Beneficial Holders to accept or reject the Plan.

129.    New Calpine Common Stock:    1,500,000,000 shares of common stock in Reorganized Calpine, par value $.001 per share, to be authorized pursuant to the Reorganized Calpine Charter, of which up to 500,000,000 shares shall be initially issued pursuant to the Plan as of the Effective Date.

130.    New Calpine Common Stock Pool For Creditors:    All New Calpine Common Stock to be issued under the Plan, net of any shares reserved for issuance under the Management and Director Equity Incentive Plans.

131.    New Calpine Common Stock Pool For Shareholders:    All New Calpine Common Stock to be issued under the Plan remaining in the New Calpine Common Stock Pool For Subordinated Debt Securities Claimants after all Holders of Allowed Claims (other than Subordinated Equity Securities Claims) have been paid in full.

132.    New Calpine Common Stock Pool For Subordinated Debt Securities Claimants: All New Calpine Common Stock to be issued under the Plan remaining in the New Calpine Common Stock Pool for Creditors after all Holders of Allowed Claims (other than Subordinated Debt Securities Claims and Subordinated Equity Securities Claims) have been paid in full.

133.    New Calpine Stock Reserve:    The New Calpine Common Stock held in reserve pursuant to ARTICLE VII.C.3.

134.    New Calpine Total Enterprise Value:    $20.3 billion, which is the midpoint range of the total enterprise value of the Reorganized Debtors' set forth in the Disclosure Statement or such amount provided in the Confirmation Order as the total enterprise value of the Reorganized Debtors.

16

135.  New Credit Facility:  That certain $8.0 billion secured financing facility comprised of a $6.0 billion first lien secured term facility, a $1.0 billion first lien secured revolving facility, and a $1.0 billion second lien secured facility, by and among Reorganized Calpine, as borrower, and Goldman Sachs Credit Partners L.P., as well as other entities, as joint lead arrangers, book runners, and administrative agents, and a syndicate of banks, financial institutions, and other entities, as lenders, and all other documents entered into in connection therewith or contemplated thereby, substantially in the form of that facility referenced in the Order Authorizing the Debtors to (A) Execute and Perform Under a Commitment Letter and Related Documents; (B) Pay Certain Fees and Expenses Relating Thereto; and (C) Execute an Amendment to the Exit Facility [Docket No. [XX]].

136.  New Credit Facility Lenders:  The lenders in connection with the New Credit Facility.

137.  Nominee:  Any broker, dealer, commercial bank, trust company, savings and loan, financial institution, or other party in whose name securities are registered or held of record on behalf of a Beneficial Holder.

138.  Notice of Confirmation:  That certain notice pursuant to Bankruptcy Rule 3020(c)(2) notifying Holders of Claims and Interests and parties in interest that the Bankruptcy Court has confirmed the Plan.

139.  Old Calpine Common Stock:  All of the authorized, issued, and outstanding shares of common stock of Calpine as of immediately prior to the Effective Date.

140.  Other Priority Claim:  Any Claim accorded priority in right of payment pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

141.  Other Secured Claim:  Any secured Claim, other than a: (a) DIP Facility Claim; (b) First Lien Debt Claim; or (c) Second Lien Debt Claim.

142.  Periodic Distribution Date:  The first Business Day that is as soon as reasonably practicable occurring approximately ninety days after the Distribution Date, and thereafter, the first Business Day that is as soon as reasonably practicable occurring approximately ninety days after the immediately preceding Periodic Distribution Date.

143.  Person:  As defined in section 101(41) of the Bankruptcy Code.

144.  Petition Date:  December 20, 2005 for case numbers 05-60199 through 05-60211; December 21, 2005 for case numbers 05-60212 through 05-60218, 05-60221 through 05-60278, 05-60281 through 05-60363, 05-60365 through 05-60401, 05-60403 through 05-60441, 05-60443 through 05-60456, 05-60458 through 05-60460, and 05-40463; December 27, 2005 for case numbers 05-60464 through 05-60468; December 29, 2005 for case numbers 05-60476 and 05-60477; January 8, 2006 for case numbers 06-10026 through 06-10032; January 9, 2006 for case numbers 06-10034 and 06-10039; February 3, 2006 for case numbers 06-10197 and 06-10198; and May 2, 2006 for case number 06-10939; provided, however, for purposes of the Plan,

17

unless otherwise provided, the Petition Date shall be deemed to be December 20, 2005 for all Debtors.

145.   PLA: Any pre-hire project labor agreement to which one or more of the Debtors, is a party.

146.   Plan:  This Joint Plan of Reorganization for each of the Debtors pursuant to chapter 11 of the Bankruptcy Code, together with the Plan Supplement, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms of the Plan, the Bankruptcy Code, and the Bankruptcy Rules.

147.   Plan Supplement:  The compilation of documents and forms of documents, schedules, and exhibits to the Plan.

148.   Plan Supplement Filing Date:  The date that is fourteen days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court on notice to parties in interest.

149.   PPA Litigation:  That certain matter currently styled as In re Calpine Corp.; Calpine Corp., et al. v. California Dept. of Water Resources, et al.; Docket Nos. 06-0480-BK; 06-0676-BK; 06-0683-BK; 06-0691-BK; 06-0717-BK; and 06-0723-BK.

150.   Priority Tax Claim:  Any Claim of the kind specified in section 507(a)(8) of the Bankruptcy Code.

151.   Professional:  An Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

152.   Professional Fee Escrow Account:  An interest-bearing account in an amount equal to the Professional Fee Reserve Amount funded and maintained by the Reorganized Debtors on and after the Effective Date solely for the purpose of paying all Allowed and unpaid fees and expenses of Professionals in the Chapter 11 Cases.

153.   Professional Fee Reserve Amount:  Accrued Professional Compensation through the Effective Date as estimated by the Professionals in accordance with ARTICLE IX.A.4.

154.   Projects to Be Sold or Surrendered: A power plant facility owned by one or more of the Debtors to be sold or surrendered pursuant to the Plan on or after the Effective Date.

155.   Proof of Claim: A proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

156.   Proof of Interest:  A proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

18

157.    <u>QCH</u>: Quintana Canada Holdings, LLC, a Delaware corporation.

158.    <u>Record Date</u>: **[XX, 2007]**

159.    <u>Reinstated</u>: (a) Leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim or Interest so as to leave such Claim Unimpaired or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Interest arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensating the Holder of such Claim or Interest (other than the Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Holder.

160.    <u>Rejection Damages Claim</u>:    Any Claim on account of the rejection of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code or the repudiation of such contract.

161.    <u>Released Party</u>: Each of: (a) the DIP Lenders in their capacities as such; (b) the Exit Lenders in their capacities as such; (c) with respect to each of the foregoing Entities in clauses (a) through (b), such Entities' successors and assigns; (d) any statutory committee and the members thereof in their capacity as such; (e) the Second Lien Ad Hoc Committee and the members thereof in their capacity as such; (f) the Indenture Trustees; (g) with respect to each of the foregoing Entities in clauses (a) through (f), such Entities' affiliates, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, in each case in their capacity as such, and only if serving in such capacity; and (h) the Debtors' and Reorganized Debtors' officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, in each case in their capacity as such, and only if serving in such capacity.

162.    <u>Reorganized Calpine</u>: Calpine or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

163.    <u>Reorganized Calpine Bylaws</u>: The bylaws of Reorganized Calpine, substantially in the form contained in the Plan Supplement to be in effect upon the Effective Date.

164.    <u>Reorganized Calpine Charter</u>:    The amended and restated certificate of incorporation of Reorganized Calpine, substantially in the form contained in the Plan Supplement to be in effect upon the Effective Date.

19

165.    Reorganized Debtors:    The Debtors or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

166.    Roll-Up Transaction: A dissolution or winding up of the corporate existence of a Reorganized Debtor under applicable state law or the consolidation, merger, contribution of assets, or other transaction in which a Reorganized Debtor merges with or transfers substantially all of its assets and liabilities to another Reorganized Debtor or one or more of their Affiliates, on or after the Effective Date.

167.    Schedules:    The schedules of assets and liabilities, schedules of executory contracts, and statement of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

168.    Second Circuit: The United States Court of Appeals for the Second Circuit.

169.    Second Lien Ad Hoc Committee:    The Unofficial Committee of Second Lien Debtholders.

170.    Second Lien Debt Claim: Any Claim (not including any Second Lien Unsecured Makewhole Claims) on account of the: (a) Second Priority Senior Secured Floating Rate Notes Due 2007; (b) 8.5% Second Priority Senior Secured Notes Due 2010; (c) 8.75% Second Priority Senior Secured Notes Due 2013; (d) 9.875% Second Priority Senior Secured Notes Due 2011; and (e) Second Priority Senior Secured Term Loan Due 2007.

171.    Second Lien Makewhole Claim: Any Makewhole Claim on account of the: (a) Second Priority Senior Secured Floating Rate Notes Due 2007; (b) 8.5% Second Priority Senior Secured Notes Due 2010; (c) 8.75% Second Priority Senior Secured Notes Due 2013; (d) 9.875% Second Priority Senior Secured Notes Due 2011; and (e) Second Priority Senior Secured Term Loan Due 2007.

172.    Second Lien Secured Makewhole Claim:    Any Second Lien Makewhole Claim determined to be Secured by a Bankruptcy Court order.

173.    Second Lien Unsecured Makewhole Claim: Any Second Lien Makewhole Claim determined not to be Secured by a Bankruptcy Court order.

174.    Second Priority Senior Secured Floating Rate Notes Due 2007:    The $500,000,000 Second Priority Senior Secured Floating Rate Notes due 2007, issued by Calpine pursuant to that certain indenture dated as of July 15, 2003, between Calpine and Wilmington Trust Company, as trustee.

175.    Second Priority Senior Secured Term Loan Due 2007: The $750,000,000 Senior Secured Term Loans due 2007, issued pursuant to that certain credit agreement, dated as of July 16, 2003, among Calpine, as borrower, Goldman Sachs Credit Partners, L.P., as sole lead arranger, sole bookrunner and administrative agent and the various co-arrangers, managing agents and lenders named therein.

176.   Secured:  When referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

177.   Securities Act:  The Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local law.

178.   Security:  As defined in section 2(a)(1) of the Securities Act.

179.   Senior Note Claim:  Any Claim (including any Senior Note Makewhole Claims, but not including any Subordinated Debt Securities Claims) on account of the: (a) 7.625% Senior Notes Due 2006; (b) 7.75% Senior Notes Due 2009; (c) 7.875% Senior Notes Due 2008; (d) 8.75% Senior Notes Due 2007; and (e) 10.5% Senior Notes Due 2006.

180.   Senior Note Makewhole Claim:  Any Makewhole Claim on account of the: 7.625% Senior Notes Due 2006; 7.75% Senior Notes Due 2009; 7.875% Senior Notes Due 2008; 8.75% Senior Notes Due 2007; and 10.5% Senior Notes Due 2006.

181.   Servicer:  An indenture trustee, agent, servicer, or other authorized representative of Holders of Claims or Interests recognized by the Debtors.

182.   Solicitation Procedures Order:  That certain order entered by the Bankruptcy Court on **[XX]**, 2007, approving certain solicitation procedures for solicitation of votes on the Plan [Docket No. **[XX]**].

183.   Subordinated Debt Securities Claim:  Any Claim of the type described in and subject to subordination pursuant to section 510(b) of the Bankruptcy Code relating to the: (a) 4.0% Convertible Senior Notes Due 2006; (b) 4.75% Convertible Senior Notes Due 2023; (c) 6.00% Contingent Convertible Notes Due 2014; (d) 8.5% Senior Notes Due 2011; (e) 8.625% Senior Notes Due 2010; (f) 7.625% Senior Notes Due 2006; (g) 7.75% Senior Notes Due 2009; (h) 7.875% Senior Notes Due 2008; (i) 8.75% Senior Notes Due 2007; (j) 10.5% Senior Notes Due 2006; (k) ULC1 Notes; (l) ULC2 8.375% Senior Notes Due 2008; (m) ULC2 8.875% Senior Notes Due 2011; and (n) 7.75% Contingent Convertible Notes Due 2015.

184.   Subordinated Equity Securities Claim:  Any Claim of the type described in and subject to subordination pursuant to section 510(b) of the Bankruptcy Code relating to any Interest.

185.   Subordinated Note Claim:  Any Claim (not including any Subordinated Debt Securities Claims) on account of the 7.75% Contingent Convertible Notes Due 2015, issued by Calpine pursuant to that certain Indenture, dated as of August 10, 2000, between Calpine and Wilmington Trust Company, as trustee, as supplemented by the Third Supplemental Indenture, dated as of June 23, 2005.

21

186.   Supremacy Clause: Paragraph 2 of Article VI of the United States Constitution.

187.   ULC1 8.5% Senior Notes Due 2008: The $2,030,000,000 8.5% Senior Notes due May 1, 2008, issued pursuant to that certain Indenture, dated as of August 10, 2000, between Calpine Energy Finance ULC and Wilmington Trust Company, as trustee, as supplemented by the First Supplemental Indenture, dated as of September 28, 2000.

188.   ULC1 8.75% Senior Notes Due 2007: The (CAD) $200,000,000 8.75% Senior Notes due October 15, 2007, issued pursuant to that certain Amended and Restated Indenture, dated as of October 16, 2001, between Calpine Canada Energy Finance ULC and Wilmington Trust Company, as trustee.

189.   ULC1 Notes: The ULC1 8.5% Senior Notes Due 2008 and the ULC1 8.75% Senior Notes Due 2007.

190.   ULC1 Settlement: That certain settlement of disputes related to, among other things, the ULC1 8.5% Senior Notes Due 2007 and the ULC1 8.75% Senior Notes Due 2008, approved by a Bankruptcy Court order on [XX] [Docket No. [XX]].

191.   ULC1 Settlement Claim: All Claims (including those held by the Debtors as of the Petition Date) on account of the ULC1 Notes, pursuant to the terms of the CCAA Global and ULC1 Settlements.

192.   ULC2 8.375% Senior Notes Due 2008: The €175,000,000 8.375% Senior Notes due October 15, 2008, issued pursuant to that certain Indenture, dated as of October 18, 2001, between Calpine Canada Energy Finance I ULC and Wilmington Trust Company, as trustee.

193.   ULC2 8.875% Senior Notes Due 2011: The £200,000,000 8.875% Senior Notes due October 15, 2011, issued pursuant to that certain Indenture, dated as of October 18, 2001, between Calpine Canada Energy Finance II ULC and Wilmington Trust Company, as trustee.

194.   Unclaimed Distribution: Any distribution under the Plan on account of an Allowed Claim or Interest to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

195.   Uniform Commercial Code: The Uniform Commercial Code as in effect on the Effective Date, as enacted in the applicable state.

196.   Unimpaired: With respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

197.   Unsecured Claim: Any Senior Note Claim, General Note Claim, Subordinated Note Claim, ULC1 Settlement Claim, Canadian Guarantee Claim, Canadian Intercompany Claim, Rejection Damages Claim, General Unsecured Claim, Unsecured Makewhole Claim,

22

Unsecured Convenience Class Claim, Subordinated Debt Securities Claim, and Subordinated Equity Securities Claim.

198.    Unsecured Convenience Class Claim:    Any: (a) Unsecured Claim (including interest accrued only as of the Petition Date) that is $50,000 or less or (b) General Unsecured Claim in excess of $50,000 which the Holder thereof, pursuant to such Holder's ballot or such other election accepted by the Debtors elects to have reduced to the amount of $50,000 and to be treated as an Unsecured Convenience Class Claim; provided, however, that an Unsecured Convenience Class Claim does not include a Claim on account of publicly or privately held securities.

199.    Unsecured Makewhole Claim:    Any First Lien, Second Lien, or CalGen Unsecured Makewhole Claim.

200.    Voting Deadline: **[XX]**, 2007.

B.    Rules of Interpretation and Computation of Time:

1.    Rules of Interpretation: For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, whether or not Filed, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (e) unless otherwise specified, all references in the Plan to Articles are referenees to Articles of the Plan or to the Plan; (f) unless otherwise specified, all references in the Plan to exhibits are references to exhibits in the Plan Supplement; (g) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (h) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (j) unless otherwise set forth in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (k) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (l) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (m) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Cases, unless otherwise stated; and (n) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a

23

manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order.

      2.    Computation of Time.  In computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

C.    Reference to Monetary Figures: All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

D.    Reference to the Debtors or Reorganized Debtors: Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors shall mean the Debtors and Reorganized Debtors, as applicable, to the extent the context requires.

### ARTICLE II.
### ADMINISTRATIVE AND PRIORITY CLAIMS

      In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Facility Claims, Administrative Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in ARTICLE III.

A.    DIP Facility Claims: In full satisfaction, settlement, release, and discharge of and in exchange for each Allowed DIP Facility Claim, the Debtors shall either convert the DIP Facility into the Existing Exit Facility or pay the DIP Facility Claims in full in Cash.

B.    Administrative Claims: Subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code, in full satisfaction, settlement, release, and discharge of and in exchange for each Allowed Administrative Claim, each Holder thereof shall be paid in full in Cash in accordance with the terms of the applicable contract, if any.

C.    Priority Tax Claims: In full satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, unless otherwise agreed, each Holder thereof shall be paid in full in Cash pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.

### ARTICLE III.
### CLASSIFICATION AND TREATMENT
### OF CLAIMS AND INTERESTS

A.    Classification of Claims and Interests: All Claims and Interests, except DIP Facility Claims, Administrative Claims, and Priority Tax Claims, are classified in the Classes set forth in ARTICLE III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed

24

Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

    1.    Substantive Consolidation of Debtors: Pursuant to ARTICLE IV.A, the Plan provides for the substantive consolidation of the Estates into a single Estate for all purposes associated with Confirmation and Consummation. If the Bankruptcy Court authorizes the Debtors to substantively consolidate the Estates, each Class of Claims and Interests will be treated as against a single consolidated Estate without regard to the separate identification of the Debtors.

    2.    Identification of Non-Consolidated Debtors: If the Bankruptcy Court authorizes the Debtors to substantively consolidate less than all of the Estates, the Debtors may, in accordance with ARTICLE IV.A, proceed with separate Plans for any such non-consolidated Debtor, and each Class of Claims and Interests shall be treated as against each individual non-consolidated Debtor for voting and distribution purposes. The number following each Debtor in ARTICLE I.A.72 has been assigned to such Debtor for purposes of identifying each separate Plan to the extent the Bankruptcy Court orders substantive consolidation of less than all of the Estates.

    3.    Class Identification: Below is a chart assigning each Class a letter and, in some cases, a number for purposes of identifying each separate Class.

| Class | Claim or Interest Type |
|-------|------------------------|
| A-1 | First Lien Debt Claims |
| A-2 | Second Lien Debt Claims |
| A-3 | Other Secured Claims |
| B | Other Priority Claims |
| C-1 | Senior Note Claims |
| C-2 | General Note Claims |
| C-3 | Subordinated Note Claims |
| C-4 | ULC1 Settlement Claims |
| C-5 | Canadian Guarantee Claims |
| C-6 | Canadian Intercompany Claims |
| C-7 | Rejection Damages Claims |
| C-8 | General Unsecured Claims |
| C-9 | Unsecured Makewhole Claims |
| C-10 | Unsecured Convenience Class Claims |
| C-11 | Intercompany Claims |
| D | Subordinated Debt Securities Claims |

| Class | Claim or Interest Type |
|-------|------------------------|
| E-1 | Interests |
| E-2 | Subordinated Equity Securities Claims |
| E-3 | Intercompany Interests |

B.    Treatment of Classes of Claims and Interests

To the extent a Class contains Allowed Claims or Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below.

    1.    Classes 1A-1 through 273A-1—First Lien Debt Claims

        a.    Classification: Classes 1A-1 through 273A-1 consist of all First Lien Debt Claims, against the applicable Debtor.

        b.    Treatment: Each Allowed First Lien Debt Claim (not including any First Lien Secured Makewhole Claims), already has been paid in full in Cash pursuant to the First Lien Repayment Order. In satisfaction of each Allowed First Lien Secured Makewhole Claim (excluding any Claims for postpetition interest), each Holder thereof shall be paid in full in Cash.

        c.    Interest Accrued After the Petition Date: Allowed Claims in Classes 1A-1 through 273A-1 (including Allowed First Lien Secured Makewhole Claims) shall not include any interest.

    2.    Classes 1A-2 through 273A-2—Second Lien Debt Claims

        a.    Classification: Classes 1A-2 through 273A-2 consist of all Second Lien Debt Claims, against the applicable Debtor.

        b.    Treatment: In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Claim in Classes 1A-2 through 273A-2, each Allowed Second Lien Debt Claim shall be paid in full in Cash.

        c.    Interest Accrued After the Petition Date: Allowed Claims in Classes 1A-2 through 273A-2 shall include interest accrued after the Petition Date through the Interest Accrual Limitation Date at the contract rate determined by the Bankruptcy Court to the extent not already paid or waived pursuant to the Cash Collateral Order. Any portion of the Claims in Classes 1A-2 through 273A-2 consisting of Allowed Second Lien Secured Makewhole Claims shall not include interest.

    3.    Classes 1A-3 through 273A-3—Other Secured Claims

        a.    Classification: Classes 1A-3 through 273A-3 consist of all Other Secured Claims, against the applicable Debtor.

26

b.    Treatment: In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Claim in Classes 1A-3 through 273A-3, each such Allowed Claim shall be: (i) Reinstated; (ii) paid in full in Cash; or (iii) satisfied in full by a return to such Holder of the collateral securing such Allowed Claim.

c.    Interest Accrued After the Petition Date: Allowed Claims in Classes 1A-3 through 273A-3 shall include interest accrued after the Petition Date through the Interest Accrual Limitation Date at the contract rate determined by the Bankruptcy Court or, if there is no contract, then at the Federal Judgment Rate; provided, however, that Allowed CalGen Secured Makewhole Claims shall not include interest.

4.    Classes 1B through 273B—Other Priority Claims

a.    Classification: Classes 1B through 273B consist of all Other Priority Claims, against the applicable Debtor.

b.    Treatment: In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Claim in Classes 1B through 273B, each Holder thereof shall be paid in full in Cash.

c.    Interest Accrued After the Petition Date: Allowed Claims in Classes 1B through 273B shall include interest accrued after the Petition Date through the Interest Accrual Limitation Date at the Federal Judgment Rate.

5.    Class 1C-1—Senior Note Claims

a.    Classification: Class 1C-1 consists of all Senior Note Claims against Calpine.

b.    Treatment: In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Claim in Class 1C-1 (including any Allowed Senior Note Makewhole Claims), each Holder thereof shall receive a pro rata share of the New Calpine Common Stock Pool For Creditors until paid in full.

c.    Interest Accrued After the Petition Date: Allowed Claims in Class 1C-1 shall include interest accrued after the Petition Date through the Interest Accrual Limitation Date at the contract rate determined by the Bankruptcy Court; provided, however, that Allowed Senior Note Makewhole Claims shall not include interest.

6.    Class 1C-2—General Note Claims

a.    Classification: Class 1C-2 consists of all General Note Claims against Calpine.

b.    Treatment: In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Claim in Class 1C-2 (including any Allowed General Note Makewhole Claims), each Holder thereof shall receive a pro rata share of the New Calpine Common Stock Pool For Creditors until paid in full.

27

c.      Interest Accrued After the Petition Date: Allowed Claims in Class 1C-2 shall include unpaid interest accrued after the Petition Date through the Interest Accrual Limitation Date at the contract rate determined by the Bankruptcy Court; provided, however, that Allowed General Note Makewhole Claims shall not include interest.

7.      Class 1C-3—Subordinated Note Claims

a.      Classification:   Class 1C-3 consists of all Subordinated Note Claims against Calpine.

b.      Treatment: In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Claim in Class 1C-3, each Holder thereof shall receive a pro rata share of the New Calpine Common Stock Pool For Creditors until paid in full; provided, however, that the Holders of Allowed Subordinated Note Claims shall be deemed to consent to the distribution of any portion of their pro rata share of the New Calpine Common Stock to Holders of Allowed Senior Note Claims necessary to satisfy such Allowed Claims in full.

c.      Interest Accrued After the Petition Date: Allowed Claims in Class 1C-3 shall include interest accrued after the Petition Date through the Interest Accrual Limitation Date at the contract rate determined by the Bankruptcy Court.

8.      Class 1C-4—ULC1 Settlement Claims

a.      Classification: Class 1C-4 consists of all ULC1 Settlement Claims against Calpine.

b.      Treatment: In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Claim in Class 1C-4 (including any Claims for associated reasonable fees, costs, and expenses), each Holder thereof shall receive a pro rata distribution of the New Calpine Common Stock Pool For Creditors until paid in full, based upon the formula contained in the ULC1 Settlement, with the total amount of the ULC1 Settlement Claims not to exceed U.S. $3,505,187,751.61 and the total distribution amount on account of ULC1 Settlement Claims not to exceed an amount equal to (i) the principal amount outstanding on the ULC1 Notes (including any unpaid interest accrued prior to the Petition Date), plus (ii) postpetition interest accrued until the Interest Accrual Limitation Date at the contract rate, plus (iii) reasonable fees up to $8 million, all as set forth in the ULC1 Settlement.

c.      Interest Accrued After the Petition Date:  Allowed ULC1 Settlement Claims shall include interest accrued at the default contract rate (including interest on interest at the contract rate) from the Petition Date through the Interest Accrual Limitation Date, all as set forth in the ULC1 Settlement; provided, however, that such inclusion of interest shall not increase the total distribution limitation contained in the ULC1 Settlement.

28

JA 1423

9.    Classes 1C-5 and 248C-5—Canadian Guarantee Claims

     a.    Classification:  Classes 1C-5 and 248C-5 consist of all Canadian Guarantee Claims against Calpine and QCH, as applicable.

     b.    Treatment: In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Claim in Classes 1C-5 and 248C-5, each Holder thereof shall receive a pro rata share of the New Calpine Common Stock Pool For Creditors until paid in full after subtracting any payments received on account of the underlying obligation in the CCAA Proceedings.

     c.    Interest Accrued After the Petition Date: Allowed Claims in Classes 1C-5 and 248C-5 shall include interest accrued after the Petition Date through the Interest Accrual Limitation Date at the default rate provided in the applicable indenture or, if there is no indenture, then at the Federal Judgment Rate.

10.    Classes 1C-6 through 273C-6—Canadian Intercompany Claims

     a.    Classification:  Classes 1C-6 through 273C-6 consist of all Canadian Intercompany Claims, against the applicable Debtor.

     b.    Treatment: In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Claim in Classes 1C-6 through 273C-6, each Holder thereof shall receive a pro rata share of the New Calpine Common Stock Pool For Creditors until paid in full, subject to the cap contained in the CCAA Settlement.

     c.    Interest Accrued After the Petition Date: Allowed Claims in Classes 1C-6 through 273C-6 shall not include interest.

11.    Classes 1C-7 through 273C-7—Rejection Damages Claims

     a.    Classification:  Classes 1C-7 through 273C-7 consist of all Rejection Damages Claims, against the applicable Debtor.

     b.    Treatment: In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Claim in Classes 1C-7 through 273C-7, each Holder thereof shall receive a pro rata share of the New Calpine Common Stock Pool For Creditors until paid in full.

     c.    Interest Accrued After the Petition Date: Allowed Claims in Classes 1C-7 through 273C-7 shall include interest accrued after the Petition Date through the Interest Accrual Limitation Date at the Federal Judgment Rate.

12.    Classes 1C-8 through 273C-8—General Unsecured Claims

     a.    Classification:  Classes 1C-8 through 273C-8 consist of all General Unsecured Claims, against the applicable Debtor.

K&E 11469867.129

b.      Treatment: In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Claim in Classes 1C-8 through 273C-8, each Holder thereof shall receive a pro rata share of the New Calpine Common Stock For Creditors until paid in full.

c.      Interest Accrued After the Petition Date:  Unless otherwise agreed, Allowed Claims in Classes 1C-8 through 273C-8 shall include interest accrued after the Petition Date through the Interest Accrual Limitation Date at the Federal Judgment Rate unless otherwise ordered by the Bankruptcy Court before the Confirmation Hearing upon application by the Holder of such Claim.

d.      Election Rights: Each Holder of an Allowed Claim in Classes 1C-8 through 273C-8 may elect to be treated as a Holder of an Allowed Unsecured Convenience Class Claim in Classes 1C-10 through 273C-10, as applicable, by electing to reduce its Allowed Claim to $50,000 in complete satisfaction of such Allowed Claim. Any such election must be made on the Ballot, and except as may be agreed to by the Debtors or Reorganized Debtors, no Holder of a Claim can elect the treatment described below after the Voting Deadline. Upon such election, the Claim of such Holder shall be automatically reduced to $50,000.

13.    Classes 1C-9 through 273C-9—Unsecured Makewhole Claims

a.      Classification:  Classes 1C-9 through 273C-9 consist of all Unsecured Makewhole Claims, against the applicable Debtor.

b.      Treatment: In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Claim in Classes 1C-9 through 273C-9, each Holder thereof shall receive a pro rata share of the New Calpine Common Stock Pool For Creditors until paid in full.

c.      Interest Accrued After the Petition Date: Allowed Claims in Classes 1C-9 through 273C-9 shall not include any interest.

14.    Classes 1C-10 through 273C-10—Unsecured Convenience Class Claims

a.      Classification: Classes 1C-10 through 273C-10 consist of all Unsecured Convenience Class Claims, against the applicable Debtor.

b.      Treatment: In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Claim in Classes 1C-10 through 273C-10, each Holder thereof shall be paid in full in Cash.

c.      Interest Accrued After the Petition Date:  Allowed Claims in Classes 1C-10 through 273C-10 shall not include any interest accrued after the Petition Date.

30

JA 1425