**Appellants Brief Appendix Part 8**

after the Effective Date pursuant to Article IV.N of the Plan. The Reorganized Debtors may (but are not required to) request estimation for any Disputed Claim or Interest that is contingent or unliquidated, as set forth in Article IV.C of the Plan.

**Notwithstanding anything in the applicable Holder's Proof of Claim or otherwise to the contrary, the Holder of a Claim shall not be entitled to receive or recover a distribution under the Plan on account of a Claim in excess of the amount: (i) stated in the Holder's Proof of Claim, if any, as of the Distribution Record Date, plus interest thereon to the extent provided for by the Plan; (ii) if the Claim is denominated as contingent or unliquidated as of the Distribution Record Date, the amount that the Debtors, in consultation with the Creditors' Committee, elect to withhold on account of such Claim in the New Calpine Stock Reserve and set forth in the Plan Supplement, or such other amount as may be estimated by the Bankruptcy Court prior to the Confirmation Hearing; or (iii) if a Claim has been estimated, the amount deposited in the New Calpine Stock Reserve to satisfy such Claim after such estimation.**

For purposes of any shareholder vote occurring after the Effective Date, the Distribution Agent or Servicer, as applicable, shall be deemed to have voted any New Calpine Common Stock held in the New Calpine Stock Reserve in the same proportion as all outstanding shares properly cast in such shareholder vote.

d.      Tax Reporting Matters: Subject to definitive guidance from the Internal Revenue Service or an applicable court to the contrary (including the receipt by the Reorganized Debtors of a private letter ruling or the receipt of an adverse determination by the Internal Revenue Service upon audit, if not contested by the Reorganized Debtors), the Reorganized Debtors shall treat the New Calpine Stock Reserve as a single trust, consisting of separate and independent shares to be established with respect to each Disputed Claim or Interest, in accordance with the trust provisions of the Internal Revenue Code, and, to the extent permitted by law, shall report consistently with the foregoing for federal, state, and local tax purposes. All Holders of Claims and Interests shall report, for federal, state, and local tax purposes, consistently with the foregoing.

4.      Delivery of Distributions

a.      Record Date for Distributions: On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions pursuant to Article VII of the Plan shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. Notwithstanding the foregoing, if a Claim or Interest, other than one based on a publicly traded Certificate is transferred twenty or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

126

b. <u>Distribution Agent:</u> The Distribution Agent shall make all distributions required under the Plan, except that distributions to Holders of Allowed Claims and Interests governed by a separate agreement and administered by a Servicer shall be deposited with the appropriate Servicer, at which time such distributions shall be deemed complete, and the Servicer shall deliver such distributions in accordance with the Plan and the terms of the governing agreement.

c. <u>Delivery of Distributions in General:</u> Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Interests shall be made to Holders of record as of the Distribution Record Date by the Distribution Agent or a Servicer, as appropriate: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the signatory set forth on any of the Proofs of Claim or Interest Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim or Interest is Filed or if the Debtors have been notified in writing of a change of address); (iii) at the addresses set forth in any written notices of address changes delivered to the Distribution Agent after the date of any related Proof of Claim or Interest; (iv) at the addresses reflected in the Schedules if no Proof of Claim or Interest has been Filed and the Distribution Agent has not received a written notice of a change of address; or (v) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. Except as provided in Article IV.E of the Plan, distributions under the Plan on account of Allowed Claims and Interests shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim or Interest shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

d. <u>Accrual of Dividends and Other Rights:</u> For purposes of determining the accrual of dividends or other rights after the Effective Date, the New Calpine Common Stock shall be deemed distributed as of the Effective Date regardless of the date on which it is actually issued, dated, authenticated, or distributed even though the Reorganized Debtors shall not pay any such dividends or distribute such other rights until distributions of the New Calpine Common Stock actually take place. Except as specifically otherwise provided in the Plan, in no event shall interest accrue after the Interest Accrual Limitation Date on account of any Allowed Claim or Interest.

e. <u>Allocation Between Principal and Accrued Interest:</u> Except as otherwise provided in the Plan, distributions on account of Allowed Claims and Interests shall be treated as allocated first to principal and thereafter to any interest accrued through the Interest Accrual Limitation Date.

f. <u>Compliance Matters:</u> In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such

127

withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

g.    Foreign Currency Exchange Rate: Except as otherwise provided in the Plan or a Bankruptcy Court order, as of the Effective Date, any Unsecured Claim asserted in currency(ies) other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate as of Tuesday, December 20, 2005, as quoted at 4:00 p.m. (EDT), mid-range spot rate of exchange for the applicable currency as published in *The Wall Street Journal, National Edition*, on December 21, 2005.

h.    Fractional, De Minimis, Undeliverable, and Unclaimed Distributions.

(i)    Fractional Distributions: Notwithstanding any other provision of the Plan to the contrary, payments of fractions of shares of New Calpine Common Stock shall not be made and shall be deemed to be zero, and the Distribution Agent shall not be required to make distributions or payments of fractions of dollars. Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

(ii)    De Minimis Distributions: Neither the Distribution Agent nor any Servicer shall have any obligation to make a distribution on account of an Allowed Claim or Interest from the New Calpine Stock Reserve or otherwise if: (i) the aggregate amount of all distributions authorized to be made from such New Calpine Stock Reserve or otherwise on the Periodic Distribution Date in question is or has an economic value less than $10,000,000, based on Calpine's Total Enterprise Value, unless such distribution is a final distribution or (ii) if the amount to be distributed to the specific Holder of an Allowed Claim or Interest on the particular Periodic Distribution Date does not constitute a final distribution to such Holder and is or has an economic value less than $500.

(iii)    Undeliverable Distributions: If any distribution to a Holder of an Allowed Claim or Interest is returned to a Distribution Agent as undeliverable, no further distributions shall be made to such Holder unless and until such Distribution Agent is notified in writing of such Holder's then-current address, at which time all currently due missed distributions shall be made to such Holder on the next Periodic Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized

128

Debtors pursuant to Article VII.D.8.d of the Plan, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

(iv)    Reversion: Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the Reorganized Debtors and, to the extent such Unclaimed Distribution is New Calpine Common Stock, shall be deemed cancelled. Upon such revesting, the Claim or Interest of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary. The provisions of the Plan regarding undeliverable distributions and Unclaimed Distributions shall apply with equal force to distributions that are issued by the Debtors, made pursuant to any indenture or Certificate (but only with respect to the initial distribution by the Servicer to Holders that are entitled to be recognized under the relevant indenture or Certificate and not with respect to Entities to whom those recognized Holders distribute), notwithstanding any provision in such indenture or Certificate to the contrary and notwithstanding any otherwise applicable federal or state escheat, abandoned, or unclaimed property law.

i.    <u>Manner of Payment Pursuant to the Plan.</u> Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Reorganized Debtors by check or by wire transfer. Checks issued by the Distribution Agent or applicable Servicer on account of Allowed Claims and Interests shall be null and void if not negotiated within ninety days after issuance, but may be requested to be reissued until the distribution revests in the Reorganized Debtors pursuant to Article VII.D.8.d of the Plan. The Debtors or Reorganized Debtors, as applicable, may agree with any Holder of an Allowed Claim that is to receive New Calpine Common Stock under the Plan to satisfy such Allowed Claim with Cash generated from the sale of New Calpine Common Stock. The Reorganized Debtors, or one or more third-party brokers or dealers, may effectuate such sales of New Calpine Common Stock, and such New Calpine Common Stock sold shall be entitled to the exemption set forth in Article IV.B.2.a of the Plan.

j.    <u>Surrender of Cancelled Instruments or Securities.</u> On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a Certificate shall surrender such Certificate to the Distribution Agent or a Servicer (to the extent the relevant Claim or Interest is governed by an agreement and administered by a Servicer). Such Certificate shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate. No distribution of property pursuant to the Plan shall be made to or on behalf of any such Holder unless and until such Certificate is received by the Distribution Agent or the Servicer or the unavailability of such Certificate is reasonably established to the satisfaction of the Distribution Agent or the Servicer pursuant to the provisions of Article IVV.D.11 of the Plan. Any Holder who fails to surrender or cause to be surrendered such Certificate or fails to execute and deliver an affidavit of loss and indemnity acceptable to the Distribution Agent or

129

the Servicer prior to the first anniversary of the Effective Date, shall have its Claim or Interest discharged with no further action, be forever barred from asserting any such Claim or Interest against the relevant Reorganized Debtor or its property, be deemed to have forfeited all rights, Claims, and Interests with respect to such Certificate, and not participate in any distribution under the Plan; furthermore, all property with respect to such forfeited distributions, including any dividends or interest attributable thereto, shall revert to the Reorganized Debtors, notwithstanding any federal or state escheat, abandoned, or unclaimed property law to the contrary. Notwithstanding the foregoing paragraph, Article VII.D.10 of the Plan shall not apply to any Claims Reinstated pursuant to the terms of the Plan.

k.   Lost, Stolen, Mutilated, or Destroyed Debt Securities. Any Holder of Allowed Claims or Interests evidenced by a Certificate that has been lost, stolen, mutilated, or destroyed shall, in lieu of surrendering such Certificate, deliver to the Distribution Agent or Servicer, if applicable, an affidavit of loss acceptable to the Distribution Agent or Servicer setting forth the unavailability of the Certificate, and such additional indemnity as may be required reasonably by the Distribution Agent or Servicer to hold the Distribution Agent or Servicer harmless from any damages, liabilities, or costs incurred in treating such Holder as a Holder of an Allowed Claim or Interest. Upon compliance with this procedure by a Holder of an Allowed Claim or Interest evidenced by such a lost, stolen, mutilated, or destroyed Certificate, such Holder shall, for all purposes pursuant to the Plan, be deemed to have surrendered such Certificate.

5.   Claims Paid or Payable by Third Parties

a.   Claims Paid by Third Parties. KCC shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. Further, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

b.   Claims Payable by Third Parties. No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed

130

upon satisfaction on the Claims Register by KCC without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

    c.    Applicability of Insurance Policies. Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

6.    Treatment of Interests

Notwithstanding anything in the Plan to the contrary, any provision in the Plan pertaining to the allowance of, or to potential distributions to be received in respect of, Interests shall only apply to the extent consistent with the distribution provisions in Article III.B.17 and Article III.B.18 of the Plan.

K.    Effect of Confirmation of the Plan

1.    Discharge of Claims and Termination of Interests

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim or Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan. Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed Cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

2.    Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the

131

Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

    3.    Compromise and Settlement of Claims and Controversies

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such an Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other Entities.

    4.    Releases by the Debtors

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes a failure to perform the duty to act in good faith, with the care of an ordinarily prudent person and in a manner the Released Party reasonably believed to be in the best interests of the Debtors (to the extent such duty is imposed by applicable non-bankruptcy law) where such failure to perform constitutes willful misconduct or gross negligence.**

    5.    Exculpation

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Claim, obligation, Cause of Action, or liability to one another or to any Exculpating Party for any Exculpated Claim, except for gross negligence or willful misconduct, but in all respects such Entities shall be entitled to**

reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Debtors (and each of their respective Affiliates, agents, directors, officers, employees, advisors, and attorneys) have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distributions of the securities pursuant to the Plan, and therefore are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

6.      Releases by Holders of Claims and Interests

On and after the Effective Date, Holders of Claims and Interests shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Debtors' Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than Claims or liabilities arising out of or relating to any act or omission of a Debtor, a Reorganized Debtor, or a Released Party that constitutes a failure to perform the duty to act in good faith, with the care of an ordinarily prudent person and in a manner the Debtor, the Reorganized Debtor, or the Released Party reasonably believed to be in the best interests of the Debtors (to the extent such duty is imposed by applicable non-bankruptcy law) where such failure to perform constitutes willful misconduct or gross negligence.

7.      Injunction

Except as otherwise expressly provided in the Plan or for obligations issued pursuant to the Plan, all Entities who have held, hold, or may hold Claims against the Released Parties and Exculpated Parties, and all Entities holding Interests, are permanently enjoined, from and after the Effective Date, from: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date, and notwithstanding an indication in a Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise; and (e) commencing or continuing in any manner

133

any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

8.    Protection Against Discriminatory Treatment

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom such Reorganized Debtors have been associated, solely because one of the Debtors has been a debtor under chapter 11, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Cases.

9.    Setoffs

Except as otherwise expressly provided for in the Plan, each Reorganized Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed by the Holder of a Claim or Interest, may setoff against any Allowed Claim or Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before any distribution is made on account of such Allowed Claim or Interest), any Claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action that such Reorganized Debtor may possess against such Holder. In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise.

10.    Recoupment

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

11.    Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article VII of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, and discharged (except for charging Liens of the Indenture Trustees to the extent the Indenture

K&E 11469896 47

**Trustee's fees and expenses are not paid pursuant to the Plan), and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.**

12.    Document Retention

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their current document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors in the ordinary course of business.

13.    Reimbursement or Contribution

If the Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date:    (a) such Claim has been adjudicated as noncontingent or (b) the relevant Holder of a Claim has Filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

L.    Allowance and Payment of Certain Administrative Claims

1.    Professional Claims

a.    Final Fee Applications

All final requests for payment of Claims of a Professional shall be Filed no later than forty-five days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court.

b.    Payment of Interim Amounts

Except as otherwise provided in the Plan and subject to Article XI.B.1 of the Plan, Professionals shall be paid pursuant to the Interim Compensation Order.

c.    Professional Fee Escrow Account

In accordance with Article IX.A.4 of the Plan, on the Effective Date, the Reorganized Debtors shall fund the Professional Fee Escrow Account with Cash equal to the aggregate Professional Fee Reserve Amount for all Professionals.  The Professional Fee Escrow Account shall be maintained in trust for the Professionals with respect to whom fees or expenses have been held back pursuant to the Interim Compensation Order.  Such funds shall not be considered property of the Reorganized Debtors.  The remaining amount of Professional Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account when such Claims are Allowed by a Bankruptcy Court order.  When all Professional Claims have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall be paid to the Reorganized Debtors.

d.    Professional Fee Reserve Amount

To receive payment for unbilled fees and expenses incurred through the Effective Date, on or before the Effective Date, the Professionals shall estimate their Accrued Professional Compensation prior

135

to and as of the Effective Date and shall deliver such estimate to the Debtors. If a Professional does not provide an estimate, the Reorganized Debtors may estimate the unbilled fees and expenses of such Professional; provided, however, that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional. The total amount so estimated as of the Effective Date shall comprise the Professional Fee Reserve Amount.

        e.     Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation incurred by the Reorganized Debtors. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

        f.     Substantial Contribution Compensation and Expenses

Except as otherwise specifically provided in the Plan, any Entity who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code (with the exception of the Indenture Trustees as set forth in Article IX.A.7 of the Plan) must File an application and serve such application on counsel for the Debtors or Reorganized Debtors, as applicable, and as otherwise required by the Bankruptcy Court and the Bankruptcy Code on or before the Administrative Claim Bar Date or be forever barred from seeking such compensation or expense reimbursement.

        g.     Indenture Trustee Fees

All reasonable fees and expenses of the Indenture Trustees (and their counsel) incurred in their capacities as members of the Creditors' Committee and in connection with Consummation shall be paid in full in Cash without a reduction to the recoveries of applicable Holders of Allowed Claims.

        2.     Other Administrative Claims

All requests for payment of an Administrative Claim must be Filed with KCC and served upon counsel to the Debtors or Reorganized Debtors, as applicable, on or before the Administrative Claim Bar Date. Any request for payment of an Administrative Claim pursuant to Article IX.B of the Plan that is not timely Filed and served shall be disallowed automatically without the need for any objection by the Debtors or the Reorganized Debtors. The Reorganized Debtors may settle and pay any Administrative Claim in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court. In the event that the Debtors or the Reorganized Debtors, as applicable, object to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

M.    Conditions Precedent to Confirmation and Consummation

1.    Conditions to Confirmation

The following are conditions precedent to Confirmation that must be satisfied or waived in accordance with Article X.C of the Plan.

> a.    The Bankruptcy Court shall have approved the Disclosure Statement, in a manner acceptable to the Debtors, as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

> b.    The proposed Confirmation Order shall be in form and substance acceptable to the Debtors.

2.    Conditions Precedent to Consummation

The following are conditions precedent to Consummation that must be satisfied or waived in accordance with Article X.C of the Plan:

> a.    The Bankruptcy Court shall have authorized the assumption and rejection of executory contracts and unexpired leases by the Debtors as contemplated by Article V of the Plan.

> b.    The New Credit Facility shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent to the Consummation thereof shall have been waived or satisfied in accordance with the terms thereof, and funding pursuant to the New Credit Facility shall have occurred.

> c.    The Confirmation Order shall have become a Final Order in form and substance acceptable to the Debtors.

> d.    The most current version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein (including the Reorganized Calpine Bylaws and the Reorganized Calpine Charter) shall have been Filed in form and substance acceptable to the Debtors.

> e.    The Confirmation Date shall have occurred.

> f.    The New Calpine Common Stock shall have been accepted for listing on a national securities exchange or for quotation on a national automated interdealer quotation system.

3.    Waiver of Conditions Precedent

The Debtors or the Reorganized Debtors, as applicable, in consultation with the Creditors' Committee and the Equity Committee, may waive any of the conditions to Confirmation or Consummation set forth in Article X of the Plan at any time, without any notice to parties-in-interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan. A failure to satisfy or waive any condition to Confirmation or Consummation may be asserted as a failure of Confirmation or

137

Consummation regardless of the circumstances giving rise to such failure (including any action or inaction by the party asserting such failure). The failure of the Debtors or Reorganized Debtors, as applicable, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

        4.     Effect of Non-Occurrence of Conditions to Consummation

Each of the conditions to Consummation must be satisfied or duly waived pursuant to Article X.C of the Plan, and Consummation must occur within 180 days of Confirmation, or by such later date established by Bankruptcy Court order. If Consummation has not occurred within 180 days of Confirmation, then upon motion by a party in interest made before Consummation and a hearing, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the Filing of such motion to vacate, the Confirmation Order may not be vacated if Consummation occurs before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated pursuant to Article X.D of the Plan or otherwise, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, including the discharge of Claims and termination of Interests pursuant to the Plan and section 1141 of the Bankruptcy Code and the assumptions, assignments, or rejections of executory contracts or unexpired leases pursuant to Article V of the Plan, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by such Debtor or any other Entity.

        5.     Satisfaction of Conditions Precedent to Confirmation

Upon entry of a Confirmation Order, each of the conditions precedent to Confirmation, as set forth in Article X.A of the Plan, shall be deemed to have been satisfied or waived in accordance with the Plan.

N.     Modification, Revocation Or Withdrawal Of The Plan

        1.     Modification and Amendments

Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, each of the Debtors expressly reserves its respective rights to revoke, withdraw, alter, amend, or modify materially the Plan with respect to such Debtor, one or more times, prior to Consummation. The Debtors, except as otherwise specified in the Plan, reserve the exclusive right to alter, amend, or modify materially the Plan, the Plan Supplement, or any exhibits included therein at any time prior to entry of the Confirmation Order and to solicit acceptances of any amendment to or modifications of the Plan, if necessary, through and until the Effective Date. After the entry of the Confirmation Order and prior to Consummation, the Debtors, in consultation with the Creditors' Committee, may initiate proceedings in the Bankruptcy Court to amend or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XI of the Plan. Upon its Filing, the Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours, at the Bankruptcy Court's website at www.nysb.uscourts.gov, and at the Debtors' private website at http://www.kccllc.net/calpine. The documents contained in the Plan Supplement are an integral part of the Plan and shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

                                                               **JA 1609**

2.    Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

3.    Revocation or Withdrawal of Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If a Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of such Debtor or any other Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

O.    Retention Of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.    Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.    Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including Cure or Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any executory contract or unexpired lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the Plan, any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.    Ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

139

5.    Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.    Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.    Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.    Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.    Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.    Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.    Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13.    Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII.E.1 of the Plan;

14.    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.    Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16.    Enter an order or Final Decree concluding or closing the Chapter 11 Cases;

17.    Adjudicate any and all disputes arising from or relating to distributions under the Plan;

18.    Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

140

19. Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

20. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

21. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22. Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

23. Enforce all orders previously entered by the Bankruptcy Court; and

24. Hear any other matter not inconsistent with the Bankruptcy Code.

P. Miscellaneous Provisions

1. Immediate Binding Effect

Subject to Article VII.B of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein, each Entity acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

2. Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

3. Payment of Statutory Fees

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

141

4.      Dissolution of Committees

Upon the Effective Date, the Creditors' Committee and the Equity Committee shall dissolve automatically, except with respect to applications for Professional Claims, and members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code.

5.      Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

6.      Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

JA 1613

7.    Service of Documents

a.    After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| Debtors | Counsel to Debtors |
|---|---|
| Calpine Corporation<br>717 Texas Avenue, Suite 1000<br>Houston, Texas 77002<br>Attn.:  Gregory L. Doody, Esq. | Kirkland & Ellis LLP<br>153 East 53rd Street<br>New York, New York 10022<br>Attn.:  Richard M. Cieri, Esq.<br>and<br>Kirkland & Ellis LLP<br>200 East Randolph Street<br>Chicago, Illinois 60601<br>Attn.:  Marc Kieselstein, P.C.<br>        David R. Seligman, Esq. |
| **United States Trustee** | **Counsel for the DIP Lenders** |
| Office of the United States Trustee<br>for the Southern District of New York<br>33 Whitehall Street, 21st Floor<br>New York, New York 10004<br>Attn.: Paul Schwartzberg, Esq. | Simpson Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, New York 10017<br>Attn.:  Peter V. Pantaleo, Esq.<br>        David J. Mack, Esq. |
| **Counsel to OCUC** | **Counsel to the Equity Committee** |
| Akin Gump Strauss Hauer & Feld LLP<br>590 Madison Avenue<br>New York, New York 10022-2524<br>Attn.:   Michael S. Stamer, Esq.<br>         Philip C. Dublin, Esq. | Fried, Frank, Harris, Shriver & Jacobson LLP<br>One New York Plaza<br>New York, New York 10004<br>Attn.:  Brad E. Scheler, Esq.<br>        Gary L. Kaplan, Esq. |
| **Counsel to Second Lien Ad Hoc Committee** | **Counsel to Lenders of New Credit Facility** |
| Paul Weiss Rifkind Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, New York 10019-6064<br>Attn.:   Alan W. Kornberg, Esq.<br>         Andrew N. Rosenberg, Esq.<br>         Elizabeth R. McColm, Esq. | Simpson Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, New York 10017<br>Attn.:  Peter V. Pantaleo, Esq.<br>        David J. Mack, Esq. |

b.    After the Effective Date, the Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

c.    In accordance with Bankruptcy Rules 2002 and 3020(c), within ten business days of the date of entry of the Confirmation Order, the Debtors shall serve the Notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties having been served with the Confirmation Hearing Notice; provided, however, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or

143

"forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. To supplement the notice described in the preceding sentence, within twenty days of the date of the Confirmation Order the Debtors shall publish the Notice of Confirmation once in The Wall Street Journal (National Edition). Mailing and publication of the Notice of Confirmation in the time and manner set forth in the this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

8.    Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

9.    Entire Agreement

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

10.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; provided, however, that corporate governance matters relating to Debtors or Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

11.    Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. Except as otherwise provided in the Plan, such exhibits and documents included in the Plan Supplement shall be Filed with the Bankruptcy Court on or before the Plan Supplement Filing Date. After the exhibits and documents are Filed, copies of such exhibits and documents shall have been available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' private website at http://www.kcclle.net/calpine or the Bankruptcy Court's website at www.nysb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

144                                                          JA 1615

12.    Nonseverability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (e) nonseverable and mutually dependent.

13.    Closing of Chapter 11 Cases

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

14.    Waiver or Estoppel

**Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, the Creditors' Committee or its counsel, the Equity Committee or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.**

15.    Conflicts

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

## ARTICLE V.
## STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN

The following is a brief summary of the Confirmation process. Holders of Claims and Interests are encouraged to review the relevant provisions of the Bankruptcy Code and to consult their own advisors.

A.    The Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to conduct the Confirmation Hearing to consider Confirmation. Section 1128(b) of the Bankruptcy Code provides that any party-in-interest may object to Confirmation.

JA 1616

B.    Confirmation Standards

To confirm the Plan, the Bankruptcy Court must find that the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. The Debtors believe that the Plan satisfies the requirements of section 1129 of the Bankruptcy Code for the following reasons:

1.    The Plan complies with the applicable provisions of the Bankruptcy Code;

2.    The Debtors, as Plan proponents, have complied with the applicable provisions of the Bankruptcy Code;

3.    The Plan has been proposed in good faith and not by any means forbidden by law;

4.    Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been or will be disclosed to the Bankruptcy Court, and any such payment made before Confirmation is reasonable, or if such payment is to be fixed after Confirmation, such payment is subject to the approval of the Bankruptcy Court as reasonable;

5.    With respect to each Impaired Class of Claims or Interests, either each Holder of a Claim or Interest in such Class has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated on such date under chapter 7 of the Bankruptcy Code;

6.    Each Class of Claims or Interests that is entitled to vote on the Plan either has accepted the Plan or is not Impaired under the Plan, or the Plan can be confirmed without the approval of each voting Class pursuant to section 1129(b) of the Bankruptcy Code;

7.    Except to the extent that the Holder of a particular Claim will agree to a different treatment of such Claim, the Plan provides that Allowed Administrative and Allowed Other Priority Claims will be paid in full;

8.    At least one Class of Impaired Claims or Interests will accept the Plan, determined without including any acceptance of the Plan by any Insider holding a Claim in such Class;

9.    Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors, unless such liquidation or reorganization is proposed in the Plan;

10.    All fees of the type described in section 1930 of the Judicial Code, including the fees of the United States Trustee, will be paid as of the Effective Date;

11.    The Plan addresses payment of retiree benefits in accordance with section 1114 of the Bankruptcy Code; and

12.    All transfers of property under the Plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

146

C.     Best Interests of Creditors Test/Liquidation Analysis and Valuation Analysis

Under the Bankruptcy Code, confirmation of a plan also requires a finding that the plan is in the "best interests" of creditors. Under the "best interests" test, the Bankruptcy Court must find (subject to certain exceptions) that the Plan provides, with respect to each Impaired Class, that each Holder of an Allowed Claim or Interest in such Impaired Class has accepted the Plan, or will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

The analysis under the "best interests" test requires that the Bankruptcy Court determine what Holders of Allowed Claims and Interests in each Impaired Class would receive if the Debtors' Chapter 11 Cases were converted to liquidation cases under chapter 7 of the Bankruptcy Code, and the Bankruptcy Court appointed a chapter 7 trustee to liquidate all of the Debtors' assets into Cash. The Debtors' "liquidation value" would consist primarily of unencumbered and unrestricted Cash held by the Debtors at the time of the conversion to chapter 7 cases, and the proceeds resulting from the chapter 7 trustee's sale of the Debtors' remaining unencumbered assets. The gross Cash available for distribution would be reduced by the costs and expenses incurred in effectuating the chapter 7 liquidation and any additional Administrative Claims incurred during the chapter 7 cases.

The Bankruptcy Court then must compare the value of the distributions from the proceeds of the hypothetical chapter 7 liquidation of the Debtors (after subtracting the chapter 7-specific claims and administrative costs) with the value to be distributed to the Holders of Allowed Claims and Interests under the Plan. It is possible that in a chapter 7 liquidation, Claims and Interests may not be classified in the same manner as set forth in the Plan. In a hypothetical chapter 7 liquidation of the Debtors' assets, the rule of absolute priority of distribution would apply, *i.e.*, no junior Creditor would receive any distribution until payment in full of all senior Creditors, and no Holder of an Interest would receive any distribution until all Creditors have been paid in full. Therefore, in a hypothetical chapter 7 liquidation, the Debtors' available assets generally would be distributed to Creditors and Interest Holders in the following order: DIP Facility Claims; Secured Claims; Administrative Claims; Priority Tax Claims; Other Priority Claims; Unsecured Claims; debt expressly subordinated by its terms or by Bankruptcy Court order; and Interests.

Of the foregoing groups of Claims, the DIP Facility Claims, Secured Claims, Administrative Claims, Priority Tax Claims, and Other Priority Claims are "Unimpaired" under the Plan, meaning that the Plan generally leaves their legal, equitable, and contractual rights unaltered. As a result, Holders of such Claims are deemed to accept the Plan. The remainder of the Classes of Claims and Interests are "Impaired" under the Plan and are entitled to vote on the Plan. Because the Bankruptcy Code requires that Impaired Creditors either accept the Plan or receive at least as much under the Plan as they would in a hypothetical chapter 7 liquidation, the operative "best interests" inquiry in the context of the Plan is whether in a chapter 7 liquidation, after accounting for recoveries by Secured, Administrative, and Priority Creditors, the Impaired Creditors and Interest Holders will receive more or less than under the Plan. If the probable distribution to Impaired Creditors and Interest Holders under a hypothetical chapter 7 liquidation is greater than the distributions to be received by such Holders under the Plan, then the Plan is not in the best interests of Impaired Creditors and Interest Holders.

Based upon the conclusions set forth in the Liquidation Analysis and the Valuation Analysis, the Debtors believe that the value of distributions, if any, in a hypothetical chapter 7 liquidation to Holders of Allowed Unsecured Claims and Interests would be less than the value of distributions to such Holders under the Plan.

147

1.    Liquidation Analysis

The first step in the "best interests" analysis requires determining what Holders of Allowed Claims and Interests in each Impaired Class would receive if the Debtors' Chapter 11 Cases were converted to liquidation cases under chapter 7 of the Bankruptcy Code. To that end, the Debtors and their Professionals have prepared the Liquidation Analysis. The Liquidation Analysis, along with certain notes related to the Liquidation Analysis, is included in the Plan Supplement and is incorporated by reference in the Disclosure Statement. Please review the full text of the Liquidation Analysis for further information.

As stated in further detail in the Liquidation Analysis and the accompanying notes, the Debtors believe that any hypothetical liquidation analysis is necessarily speculative. The determination of the costs of, and proceeds from, the hypothetical liquidation of the Debtors' assets is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtors and their advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual chapter 7 liquidation. The Debtors and their advisors prepared the Liquidation Analysis for the sole purpose of generating a reasonable good-faith estimate of the proceeds that would be generated if the Debtors' assets were liquidated in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by independent accountants. NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.

In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of Claims listed on the Debtors' Schedules and Proofs of Claim Filed to date. In addition, the Liquidation Analysis includes estimates of Allowed Claims not currently asserted in the Chapter 11 Cases, but which could be asserted and Allowed in a chapter 7 liquidation, including Administrative Claims, wind-down costs, trustee fees, tax liabilities, and certain lease and contract rejection damages Claims. To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims set forth in the Liquidation Analysis. The Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and Interests under the Plan. NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTORS. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY AND SIGNIFICANTLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.

2.    Valuation Analysis

a.    Introduction

The next step in the "best interests" analysis is a comparison of what Holders of Allowed Claims and Interests in each Impaired Class would receive in a hypothetical chapter 7 liquidation with the estimated value of distributions to such Holders under the Plan. Because certain distributions contemplated by the Plan are composed of equity in the Reorganized Debtors, the Debtors determined it was necessary to estimate the reorganized value of their businesses. Accordingly, the Debtors directed Miller Buckfire to prepare the Valuation Analysis of the Reorganized Debtors. This discussion of the

148

Valuation Analysis should be read in conjunction with the discussion of the risk factors contained in
Article VI.

In preparing the Valuation Analysis, Miller Buckfire, among other things: reviewed certain recent
publicly available financial results of the Debtors; reviewed certain internal financial and operating data
of the Debtors; discussed with certain senior executives the current operations and prospects of the
Debtors; reviewed certain operating and financial forecasts prepared by the Debtors, including the
Projections discussed below; discussed with certain senior executives of the Debtors key assumptions
related to the Projections; prepared discounted cash flow analyses based on the Projections, utilizing
various discount rates; considered the market value of certain publicly-traded companies in businesses
reasonably comparable to the operating business of the Debtors; considered certain economic and
industry information relevant to the operating business of the Debtors; and conducted such other analyses
as Miller Buckfire deemed necessary under the circumstances. In preparing the Valuation Analysis,
Miller Buckfire also considered a range of other issues, including, without limitation: the Reorganized
Debtors' capital structure; the impact of the Debtors restructuring and reorganization among competitors;
commodity price volatility; exogenous risks; and regulatory and legislative challenges. The Projections
used in the Valuation Analysis were adjusted for items that have changed since the Projections were
initially prepared, including: (i) adjustment for the inclusion of expected cash flows from the renegotiated
SCE contract and (ii) removal of cash flows from the Hog Bayou and Santa Rosa facilities, which the
Debtors expect to sell.

Miller Buckfire assumed, without independent verification, the accuracy, completeness, and
fairness of all of the financial and other information available to it from public sources or as provided to
Miller Buckfire by the Debtors or their representatives. Miller Buckfire did not make any independent
evaluation or appraisal of the Debtors' assets, nor did Miller Buckfire independently verify any of the
information it reviewed. Miller Buckfire has assumed that the Projections are true and that the Debtors or
their representatives reasonably prepared them on bases reflecting the best estimates and good faith
judgments of the Debtors' management as to future operating and financial performance as of the date of
their preparation, and that the Debtors have informed Miller Buckfire of all circumstances occurring since
such date that could make the Projections incomplete or misleading. To the extent the Valuation Analysis
is dependent upon the Reorganized Debtors' achievement of the Projections, and the assumption that
general financial and market conditions as of the Effective Date will not differ materially from those
prevailing as of the date of the Disclosure Statement, the Valuation Analysis must be considered
speculative. Miller Buckfire conducted the Valuation Analysis with the explicit understanding that it is
based on standards of assessment, including economic, political, legal, and other conditions, in existence
as of the date of this Disclosure Statement, that standards of assessment may change in the future, and tat
such changes could have a material impact (positive or negative) on its assessment of the valuation of the
Reorganized Debtors set forth in the Disclosure Statement. Miller Buckfire disclaims any responsibility
for any impact any such change may have on the assessment of the valuation of the Reorganized Debtors
set forth herein. Miller Buckfire does not make any representation or warranty as to the fairness of the
terms of the Plan.

In addition to the foregoing, Miller Buckfire relied upon the following assumptions in preparing
the Valuation Analysis: the Effective Date occurs on or about December 31, 2007; the Debtors have
access to the New Credit Facility as of the Effective Date; and the Debtors and their subsidiaries will have
an estimated $1.4 billion in excess Cash available for distribution on the Effective Date (the "Available
Cash"). This Available Cash excludes restricted Cash, certain Cash at project-financed subsidiaries that is
not available for distribution, and Cash that is required to be maintained by the Debtors for working
capital and collateral needs. The Projections used in the Valuation Analysis also assume that all of the
Debtors' NOLs will be available to the Reorganized Debtors, subject to any limitations under federal
income tax laws. The Projections used in the Valuation Analysis also assume that general financial and

149