UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

In re:                                                    :    Chapter 11
                                                          :
CALPINE CORPORATION, ET AL.,                              :    Case No. 05-60200 (BRL)
                                                          :
                                Debtors.                  :    (Jointly Administered)

-----------------------------------------------------------------------x

HSBC BANK USA, NATIONAL ASSOCIATION, AS          :
INDENTURE TRUSTEE, THE BANK OF NEW YORK,         :
AS ADMINISTRATIVE AGENT, WILMINGTON              :    Case No. 1:07-cv-03088 (GBD)
TRUST FSB, AS INDENTURE TRUSTEE,                 :
WILMINGTON TRUST COMPANY, AS                     :
ADMINISTRATIVE AGENT, WILMINGTON TRUST           :
COMPANY AS COLLATERAL AGENT, AND                 :
MANUFACTURERS & TRADERS TRUST                    :
COMPANY, AS INDENTURE TRUSTEE                     :
                                                 :
                                Appellants,       :
                                                 :
                   - against -                   :
                                                 :
CALPINE CORPORATION, THE OFFICIAL                :
COMMITTEE OF UNSECURED CREDITORS OF              :
CALPINE CORPORATION, AND THE OFFICIAL            :
COMMITTEE OF EQUITY SECURITY HOLDERS             :
                                                 :
                                Appellees.        :

-----------------------------------------------------------------------x

CALPINE CORPORATION, THE OFFICIAL                :
COMMITTEE OF UNSECURED CREDITORS OF              :
CALPINE CORPORATION, AND THE OFFICIAL            :
COMMITTEE OF EQUITY SECURITY HOLDERS             :
                                                 :
                                Appellants,       :
                                                 :
                   - against -                   :
                                                 :
HSBC BANK USA, NATIONAL ASSOCIATION, AS          :
INDENTURE TRUSTEE, THE BANK OF NEW YORK,         :
AS ADMINISTRATIVE AGENT, WILMINGTON              :
TRUST FSB, AS INDENTURE TRUSTEE,                 :
WILMINGTON TRUST COMPANY, AS                     :
ADMINISTRATIVE AGENT, WILMINGTON TRUST           :
COMPANY AS COLLATERAL AGENT, AND                 :
MANUFACTURERS & TRADERS TRUST                    :
COMPANY, AS INDENTURE TRUSTEE                     :
                                                 :
                                Appellees.        :

-----------------------------------------------------------------------x

---

## RESPONSE BRIEF OF THE OFFICIAL COMMITTEE
## OF EQUITY SECURITY HOLDERS

---

**FRIED, FRANK, HARRIS, SHRIVER**
**    & JACOBSON LLP**

Brad Eric Scheler (BS-8019)
Gary Kaplan (GK-4542)
Michael de Leeuw (MD-8479)
Adrian Feldman (AF-2478)
One New York Plaza
New York, NY 10004
Telephone:   (212) 859-8000
Facsimile:   (212) 859-4000

Counsel to the Official Committee of Equity Security Holders

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT ....................................................................................................................3

I.  THE BANKRUPTCY COURT PROPERLY HELD THAT THE
    CALGEN LENDERS ARE NOT ENTITLED TO MAKE-WHOLE
    PREMIUMS UNDER THE TERMS OF THE CALGEN INDENTURES.........................3

II.  THE BANKRUPTCY COURT PROPERLY HELD THAT THE
     CALGEN LENDERS ARE NOT ENTITLED TO A SECURED CLAIM
     FOR BREACH OF CONTRACT DAMAGES. ....................................................5

III.  TO THE EXTENT THIS COURT DETERMINES THE CALGEN
      LENDERS ARE ENTITLED TO A DAMAGE CLAIM, IT SHOULD
      UPHOLD THE BANKRUPTCY COURT'S CALCULATION OF
      DAMAGES.......................................................................................8

IV.  THE BANKRUPTCY COURT PROPERLY AUTHORIZED THE
     DEBTORS TO REPAY THE CALGEN SECURED DEBT OUTSIDE A
     PLAN OF REORGANIZATION. .................................................................11

V.  THE PRIMING OF THE CALGEN LENDERS' PRE-PETITION LIENS
    IS NOT GROUNDS TO VACATE THE DIP REFINANCING ORDER .....................13

CONCLUSION..............................................................................................16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re 139-141 Owners Corp.*,
306 B.R. 763 (Bankr. S.D.N.Y. 2004)................................................................7

*In re 139-141 Owners Corp* ,
313 B.R. 364 (Bankr. S.D.N.Y. 2004)................................................................7

*In re 360 Inns, Ltd.*,
76 B.R. 573 (Bankr. N.D. Tex. 1987)................................................................9

*In re AE Hotel Venture*,
321 B.R. 209 (Bankr. N.D. Ill. 2005) ...............................................................6

*In re Adelphia Commc'ns. Corp.*,
342 B.R. 142 (Bankr. S.D.N.Y. 2006)...............................................................5

*In re Amber Lingerie, Inc.*,
30 B.R. 736 (Bankr. S.D.N.Y. 1983)................................................................12

*In re Chateaugay Corp.*,
973 F.2d 141 (2d Cir. 1992)............................................................................12

*In re Chicago, M. S. P. & P. R. Co.*,
791 F.2d 524 (7th Cir. 1986) ...........................................................................7

*Cont'l Securities Corp. v. Shenandoah Nursing Home Partnership*,
188 B.R. 205 (Bankr. W.D. Va. 1995) ...........................................6, 14 n. 5

*Cont'l Securities Corp. v. Shenandoah Nursing Home Partnership,*,
193 B.R. 769 (Bankr. W.D. Va, 1995) ........................................................11

*Cybor Corp. v. FAS Techs., Inc.*,
138 F.3d 1448 (Fed. Cir. 1998).......................................................................10

*Debentureholders Protective Committee of Cont'l Investment Corp v. Continental Investment Corp.*,
679 F.2d 264 (1st Cir. 1982)..........................................................................7-8

*Jackson Heights Care Ctr. v. Rehabilitation and Health Care Ctr.*,
No. 2006-02874 slip op., 39.A.D.3d 477  (2d Dept. Apr. 3, 2007) ..............................4

*In re LHD Realty Corp.*,
726 F.2d 327 (7th Cir. 1984) ...........................................................................4

*Law Debenture Trust Co. v. Calpine Corp. (In re Calpine)*,
356 B.R. 585 (Bankr. S.D.N.Y. 2007).............................................................13

*Official Committee of Unsecured Creditors v. Dow Chemical Corp. (In re Dow Corning Corp.),*
    456 F.3d 668 (6th Cir. 2006) .................................................................6, 7

*Project Hope v. M/V Ibn Sina,*
    250 F.3d 67 (2d Cir. 2001)................................................................................10

*Raleigh v. Illinois Department of Revenue,*
    530 U.S. 15 (2000)................................................................................14 n. 5

*In re Ridgewood Apartments,*
    174 B.R. 712 (Bankr. S.D. Ohio 1994)................................................................5

*Ruskin v. Griffiths,*
    269 F.2d 827 (2d Cir. 1959), *cert denied,* 361 U.S. 947 (1960) ...................................8

*In re Skyler Ridge,*
     80 B.R. 504-07 (Bankr. C.D. Cal. 1987) .......................................................9

*United States ex rel. Rural Electrification Admin. v. Wabash Valley Power Association (In re Wabash Valley Power Association),*
    167 B.R. 885 (Bankr. S.D. Ind. 1994) ...........................................................12

*Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.,*
    1 N.Y. 3d 470  (N.Y. 2004) ...........................................................................4

*In re Vest Associates,*
    217 B.R. 696 (Bankr. S.D.N.Y. 1998).............................................................6

## FEDERAL STATUTES

11 U.S.C. 363(b)(1) .........................................................................................12

11 U.S.C. § 364(d)(1) .......................................................................................14

The Official Committee of Equity Security Holders (the "Equity Committee") of Calpine Corporation, et al. (the "Debtors") respectfully submits this response brief in connection with the appeals from the Bankruptcy Court's Opinion, DIP Refinancing Order and Repayment Order.[1]

## PRELIMINARY STATEMENT

Stripped to its essence, the issue for this Court to decide is whether the Bankruptcy Court erred in awarding the CalGen Lenders damages for breach of unenforceable no-call provisions in the CalGen Indentures. As set forth in the Equity Committee's Opening Brief, the Bankruptcy Court properly held that (i) the no-call provisions in the Indentures barring voluntary prepayment are unenforceable against the Debtors, (ii) the CalGen Secured Debt had been accelerated upon the Debtors' bankruptcy filing, making any repayment a mandatory repayment at maturity, and (iii) the express language of the CalGen Indentures do not provide for a make-whole premium upon repayment prior to April 1, 2007. Given these facts, neither the plain language of the CalGen Indentures nor applicable law entitles the CalGen Lenders to anything more than the repayment of principle plus any accrued and unpaid interest. Accordingly, the Bankruptcy Court's award of expectations damages must be reversed and the CalGen Lenders' demand for a greater recovery must fail.

The CalGen Lenders do not dispute that there is no express provision in the CalGen Indentures entitling them to make-whole premiums or any other penalties or damages upon repayment prior to April 1, 2007. See Brief of Appellants HSBC USA, National Association, as Indenture Trustee [Docket No. 15] at 7; see Brief of Appellants Wilmington Trust FSB, as

---

[1]    Capitalized defined terms used herein have the same meaning as set forth in the Equity Committee's opening brief on appeal (the "Opening Brief") unless otherwise specified.

Administrative Agent [Docket No. 18] at 8-9; see Brief of Appellants Manufactures & Traders Trust Company [Docket No. 27] at 11.  Nevertheless, they argue that they are entitled to a secured claim for make-whole premiums as well as a secured claim for breach of contract damages.  Such arguments stand in direct contravention to the unambiguous language of the CalGen Indentures and applicable provisions of the Bankruptcy Code.  The CalGen Lenders cannot use CalGen's solvency to modify the terms of CalGen Indentures to create favorable rights beyond those that were expressly bargained for when the agreements were negotiated.  The CalGen Lenders fail to recognize that in negotiating the terms of the CalGen Indentures, they failed to obtain a contractual right to a premium or penalty upon acceleration of the underlying debt.  The Bankruptcy Code cannot be used to provide the CalGen Lenders with benefits that they did not obtain in the negotiations over the terms of the Indentures.

Even were this Court to agree with the Bankruptcy Court that the CalGen Lenders are entitled to an award of damages, the Bankruptcy Court correctly determined that the make-whole amounts in the agreements for later repayment are the appropriate way to quantify damages.  Make-whole premiums are included in agreements precisely to compensate lenders for early repayment.  There is no better indicator of appropriate damages than the amount agreed to by lenders when lending money.  In addition, in the event the CalGen Lenders are entitled to damages, as the Bankruptcy Court properly held, because the express terms of the CalGen Indentures do not provide damages, the CalGen Lenders have an unsecured claim.  Accordingly, should this Court determine that damages are even appropriate, the Bankruptcy Court's damage calculation should not be disturbed on appeal.

Lastly, the liens granted pursuant to the Refinancing Facility do not alter or impair the rights of the CalGen Lenders as their liens on disputed and unpaid amounts are adequately

protected.  This Court has previously held that postponing a determination on whether the

Debtors were obligated for additional amounts to lenders being repaid did not impair the rights

of the secured debtholders.  The CalGen Lenders have put forth no reason why this Court should

stray from such logic now.

For the reasons set forth herein, the Bankruptcy Court's award of damages should be

reversed but the decision should otherwise be affirmed.[2]

### ARGUMENT

I.    THE BANKRUPTCY COURT PROPERLY HELD THAT THE CALGEN LENDERS
ARE NOT ENTITLED TO MAKE-WHOLE PREMIUMS UNDER THE TERMS OF
THE CALGEN INDENTURES.

The CalGen Lenders' contention that repayment of the CalGen Secured Debt entitles

them to a premium is belied by the plain language of the CalGen Indentures.  As the Bankruptcy

Court correctly found, the CalGen Indentures do not provide for a make-whole premium upon

repayment of debt during the no-call periods. DA-Tab A, Opinion at 7.[3]  Likewise, none of the

CalGen Indentures provide for a make-whole premium upon the repayment of debt accelerated

by a bankruptcy filing.  DA-Tab A, Opinion at 8.  In light of these omissions, the Bankruptcy

Court properly recognized, and the CalGen Lenders do not deny, that the express language of the

CalGen Indentures does not require a make-whole premium upon repayment prior to April 1,

2007.

Despite the umabiguous language in the CalGen Indentures, the CalGen Lenders assert

that they are entitled to make-whole premiums under the First Lien Indentures and the Second

---

[2]    The Equity Committee also joins in the arguments contained in the response briefs filed concurrently
herewith by the Debtors and the Official Committee of Unsecured Creditors.

[3]    The Equity Committee's citations to the record refer to the opening appendix filed by the Debtors-
Appellants on June 1, 2007, using the format "DA - Tab __."

Lien Indentures because each of these agreements provides for a make-whole premium upon voluntary prepayment of debt during the two years following expiration of the no-call period. See Brief of Appellants Wilmington Trust FSB, as Administrative Agent [Docket No. 18] at 6; see Brief of Appellants HSBC USA, National Association, as Indenture Trustee [Docket No. 15] at 9. According to the CalGen Lenders, since the indentures included make-whole premiums for prepayment made after the no-call periods, they must have intended that an even earlier prepayment (i.e., a prepayment during the no-call period) would also result in liability for a make-whole premium. See Brief of Appellants Wilmington Trust FSB, as Administrative Agent [Docket No. 18] at 22-23; see Brief of Appellants HSBC USA, National Association, as Indenture Trustee [Docket No. 15] at 32-33.

The CalGen Lenders' argument is a thinly veiled attempt to rewrite the plain language of the CalGen Indentures. Under New York contract law, a court discerns the intent of the parties from the plain the language of the contract, provided that such language is clear and unambiguous. Jackson Heights Care Ctr. v. Rehab and Health Care Ctr., No. 2006-02874, slip op. at 2, 39 A.D.3d 477 (2d Dept. Apr. 3, 2007)("When interpreting a contract, a court determines the intent of the parties from within the four corners of the contract…."); Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co., 1 N.Y. 3d 470, 475 (N.Y. 2004). Here, the terms of the CalGen Indentures clearly provide that a make-whole premium is only triggered by voluntary prepayment within a two-year time frame after the no-call period expires. Repayment of the CalGen Secured Debt prior to April 1, 2007 simply does not fall within this scenario.

Not only was repayment made during the no-call periods, but the repayment was also a payment of matured debt that had been accelerated by virtue of the Debtors' bankruptcy filing. In re LHD Realty Corp., 726 F.2d 327, 330-31 (7th Cir. 1984) ("acceleration, by definition,

- 4 -

advances the maturity date of the debt so that payment thereafter is not prepayment but instead is payment made after maturity."); In re Ridgewood Apartments, 174 B.R. 712, 720 (Bankr. S.D. Ohio 1994) (stating that it would be "anomalous for acceleration of an obligation to be construed as a prepayment"). As set forth in the Opening Brief, the only possible way that the Debtors could be liable for a make-whole premium was if the CalGen Indentures provided for a premium upon involuntary repayment of accelerated debt during the no-call period. The CalGen Lenders cannot remedy their failure to negotiate for such a provision by asking this Court to read into the CalGen Indentures this or any other protection that the parties themselves did not include. In re Adelphia Commc'ns. Corp., 342 B.R. 142, 150 (Bankr. S.D.N.Y. 2006) (denying claim for premium that was not provided for under the agreement in question and stating, "if the bank lenders wished to contract for additional remedies (which likewise was their right, if their contract counterparty was agreeable to providing such), the bank lenders could have done so"). Accordingly, any argument by the CalGen Lenders to the contrary must fail.

II.     THE BANKRUPTCY COURT PROPERLY HELD THAT THE CALGEN LENDERS ARE NOT ENTITLED TO A SECURED CLAIM FOR BREACH OF CONTRACT DAMAGES.

The CalGen Lenders argue that the repayment of the CalGen Debt during the no-call period gives rise to a secured claim for damages. However, in determining that the CalGen Indentures do not provide for a make-whole premium upon repayment during the no-call period or as a result of acceleration, the Bankruptcy Court correctly held that the lack of such provisions precluded an award of secured damages pursuant to section 506(b) of the Bankruptcy Code.

Section 506(b) provides that an oversecured creditor with an allowed secured claim is entitled to "reasonable fees, costs and charges **provided for under the agreement** … under which such claim arose." (Emphasis added.) It is well settled that, absent a provision in the

- 5 -

underlying agreement authorizing the payment of such fees, costs or charges, the secured party is

prohibited from adding such amounts to its allowed claim under section 506(b).  See Cont'l Secs.

Corp. v. Shenandoah Nursing Home P'ship, 188 B.R. 205, 215-16 (Bankr. W.D. Va. 1995)

(affirming the bankruptcy court's decision that "there can be no prepayment fees, costs, or

charges allowed under the confirmed Plan as none are provided for in the note under § 506(b)");

In re Vest Assocs., 217 B.R. 696, 699-700 (Bankr. S.D.N.Y. 1998) ("because the note does not

include a damage or penalty provision in the event of the Debtor's prepayment, [the lenders]

cannot recover damages for any lost interest opportunity or other damages resulting from the

prepayment.").

      While the CalGen Lenders claim that they are entitled to breach of contract damages as

"charges" under section 506(b), damages for breach of a no-call provision cannot be

incorporated into a secured claim because a bar on prepayment does not amount to a charge

provided for under the agreement.  Id.  Thus, while liquidated damages provided for in the

agreement may come within the scope of charges under 506(b), actual damages do not.  In re AE

Hotel Venture, 321 B.R. 209, 217 (Bankr. N.D. Ill. 2005).  Since the CalGen Lenders cannot

look to a cognizable liquidated damages provision for repayment prior to April 1, 2007, there is

no basis for a secured damage claim under section 506(b).

      The CalGen Lenders further argue that they are entitled to secured claims for damages

because the CalGen Debtors' estates are solvent and able to pay creditors in full.  Specifically,

the CalGen Lenders assert that the Bankruptcy Court erred in applying section 506(b) because

operation of this section limits the amount of their secured claim.  The flaw in the CalGen

Lenders' arguments is evidenced by their reliance on Official Committee of Unsecured Creditors

v. Dow Chemical Corp. (In re Dow Corning Corp.), 456 F.3d 668 (6th Cir. 2006) for the

proposition that "the limits to recovery of costs under section 506(b) are inapplicable where the debtor is solvent."   Brief of Appellants HSBC Bank USA, National Association, as Indenture Trustee, and The Bank of New York, as Administrative Agent [Docket No. 15] at 36.  Not only is this proposition unreasonable in that it asks this Court to nullify the function of a provision of the Bankruptcy Code, it is completely unsupported by case law.  Dow Corning dealt exclusively with whether an unsecured creditor of a solvent debtor is entitled to recover attorneys' fees, costs and expenses pursuant to applicable contractual terms, not whether a secured creditor is entitled to a secured claim for fees, costs and charges that are not provided for under the relevant agreement.  In fact, the court in Dow Corning noted that, "when a debtor is solvent . . . the presumption is that a bankruptcy court's role is merely to enforce the contractual rights of the parties." In re Dow Corning Corp., 456 F.3d at 679.  The court went on to hold that "unsecured creditors may recover their attorneys' fees, costs and expenses from the estate of an insolvent debtor where they are permitted to do so by the terms of their contract and applicable non-bankruptcy law." Id. at 683.  Like Dow Corning, the other cases cited by the CalGen Lenders are misplaced as they have nothing to do with allowing a secured claim against a solvent debtor for damages that were not provided for – either explicitly or implicitly – pursuant to the contract. See In re 139-141 Owners Corp., 306 B.R. 763, 765 (Bankr. S.D.N.Y. 2004), *aff'd in part and vacated in part on other grounds,* 313 B.R. 364 (Bankr. S.D.N.Y. 2004) (finding that, under Bankruptcy Code section 1124(2), an oversecured creditor could not be deprived of its contractual right to default interest where estate assets were sufficient to pay all unsecured creditors in full with statutory interest); In re Chicago, M. S. P. & P. R. Co., 791 F.2d. 524, 528 (7th Cir. 1986) (reversing district court's award of interest payments not provided for in the underlying agreement); Debentureholders Protective Comm of Cont'l Investment Corp v.

Continental Investment Corp., 679 F.2d. 264, 269 (1st Cir. 1982); (finding that creditors of

solvent estate were entitled to post-petition interest); Ruskin v. Griffiths, 269 F.2d 827, 831-832

(2d Cir. 1959), *cert denied,* 361 U.S. 947 (1960) (holding that creditor was entitled to a 2%

increase in interest in the event of a default, because this increase was expressly provided for in

the contract.)  The solvency of CalGen cannot be used to create secured claims that are

unsupported by the CalGen Indentures and therefore contrary to section 506(b).

III.    TO THE EXTENT THIS COURT DETERMINES THE CALGEN LENDERS ARE
        ENTITLED TO A DAMAGE CLAIM, IT SHOULD UPHOLD THE BANKRUPTCY
        COURT'S CALCULATION OF DAMAGES.

    Although the Bankruptcy Court found that repayment of the CalGen Secured Debt prior

to April 1, 2007 did not result in a secured claim for the make-whole premiums set forth in the

CalGen Indentures, the Bankruptcy Court erred by awarding damages for breach of the no call

provision – a provision the Bankruptcy Court found unenforceable.  The Bankruptcy Court then

used the make-whole premiums as a proxy to award the CalGen Lenders an unsecured claim for

expectation damages based on the Debtors' alleged breach of the no-call provisions.  While the

Equity Committee maintains that the CalGen Lenders are not entitled to any measure of damages

whatsoever and the Bankruptcy Court's decision should be reversed,[4] to the extent this Court

determines that the CalGen Lenders are entitled to damages, it should not disturb the Bankruptcy

Court's calculation of damages on appeal.

    The CalGen Lenders argue that the Bankruptcy Court correctly found the Debtors liable

for breach of the no-call provisions but erred when it awarded expectation damages equal only to

---

[4]    As set forth in the Opening Brief, the Bankruptcy Court's award of expectation damages for breach of the
no-call provisions is belied by its findings (i) that the no-call provisions are unenforceable against the
Debtors and (ii) the CalGen Secured Debt had been accelerated upon the Debtors' bankruptcy filing

the make-whole premiums found in the CalGen Indentures.  The CalGen Lenders' arguments are specific to each tranche of CalGen Secured Debt, yet all urge the following methodology for calculating actual damages for lost interest income: the difference between (x) the contractual rate of interest to which the CalGen Lenders were entitled and (y) the rate the CalGen Lenders could obtain through a similar replacement investment. See Brief of Appellants HSBA USA, National Association, as Indenture Trustee [Docket No. 15] at 28. With respect to the First Lien Debt and the Second Lien Debt, the CalGen Lenders claim that the Bankruptcy Court should have used this formula to determine damages from the date of repayment through expiration of the no-call periods in addition to awarding damages in the amount of the make-whole premiums. See id.; see Brief of Appellants Wilmington Trust FSB, as Administrative Agent [Docket No. 18] at 23.  With respect to the Third Lien Debt, the CalGen Lenders claim that the Bankruptcy Court should have used this formula to determine the entire damages claim.   Both arguments are unavailing.

Upon considering the testimony and evidence presented at the hearing on the Repayment Motion, the Bankruptcy Court determined that the make-whole premiums found in the First Lien Indenture and the Second Lien Indenture, while not applicable as liquidated damages, provided a reasonable proxy for measuring actual damages.  This practice has been recognized and followed by other courts.  For example, in In re 360 Inns, Ltd., the bankruptcy court calculated damages for voluntary prepayment by borrowing a 10% make-whole premium applicable to involuntary prepayments from another provision in the agreement. 76 B.R. 573, 576 (Bankr. N.D. Tex. 1987).  Similarly, in Skyler Ridge, the bankruptcy court substituted a make-whole premium from an inapplicable prepayment provision for breach of contract damages.  80 B.R. 504-07 (Bankr. C.D. Cal. 1987).

The Bankruptcy Court's method of calculation is reviewed for abuse of discretion. Project Hope v. M/V Ibn Sina, 250 F.3d 67, 77 (2d Cir. 2001) ("We review the district court's choice of a measure of damages for an abuse of discretion."); Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1461 (Fed. Cir. 1998) (en banc) ("The amount of damages determined by a district court is a question of fact that is reviewed for clear error on appeal, while the method used by a district court in reaching that determination is reviewed for an abuse of discretion.") (citation omitted).

The Bankruptcy Court's determination to apply the same damage model based on the factual record below does not amount to an abuse of discretion – the standard by which its method should be reviewed.

Further, the CalGen Lenders' proposed methodologies for calculating damages is unreasonable. With respect to the First Lien Indentures and Second Lien Indentures, the CalGen Lenders' assertion that they are entitled to two sets of damages based on different calculations for the no-call periods and the subsequent prepayment periods makes no sense. These two timeframes became wholly irrelevant for calculating damages once the CalGen Secured Debt was accelerated by virtue of the Debtors' bankruptcy filing. Accordingly, the Bankruptcy Court was free to utilize the make-whole premiums to approximate total damages over the duration of the indentures.

The CalGen Lenders' argument with the respect to the Third Lien Debt is just as spurious. The CalGen Lenders claim that the Bankruptcy Court erred in applying the make-whole premium from the Second Lien Indentures as a proxy for damages because the Third Lien Indentures do not provide for a make-whole premium under any circumstances. This argument fails on its face. The lack of an express make-whole premium in the Third Lien Indentures

should have led the Bankruptcy Court to deny damages altogether.  See Cont'l Securities, 193 B.R. at 775 (finding that the court could not calculate damages where no make-whole premium was supplied in any provision of the underlying agreement).  Nevertheless, the Bankruptcy Court held, "[w]hile the Third Lien Notes do not provide for a premium, based on the calculations submitted by all of the experts I find that a 3.5% premium is also a reasonable proxy to be awarded in respect of the Third Lien Note agreements."  DA-Tab A, Opinion at 11. In light of the Bankruptcy Court's evaluation of expert testimony and determination that 3.5% was a reasonable damages figure in respect of the Second Lien Debt, it would be inequitable and unreasonable to permit holders of the Third Lien Debt to recover six times this amount for breach of a substantially similar indenture.  See Brief of Appellants Manufacturers & Traders Trust Company [Docket No. 27] at 20 (stating that the appropriate damage figure is $179.5 million rather than $29 million, as calculated under the Bankruptcy Court's decision).

IV.     THE BANKRUPTCY COURT PROPERLY AUTHORIZED THE DEBTORS TO REPAY THE CALGEN SECURED DEBT OUTSIDE A PLAN OF REORGANIZATION.

The CalGen Lenders argue that their contractual rights have been materially modified because the CalGen Secured Debt was repaid in full before resolution of all remaining obligations under the CalGen Indentures.  Thus, the CalGen Lenders would have this Court vacate the DIP Refinancing Order and, presumably, disgorge repayment of the CalGen Secured Debt entirely.  Aside from the fact that such a result would make the CalGen Lenders' make-whole demand irrelevant for purposes of this appeal, such drastic measures would fly in the face of the Bankruptcy Court's authority to approve post-petition financing and repayment of pre-petition debt in order to enhance the value of the Debtors' estates for the benefit of creditors and interest holders.

The Bankruptcy Court properly authorized repayment of the CalGen Secured Debt pursuant to section 363(b) of the Bankruptcy Code, which allows a debtor to use property of the estate, including DIP proceeds, outside the ordinary course of business upon a showing of a good business reason.  11 U.S.C. 363(b)(1); In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992). As the Bankruptcy Court recognized, repayment of the CalGen Secured Debt will result in significant interest rate savings to the estates as well as savings from no longer having to pay certain professionals fees as adequate protection for the debt.  DA-Tab A, Opinion at 5. Although the CalGen Lenders do not contest that this constitutes a good business reason for repayment under section 363(b), they claim that the Bankruptcy Court erred in permitting the Debtors to repay the CalGen Secured Debt through the claims objection process rather than the chapter 11 plan process.  According to the CalGen Lenders, the Repayment Order impaired their claims by modifying their contractual rights outside a plan without their consent and deprived individual holders of the CalGen Secured Debt from voting on a plan as impaired creditors.  By this argument, the CalGen Lenders seek to manipulate the terms of the Bankruptcy Code.

Sections 363 and 105(a) of the Bankruptcy Code permit this very result, and courts routinely permit debtors to pay down secured debt outside a plan of reorganization without the consent of secured creditors and irrespective of their contractual rights.  See, e.g., United States ex rel. Rural Electrification Admin. v. Wabash Valley Power Ass'n (In re Wabash Valley Power Ass'n), 167 B.R. 885, 889 (Bankr. S.D. Ind. 1994) (citing section 363(c)(2) in stating, "In order for the debtor to use, sell, or lease cash collateral, the debtor needs to have *either* the consent of all creditors with an interest in the cash collateral *or* court authorization after notice and a hearing.") (emphasis in original); In re Amber Lingerie, Inc., 30 B.R. 736, 737 (Bankr. S.D.N.Y. 1983) (courts have the inherent authority under section 105(a) to enjoin creditors from exercising

- 12 -

their contractual rights).  Indeed, the CalGen Lenders ignore this Court's recent decision affirming the Bankruptcy Court's grant of authority to the Debtors to pay down the outstanding principal under their 9.625% First Priority Senior Secured Notes over the objection of the indenture trustee, and its rejection of arguments that repayment "violated the Noteholders' contractual rights and impaired their claims outside of a chapter 11 plan."  <u>Law Debenture Trust Co. v. Calpine Corp. (In re Calpine)</u>, 356 B.R. 585, 597 (Bankr. S.D.N.Y. 2007).  This Court reasoned that "[n]othing could be further from the truth because the bankruptcy court merely ordered the payment of the outstanding principal of the Notes for now so [the] Debtors' estates would stop losing money and preserved [the] parties' rights to litigate" any remaining amounts due under the indenture.  <u>Id</u>.  The same reasoning applies here, especially where the Debtors are seeking to expeditiously litigate and resolve the CalGen Lenders' rights to all amounts owed under the CalGen Indentures.

V.    <u>THE PRIMING OF THE CALGEN LENDERS' PRE-PETITION LIENS IS NOT GROUNDS TO VACATE THE DIP REFINANCING ORDER</u>

In a last ditch effort to circumvent the Bankruptcy Court's ruling on damages, the CalGen Lenders try to confuse this Court with a priming argument.  While the Bankruptcy Court authorized that DIP Obligations in the DIP Refinancing would be secured by first priority security interests in, and liens on, all pre-petition and post-petition property of CalGen Holdings, Inc., the Bankruptcy Court also properly provided that the liens securing the DIP Obligations would rank junior to the liens related to the CalGen Secured Debt that secure certain disputed claims, including claims related to make-whole obligations, entitlement to interest, fees and expenses, and contract damage claims (the "Disputed Claims").  Despite the fact that the principle amount of their claims was paid off in full, the CalGen Lenders argue that the

Bankruptcy Court erred in allowing their liens to retain priority for only the Disputed Claims and urge this Court to vacate the DIP Refinancing Order and restore their liens to first priority.

The CalGen Lenders' argument has no merit. The only portion of the CalGen Lenders' liens that have been "primed" are the amount for which the CalGen Lenders have already been repaid pursuant to the Refinancing Order. For the remaining unpaid portion – the Disputed Claims – the CalGen Lenders maintain a valid first priority security interest in, and lien on, all pre-petition and post-petition property of CalGen Holdings, Inc. It is incongruous to argue that this is inequitable. Despite the CalGen Lenders assertion that all outstanding CalGen Secured Debt must be satisfied prior to the release or subordination of their liens, such treatment is allowed under the Bankruptcy Code. Section 364(d) of the Bankruptcy Code permits a debtor to obtain credit or incur post-petition debt secured by a senior lien on property of the estate (a priming lien) if the debtor is otherwise unable to obtain such credit and "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. § 364(d)(1)(B).[5] This statutory right is conferred upon debtors in possession irrespective of the contractual rights of pre-petition lenders who are primed, provided they receive adequate protection of their security interests. Here, the CalGen Secured Debt has been paid in full, substantially reducing the CalGen Lenders' interest in the underlying collateral. To the extent the CalGen Lenders have any remaining security interest, it is more than adequately protected because they retain a first priority security

---

[5]    Since a creditor's debt agreement is always subject to the provision of the Bankruptcy Code, the subordination of the CalGen Lenders security interest is entirely appropriate. See Raleigh v. Illinois Dep't of Revenue, 530 U.S. 15, 20 (2000) (creditors' claims are "subject to any qualifying or contrary provisions of the Bankruptcy Code."); see e.g. Cont'l Secs. Corp. v. Shenandoah Nursing Home P'ship., 188 B.R. 205, 213 (Bankr. W.D. Va. 1995) ("[i]t would violate the purpose behind the Bankruptcy Code to deny a debtor the ability to reorganize because a creditor has contractually forbidden it.").

interest in, and lien on, all the property of CalGen Holdings, Inc. for the allowed amount of the Disputed Claims.

Further, the fact that every single obligation under the CalGen Indentures has not been adjudicated and discharged cannot derail the Replacement DIP financing. As referenced above, earlier in these chapter 11 cases the Debtors moved to pay down certain oversecured pre-petition debt in connection with their motion to enter into the original debtor-in-possession financing facility. In that instance, the Bankruptcy Court granted the Debtors' motion, authorized the repayment of debt with DIP proceeds, and determined to postpone ruling on whether the Debtors were obligated to pay additional amounts under the indentures at issue. This ruling has not been disturbed on appeal and the CalGen Lenders can put forth no reasonable basis why this Court should vacate the DIP Refinancing Order to preserve liens securing debt that has already been repaid.

## <u>CONCLUSION</u>

For the foregoing reasons, the Equity Committee respectfully requests that this Court reverse the Bankruptcy Court's award of damages to the CalGen Lenders and grant such other relief at it deems appropriate.

Dated:  New York, New York
      July 9, 2007

**FRIED, FRANK, HARRIS, SHRIVER &
    JACOBSON LLP**

  /s/ Gary Kaplan
Brad Eric Scheler (BS-8019)
Gary Kaplan (GK-4542)
Michael de Leeuw (MD-8479)
Adrian Feldman (AF-2478)
One New York Plaza
New York, NY 10004
Telephone:  (212) 859-8000
Facsimile:   (212) 859-4000

Counsel for the Official Committee of Equity
Security Holders

590268

- 16 -