**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re                                :

                                       :      **Chapter 11**

                                       :

**CALPINE CORPORATION,** *et al.*,      :      **Case No. 05-60200 (BRL)**

                                         :

                                         :      **(Jointly Administered)**

                                         :

---------------------------------------------------------------x

**HSBC BANK USA, NATIONAL**      :
**ASSOCIATION, AS INDENTURE**      :
**TRUSTEE, THE BANK OF NEW YORK,**      :      **Case No. 1:07-cv-03088 (GBD)**
**AS ADMINISTRATIVE AGENT,**      :
**WILMINGTON TRUST FSB, AS**      :
**INDENTURE TRUSTEE, WILMINGTON**      :
**TRUST COMPANY, AS ADMINISTRATIVE**      :
**AGENT, AND MANUFACTURERS**      :
**& TRADERS TRUST COMPANY,**      :
**AS INDENTURE TRUSTEE,**      :
                                         :

                     **Appellants,**      :

                                         :

                   **– against –**      :

                                         :

**CALPINE CORPORATION, THE OFFICIAL**      :
**COMMITTEE OF UNSECURED**      :
**CREDITORS OF CALPINE CORPORATION,**      :
**AND THE OFFICIAL COMMITTEE OF**      :
**EQUITY SECURITY HOLDERS,**      :
                                         :

                     **Appellees.**      :

---------------------------------------------------------------x      *caption continued on next page*

```
-------------------------------------------------------------x
CALPINE CORPORATION, THE OFFICIAL     :
COMMITTEE OF UNSECURED                 :
CREDITORS OF CALPINE CORPORATION,      :
AND THE OFFICIAL COMMITTEE OF          :
EQUITY SECURITY HOLDERS,               :
                                       :
               Appellants,             :
                                       :
          – against –                  :
                                       :
HSBC BANK USA, NATIONAL                :
ASSOCIATION, AS INDENTURE              :
TRUSTEE, THE BANK OF NEW YORK,         :
AS ADMINISTRATIVE AGENT,               :
WILMINGTON TRUST FSB, AS               :
INDENTURE TRUSTEE, WILMINGTON          :
TRUST COMPANY, AS ADMINISTRATIVE       :
AGENT, AND MANUFACTURERS               :
& TRADERS TRUST COMPANY,               :
AS INDENTURE TRUSTEE,                  :
                                       :
               Appellees.              :
-------------------------------------------------------------x
```

### REPLY BRIEF OF APPELLANT MANUFACTURERS & TRADERS TRUST COMPANY

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Martin J. Bienenstock, Esq. (MB 3001)
Judy G.Z. Liu, Esq. (JL 6449)
Penny P. Reid, Esq. (PR 5699)

ATTORNEYS FOR MANUFACTURERS & TRADERS
TRUST COMPANY, AS INDENTURE TRUSTEE
UNDER THE THIRD PRIORITY INDENTURE

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ........................................................................................................ 4

I.  Prepayment In Violation Of The No-Call Provision Is A Breach That Gives Rise
    To A Damage Claim ..................................................................................... 4

    A.  Enforceability of a Claim is Determined by State Law ......................... 5

    B.  M&T Bank's Claim is Enforceable under the Bankruptcy Code ....................... 11

II.  Expectation Damages Are Available To M&T Bank As A Matter of Law..................... 15

    A.  Liquidated Damage Provisions are Not a Prerequisite to an Allowable
    Damage Claim ............................................................................. 15

    B.  "Dashed Expectations" is the Same Legally  Cognizable Remedy Known
    as Expectation Damages .................................................................. 18

    C.  Appellees Do Not and Cannot Contend the  Bankruptcy Court Was
    Clearly Erroneous  in Finding the Third Priority Indenture Provides  M&T
    Bank with Money Damage Remedies for Its Breach........................................... 20

III.  The Automatic Acceleration Of The CalGen Secured Debt Does Not Preclude
    M&T Bank From Recovering Damages On Account Of CalGen's Breach Of The
    Third Priority Indenture ................................................................... 21

CONCLUSION.................................................................................. 29

C ASES

*3C Assocs. v. IC & LP Realty Co.*, 137 A.D.2d 439 (1st Dep't 1988) ........................................ 27

*Anchor Resolution Corp. v. State Street Bank & Trust Co. (In re Anchor Resolution Corp.)*, 221 B.R. 330 (Bankr. D. Del. 1998) ............................................................... 7

*Anderson v. Bessemer City*, 470 U.S. 564 (1985)........................................................................ 20

*Arthur v. Burkich*, 131 A.D.2d 105 (3d Dep't 1987)............................................................... 9, 10

*Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720 (2d Cir. 1992) ................................................... 18

*Brecher v. Laikin*, 430 F. Supp. 103 (S.D.N.Y. 1977)............................................................ 6, 17

*Carols Equities Corp.* v. *Villnave*, 57 A.D.2d 1044 (4th Dep't 1977) ................................. 17, 21

*Citibank, N.A. v. Nyland (CF8) Ltd.*, 878 F2d 620 (2d Cir. 1989) ............................................ 11

*City of Rye v. Public Service Mutual Ins. Co.*, 34 N.Y.2d 470 (1974) ...................................... 15

*Continental Sec. Corp. v. Shenandoah Nursing Home P'ship*, 193 B.R. 769 (W.D. Va. 1996)............................................................................................................................... 9, 10

*ESPN, Inc. v. Office of the Commissioner of Baseball*, 76 F. Supp. 2d 383 (S.D.N.Y. 1999) ................................................................................................................................ 17

*Financial Ctr. Assocs. of East Meadow, L.P. v. The Funding Corp (In re Fin. Ctr. Assocs.)*, 140 B.R. 829 (Bankr. E.D.N.Y. 1992) ..................................................................... 7

*In re 360 Inns, Ltd.*, 76 B.R. 573 (Bankr. N.D. Tex. 1987)........................................................ 14

*In re Adelphia Communications Corp*, 342 B.R. 142 (Bankr. S.D.N.Y. 2006) ................... 20, 21

*In re AE Hotel Venture*, 321 B.R. 209 (Bankr. N.D. Ill. 2005) ................................................. 25

*In re Dow Corning Corp.*, 456 F.3d 668 (6th Cir. 2006)............................................................ 11

*In re Duralite Truck Body & Container Corp.*, 153 B.R. 708 (Bankr. D. Md. 1993) .................. 6

*In re Granite Broadcasting Corp.*, ___ B.R. ___, 2007 WL 1492465 (Bankr. S.D.N.Y. May 18, 2007) (J. Gropper) ................................................................................................. 22

*In re Hale Desk, Co.*, 97 F.2d 372 (2d Cir. 1938) ........................................................ 15, 16, 21

*In re Hidden Lake Ltd. Partnership*, 247 B.R. 722 (Bankr. S.D. Ohio. 2000)........................... 22

*In re Imperial Coronado Partners, Ltd.*, 96 B.R. 997 (B.A.P. 9th Cir. 1989) ...................... 7, 24

*In re Jamesway* Corp., 201 B.R. 73 (Bankr. S.D.N.Y. 1996)............................................... 11, 12

*In re LHD Realty Corp*., 726 F.2d 327 (7th Cir. 1984) ................................................. 22, 26, 27

*In re Manville Forest Products Corp.*, 43 B.R. 293 (Bankr. S.D.N.Y. 1984), *rev'd on other grounds*, 60 B.R. 403 (S.D.N.Y. 1986) ...................................................................... 27

*In re Outdoor Sports Headquarters, Inc.*, 161 B.R. 414 (Bankr. S.D. Ohio 1993)...................... 7

*In re Planvest Equity Income Partners IV*, 94 B.R. 644 (Bankr. D. Ariz. 1988) ....................... 27

*In re R.H. Macy & Co.*, 170 B.R. 69 (Bankr. S.D.N.Y. 1994) ............................................ 12, 13

*In re Ridgewood Apartments of DeKalb County, Ltd.*, 174 B.R. 712 (Bankr. S.D. Ohio 1994) .................................................................................................................. 28

*In re Schaumburg Hotel Owner Ltd. P'ship*, 97 B.R. 943 (Bankr. N.D. Ill. 1989) ...................... 7

*In re Skyler Ridge*, 80 B.R. 500 (Bankr. C.D. Ca. 1987) ............................................. 9, 22, 23, 25

*In re Vanderveer Estates Holdings, Inc.*, 283 B.R. 122 (Bankr. E.D.N.Y. 2002) .................... 5, 7

*In re Vest Assocs.*, 217 B.R. 696 (Bankr. S.D.N.Y. 1998) ........................................................ 7, 8

*In re Welzel*, 275 F.3d 1308 (11th Cir. 2001) ............................................................................... 5

*In re WorldCom*, 357 B.R. 223 (S.D.N.Y. 2006) ........................................................................ 9

*J.R. Lotus, Inc. v. White*, 85 N.Y.2d 874 (1995) ....................................................................... 19

*John W. Cowper Co. v. Buffalo Hotel Development Venture*, 115 A.D. 436 (4th Dep't 1986) *aff'd* 72 N.Y.2d 890 (1988) .................................................................................. 17, 21

*Kaiser-Frazer Corp. v. Otis & Co.*, 195 F.2d 838 (2d Cir. 1952) ............................................. 10

*Kenford Co. v. County of Erie*, 67 N.Y.2d 257 (1986) ............................................................. 18

*Lappin Electric Co. v. Fremont Financial (In re Lappin Electric Co.)*, 245 B.R. 326 (Bankr. W.D. Wis. 2000).......................................................................................................... 7

*McKinley Allsopp, Inc. v. Jetborned Intern, Inc.*, 1990 WL 138959 (S.D.N.Y. Sept. 18, 1990) ........................................................................................................................................ 19

*Montgomery Ward & Co. v. Meridian Leasing Corp. (In re Montgomery Ward Holding Corp.)*, 269 B.R. 1 (D. Del. 2001) ......................................................................................... 10

*Notas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F3d 18 (2d Cir. 1996) ................. 19

*Official Comm. of Equity Sec. Holders v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 2007 WL 1468514, at *2 (S.D.N.Y. May 17, 2007)................................. 20

*Palazzetti Import/Export, Inc. v. Morson*, 2001 WL 1568317 (S.D.N.Y. Dec. 6, 2001) 16, 17, 21

*Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15 (2000) ........................................................... 5

*Reomar, Inc. v. LTV Corp (In re Chateaugay Corp.)*, 1993 WL 159969 (S.D.N.Y. May 10, 1993) ................................................................................................................................. 19

*Royal Insurance Co. v. CNF Constructors, Inc.*, 1995 WL 4204 (S.D.N.Y. Jan. 5, 1995)... 17, 21

*Ruskin v. Griffiths*, 269 F.2d 827, 832 (2d Cir. 1959), *cert. denied*, 361 U.S. 947 (1960).......... 11

*Sharon Steel Corp. v. Chase Manhattan Bank*, 691 F.2d 1039 (2d Cir. 1982) .......................... 23

*Sound Stage Studios, Inc. v. Life Investors Insurance Co.*, 1988 WL 138827 (Tenn. Ct. App.1988) ................................................................................................................................ 28

*Teachers Insurance & Annuity Ass'n v. Butler*, 626 F. Supp. 1229 (S.D.N.Y. 1986)................. 10

*Teachers Insurance & Annuity Ass'n. v. Ormesa Geothermal*, 791 F. Supp. 401 (S.D.N.Y. 1991)........................................................................................................... 6, 9, 10

*Terminal Central, Inc. v. Henry Modell & Company, Inc.*, 212 A.D.2d 213 (1st Dep't 1995) ........................................................................................................................................ 17

*Town of Tonawanda v. Stapell, Mumm & Beals Corp.*, 240 A.D. 472 (4th Dep't 1934) *aff'd* 265 N.Y. 630 (1934) ............................................................................................ 16, 17, 21

*Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d 830 (Tex. 1991) ....................................... 11

*Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co.*, 127 S. Ct. 1199 (2007) ...... 5, 11

*Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420 (1977).......................... 15

*Tymon v. Wolitzer*, 39 Misc.2d 504 (Sup. Ct. 1963).................................................................... 24

*United Airlines, Inc. v. U.S. Bank Trust Nat'l Ass'n* (*In re UAL, Corp.*), 346 B.R. 456 (Bankr. N.D. Ill. 2006)........................................................................................................... 20

*United Merchants and Mfrs. Inc. v. Equitable Life Assurance Society* (*In re United Merchants and Mfrs., Inc.*), 674 F.2d 134 (2d Cir. 1982) ................................................ passim

*United States v. Winstar*, 518 U.S. 839 (1996)............................................................... 15, 16, 21

*Wurler v. Clifford*, 36 N.Y.S.2d 516 (N.Y. Sup. Ct. 1942) ........................................................ 24

## STATUTES

11 U.S.C. § 1124(2)(D)................................................................................................................. 13

11 U.S.C. § 365(b)(1)(A)......................................................................................................... 12, 13

11 U.S.C. § 365(f)(1) ................................................................................................................... 12

11 U.S.C. § 502(a) ......................................................................................................................... 5

## LEGISLATIVE HISTORY

Senate Report No. 95-989, 95th Cong., 2d Sess. (1978) ................................................................ 7

## TREATISES

*Collier on Bankruptcy* (15th ed. rev. 2006) ................................................................................. 5

Joseph M. Perillo, *Corbin on Contracts* (rev. ed. 2005)............................................................. 19

Richard A. Lord, Williston on Contracts (4th ed. 2007) ............................................................. 19

## RESTATEMENTS

*Restatement (Second) of Contracts* (1981) ................................................................................ 19

## PRELIMINARY STATEMENT

Appellees[1] contend that CalGen's voluntary prepayment of the Third Priority Notes in violation of the No-Call Provision under New York law does not give rise to an allowable damage claim.  Appellees presented no jurisprudence below and still provide no authority in their opening briefs that casts any doubt on the fact that New York law recognizes damage claims arising from the breach of a no-call provision, and the United States Court of Appeals for the Second Circuit (the "**Second Circuit**") holds that such claims are allowable in bankruptcy cases.  To the contrary, the cases on which Appellees heavily rely actually support M&T Bank's position.  That M&T Bank had no enforceable right to specific performance of the No-Call Provision (*i.e.*, the right to bar CalGen's prepayment) has no bearing on M&T Bank's right to the remedy of money damages for CalGen's breach of the No-Call Provision.  Lacking meritorious defenses to M&T Bank's recognized and valid damage claim under New York law, Appellees treat the facts here as if they match those in a host of other decisions disallowing damage claims for breach of contractual provisions because the asserted claims were invalid, unlawful, or otherwise "unenforceable" under state law.  M&T Bank's valid, enforceable right to a damage claim, long established under United States Supreme Court, the Second Circuit, and New York jurisprudence, is fatal to Appellees' argument.

Appellees also deliberately equate the distinct concept of enforcing specific performance under the Bankruptcy Code with allowing a money damage claim under the Bankruptcy Code.  A provision in an agreement that is not specifically enforceable against a debtor under the Bankruptcy Code may still give rise to a valid money damages claim under state law that is allowable in bankruptcy.  A bankruptcy court may only limit or disallow claims

---

[1] Capitalized terms not defined herein have the meanings assigned in M&T Bank's opening brief, dated and filed with the Court on June 1, 2007.

otherwise valid under state law, when Congress expressly requires such treatment under the Bankruptcy Code.  Appellees do not cite a single provision of the Bankruptcy Code or a single bankruptcy policy - because there are none - that limit or disallow the matured damage claim arising from the breach of the No-Call Provision here.

Appellees' theory that M&T Bank is somehow left without a remedy for the breach of the No-Call Provision because the Third Priority Indenture does not contain a liquidated damages provision only exposes Appellees' backwards and upside-down recitation of the law.  Appellees' position is firmly rejected by the Second Circuit in *United Merchants & Manufacturers Inc. v. Equitable Life Assurance Society* (*In re United Merchants & Manufacturers, Inc.*), 674 F.2d 134, 140-44 (2d Cir. 1982).  There, the Second Circuit explained and held:  (i) prepayment damages are merely the benefits of a fairly negotiated bargain and are no less enforceable in bankruptcy than the lender's claim for principal, (ii) prepayment of notes gives rise to a valid damage claim for a lender's lost profits under New York law, (iii) liquidated damage clauses are sustained when actual damages may be difficult to determine and the sum is not plainly disproportionate to the actual loss; otherwise, liquidated damages may be unenforceable penalties, and (iv) prepayment penalties are allowable in reorganization cases and are not unallowable claims for postpetition interest.  Thus, by ignoring controlling precedent in *United Merchants*, Appellees are attempting to cause this Court to turn both New York law and bankruptcy law on their heads by erroneously ruling that (a) actual damage claims are invalid absent a liquidated damage clause and (b) prepayment damage claims are not allowable in bankruptcy.  Manifestly, such rulings would be illogical and utterly contrary to controlling precedent.

Appellees also contend a party's "dashed expectations" is not a legally cognizable measure of damages.  Appellees are wrong again.  Expectation damages are the standard default remedy for breach of contract.  The Bankruptcy Court's award of damages arising from CalGen's breach of the No-Call Provision followed <u>centuries</u> of common law precedent, which mandate that M&T Bank be placed in the same position it would have been in had CalGen fully performed its obligations under the Third Priority Indenture.  Indeed, Appellees tacitly concede that CalGen's breach of the No-Call Provision results in damages when they admit that, if the Third Priority Indenture contained a liquidated damages clause, M&T Bank's damage claim would have been allowable.  If an estimation of damages would be allowable pursuant to a liquidated damage clause, it is obvious the actual damages are allowable.

Finally, Appellees contend that automatic acceleration occasioned by the voluntary filing of CalGen's chapter 11 cases causes the debt to "mature."  As Appellees would have it, there was no prepayment at all – the full amount outstanding was due and payable immediately following the filing of the cases.  This argument has been rejected by numerous courts – including the Bankruptcy Court – all of which have emphasized that the Bankruptcy Code's acceleration of debts operates to protect <u>lenders</u>, not borrowers.  These courts have made clear that the acceleration of debt brought on by the commencement of a chapter 11 case under the Bankruptcy Code or by the borrower's other voluntary actions operates to allow lenders to file proofs of claim for the entire amount owed.  In no way is such acceleration intended to upset the creditor's contractual rights or remedies.  To hold otherwise would not only run afoul of well-settled case law, it would eviscerate lender protections against prepayment commonly found in loan agreements that are routinely enforced under state law and give rise to allowable claims

in bankruptcy.  As the jurisprudence explains, a prepayment charge would be illusory if a borrower could avoid it by committing a default to accelerate the debt.

This reply brief is submitted in opposition to the opening briefs of Appellees.  The facts set forth in M&T Bank's opening brief are incorporated herein as if fully set forth at length.[2]

## ARGUMENT

### I.   PREPAYMENT IN VIOLATION OF THE NO-CALL PROVISION IS A BREACH THAT GIVES RISE TO A DAMAGE CLAIM

As Appellees would have it, the Bankruptcy Court's ruling that the No-Call Provision is unenforceable means CalGen cannot be in breach of the provision, and there are no damages to award M&T Bank.  *See* Debtors' opening brief at 13 ("**Debtors' Brief**"); Creditors' Committee's opening brief at 20 ("**Creditors' Committee's Brief**"); Equity Committee's opening brief at 10 ("**Equity Committee's Brief**").  This contention is not only erroneous, it is a distortion of the Bankruptcy Court's ruling.  Appellees deliberately confuse the distinct concepts of enforcing specific performance under the Bankruptcy Code with allowing a money damage claim under the Bankruptcy Code.  A provision in an agreement may not be <u>specifically enforceable</u> against a debtor under the Bankruptcy Code, but may still give rise to a valid money damage claim under state law that is allowable under the Bankruptcy Code.  Such is the case here.  The Bankruptcy Court held the No-Call Provision was not specifically enforceable against CalGen, but correctly recognized that no-call provisions give rise to valid, enforceable claims under New York state law, and that New York courts award money damages for breach of prepayment prohibitions in loan agreements.  (JA at 10-11, CD-1 at 10-11, Memorandum

---

[2]  The due date and page limitations set by the Court for reply briefs was modified by the parties to this appeal and authorized by the Court pursuant to a stipulation and order dated May 31, 2007, Case No. 07-3088 (GBD) [Doc. No. 17].

Decision at 10-11.)  Thus, the Bankruptcy Court properly awarded M&T Bank a damage claim for CalGen's breach of the No-Call Provision, notwithstanding that it declined to specifically enforce the provision against CalGen by preventing it from prepaying M&T Bank.

A.     ENFORCEABILITY OF A CLAIM IS DETERMINED BY STATE LAW

It is axiomatic that in determining whether a creditor holds an allowed claim in a bankruptcy case, the first step is to determine whether the creditor holds a valid claim under applicable nonbankruptcy law.  *Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 127 S. Ct. 1199, 1204-05 (2007) ("'Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code.'") (quoting *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000)).  If a claim is determined to be valid under applicable nonbankruptcy law, the claim is allowable under the Bankruptcy Code, subject to any specific proscriptions.  *Travelers*, 127 S. Ct. at 1204-05; *Raleigh*, 530 U.S. at 20; 11 U.S.C. § 502(a).[3]

---

[3] Importantly, the Creditors' Committee's tutorial in its opening brief regarding the process for allowing and disallowing claims is wrong.  *See* Creditors' Committee's Brief at 17.  The Creditors' Committee erroneously explains that an unsecured claim is allowed or disallowed under section 502 of the Bankruptcy Code, and a secured claim is allowed or disallowed under section 506.  *Id.*  As confirmed by the United States Supreme Court, allowance or disallowance of an underlying claim is governed by section 502.  *Travelers*, 127 S. Ct. at 1204-05.  In *United Merchants*, the Second Circuit had previously ruled that section 506(b) merely codifies pre-Bankruptcy Code law as to what portion of an allowed claim is secured.  *United Merchants*, 674 F.2d at 138.  Section 506(b) sheds no light on whether unsecured claims are allowed.  *Id.*; *Welzel v. Advocate Realty Invs., LLC* (*In re Welzel*), 275 F.3d 1308, 1317 (11th Cir. 2001) ("[section] 506 deals with whether a claim is secured or not, as opposed to the larger question of whether the claim is allowed or disallowed, as addressed by § 502"); 4 COLLIER ON BANKRUPTCY ¶ 506.04[1] at 506-102 (15th ed. rev. 2006) (The allowability of a "secured creditor's 'claim' is not determined by section 506, but is governed by section 502 in conjunction with other provisions of the Code.").  Indeed, if an allowed claim does not fit within section 506(a) or (b), it does not become part of the creditor's secured claim, but is still recognized as a valid unsecured claim.  *Welzel*, 275 F.3d at 1317; *In re Vanderveer Estates Holdings, Inc.*, 283 B.R. 122, 131-32 (Bankr. E.D.N.Y. 2002) (enforcing a lender's remedy to recover a prepayment premium over a debtor's objection because the debtor "cited no provision of § 502 nor any other provision of the Bankruptcy Code that would limit" the lender's right to enforce its remedy).

Notably, the Creditors' Committee concedes in its brief in the "make-whole" litigation against CalGen's parent, the Debtor Calpine Corporation (*In re Calpine Corp.*, Case No. 05-60200 (BRL) [Doc. No. 5166] at 10-11 (Bankr. S.D.N.Y. July 2, 2007) that section 502, not section 506, controls whether a claim is allowed  Further, the Creditors' Committee concedes that an unsecured claim may still exist even if the claim is not secured pursuant to section 506.  *Id.*  Specifically, the Creditors' Committee states.

It is indisputable that under New York law, a damage claim arising from the breach of a prepayment prohibition is recognized in the jurisprudence as a valid damage claim. *Teachers Ins. & Annuity Ass'n. v. Ormesa Geothermal*, 791 F. Supp. 401, 415-16. (S.D.N.Y. 1991).[4]  In *United Merchants*, the Second Circuit held prepayment claims were valid under New York law, reasoning they are "remarkably similar" to damage claims against putative borrowers who fail to consummate agreements to enter into loans and thereby deprive lenders of their expected profits.  *United Merchants*, 674 F.2d at 142.

So as not to overlook the obvious, damage claims are recoverable under New York law even if the liquidated damage provision contained in the applicable agreement is unenforceable, in which case the nonbreaching party must prove actual damages.  *Brecher v. Laikin*, 430 F. Supp. 103, 106 (S.D.N.Y. 1977).

Given that bankruptcy courts look to state law to determine the validity of claims asserted against a debtor's estate, they have routinely allowed claims for lost profits arising from breach of a prepayment prohibition, including prepayment charges, liquidated damages, and

---

First, the Creditors' Committee disagrees with the Debtors' contention that, pursuant to Bankruptcy Code section 506(b), unsecured claims for prepayment premiums are barred as a matter of law. *See* Motion at 20-21. According to numerous courts, "[a]lthough section 506 does not expressly preserve an unsecured claim, it does not foreclose one." *In re Holywell Corp.*, 68 B.R. 134, 136-37 (Bankr. S.D. Fla. 1986); *see also In re United Merch. and Mfrs., Inc.*, 674 F.2d at 134, 138 (2d Cir. 1982) ("Neither [section 506(b)] nor its legislative history sheds any light on the status of an unsecured creditor's contractual claims for attorneys' fees."). According to these courts, therefore, Bankruptcy Code section 506(b) merely permits a secured creditor to include contractually-based post-petition fees and charges in its secured claim, but does not preclude an unsecured creditor from including these amounts in its unsecured claim.

*Id.*

[4] In fact, New York courts hold that damages include additional elements other than just loss of interest to which the lender is entitled, including (i) amounts to compensate for contractual limits on lending activities to ensure funds will be available to the borrower when needed, (ii) costs incurred procuring substitute borrowers with related risks of delay, and (iii) the ability to realize on the collateral.  *In re Duralite Truck Body & Container Corp.*, 153 B.R. 708, 711-12 (Bankr. D. Md. 1993 (citing *Walter E. Heller & Co. v. Am. Flyers Airline Corp.*, 459 F.2d 896, 899-900 (2d Cir. 1972)); *Fin. Ctr. Assocs. v. The Funding Group* (*In re Fin. Ctr. Assocs.*), 140 B.R. 829, 836 (Bankr. E.D.N.Y. 1992).

actual damages for lost interest income.  *See, e.g., United Merchants*, 674 F.2d at 140 (enforcing

claim for prepayment fee under New York law and bankruptcy law);[5] *In re Vanderveer Estates*

*Holdings, Inc.*, 283 B.R. at 132-34 (Bankr. E.D.N.Y. 2002) (allowing a claim for a prepayment

penalty under New York and bankruptcy law); *see also*, *Lappin*, 245 B.R. at 330 (allowing claim

for prepayment charge under Illinois and bankruptcy law); *Anchor Resolution Corp. v. State*

*Street Bank & Trust Co.* (*In re Anchor Resolution Corp.*), 221 B.R. 330, 341 (Bankr. D. Del.

1998) (allowing claim for prepayment penalty under New York and bankruptcy law).

    Notably, none of the decisions cited by Appellees support the proposition that,

because the Bankruptcy Court declined to specifically enforce the No-Call Provision against

CalGen, M&T Bank loses its claim for money damages.  For example, Appellees rely heavily on

*In re Vest Assocs.*, 217 B.R. 696 (Bankr. S.D.N.Y. 1998), to support their erroneous contentions

that if a lender does not include a liquidated damages prepayment charge in the loan agreement,

---

[5] *United Merchants*, *supra*, was a Chapter XI case decided under the Bankruptcy Act of 1898, as amended, but after the Bankruptcy Code had become effective for cases commenced on and after October 1, 1979.  Notably, the law concerning the two issues addressed by *United Merchants* did not change.  Specifically, (i) *United Merchants* opines that Bankruptcy Code section 506(b) "merely codifies pre-Code law," *United Merchants*, 674 F.2d at 138; and (ii) *United Merchants*' holding that a prepayment charge is not rendered unallowable by the "statutes or the case law," *id.* at 143, is as true under the Bankruptcy Code as it was under the Bankruptcy Act.  Notably, both laws did not allow claims for unmatured interest, *see* Senate Report No. 95-989, 95th Cong., 2d Sess. (1978) at 63, but prepayment damages are matured claims and not subject to disallowance, as *United Merchants* recognized in allowing them.  Indeed, *United Merchants* is either relied on or its result is followed in myriad Bankruptcy Code decisions.  *See, e.g.*, *Lappin Elec. Co. v. Fremont Fin.* (*In re Lappin Elec. Co.*), 245 B.R. 326, 330 (Bankr. W.D. Wis. 2000) (relying on *United Merchants* and allowing a claim for a prepayment premium as compensation for lost interest); *In re Hidden Lake Ltd. P'ship*, 247 B.R. 722, 730 (Bankr. S.D. Ohio. 2000) (holding that a claim for a prepayment charge is not unmatured interest because the claim matured upon the default); *Anchor Resolution Corp. v. State Street Bank & Trust Co.* (*In re Anchor Resolution Corp.*), 221 B.R. 330, 340, 341 (Bankr. D. Del. 1998) (relying on *United Merchants* and allowing a claim for a prepayment premium under New York law to compensate the lender for the "loss of expected interest"); *In re Outdoor Sports Headquarters, Inc.*, 161 B.R. 414, 424 (Bankr. S.D. Ohio 1993) (allowing a claim for a prepayment premium even though such claims are "computed as being interest that would have been received through the life of a loan"); *Fin. Ctr. Assocs.*, 140 B.R. at 834-39 (relying on *United Merchants* and enforcing a prepayment premium totaling approximately 25% of the principal of the loan); *In re Schaumburg Hotel Owner Ltd. P'ship*, 97 B.R. 943, 953-54 (Bankr. N.D. Ill. 1989) (relying on *United Merchants* and allowing a claim for a prepayment premium of approximately 10% of the outstanding principal); *In re Imperial Coronado Partners, Ltd.*, 96 B.R. 997, 1000 n.2 (B.A.P. 9th Cir. 1989) (enforcing a claim for a prepayment premium and holding that the entire amount of the claim is an allowed claim whether or not it is included in the lender's secured claim); *In re 360 Inns, Ltd.*, 76 B.R. 573, 577 (Bankr. N.D. Tex. 1987) (holding a prepayment premium matured upon prepayment of a debtor's outstanding obligation); *In re Skyler Ridge*, 80 B.R. 500, 508 (Bankr. C.D. Cal. 1987) (holding prepayment penalty is not unmatured interest).

then the breach of a no-call provision does not give rise to <u>any</u> claim.  *See* Debtors' Brief at 19; Creditors' Committee's Brief at 11; Equity Committee's Brief at 12.  In *Vest*, the lenders' note contained a prepayment prohibition, but was silent as to any consequence that might arise from the breach of that provision.  *Vest*, 217 B.R. at 689.  Significantly, the lenders did not request a prepayment damage claim for lost profits (perhaps because they could re-lend at the same interest rate and had not in fact lost profits).  Instead, the lenders argued they should be awarded a secured damage claim to compensate them for adverse tax consequences arising from the breach of the prepayment prohibition.  *Id.* at 699.  The bankruptcy court held only that the asserted tax damages arising from prepayment were not included in the lenders' <u>secured</u> claim. *Id*. at 688-700.  The bankruptcy court did <u>not</u> rule the lenders had no damage claim.  Indeed, Judge Lifland acknowledged this precise point during oral argument at the Hearing, commenting: "[t]hey rely on *Vest*, among other cases.  And even in *Vest* the issue is not determined until the end of the case or some point further down . . . .  [Judge Brozman] didn't deny [the unsecured claim]."  (CD-50 at 215, Transcript at 215.)  *Vest* simply does not address whether or not a lender is entitled to an allowed unsecured damage claim for lost profits arising from the debtor's breach of a prepayment prohibition.

Next, Appellees rely on a number of decisions in which the claim at issue was held to be unenforceable under state law, unlike the M&T Bank Damage Claim.  Claims "unenforceable" <u>under state law</u> – such as the damage claim in *WorldCom*, *Sklyer Ridge*, and *Continental* (each discussed below) – will <u>not</u> give rise to an allowable claim against a debtor in a bankruptcy case because 11 U.S.C. § 502(b)(1) requires disallowance of any claim not enforceable under applicable nonbankruptcy law.  These decisions have no application to the instant appeal, as the damage claim arising from the No-Call Provision is valid, lawful, and fully

enforceable under New York state law. *Arthur v. Burkich*, 131 A.D.2d 105, 106-07 (3d Dep't 1987); *United Merchants*, 674 F.2d at 140-44; *Teachers Ins. & Annuity Ass'n. v. Ormesa Geothermal*, 791 F. Supp. 401, 415-16 (S.D.N.Y. 1991).

Appellees miss the mark in attempting to analogize the No-Call Provision at issue here to the unlawful dividend at issue in *In re WorldCom*, 357 B.R. 223 (S.D.N.Y. 2006). Debtors' Brief at 14. In *WorldCom*, the company, a Georgia corporation, had announced its intention to pay a dividend. *WorldCom*, 357 B.R. at 226. The payment of the dividend would have been unlawful under Georgia state law because the company was insolvent. *Id.* at 229. The dividend was never paid, and an equity holder subsequently asserted in WorldCom's chapter 11 cases that it had incurred damages as a result of WorldCom's breached obligation to pay the dividend. *Id.* at 226. The District Court affirmed the bankruptcy court's holding that, because no valid state law claim to the dividend existed, there could be no valid bankruptcy claim. *Id.* at 228-29.

Similarly, as with *WorldCom*, the court in *In re Skyler Ridge*, 80 B.R. 500, 505-06 (Bankr. C.D. Cal. 1987), held the lender's liquidated damage provision did not give rise to a valid claim because the provision was actually a disguised penalty, and therefore, was unenforceable under the applicable state law. The court in *Sklyer Ridge*, like the bankruptcy court in *WorldCom*, refused to allow the claim <u>in</u> bankruptcy given its unenforceability <u>outside</u> of bankruptcy under state law. *Id.*

Likewise, in *Continental Sec. Corp. v. Shenandoah Nursing Home Partnership*, 193 B.R. 769, 775 (W.D. Va. 1996), a lender asserted a secured claim for damages arising from prepayment in violation of a no-call provision. *Continental* was obviously not applying New York law, which recognizes damage claims for prepayments in violation of a no-call provision.

9

The court in *Continental* held the lender did not have a damage claim for prepayment <u>because the lender did not demonstrate that any such claim existed under state law</u>. *Id.* at 777. "*Continental* cites no case law for its proposition that the bankruptcy court's failure to enforce the lockout provision of the Note gives rise to an independent 'right to payment.'" *Id.* Significantly, *Continental* does not stand for the proposition that no damage claim can arise when a bankruptcy court denies specific performance against a debtor of a no-call provision. Instead, the decision makes clear that such a claim is valid if the lender demonstrates state law recognizes such a claim. *Id.*

M&T Bank has demonstrated conclusively that New York law recognizes a damage claim arising from the breach of a no-call provision. *Arthur v. Burkich*, 131 A.D.2d 105, 106-07 (3d Dep't 1987); *United Merchants & Mfrs. Inc. v. Equitable Life Assurance Soc.* (*In re United Merchants & Mfrs., Inc.*), 674 F.2d 134, 140-44 (2d Cir. 1982). The purpose for such provisions is to protect a lender against a drop in market interest rates that would induce a borrower to breach its agreement to obtain financing at a lower rate. *Teachers Insurance & Annuity Ass'n. v. Butler*, 626 F. Supp. 1229, 1235 (S.D.N.Y. 1986). Moreover, New York courts award damage claims resulting from breach of such provisions. *Teachers Insurance & Annuity Ass'n. v. Ormesa Geothermal*, 791 F. Supp. 401, 415-16 (S.D.N.Y. 1991). Appellees' attempt to obfuscate the factual distinctions in the decisions they cite, and to somehow equate M&T Bank's Damage Claim with claims denied in other circumstances as invalid under state law, is flatly belied by well-settled New York state law – the applicable nonbankruptcy law.[6]

---

[6] Similarly, another decision cited in footnote 14 of the Debtors' Brief involves an asserted claim that is not recognized under state law, and thus, not recognized in bankruptcy pursuant to 11 U.S.C. § 502(b)(1). *Montgomery Ward & Co. v. Meridian Leasing Corp* (*In re Montgomery Ward Holding Corp*), 269 B.R. 1, 12 (D. Del. 2001) (denying claim for liquidated damages on grounds that Illinois law will not enforce liquidated damage provisions that serve as penalty clauses). The other decisions cited in footnote 14 do not even involve claims asserted against debtors in bankruptcy cases, but instead simply demonstrate that there are certain contractual provisions state courts will find invalid or unenforceable. *Kaiser-Frazer Corp. v. Otis & Co.*, 195 F.2d 838, 844 (2d Cir. 1952) (where sale

## B.    M&T BANK'S CLAIM IS ENFORCEABLE UNDER THE BANKRUPTCY CODE

As noted above, when applicable nonbankruptcy law recognizes the claim, the

Bankruptcy Code provides for the allowance of the claim, subject to any specific proscriptions.

*Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 127 S. Ct. 1199, 1204 (2007).  Here,

notwithstanding the Bankruptcy Court's refusal to specifically enforce the No-Call Provision

against CalGen, there is no Bankruptcy Code provision that precludes a damage claim arising

from the breach of a no-call provision.  To support their erroneous contentions, Appellees cite

inapposite decisions in which claims were disallowed under specific Bankruptcy Code

provisions inapplicable here.  Such decisions have absolutely no relevance to the facts presented

here.[7]

Debtors' reliance on *In re Jamesway Corp.*, 201 B.R. 73 (Bankr. S.D.N.Y. 1996),

for the proposition there can be no claim arising from the breach of an unenforceable provision is

misplaced.  Debtors' Brief at 13.  In *Jamesway*, the debtor moved to invalidate certain provisions

in three leases that entitled the landlords to a percentage of profits realized from assignment of

the lease.  *Id.* at 76.  The court granted the motion, holding that the provisions were

unenforceable under section 365(f)(1) of the Bankruptcy Code because they restricted the

---

of securities under underwriting agreement would have been illegal, because of misleading prospectus, the contract was unenforceable and plaintiff was not entitled to damages); *Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d 830, 833 (Tex. 1991) (where covenant not to compete was unenforceable because it was an unreasonable restraint of trade, plaintiff was not entitled to damages for breach of the covenant).  The decisions are inapposite, as M&T Bank's Damage Claim is valid under New York state law and is an allowable bankruptcy claim.

[7] Indeed, a creditor's prepetition contractual rights must be enforced when a debtor is solvent, as is the case with CalGen.  The Second Circuit has made clear that, in bankruptcy cases involving solvent debtors, it is "the opposite of equity to allow the debtor to escape the expressly-bargained-for result of its act."  *Ruskin v. Griffiths*, 269 F.2d 827, 832 (2d Cir. 1959), *cert. denied*, 361 U.S. 947 (1960).  The Second Circuit's holding in *Ruskin* has gone undisturbed for nearly 50 years.  Indeed, the Second Circuit has confirmed that "no decision of this Court or any New York court has impaired the vitality of *Ruskin*."  *Citibank, N.A. v. Nyland (CF8) Ltd.*, 878 F2d 620, 625 (2d Cir. 1989).  More recently, the United States Court of Appeals for the Sixth Circuit, relying in part upon *Ruskin*, held that, in the context of chapter 11 cases of solvent debtors, a "bankruptcy judge does not have free floating discretion to redistribute rights in accordance with his personal views of justice and fairness . . . [in this context] it is the sole role of the bankruptcy court to enforce creditors' contractual rights."  *In re Dow Corning Corp.*, 456 F.3d 668, 679 (6th Cir. 2006).

debtor's ability to assign the lease. *Id*. ("Section 365(f)(1) works by operation of law to invalidate lease provisions which restrict or discourage a debtor-in-possession from assigning the lease.").[8]  *Jamesway* simply reconfirms a basic precept of claim allowance in bankruptcy cases: a claim that is valid under applicable nonbankruptcy law will be allowed in its full amount <u>unless the Bankruptcy Code specifically limits or disallows it</u>.  *Id*.  Here, the Bankruptcy Court declined to specifically enforce the No-Call Provision against CalGen and allowed it to prepay the Third Priority Notes.  Importantly, however, the Bankruptcy Code contains no provision that limits or disallows M&T Bank's Damage Claim arising from CalGen's prepayment.

Debtors also inexplicably rely on *In re R.H. Macy & Co.*, 170 B.R. 69 (Bankr. S.D.N.Y. 1994), to support their argument that there can be no damages for breach of an "unenforceable" provision. Debtors' Brief at 13.[9]  Notably, this decision was superseded by statute when the Bankruptcy Code was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  11 U.S.C. 365(b)(1)(A).

In *R.H. Macy*, the debtor conducted a going-out-of-business-sale and then closed the store pursuant to a court order.  *R.H. Macy*, 170 B.R. at 72.  The closing of the store violated a covenant in the lease requiring the debtor to keep the store open during normal business hours. *Id.*  The landlord asserted that the damages flowing from breach of the covenant to stay open were payable as a postpetition claim either (i) pursuant to section 365(d)(3) of the Bankruptcy Code as an obligation of the debtor under a lease of nonresidential real property or (ii) pursuant

---

[8] 11 U.S.C. § 365(f)(1) provides, in applicable part, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection."  11 U.S.C. § 365(f)(1) .

[9] There is no excuse for Debtors' intentional attempt to confuse the issues by alluding to "unenforceability" of the No-Call Provision when they really mean the No-Call Provision is not entitled to specific performance – one of two possible remedies – with the other remedy of money damages remaining available.

to section 503(b)(1)(A) of the Bankruptcy Code as an expense of administering the estate. *Id.* The bankruptcy court rejected both arguments. With respect to the section 365 argument, the bankruptcy court held the covenant to stay open was not an "obligation of the debtor," and thus, section 365(d)(3) did not apply. *Id.* at 72-76. The bankruptcy court also denied the administrative expense claim in a straight forward application of 11 U.S.C. § 503(b)(1)(A), holding "[w]ith respect to the period in which the Debtor attempted to sell its leasehold interest after ceasing operations . . . any damages which would flow from any breach of the Lease do not qualify as an administrative expense because [the landlord] cannot demonstrate that the Debtor's estate received any benefit under the Lease during this period." *Id.* at 77.

       The holding in *R.H. Macy* has no relevance here. First, *R.H. Macy* was not decided under section 502; it was decided under sections 365 and 503 of the Bankruptcy Code. Neither provision – nor any other provision under the Bankruptcy Code – precludes the damage claim at issue in the instant appeal. Moreover, the Debtors fail to disclose that Congress amended the Bankruptcy Code following *R.H. Macy* to provide that lessors under nonresidential real property leases <u>are</u> entitled to pecuniary losses resulting from the failure to comply with a nonmonetary obligation. 11 U.S.C. § 365(b)(1)(A). Moreover, Congress made similar revisions elsewhere in the Code to ensure that all creditors – not simply landlords – could recover damages resulting from the breach of nonmonetary obligations. Thus, section 1124(2)(D) of the Bankruptcy Code now provides that the debtor must compensate a creditor for actual pecuniary loss arising "from any failure to perform nonmonetary obligations" or else the creditor is impaired. 11 U.S.C. § 1124(2)(D). The Congressional reaction to *R.H. Macy* makes clear that a debtor that breaches nonmonetary provisions of executory contracts <u>must pay for the resulting harm</u>.

The principle that debtors should pay for the harms caused by breach of nonmonetary provisions is actually supported by a decision relied upon by Debtors, *In re 360 Inns, Ltd.*, 76 B.R. 573 (Bankr. N.D. Tex. 1987). Debtors' Brief at 13 n.13 and 16-17. In *360 Inns*, as here, the court declined to specifically enforce against the debtor a no-call provision barring prepayment during the first 10 years of a loan. *360 Inns*, 76 B.R. at 575. The loan agreement in *360 Inns* also contained a prepayment penalty. *Id.* The chapter 11 plan filed in *360 Inns* proposed to pay the prepayment penalty in full. *Id.* at 576. The court approved this aspect of the chapter 11 plan, noting "the treatment of the prepayment penalty is permissible and will not preclude confirmation . . . ." *Id.* at 577. *360 Inns* flatly rejects Debtors' erroneous contention that no-call provisions are "unenforceable" and if breached, do not give rise to valid damage claims.

Notably, Appellees themselves unwittingly undermine their entire argument that breach of the No-Call Provision does not give rise to an allowed damage claim. Just pages after asserting that the breach of the "unenforceable" No-Call Provision does not give rise to an allowable damage claim, each Appellee concedes that M&T Bank would have an allowable damage claim if it had just negotiated for a prepayment premium or a liquidated damages provision in the Third Priority Indenture. Debtors' Brief at 15; Creditors' Committee's Brief at 13; Equity Committee's Brief at 13. If an estimation of damages would be allowable pursuant to a liquidated damage clause, it obviously follows that the actual damages are allowable. As demonstrated in part II below, the notion that a creditor is only entitled to damages when it has negotiated for a liquidated damages provision contradicts established law.

14

## II.    EXPECTATION DAMAGES ARE AVAILABLE TO M&T BANK AS A MATTER OF LAW

### A.    LIQUIDATED DAMAGE PROVISIONS ARE NOT A PREREQUISITE TO AN ALLOWABLE DAMAGE CLAIM

Appellees maintain the Bankruptcy Court erred by awarding M&T Bank a damage claim because the Third Priority Indenture does not contain a liquidated damages provision.  *See* Debtors' Brief at 15; Creditors' Committee's Brief at 10; Equity Committee's Brief at 11.  Appellees mock the Bankruptcy Court's purported desire to scheme a "Solomonic" solution in granting M&T Bank's Damage Claim, blazing into "new territory, contradicting decades of well-settled precedent."  *See* Debtors' Brief at 15; Creditors' Committee's Brief at 19. It is Appellees, however, who have turned upside-down decades of well-settled United States Supreme Court, Second Circuit, and New York state law establishing that a non-breaching party's entitlement to damages does not turn on whether the contract contains a liquidated damages provision.  Actual damages are always the default remedy for breach of contract.[10]

As noted by the United States Supreme Court in *United States v. Winstar*,

> To be sure, each side could have eliminated any serious contest about the correctness of their interpretive positions by using clearer language.  The failure to be even more explicit is perhaps surprising here, given the size and the complexity of these transactions.  But few contract cases would be in court if contract language had articulated the parties' postbreach positions as clearly as might have been done, and the failure to specify remedies in the contract is no reason to find that the parties intended no remedies at all.

518 U.S. 839, 869 n.15 (1996) (emphasis added and internal citations omitted).  An explicit reference to certain remedies does not exclude all other available remedies.  *Id.*; *In re Hale Desk, Co.*, 97 F.2d 372, 373 (2d Cir. 1938) (declining to limit remedies for breach to explicitly

---

[10] In fact, liquidated damages are only available to supplant actual damages where "the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation." *Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 425 (1977); *City of Rye v. Public Service Mutual Ins. Co.*, 34 N.Y.2d 470, 472-73 (1974).

referenced remedies where the contract on its face does not exclude other remedies).

Conversely, the failure to specify remedies for breach does not preclude damage claims for

actual damages. *Winstar*, 518 U.S. at 869. As explicitly stated by the Supreme Court, these are

"ordinary principles of contract construction and breach that would be applicable to any contract

action between private parties." *Id.* at 870-71.[11]

New York contract law is in accord. In *Hale Desk*, a party sold the assets of his

business to the debtor who, in connection with such purchase, hired the seller pursuant to an

employment contract. *Hale Desk*, 97 F.2d at 372. The debtor failed to pay the amounts due

under the last four years of the employment contract, and argued damages were limited to the

remedy expressed in the contract, which was the return of the assets under the previous sale. *Id.*

at 372-73. The Second Circuit reversed the lower courts, holding that such limitation is not

enforceable when the contract does not limit other available remedies. *Id.* at 373.

In *Town of Tonawanda v. Stapell, Mumm & Beals Corp.*, 240 A.D. 472, 473 (4th

Dep't 1934), *aff'd* 265 N.Y. 630 (1934), a town entered into a contract with a contractor, which

failed to perform in accordance with the contract, and the town sued for breach. The New York

Supreme Court held the town was limited to the remedies explicitly referenced in the contract.

*Id.* The New York Appellate Division reversed and held the town was not limited to remedies

referenced in the contract and awarded the town its expectation damages. *Id.* at 474-75;

*Palazzetti Import/Export, Inc. v. Morson*, 2001 WL 1568317, at *9 (S.D.N.Y. Dec. 6, 2001)

("[U]nder New York law, contractual remedies are deemed to be nonexclusive absent some

indication of contrary intent"); *John W. Cowper Co. v. Buffalo Hotel Dev. Venture*, 115 A.D.2d

---

[11] The Creditors' Committee and the Equity Committee attempt to limit the holding in *Winstar* as applicable only to government contracts. *See* Creditors' Committee's Brief at 16; Equity Committee's Brief at 12. Nowhere in *Winstar* will this Court find that limitation.

346, 346-47 (4th Dep't 1986), *aff'd* 72 N.Y.2d 890 (1988) (citing *Town of Tonawanda* and holding that expressly referenced remedies in a contract are not exclusive remedies absent a specific provision in the contract limiting available remedies); *Brecher v. Laikin*, 430 F. Supp. 103, 106 (S.D.N.Y. 1977) (actual damages are available to aggrieved party when a liquidated damage provision is found to be unenforceable); *Royal Insurance Co. of America v. CNF Constructors, Inc.*, 1995 WL 4204, at *2 (S.D.N.Y. Jan. 5, 1995) (same); *Carols Equities Corp. v. Villnave*, 57 A.D.2d 1044, 1044-45 (4th Dep't 1977) (same).

In fact, to limit any remedies, New York law requires a clear and explicit provision in the contract setting forth any such limitations. *Palazzetti Import/Export, Inc.*, No. 98 CIV. 722 (FM), 2001 WL 1568317 at *9 (S.D.N.Y. Dec. 6, 2001); *Terminal Central, Inc. v. Henry Modell & Co.*, 212 A.D.2d 213, 218-19 (1st Dep't 1995); *Town of Tonawanda*, 240 A.D. at 473; *John W. Cowper Co.*, 115 A.D.2d at 346-47.

The Third Priority Indenture contains no provision limiting M&T Bank's remedies upon CalGen's breach. To the contrary, Section 6.03 of the Third Priority Indenture explicitly provides "the Trustee may pursue <u>any available remedy</u> to collect the payment of principal, premium, if any, and interest and Special Interest, if any, on the Notes or to enforce the performance of any provision of the Notes or this Indenture." (JA at 570; CD-63 at 83; Third Priority Indenture § 6.03 (emphasis added).) This provision preserves all remedies at law or in equity, including expectation damages, in addition to those remedies explicitly referenced in the Third Priority Indenture. *ESPN, Inc. v. Comm'r of Baseball*, 76 F. Supp. 2d 383, 390 (S.D.N.Y. 1999) (holding a reservation of any available remedy reserves "the remedies in the contract are in addition to all other remedies in law or in equity").

17

The Bankruptcy Court's award of the M&T Bank Damage Claim was no misguided attempt at a "Solomonic" solution to a complex problem; rather, it was a straight-forward application of basic contract law except for its erroneous quantification of the amount of the damage claim. Prohibiting M&T Bank from asserting a damage claim because the Third Priority Indenture lacks a liquidated damage clause would conflict with controlling case law and be tantamount to redrafting section 6.03 of the Third Priority Indenture by deleting the phrase "any available remedy" and replacing it with "only any remedy explicitly provided herein."

**B.    "DASHED EXPECTATIONS" IS THE SAME LEGALLY COGNIZABLE REMEDY KNOWN AS EXPECTATION DAMAGES**

The Bankruptcy Court based its award of the M&T Bank Damage Claim on the Third Priority Noteholders' "dashed expectations," (JA at 10; CD-1 at 10; Memorandum Decision at 10), which was simply the Bankruptcy Court's colorful phrase to denote classic contract expectation damages under which the nonbreaching party is put in the position it would have been in had the contract been performed. Contrary to fundamental contract law principles, Appellees somehow blithely assert that "dashed expectations of a future payment stream" is not a legally cognizable measure of damages. *See* Debtors' Brief at 15; Creditors' Committee's Brief at 16-19; Equity Committee's Brief at 11-14.

Significantly, however, where a party breaches a contract, the breaching party must pay damages that places the non-breaching party in the same position as if the contract had not been breached. *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 728-29 (2d Cir. 1992). This measure of damages is known as expectation damages[12] and is basic hornbook contract law.

---

[12] The Creditors' Committee also contends that expectations must be measured as of the time of the breach as opposed to the time of contract formation. Creditors' Committee's Brief at 17-18. This assertion demonstrates a fundamental misapprehension of basic contract law. When calculating damages at the time of the breach, expectations are always measured as of the time of contract formation. *Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 261 (1986) (holding that whether expectation damages include lost profits depends by what the parties expected at the time of contract formation).

*Restatement (Second) of Contracts* § 347 cmt. a (1981) ("Contract damages are ordinarily based on the injured party's <u>expectation interest</u> and are intended to give him the benefit of his bargain by awarding him the sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed.") (emphasis added); Joseph M. Perillo, *Corbin on Contracts*, § 55.3 (rev. ed. 2005) ("[A] contract-breaker can be charged with the amount of an <u>expected gain</u> that his breach has prevented, if when the contract was made he had reason to foresee that his breach would prevent it from accruing") (emphasis added); Richard A. Lord, *Williston on Contracts* § 64:2 (4th ed. 2007) ("[C]ontract damages are ordinarily calculated based on protection of the disappointed promisee's <u>expectation interest</u> and are designed to secure for that party the benefit of the bargain that he or she made by awarding a sum of money that will place the promisee in as good a position as he or she would have occupied had the contract been performed") (emphasis added).

In applying these well-settled, basic contract principles, the Bankruptcy Court recognized the appropriate measure of damages for breach of a contract under New York law is expectation damages.  (JA at 10; CD-1 at 10; Memorandum Decision at 10); *see also*, *J.R. Lotus, Inc. v. White*, 85 N.Y.2d 874, 877 (1995) ("[i]n the event the defendant[s] . . . are found to breach an enforceable contract, the general measure of damages for the plaintiff . . . is <u>expectancy damages</u>") (emphasis added); *McKinley Allsopp, Inc. v. Jetborned Intern, Inc.*, 1990 WL 138959, at *8 (S.D.N.Y. Sept. 18, 1990) ("Under New York law, the normal measure of damages for breach of contract is <u>expectation damages</u>.") (emphasis added).[13]

---

[13] The Debtors rely on a number of other decisions for the proposition that damages are not available for dashed expectations arising from the "unenforceability" of a contractual provision, however, the holding in each case is premised on a specific Bankruptcy Code provision that limits or disallows the asserted claim.  *See Reomar, Inc. v. LTV Corp* (*In re Chateaugay Corp.*), 1993 WL 159969, at *5 (S.D.N.Y. May 10, 1993) (holding *ipso facto* clauses are not enforceable pursuant to section 365(e) of the Bankruptcy Code); *Notas Assocs. v. Costich* (*In re Klein Sleep Prods., Inc.*), 78 F.3d 18, 20 (2d Cir. 1996) (limiting the amount of damages arising under a breach of a lease as mandated by section 502(b)(6) of the Bankruptcy Code); *United Airlines, Inc. v. U.S. Bank Trust Nat'l Ass'n* (*In re*

19

**C.  APPELLEES DO NOT AND CANNOT CONTEND THE BANKRUPTCY COURT WAS CLEARLY ERRONEOUS IN FINDING THE THIRD PRIORITY INDENTURE PROVIDES M&T BANK WITH MONEY DAMAGE REMEDY FOR ITS BREACH**

Section 6.03 of the Third Priority Indenture grants M&T Bank "any available remedy . . . to enforce the performance of any provision of the Notes or this Indenture."  (JA at 570; CD-63 at § 6.03; Third Priority Indenture at § 6.03)  Thus, the Bankruptcy Court's interpretation of the indenture to entitle M&T Bank to money damages for breach of the No-Call Provision is correct, reasonable, and plausible, and certainly not clearly erroneous for purposes of Bankruptcy Rule 8013.  Indeed, Appellees do not claim it is clearly erroneous.  Even if there were two possible interpretations of the Third Priority Indenture, "the fact finder's choice between them cannot be clearly erroneous."  *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985); *Official Comm. of Equity Sec. Holders v. Adelphia Commc'ns Corp.* (*In re Adelphia Commc'ns Corp.*), 2007 WL 1468514, at *2 (S.D.N.Y. May 17, 2007).

Accordingly, Appellees' heavy reliance on *In re Adelphia Communications Corp*, 342 B.R. 142, 144-45, 153 (Bankr. S.D.N.Y. 2006), for the proposition that M&T Bank cannot obtain money damages not specified in the Third Priority Indenture only highlights Appellees' failure to identify the issue correctly.  *Adelphia* is nothing but a decision based on the provisions of a loan agreement and other facts that do not match the provisions of the Third Priority Indenture and other facts here.

In *Adelphia*, the borrowers misrepresented financial information to their lenders, which information, if correctly represented, would have entitled the lenders to more interest.  *Id.*

---

*UAL, Corp.*), 346 B.R. 456, 469-70 (Bankr. N.D. Ill. 2006) (holding cross-default provisions are not enforceable pursuant section 365 of the Bankruptcy Code where the provision is not an essential part of the bargain).  As discussed in part I.B. above, no Bankruptcy Code provision limits M&T Bank's recovery of damages arising from the breach of the No-Call Provision.

at 145. After reviewing the loan agreement and extrinsic evidence, the bankruptcy court in *Adelphia* interpreted the loan agreement to mean the financial information actually provided to the lenders would control the interest rate even if inaccurate. *Id.* at 152. But, the bankruptcy court construed the loan agreement as granting the lenders only the exclusive remedies of acceleration and default interest for the borrower's misrepresentation of financial information. *Id.*[14] With respect to the default interest remedy, the bankruptcy court in *Adelphia* also found the lenders "elected to give that up, in exchange for other advantages" under a postpetition financing agreement. *Id.* at 145-146, 148.

Here, the Bankruptcy Court interpreted the Third Priority Indenture to entitle M&T Bank to expectation damages for breach of the No-Call Provision, and did not find M&T Bank gave up that remedy during the CalGen chapter 11 case. Simply put, Appellees are demanding here the *Adelphia* result without the *Adelphia* facts.

## III. THE AUTOMATIC ACCELERATION OF THE CALGEN SECURED DEBT DOES NOT PRECLUDE M&T BANK FROM RECOVERING DAMAGES ON ACCOUNT OF CALGEN'S BREACH OF THE THIRD PRIORITY INDENTURE

Appellees assert that, because CalGen's obligations under the Third Priority Indenture were automatically accelerated by virtue of the commencement of CalGen's chapter 11 cases, the entire amount was due immediately and, as such, they did not "prepay" the principal amount outstanding on account of the Third Priority Notes. Debtors' Brief at 15; Creditors' Committee's Brief at 20-21; Equity Committee's Brief at 9-10, 13. Therefore, Appellees

---

[14] As discussed above in part II.A, the law is not what Appellees desire. Contracts that do not expressly waive unspecified remedies do not deprive the nonbreaching party of such remedies. *See United States v. Winstar*, 518 U.S. 838, 885 (1996) ; *In re Hale Desk, Co.*, 97 F.2d 372, 373 (2d Cir. 1938); *Palazzetti Import/Export, Inc. v. Morson*, 2001 WL 1568317, at *9 (S.D.N.Y. Dec. 6, 2001); *Royal Ins. Co. v. CNF Constructors, Inc.*, 1995 WL 4204, * 2 (S.D.N.Y. Jan. 5, 1995); *Town of Tonawanda v. Stapell, Mumm & Beals Corp.*, 240 A.D. 472, 473 (4th Dep't 1934), *aff'd* 265 N.Y. 630 (1934); *John W. Cowper Co. v. Buffalo Hotel Dev. Venture*, 115 A.D. 436 (4th Dep't 1986), *aff'd* 72 N.Y. 2d 890 (1988); *Carols Equities Corp. v. Villnave*, 57 A.D. 2d 1044, 1044-45 (4th Dep't 1977).

contend, CalGen could not have breached the No-Call Provision.  *Id.*  Appellees ignore well-settled jurisprudence – cited and followed by the Bankruptcy Court – which provides that automatic acceleration occasioned by the filing of a borrower's bankruptcy petition does not preclude or limit a lender's remedies under a loan agreement.  (JA at 8, 10-11; CD-1 at 8, 10-11; Memorandum Decision at 8, 10-11.)

Appellees rely heavily on *Skyler Ridge*, yet this case completely undermines one of their arguments:  "The automatic acceleration of a debt upon the filing of a bankruptcy case <u>is not the kind of acceleration that eliminates the right to a prepayment premium</u>."  *Skyler Ridge*, 80 B.R. 500, 507 (Bankr. C.D. Cal. 1987) (emphasis added).  The bankruptcy court for the Southern District of New York recently reconfirmed this principle, holding "the automatic acceleration of debt occasioned by a bankruptcy filing may not result in a forfeiture" of a lender's remedies under a credit agreement.  *In re Granite Broadcasting Corp.*, No. 01-12984 (ALG), ___ B.R. ___, 2007 WL 1492465, at *22 (Bankr. S.D.N.Y. May 18, 2007) (J. Gropper); *In re Hidden Lake Ltd. P'ship*, 247 B.R. 722, 727 (Bankr. S.D. Ohio 2000) (same).

For a lender to preserve its remedies under a credit agreement "it must forebear from exercising its acceleration option and await the trustee's or the debtor's decision.  Should the trustee or the debtor then decide to repay the loan, the lender would presumably be able to enforce an otherwise valid prepayment premium."  *In re LHD Realty Corp.*, 726 F.2d 327, 332 (7th Cir. 1984).  Put differently, the only time acceleration defeats a prepayment prohibition, prepayment premium, or other available remedy for prepayment under an agreement is when the <u>lender</u> acts to compel prepayment and to prevent payment of the debt according to its normal maturity, without acceleration.

In *Skyler Ridge*, the <u>debtor</u> attempted to avoid the lender's remedies under the loan agreement by arguing, just as Appellees argue here, acceleration caused by the filing of the chapter 11 case precipitated the maturing of the principal and, therefore, rendered ineffective the prepayment protections set forth in the loan agreement. *Sklyer Ridge*, 80 B.R. at 507. The bankruptcy court disagreed, holding that if automatic acceleration caused by a debtor's voluntary commencement of a chapter 11 case defeated a lender's right to prepayment protection, a debtor could "avoid the effect of [such a] clause by filing a bankruptcy case" – a severe result that would permit debtors to effectively circumvent creditors' contractual rights. *Id.*

Addressing the same issue, the Second Circuit concluded in *Sharon Steel Corp. v. Chase Manhattan Bank*, 691 F.2d 1039, 1053 (2d Cir. 1982), that where a borrower's voluntary act trips an automatic acceleration provision, the borrower may not thereafter exploit acceleration as a means of avoiding prepayment provisions. In *Sharon Steel*, the non-debtor borrower triggered a redemption provision in its indentures pursuant to which all debts became due and payable immediately. *Id.* at 1045-48. The borrower defaulted on its redemption obligation and the lender sued to enforce the obligation and collect a prepayment fee. *Id.* The borrower argued that, because its default caused an automatic acceleration of the debt, the lenders were not entitled to a prepayment fee. *Id.* at 1047-48. The Second Circuit disagreed, noting that there is "no bar . . . to the Indenture Trustees seeking specific performance of the redemption provisions where the debtor causes the debentures to become due and payable by its voluntary actions." *Id.* at 1053. *Sharon Steel* stands for the proposition that, where a borrower causes its own obligations to be accelerated, the borrower cannot escape its contractual responsibilities to pay a prepayment charge. In *United Merchants & Manufacturers, Inc. v. Equitable Life* (*In re United Merchants & Manufacturers, Inc.*), 674 F.2d 134, 143-44 (2d Cir.

1982), the Second Circuit held that "there is no warrant in the statutes or in the case law for

rejecting [a liquidated damage provision] merely because it is triggered by the filing of a Chapter

XI petition rather than by some other event of default").[15]

   Even where a lender filed a motion to lift the automatic stay and foreclose on its

collateral under state law, the Bankruptcy Appellate Panel for the United States Court of Appeals

for the Ninth Circuit concluded that a chapter 11 debtor was <u>still</u> required to pay a contractual

prepayment fee.  *Imperial Coronado Partners, Ltd. v. Home Fed. Sav. & Loan Ass'n.* (*In re

Imperial Coronado Partners, Ltd.*), 96 B.R. 997 (B.A.P. 9th Cir. 1989).  The Bankruptcy

Appellate Panel flatly rejected the debtor's objection to payment of any contractual prepayment

fee, reasoning:

> Many courts have held that where a mortgagee accelerates the
> amount due under a note, a prepayment penalty may not be
> collected.  In those cases, however, it appears that the borrower
> had no choice but to pay the accelerated amount or lose the
> property . . . .  <u>The situation in the case at bar is different because
> [the borrower] had the right to reinstate the loan under California
> law or deaccelerate the loan under bankruptcy law</u> . . . .  Under the
> Bankruptcy Code, [the borrower] had the right to deaccelerate the
> due date of the loan as part of a plan of reorganization.

*Id.* at 1000 (citations omitted) (emphasis added).

   Appellees next assert that acceleration here defeated any kind of prepayment

premium or damage claim because the acceleration provision failed to expressly include the

prepayment premium.  *See* Debtors' Brief at 16; Creditors' Committee's Brief at 11; Equity

Committee's Brief at 14.  Appellees' erroneous contention misstates the law.  Automatic

acceleration, regardless of whether the acceleration is tied to other remedies, does not defeat the

---

[15] Notably, under New York law, automatic acceleration provisions do not eviscerate prepayment prohibitions.  In *Tymon v. Wolitzer*, 39 Misc. 2d 504, 510-11 (Sup. Ct. 1963), the Queens County Supreme Court held that an automatic acceleration provision "was not self-operative and could be brought into being <u>only</u> by an election to accelerate affirmatively exercised by the plaintiff-obligees."  *See Wurler v. Clifford*, 36 N.Y.S. 2d 516, 518 (N.Y. Sup. Ct. 1942) (same).

lender's other remedies.  In granting the M&T Bank Damage Claim, the Bankruptcy Court

recognized the fallacy of this "drafting error" argument.  (JA at 5, 10; CD-1 at 5, 10;

Memorandum Decision at 5, 10.)

Notably, the decisions relied upon by Appellees do not support their assertions.

The Debtors and the Equity Committee cite *In re AE Hotel Venture*, 321 B.R. 209 (Bankr. N.D.

Ill. 2005), as an example where acceleration did <u>not</u> eliminate the lender's right to collect a

prepayment premium "'[b]ecause the loan documents [in *AE Hotel*] expressly provide for a

prepayment premium even when the debt is accelerated.'"  Debtors' Brief at 16; Equity

Committee's Brief at 13 (quoting *AE Hotel*, 321 B.R. at 219).  The Debtors also cite *Financial

Center Associates of East Meadow, L.P. v. TNE Funding Corp.* (*In re Financial Center

Associates of East Meadow, L.P.*), 140 B.R. 829, 835 (Bankr. E.D.N.Y. 1992) for the same

proposition.  Debtors' Brief at 16.

Significantly, however, the issue in *AE Hotel* and *Financial Center Associates*

was whether the lenders' prepayment premiums were <u>secured claims</u> under section 506 of the

Bankruptcy Code.  *AE Hotel*, 321 B.R. at 217-18; *Fin. Ctr. Assocs.*, 140 B.R. at 838.  Neither

court analyzed the language of the acceleration provision in connection with determining

whether the underlying claim for a prepayment premium was allowable under section 502 of the

Bankruptcy Code.  Accordingly, the Debtors' assertion that M&T Bank could have and should

have bargained for an acceleration provision that included a prepayment damage claim is not

only wholly unsupported by these decisions, but also is entirely irrelevant, because automatic

acceleration occasioned by the commencement of a chapter 11 case <u>never</u> defeats a lender's

rights to damages upon breach.  In re *Skyler Ridge*, 80 B.R. 500, 507 (Bankr. C.D. Cal. 1987).

Indeed, with the benefit of hindsight, it is CalGen that should have bargained differently, i.e., for

the right to prepay the Third Priority Notes.  CalGen did not, however, and it must therefore pay

the M&T Bank Damage Claim as a result of its breach.

       Appellees then go one step further and assert, without any support, that

acceleration by definition defeats any right to a prepayment premium or damages under general

contract law.  Creditors' Committee's Brief at 21-22; Equity Committee's Brief at 13.  For this

erroneous proposition, Appellees rely on three decisions.  First, Appellees rely on *In re LHD*

*Realty Corp.*, 726 F.2d 327, 330-31 (7th Cir. 1984), for the proposition that "acceleration, by

definition, advances the maturity date of the debt so the payment thereafter is not prepayment but

instead is payment made after maturity."  Debtors' Brief at 8, 9, 13; Creditors' Committee's

Brief at 20-22; Equity Committee's Brief at 9, 10, 13.  In *LHD Realty*, the lender accepted

assignment of a promissory note secured by a mortgage on the debtor's ("**LHD**") office building.

*LHD Realty*, 726 F.2d at 329.  Following LHD's commencement of a chapter 11 case, the lender

sought relief from the automatic stay to foreclose on LHD's office building.  *Id.*  Following the

bankruptcy court's denial of the lender's request, LHD moved for authorization to sell the

building.  *Id.* at 330.  The bankruptcy court authorized the sale and the lender appealed

ultimately to the United States Court of Appeals for the Seventh Circuit (the "**Seventh Circuit**").

*Id.*

       At issue before the Seventh Circuit was the lender's entitlement to a prepayment

premium from the proceeds of the sale, as a result of LHD's prepayment of the note prior to its

stated maturity.  The Seventh Circuit held that the lender was not entitled to a prepayment

premium because "the lender loses its right to a premium when it elects to accelerate the debt."

*Id.*  (citing *Slevin Container Corp. v. Provident Fed. Sav. & Loan Ass'n.*, 424 N.E.2d 939 (Ill.

App. Ct. 1981)) (emphasis added).[16]  The Seventh Circuit ruled that the lender's affirmative action to foreclose on its lien, not merely the filing of LHD's chapter 11 case, operated as an acceleration that "advances the maturity date of the debt so that payment thereafter is not prepayment but instead is payment made after maturity."  *Id.* at 330-31.  In fact, the Seventh Circuit held that "[the lender's] actions established that it preferred . . . accelerated payment over the 'opportunity' to earn interest from the LHD loan over a period of years."  *Id.* at 331.  Thus, the ruling in *LHD Realty*, actually supports M&T Bank's entitlement to damages, as M&T Bank never affirmatively elected to accelerate the loan or expressed any preference for immediate payment.

Appellees also rely on *In re Manville Forest Products Corp.*, 43 B.R. 293, 297 (Bankr. S.D.N.Y. 1984), *rev'd on other grounds*, 60 B.R. 403 (S.D.N.Y. 1986), for the proposition that "[i]t is axiomatic that debt is automatically accelerated upon the filing of a bankruptcy case."  Debtors' Brief at 9; Creditors' Committee's Brief at 21; Equity Committee's Brief at 9.  In *Manville*, however, Judge Lifland simply held, in accordance with longstanding bankruptcy jurisprudence, that the loans in question were accelerated for purposes of filing proofs of claim, "despite the fact that the creditor is prevented, under Section 362 of the Code, from taking any steps to enforce that claim."  *Manville*, 43 B.R. at 298.  Consistent with the Memorandum Decision, at no point in *Manville* did Judge Lifland conclude that automatic acceleration upon a chapter 11 filing operates to eliminate a lender's right to the benefit of its bargain.  *Id.*; (JA at 10-11; CD-1 at 10-11; Memorandum Decision at 10-11.)

---

[16] *See also*, *In re Planvest Equity Income Partners IV*, 94 B.R. 644, 645 (Bankr. D. Ariz. 1988) (lender sought stay relief to foreclose on subject property and thus manifested "clear intent to accelerate the amount due"); *3C Assocs. v. IC & LP Realty Co.*, 137 A.D.2d 439, 440 (1st Dep't 1988) ("Given that the accelerated payment here is the result of plaintiffs-mortgagees having elected to bring this foreclosure action, they may not exact a prepayment penalty.").

Finally, Appellees rely on *In re Ridgewood Apartments of DeKalb County, Ltd.*, 174 B.R. 712, 720 (Bankr. S.D. Ohio 1994), for the proposition that it "would be anomalous for acceleration of an obligation to be construed as a prepayment . . . ." Debtors' Brief at 8-9; Creditors' Committee's Brief at 21; Equity Committee's Brief at 10, 13. Appellees fail to disclose that the <u>creditor</u> in *Ridgewood* <u>actively accelerated</u> the loan and sought to foreclose upon the debt, actions that were not taken here by M&T Bank. *Ridgewood*, 174 B.R. at 715. More importantly, the bankruptcy court in *Ridgewood* rejected the lender's claim to a prepayment premium because the debtor <u>did not prepay</u> any amounts under the loan agreement. *Id.* at 720. Because prepayment never occurred, the issue regarding enforcement of a prepayment premium in the face of an acceleration was never addressed. *Id.* As such, Appellees' reliance upon a select *Ridgewood* quote is entirely misplaced.[17] Debtors' Brief at 8-9; Creditors' Committee's Brief at 21; Equity Committee's Brief at 10, 13.

Not surprisingly, each of the decisions cited by Appellees is inapplicable here because each specifically holds the lender's right to a prepayment premium or prepayment penalty was denied where the <u>lender took affirmative action</u> to accelerate the debt and force the borrower to prepay. Here, M&T Bank did the opposite. It argued to the Bankruptcy Court that the Debtors should <u>not</u> be allowed to prepay the Third Priority Notes. (CD-21 at 5-20, Memorandum of Law at 5-20; CD-50 at 198-218, Transcript at 198-218.) Indeed, it would defy logic and common sense if <u>CalGen's</u> own actions could somehow deprive M&T Bank of its contract rights. The jurisprudence firmly establishes that the Debtors' chapter 11 filing cannot

---

[17] The Creditors' Committee also relies on *Sound Stage Studios, Inc. v. Life Investors Ins. Co.*, 1988 WL 138827, at *3 (Tenn. Ct. App.1988), for the proposition that acceleration eliminates a lender's remedy. Creditors' Committee's Brief at 20-21. The Creditors' Committee fails to highlight that the <u>very first sentence</u> of that decision states that the court is "asked to decide whether a lender can collect a premium for prepayment of a note <u>when the lender accelerates</u> the note in accordance with its terms." *Id.* at *1 (emphasis added).

eliminate M&T Bank's entitlement to a damage claim arising from the prepayment of the Third Priority Notes. To read the Third Priority Indenture any other way would put CalGen in control of the No-Call Provision. Acceleration is, after all, a remedy for the benefit of the Third Priority Noteholders and should not be transformed into a benefit for the Debtors.

## <u>CONCLUSION</u>

For the reasons set forth herein, and those set forth in M&T Bank's Opening Brief, the Court should enter an order (i) affirming the Memorandum Decision to the extent it grants M&T Bank the Damage Claim; (ii) reversing the Memorandum Decision to the extent the Bankruptcy Court estimated M&T Bank's Damage Claim in an amount equal to 3.5% of the principal amount of the Third Priority Notes and (A) allowing M&T Bank's Damage Claim in the amount of $179.5 million as set forth in the uncontroverted Amended Kearns Affidavit or (B) in the alternative, remanding the calculation of the Damage Claim to the Bankruptcy Court to be recalculated and allowed in accordance with governing New York law and the uncontroverted evidence in the record; (iii) reversing the Memorandum Decision to the extent it holds M&T Bank's Damage Claim is unsecured and hold that such claim is a secured claim; (iv) reversing the Prepayment Order and reinstating (W) M&T Bank's secured Damage Claim, (X) M&T Bank's secured Indemnification Claim, (Y) M&T Bank's secured Guarantee Claim against each of the Guarantors, and (Z) M&T Bank's secured Default Interest Claim, pending the Bankruptcy Court's determination of the allowance of such claim; (v) directing the Bankruptcy Court to order CalGen to pay all M&T Bank's claims in full; and (vi) granting M&T Bank such other and further relief as is just and proper.

Dated: July 9, 2007
      New York, New York

                                    /s/ Martin J. Bienenstock
                             WEIL, GOTSHAL & MANGES LLP
                             767 Fifth Avenue
                             New York, New York 10153-0119
                             Telephone: (212) 310-8000
                             Facsimile: (212) 310-8007
                             Martin J. Bienenstock, Esq. (MB 3001)
                             Judy G.Z. Liu, Esq. (JL 6449)
                             Penny P. Reid, Esq. (PR 5699)

                             Attorneys for Manufacturers & Traders
                             Trust Company, as Indenture Trustee
                             Under the Third Priority Indenture