```
 1
 2   UNITED STATES BANKRUPTCY COURT
 3   SOUTHERN DISTRICT OF NEW YORK
 4   -------------------x
 5   In the Matter of
 6                                      Case No.
 7   CALPINE CORPORATION, et al.,       05-60200
 8               Debtors.
 9   -------------------x
10                        June 21, 2006
11                        United States Custom House
12                        One Bowling Green
                          New York, New York 10004
13
14   Hearing Pursuant to Agenda of Matters.
15
16
17
18
19   B E F O R E:
20        HON. BURTON R. LIFLAND,
21              U.S. Bankruptcy Judge
22
23
24
25

 1
 2   A P P E A R A N C E S:
 3
```

                                   1

```
 4   KIRKLAND & ELLIS LLP
 5        Attorneys for the Debtors,
 6        Calpine Corp, et al.
 7        153 East 53rd Street
          New York, New York 10022
 8   BY:  MATTHEW A. CANTOR, ESQ.,
 9        MATTHEW SOLUM, ESQ.,
          JEFFREY POWELL, ESQ.
10
11
12   AKIN GUMP STRAUSS HAUER & FELD LLP
13        Attorneys for Official Committee
          of Unsecured Creditors
14        590 Madison Avenue
          New York, New York 10022
15   BY:  MICHAEL S. STAMER, ESQ.,
16        PHILIP DUBLIN, ESQ.
17
18   CURTIS, MALLET-PREVOST, COLT &
19   MOSLE LLP
          Conflicts Counsel for Calpine
20        Corporation
          101 Park Avenue
21        New York, New York 10178
22   BY:  STEVEN J. REISMAN, ESQ.
23
24
25

 1
 2   A P P E A R A N C E S (Continued)
 3
 4   BROWN RUDNICK BERLACK ISRAELS LLP
 5        Attorneys for First Lien Trustee
 6        Law Debenture
 7        One Financial Center
          Boston, Massachusetts 02111
 8   BY:  STEVEN B. LEVINE, ESQ.,
          JOSEPH F. RYAN, ESQ.
```

                                   2
                                   3

14  BY:  PAUL SCHWARTZBERG, ESQ.,
15                    of Counsel
16
17
18
19
20
21
22
23
24
25

CALPINE CORPORATION

1
2    P R O C E E D I N G S:
3          MR. CANTOR:  Good morning, your
4    Honor.
5          THE COURT:  Good morning, Mr.
6    Cantor.
7          MR. CANTOR:  Your Honor, Matthew
8    Cantor of Kirkland and Ellis on behalf of the
9    debtors.
10          THE COURT:  Yesterday it was very
11   hot in here, if the same is true today in the back,
12   please feel free to remove your outer garments.
13          MR. CANTOR:  Thank you, Your Honor.
14          We're here, and Jeff Powell my
15   colleague is here this morning.
16          MR. POWELL:  Good morning, your
17   Honor.
18          MR. CANTOR:  And he'll be handling a

5

9
10
11   PAUL, WEISS, RIFKIND, WHARTON &
     GARRISON LLP
12
13   Attorneys for the Unofficial
     Committee of Second Lien Debt
14   Holders
     1285 Avenue of the Americas
     New York, New York 10019
15
16   BY:  ELIZABETH R. McCOLM, ESQ.
17
18   BLANK ROME
19   Attorneys for SunGard
     405 Lexington Avenue
20   New York, New York 10174
21   BY:  CRAIG A. DAMAST, ESQ.
22
23
24
25

1
2    A P P E A R A N C E S (Continued)
3
4
5    ROPES & GRAY LLP
6    Attorneys for HSBC Bank USA as
     Trustee
7      45 Rockefeller Plaza
     New York, New York 10111
8    BY:  MARK SOMERSTEIN, ESQ.
9
10   DEIDRE A. MARTINI UNITED STATES
11   DEPARTMENT OF JUSTICE OFFICE OF THE
     UNITED STATES TRUSTEE
12     33 Whitehall Street
13   New York, New York 10004

4

```
19   couple of the matters on the agenda this morning.
20        Your Honor, the first matter on, and
21   we'll go through the uncontested matters first.  We
22   have a couple of motions.  The first one is number
23   one on the agenda, it's an omnibus motion for an
24   order authorizing the debtor to assume some non
25   residential real property leases and settling cure
```

6

CALPINE CORPORATION

```
 1   amounts related to that.  The first motion in the
 2   binder, it's a motion to assume some pipeline
 3   leases.
 4
 5             CPN Pipeline is a natural gas
 6   transportation and gas gathering business that the
 7   company is in, and basically they used that debtor
 8   to supply gas to the projects and to produce power.
 9   A number of the leases relating to those pipe
10   lines, we believe, are leases of non residential
11   real property.  There a there's a deadline coming
12   up for the assumption or rejection of those types
13   of leases.  As set forth in our motion, it's the
14   debtors' business judgment that they are necessary
15   and appropriate for the operation of the business,
16   have real value to us, and under Section 365(d)(4)
17   or 365 of the Bankruptcy Code, we should be
18   authorized to assume those leases.
19             Your Honor, notice of the motion was
20   served on the official committee, the ad hoc
21   committee, and the 2002 list, and we received no
22   objections.
23             THE COURT:  Does anyone want to be
```

7

```
24   heard?
25        Your application is granted.  Submit
```

8

CALPINE CORPORATION

```
 1   an appropriate order.
 2
 3             MR. CANTOR:  Should I just bring the
 4   orders up?
 5             THE COURT:  I'll entertain them.
 6             MR. CANTOR:  Thank you.
 7             THE COURT:  You can bring it to me
 8   now or get it into the hopper.
 9             I've approved the order.
10             MR. CANTOR:  Thank you, your Honor.
11   The next motion is also --
12             THE COURT:  What's your date for
13   assumption or rejection?
14             MR. CANTOR:  I believe the date is
15   July 18th.  Is that the date for the deadline?
16             THE COURT:  This is a large case, I
17   would assume you have a handle on all these
18   executory contracts.
19             MR. CANTOR:  I'm sorry, your Honor?
20             THE COURT:  In this large case, I
21   would assume that you have a handle on all of these
22   executory contracts so that you can make an
23   informed judgment of the deadline date.
24             MR. CANTOR:  And, your Honor, with
25   most if not all the leases we will.  There is one
```

```
                           CALPINE CORPORATION
 1
 2   group of leases that we may see you on relating to
 3   the Rosetta transaction.  I know we were trying to
 4   collect information relating to get an ability to
 5   understand whether it should be assumed or
 6   rejected.  I don't believe the issue has risen to
 7   the level of need to see you about it, but we are
 8   on top of this, your Honor.
 9         Your Honor, the next motion is a
10   motion for approval of an agreement.  It's a
11   license agreement with SunGard.  It's number 2 on
12   the agenda; it's entitled motion for an order
13   pursuant to Sections 363, 365 and 6004 authorizing
14   debtors to enter into an amended agreement and
15   assume and assign the amended agreement.  Your
16   Honor, this is an agreement -- we had a dispute
17   with SunGard, the licensor of the Nucleus software,
18   it's a software we use in our energy management
19   services.
20         We needed more licenses.  We needed
21   more people to be able use the software, and there
22   were a number of disputes relating to how much that
23   should cost, there were some issues about when the
24   software would expire.  There was also a need on
25   our part to assume the license and assign it to one
```

```
                           CALPINE CORPORATION
 1
 2   of the debtors' subsidiaries that currently is not
 3   a licensee, we call it CMSC.
 4         After extensive negotiations, the
 5   company was able to come to an understanding with
```

9

```
 6   SunGard on the new license agreement.  The terms
 7   and conditions of it are set forth in the motion.
 8   It effectively requires us to pay one million 350
 9   thousand dollars, it gives us the ability to assign
10   a contract to CMSC if and when we need to, it
11   provides for a mutual release of the disputes, and
12   it affirms our ability to use the software, to the
13   extent there was any question of for that.
14         Likewise, your Honor, this motion
15   was served on the official committee and the ad hoc
16   committee and the 2002 list, and we received no
17   objections.
18         THE COURT:  Does anyone want to be
19   heard?
20         The application is approved.
21         MR. CANTOR:  May I approach?
22         THE COURT:  Yes.
23         I've approved the order.
24         MR. CANTOR:  Thank you, your Honor.
25         The next motion is our application
```

```
                           CALPINE CORPORATION
 1
 2   to retain Sirius Solutions LLP.  These are
 3   consultants who provide services related to the
 4   company's internal controls relating to the
 5   accounting function.  It's a requirement of
 6   Sarbanes-Oxley regulations that we develop certain
 7   very particular protocols and review and
 8   documentation of the company's internal controls;
 9   services that the company and the board think are
10   absolutely necessary to conform with the
```

10

11

CALPINE CORPORATION

```
11  requirements of Sarbanes-Oxley and have the
12  appropriate internal accounting controls in place.
13       Your Honor, we've also asked Sirius
14  Solutions to do some work relating to the
15  evaluation of a settlement statement relating to
16  the Rosetta sale; that was a sale of some natural
17  gas resource assets the company sold before the
18  commencement of the case.  The settlement
19  statement, the final closing statement relating to
20  that transaction has not been finalized, and Sirius
21  has been providing services, and we would like to
22  them to continue to provide services as it relates
23  to that.
24       Your Honor, you'll see, as set forth
25  in the application, that Sirius did have
```

```
 1  prepetition amounts owed on account of prepetition
 2  services of approximately 217 thousand dollars.
 3  Those claims are being waived.  Your Honor, there's
 4  also been work done after the commencement of the
 5  case but prior to this application.  The amounts
 6  are set forth in this application, and we would
 7  request that the application be approved nunc pro
 8  tunc, subject, of course, to Sirius providing, in
 9  their first fee application, support for the work
10  they have done after the commencement of the case.
11       Your Honor, these are services that
12  we think are necessary to enable us to manage the
13  enterprise in accordance with Sarbanes-Oxley.  It's
14  a highly complicated business from an accounting
15
```

12

CALPINE CORPORATION

```
16  perspective to begin with, and in order to have the
17  appropriate internal controls so that we can
18  continue to comply with our public reporting
19  obligations, we think this is necessary and
20  appropriate.  Likewise, the application has been
21  served to the committees and the 2002 list, and
22  we've received no objections.
23       THE COURT:  Does anyone want to be
24  heard?
25       The application is granted.
```

```
 1
 2       MR. CANTOR:  Thank you.
 3       THE COURT:  I've approved the order.
 4       MR. CANTOR:  Thank you, your Honor.
 5       The next application is the creditor
 6  committee's application, and Mr. Stamer well be
 7  taking care of that.
 8       MR. STAMER:  Good morning, your
 9  Honor.  Michael Stamer from Akin Gump Strauss Hauer
10  and Feld on behalf of the official committee.
11       Your Honor, number 4 is the agenda
12  is the committee's application pursuant to Sections
13  105(a), 1102(b)(3) and 1103(c) for authority to
14  retain the Garden City Group, Inc. as
15  communications agent nunc pro tunc to February
16  16th.
17       Your Honor, pursuant to the
18  affidavit of service of Bradley Roe of our firm,
19  docket number 1834.  On June 8, 2006 a copy of the
20  application was served by regular mail and
```

21  electronic mail on the parties identified on the
22  annexes to the affidavit.  In addition, on June 8th
23  the application was filed electronically on ECF,
24  and therefore all ECF participants received a copy
25  of the application.

13

CALPINE CORPORATION

1   In addition, your Honor, in advance
2   of the filing of the application, the committee
3   spent a significant amount of time with both the US
4   Trustee's office and with the debtors to address
5   any concerns either of those parties had.  I'm
6   happy to report that the objection deadline was
7   June 19th and no objections were filed.
8
9   Your Honor, as you'll recall, just
10  very briefly, pursuant to a stipulation and order
11  between the debtors and committee approved by this
12  court on February 23rd, the committee was required
13  to, among other things, establish a website to
14  satisfy its information sharing obligations under
15  new Section 1102(b)(3) of the Bankruptcy Code.
16  Your Honor, pursuant to application,
17  the committee seeks to retain Garden City as its
18  communication agent to allow the committee to
19  comply with its obligations under 1102(b)(3) and
20  the stipulation and order approved by this court.
21  Garden City will be compensated in accordance with
22  Schedule A attached to their retention agreement.
23  The committee selected Garden City
24  after a competitive interview process.  The
25  committee believes that in fact the compensation

14

CALPINE CORPORATION

1   that Garden City is requesting is fair and
2   reasonable and market under the circumstances for
3   the services to be provided.
4
5   In addition, your Honor, in our
6   discussions with the debtors, which resulted in no
7   objection being filed, we addressed a number of the
8   concerns that the debtors expressed relating to
9   possible duplications of efforts with their
10  information agent with respect to ours.  We have
11  actually agreed upon some language, if I may just
12  briefly read it into the record, which I believe
13  addresses the concerns:  "In connection with the
14  committee's information sharing website, we do not
15  intend (the committee) to duplicate the information
16  provided on the debtors' website.  To the extent
17  that the debtors' website posts information
18  prepared by the debtors that should be shared with
19  unsecured creditors, such as Calpine's press
20  releases, SEC filings, docket reports, pleadings
21  and the like the, committee's website will provide
22  link to the debtors' website for such information.
23  "With regard to information prepared
24  by the debtors such as financial summaries, to the
25  extent the committee's professionals believe that

15

CALPINE CORPORATION

1

16

CALPINE CORPORATION

2  such information should be included on the
3  committee's website, we will use the debtors'
4  summary, subject to the committee's professional
5  review of such information, and in the event such
6  information is determined to be accurate and
7  available without delay, the committee will use the
8  debtors' work product on the committee's website.
9  However, to the extent the committee's
10 professionals determine that any information
11 requires input from the committee's professionals,
12 or is otherwise required to be posted on the
13 committee's website pursuant to information sharing
14 order, such as summaries of pending motions,
15 hearing updates, answers to frequently asked
16 questions or information regarding other pertinent
17 events in the debtor Chapter 11 cases, the
18 committee's professionals will prepare their own
19 documents to be shared on the website."
20         Your Honor, I believe the purpose of
21 that language and the interaction we've had with
22 the debtors is to make sure that to the extent
23 there is work product that has been done, that we
24 are not reinventing the wheel, that in fact we
25 comply with our obligation, both under the statute

CALPINE CORPORATION

1  and the order, to give our creditors non
2  confidential information as efficiently and
3  effectively as possible.
4         Again, your Honor, no objections
5  were filed, and the committee believes that the
6  retention of Garden City is the most efficient and

17

CALPINE CORPORATION

7  effective way to satisfy its obligations under the
8  Bankruptcy Code.
9         MR. CANTOR:  Your Honor, no
10 objection from the estate in retaining Garden City.
11 We did see the application and the request.  We had
12 some concerns that we did our level best to ensure
13 that whatever work product that was already
14 produced or that would be produced by the debtors,
15 would not be recreated and that we were able to
16 come up with the appropriate links.
17         THE COURT:  Why don't you two
18 educate me?  How many information agents are
19 working on the turf?  When one looks at the court's
20 website, you are immediately referred to the work
21 product of an information agent.  I don't know if
22 that's the debtors' or one of the court's retained,
23 and I don't know where the linkage takes place.
24         MR. CANTOR:  Your Honor, the estate
25 is --

CALPINE CORPORATION

1         THE COURT:  And I'm from Mars and I
2  want to find something out about this case.  The
3  logical thing would be to go to the court's
4  website.  Where does the linkage go from there and
5  how many information agents are involved?
6         MR. CANTOR:  Your Honor, the debtors
7  one information agent, Kurtzman Carson Consultants.
8  They provide the noticing services, they also
9  maintain a website which provides basically a link
10
11

18

```
12        to any entry on the docket.
13             THE COURT:  Is that the link that
14        you see when you get into the court's website?
15        Every mega case in this court has an information
16        agent that most people get to see for almost all
17        the information in the case.
18             MR. CANTOR:  Your Honor, this is
19        David Seligman, he's with Kirkland and Ellis, and
20        he may be the best person to answer the technical
21        questions.
22             MR. SELIGMAN:  Good morning, your
23        Honor.
24             THE COURT:  All I had asked was how
25        many information agents were running around.
```

CALPINE CORPORATION

```
 1             MR. CANTOR:  I knew how many, your
 2        Honor.
 3             MR. SELIGMAN:  David Seligman of
 4        Kirkland and Ellis on behalf of the debtors.  Your
 5        Honor, I don't know the full details, but
 6        essentially when a creditor wishes to know about
 7        this case, there are a variety of ways that they
 8        can find out about this case; one is to go to the
 9        court's website and they can review the docket and
10        other pertinent information.  There is, I believe,
11        a link on the court's website to the debtors'
12        private information agent.
13             THE COURT:  That's what I assume.
14             MR. SELIGMAN:  That's correct.  We
15        also in our of all pleadings refer to the court's
16
```

19

```
17        website as well as to the debtors' private website
18        where they can go.
19             The issue here is, because of the
20        creditors committee's own obligations to its
21        constituents, it needs its own website, and we have
22        worked hard with the committee to make sure that
23        there is no duplication and that there is cross
24        references between the two.
25             THE COURT:  So you don't get to the
```

CALPINE CORPORATION

```
 1        court's website unless you link from the
 2        court's to the committee's.
 3             The committee's is not on the
 4        court's website; is that correct?
 5             MR. STAMER:  The committee's website
 6        hasn't been set up yet, your Honor.  We've done a
 7        tremendous amount of work, and it should be days
 8        after this application is approved.  But my
 9        assumption is there will be cross references
10        linking in a number of different directions.
11             The reason we thought it was
12        important to have a separate committee information
13        agent was to avoid confusion.  There are disclosure
14        obligations that the debtor has; there are now new,
15        and to some degree untested disclosure obligations
16        that the committee has.  The purpose of hiring the
17        information agent is so we had can handle that,
18        have an expert in the field, as opposed to doing it
19        in house in the law firm.  And the dialogue we had
20        with the U.S. Trustee and with the debtors is to
21
```

```
22   make sure it followed the precedents in this
23   jurisdiction, for example, Music Land basically did
24   it the same way.  And the conversation we had with
25   the debtors dealt with the need to avoid
```

                                        20

```
                 CALPINE CORPORATION
 1
 2   duplication of effort, which I think we've
 3   satisfied the debtors, and hopefully we have
 4   satisfied the court as well.
 5          THE COURT:  Is it your intention to
 6   post this website on the court's website?
 7          MR. STAMER:  I believe so.  It would
 8   make sense, so individual creditors who wanted to
 9   hear or see what was posted on the committee's
10   website would have the option to do that.
11          THE COURT:  All right.  Does anybody
12   else want to be heard?
13          The application is granted.
14          MR. STAMER:  Your Honor, I have an
15   order.  If I may approach?
16          THE COURT:  I'll entertain it.
17          MR. STAMER:  Thank you.
18          THE COURT:  I've approved the order.
19          MR. CANTOR:  Your Honor, the next
20   item on the agenda, number 5, which is listed as
21   contested has since become uncontested.  And Jeff
22   Powell, my colleague, will take care of that
23   motion.
24          MR. POWELL:  Good morning, your
25   Honor.  Jeff Powell for the debtors.  When our
```

                                        21

```
                 CALPINE CORPORATION
 1   motion to assume was filed, we identify 35 leases
 2   that were the subject of the motion.  14 have been
 3   withdrawn by agreement, and we set that out in our
 4   reply brief.  There was no objection to 16 leases,
 5   leaving only five leases at issue.  The Wilmington
 6   Trust and HSBC filed an objection with respect to
 7   those five leases.
 8
 9          In the last 15 minutes, I believe
10   there's been a resolution as to those five leases.
11   And to skip a step, Mr. Solum will recount them.
12          THE COURT:  Sure.
13          MR. SOLUM:  Good morning, your
14   Honor.  With respect to the five leases that are at
15   issue, for all but two of the leases and those two
16   leases relating to Columbia, the HSBC and
17   Wilmington creditors are withdrawing their
18   objections.
19          With respect to those two leases
20   related to Columbia, we are going to adjourn the
21   motion to assume for three weeks until our next
22   hearing date -- rather two hearing dates from now,
23   until mid July.  During that time, both Wilmington
24   and HSBC have agreed not to seek any further
25   discovery or serve any further discovery, whether
```

                                        22

```
                 CALPINE CORPORATION
 1
 2   in connection with the motion, through 2004, or
 3   otherwise.  And also during that time we are going
```

```
 4        to see if we can get an extension pursuant to
 5        365(d)(4) beyond July 18th.  And then we are also
 6        going to sit down with Wilmington and potentially
 7        HSBC, including their clients, to discuss some
 8        outstanding information requests regarding
 9        presumably historical financial information.
10                I would invite either HSBC or
11        Wilmington to weigh in here in case I've misstated
12        the settlement that we've reached.
13                MR. POWELL:  Your Honor, those are
14        leases 11 and 12 on the chart that we submitted to
15        your Honor.
16                MR. MILLIO:  Your Honor, Victor
17        Millio(ph) of Dicks and Pividy(ph) representing
18        Wilmington Trust.
19                The stipulation is accurately as
20        stated, and we are withdrawing our objection as to
21        number 15, number 27, and number 18, but preserving
22        our objection in our and our rights to argue it in
23        three weeks, assuming we are not able to resolve
24        it, on numbers 11 and 12.
25                THE COURT:  Pursuant to those
```

23

```
 1        CALPINE CORPORATION
 2        statements, those objections are marked withdrawn.
 3                MR. PIVIDY:  Thank you, your Honor.
 4                THE COURT:  And the balance
 5        preserved.
 6                MR. SOMERSTEIN:  Good morning, your
 7        Honor.  Mark Somerstein of Ropes and Gray for HSBC.
 8                Your Honor, just to clarify the
```

```
 9        record in one small way:  Technically HSBC didn't
10        object to the motion, but we did want to make the
11        court aware of the concerns that we share with
12        Wilmington regarding information and request and
13        information flow.  We are pleased to have the
14        opportunity during this three weeks period to meet
15        with the company, discuss some of our issues with
16        respect to the CalGen plants, and we certainly look
17        forward to that, and hopefully we will not need to
18        pursue this matter with the court.
19                THE COURT:  Very good.
20                MR. SOMERSTEIN:  Thank you.
21                MR. SOLUM:  Your Honor, with respect
22        to the order, we're just to need a couple of
23        minutes so we can amend it to incorporate the
24        settlement we just reached.
25                THE COURT:  Submit the order.
```

24

```
 1        CALPINE CORPORATION
 2                MR. SOLUM:  Thank you, your Honor.
 3                MR. MILLO:  Thank you, your Honor.
 4                MR. CANTOR:  Your Honor, the next
 5        item is number 6 on the agenda, it's our motion for
 6        an order amending and modifying the cash collateral
 7        order in this case.  And in particular, your Honor,
 8        we are seeking an order of the court modifying the
 9        cash collateral order, to the extent -- as part of
10        the adequate protection package offered to the
11        holders of the first lien secured debt the debtors
12        had committed to reimburse them.
13                So I'll let Mr. Ryan get up here.
```

14    MR. RYAN: Thank you.
15    MR. LEVINE: Thank you, your Honor.
16    MR. CANTOR: Your Honor, to the
17  extent that we had agreed at the outset of the case
18  that in exchange for the entry of an order
19  authorizing us to use cash collateral, including
20  the first lien holder's cash collateral and
21  providing other adequate protection, the estate
22  agreed, among other things, to reimburse them on a
23  current basis for the professional fees and
24  expenses incurred by them.
25    Your Honor, as you know, things have

25

CALPINE CORPORATION

1   changed. Since your Honor entered the order
2   authorizing us to repay the first lien holders, we
3   have in fact paid them the principle and interest
4   due. As you know, and as set fourth in our papers
5   and theirs, there is some dispute as to whether or
6   not there is an entitlement to a make whole
7   premium, and that issue is the subject of an
8   adversary proceeding before your Honor, and we have
9   a status conference on that following the hearing
10  on this motion.
11    Your Honor, it's set forth pretty
12  clearly in our application that from our
13  perspective in the outset we don't believe that
14  there's any entitlement to adequate protection,
15  that the make whole obligation is not valid, and
16  that there is no secured claim. And to the extent
17  that there's a obligation under Section 506(b) of

19  the Bankruptcy Code or an entitlement to a claim
20  for postpetition fees and expenses incurred on
21  behalf of the secured creditors there, it's more
22  appropriate to be determine in connection with a
23  hearing on that claim and pay it at the end of the
24  case or at some later time, but not appropriate to
25  be part of an adequate protection package offered

26

CALPINE CORPORATION

1   by us.
2     Your Honor, to the extent that there
3   is some determination or unwillingness to determine
4   that there is no secured claim, we believe that
5   based upon what are uncontested facts in this case,
6   that in view of the tremendous amount of collateral
7   currently securing what is a one hundred million
8   dollar contested claim for a make whole payment, we
9   believe, and I don't think there is any contest to
10  that, that there is hundreds of millions if not
11  billions of dollars of collateral securing that
12  claim leaving the first lien holders, I think, at
13  no risk of any material diminution in value of
14  their collateral that would put their contested
15  secured claim at risk.
16
17    You've heard at the prior hearing,
18  your Honor, that the fees and expenses incurred by
19  the first lien trustee have been material, and we
20  have no doubt that there would be ensuing
21  litigation and many other matters that are going to
22  come before your Honor in the case over the next
23  number of months, so these could be substantial

24    amounts of fees and expenses.
25            So based upon that, and you can

27

1            CALPINE CORPORATION
2    obviously hear from the first lien holders as to
3    their objection, we believe it's entirely
4    appropriate, based upon the facts and
5    circumstances, to amend and modify the original
6    cash collateral order.
7            As we set forth in our papers,
8    putting aside what your Honor has reminded us since
9    the first day hearings, that your Honor retains the
10   right to modify prior orders the of the court based
11   upon new facts and circumstances, or as equity may
12   require, but the cash collateral order itself was
13   crystal clear that we reserve the right to come
14   back to court. As we set forth in our papers, of
15   course, we are reserving all of our other rights,
16   and I don't suggest that we are waiving any rights,
17   including the right to ultimately attack or
18   challenge the first lien holders liens, challenge
19   the reasonableness of any fees, and certainly we
20   obviously are going to challenge the allowability
21   of the make whole claim. So this is really a
22   motion as it relates to the modification of the
23   cash collateral order only.
24           And the last issues is we do request
25   that the order be entered nunc pro tunc to the date

28

1            CALPINE CORPORATION
2    that we repaid the first lien holder's claims for
3    principal and interest. You should know that in
4    the course of paying any fees and expenses in this
5    case, statements are rendered to other parties in
6    the case, and we received statements from the first
7    lien trustee's attorneys for the fees incurred
8    during those months with a very broad objection and
9    reservation of rights. The estate did not pay
10   those fees, and we did notify the first lien
11   trustee that we were objecting to those fees and
12   expenses incurred. I think it began right after we
13   paid down their claims for principal and interest.
14   And we have not resolved those objections.
15           So, your Honor, I think, based upon
16   what I believe are uncontested facts, we should be
17   authorized or your Honor should entertain an order
18   modifying the cash collateral order that had been
19   entered in this case.
20           MR. STAMER: Your Honor, may I be
21   heard briefly? Again, for the record Michael
22   Stamer from Akin Gump on behalf of the committee.
23           Your Honor, on Friday of last week,
24   the committee filed a statement in support of the
25   debtors' motion. The committee does in fact

29

1            CALPINE CORPORATION
2    support the debtors' motion to modify the cash
3    collateral order. The committee's position is
4    simple, and that is that we believe the first lien

https://vip21.veritextllc.com/myyfiles/502522/12034l.TXT

https://vip21.veritextllc.com/myyfiles/502522/12034l.TXT

07/12/2006 2:58 PM

07/12/2006 2:58 PM

07/12/2006 2:58 PM

30

```
5    holders have been paid in full. They have been
6    paid in full principal interest and attorney's
7    fees, to the extent they were entitled to it. The
8    committee does not believe that they are entitled
9    to any additional claim, that they are not entitled
10   to any make whole, or for that matter any
11   additional professional fees. We believe that the
12   first lien holders are no longer secured creditors
13   entitled to adequate protection. However, your
14   Honor, if in fact the first lien holders are
15   correct in all of their assertion, that they are
16   secured creditors, that they are entitle to a make
17   whole, that they are entitled to an allowed claim
18   for professional fees under Section 506(b),
19   assuming that they are correct on those, which we
20   do not believe they are, the debtors' motion should
21   still be granted. This is a situation, as Mr.
22   Cantor described, where have you a disputed claim,
23   no one disputes, in excess of one hundred million
24   dollars, which is secured by collateral. They have
25   retained their liens, to the extent they ever had
```

```
1                 CALPINE CORPORATION
2    them, in the amount that -- the collateral securing
3    it is in the billions of dollars. So a one hundred
4    million dollar claim secured by billions of
5    collateral. The enormous equity cushion is more
6    than sufficient adequate protection to protect the
7    first lien holders.
8              Your Honor, in their objection the
9    first lien holders make the argument that this is a
```

31

```
10   tactic by the debtor and by the committee, that it
11   is an attempt to deprive them of funding for this
12   litigation that they want to pursue.
13             THE COURT: Oh my goodness.
14             MR. STMER: That's exactly our
15   point, your Honor. This is a constituency that
16   just got paid 650 million dollars. If they don't
17   have enough money to fund the litigation, then we
18   all have problems. From our perspective, your
19   Honor, if we have an allowed claim, there will be
20   value at the end of the case to satisfy them.
21   Forcing the debtors to fund this litigation gives
22   them literally nothing to lose. They're playing
23   with house money, if the company is required to
24   fund their litigation, which we believe is
25   meritless. And, your Honor, we believe there is
```

```
1                 CALPINE CORPORATION
2    ample cause to modify the cash collateral order as
3    requested by the debtor.
4              Thank you, your Honor.
5              MR. RYAN: Good morning, your Honor.
6              THE COURT: Good morning.
7              MR. RYAN: Joseph Ryan of Brown
8    Rudnick on behalf of law debenture which is the
9    first lien trustee in this case.
10             Your Honor, if I may, both this
11   motion and the debtors' later request for a
12   continuance or for an extension of time to answer,
13   which the court will deal with later in today's
14   hearing, are, in our view, inappropriate appeals to
```

15 the court to use the court as leverage in order to
16 extract a better settlement from my client with
17 respect to the make whole. That's really what's at
18 work here. Because from a legal standpoint, the
19 motion that is being made with respect to legal
20 fees, and the motion that's being made with respect
21 to adjournment, don't have sufficient bases for the
22 court to grant them.
23       We're not writing on a clean slate.
24 I listened very carefully to the arguments that
25 were made about adequate protection, lack of claim,

32

CALPINE CORPORATION

1 we are not writing a clean slate here, your Honor.
2 What's being requested of this court, your Honor,
3 is not at the beginning of the case what to do
4 about adequate protection with respect to secured
5 claims, what's being requested of this court today
6 is to change the adequate protection order that
7 this court entered at the outset of the case. Can
8 the court do that? Yes, the court can, but the
9 court's discretion is circumscribed by some
10 principles articulated by the Second Circuit, like
11 it had to be in the interest of justice, there
12 can't have been detrimental reliance on the
13 original terms of the order.
14       In this case, your Honor, as we
15 point out in our papers, our client was induced to
16 agree to the original version of the order in this
17 case with respect to cash collateral. We had some
18 objections, including the way the second lien
19 holders who were junior to us were being treated.
20 We ultimately negotiated this order and we were
21 satisfied with the final provisions of it; what we
22 relied on.
23       Now, your Honor, let's look at the
24       (continued)
25 argument that's being made today by the debtor and

33

CALPINE CORPORATION

1 creditors' committee with respect to changed
2 circumstances. And let's start with the first
3 argument that they make. No secured claim, Judge,
4 therefore no entitlement to adequate protection.
5 That's a change, your Honor. They said because at
6 the outset of this case these first lien holders,
7 they were owed a lot of money; they were owed
8 principal, interest. We paid it off, they don't
9 have any claim, therefore there is no entitlement
10 to adequate protection; change in circumstances.
11 Well, Judge, I'm afraid that fails to take into
12 account a very important provision of the cash
13 collateral order, which at least today, who knows
14 what will happen tomorrow, but at least as of
15 today, the debtor is not seeking the court to
16 modify, namely paragraph 21.
17       Paragraph 21 of the cash collateral
18 order, your Honor, basically says that secured
19 claims are presumed -- this is the essence of the
20 provision -- to be valid, unless, unless, Judge,
21 the debtor or some other party files an action in
22 this court by a certain date, namely July 30th.
23       So, it's not -- you know, it isn't that the court

25   is to take for granted today, based on these

34

1            CALPINE CORPORATION
2    gentleman's representations, that we have no claim.
3    Quite the contrary, Judge, the court needs to take
4    into account today the fact that we have a claim
5    until they pursue the appropriate measures set out
6    in the cash collateral order to challenge that
7    claim by the deadline.
8            Now, Judge, I would like you to hold
9    that thought about the deadline because that's
10   going to be very relevant to the next motion that
11   you're going to hear about a request for an
12   indefinite extension for them to answer our
13   complaint.
14           This cash collateral order is a
15   fine, intricate web of provisions, some of which
16   benefit our client, some of which benefit the
17   debtor, but those provisions which benefit our
18   client are ones that go to the notion that secured
19   creditors in these cases, if they are going to go
20   along with what the debtor wants at the outside,
21   they want to have their claims adjudicated pursuant
22   to a process within the time frame, and get it done
23   promptly and quickly.  So for the debtor now to
24   say, hey, they don't have a claim therefore no
25   adequate protection, I'm sorry, Judge, that's not

35

1            CALPINE CORPORATION
2    what this order contemplates and it's not fair to
3    change that.
4            Now they go on to say, well, you
5    know what?  Gee, if they have a claim, this make
6    whole, which is a one hundred million dollars; I
7    guess it's not much to them, it's quite a bit to
8    our client.  A hundred million dollars is only a
9    hundred million dollars if it actually exists.  You
10   know what, there is an equity cushion.  So, what
11   the heck, don't continue to enforce the provisions
12   of the order with respect to the payment of fees
13   because there's an equity cushion.  That's not a
14   change of circumstances, your Honor.  There's been
15   an equity cushion in this case since the beginning.
16   There was an equity cushion when we started this
17   case, there's an equity cushion now --
18           THE COURT:  So what all its coming
19   down to is fees.
20           MR. RYAN:  That's what this motion
21   is about.
22           THE COURT:  Well, that's --
23           MR. RYAN:  Your Honor, I was
24   perfectly happy with the order; that's what this
25   motion is about, they want to change the deal.  My

36

1            CALPINE CORPORATION
2    client has rights here.
3            THE COURT:  Paragraph 25 allows them
4    to do that.
5            MR. RYAN:  No, it doesn't, your
6    Honor.  Paragraph 25 allows them to, with all due

https://vip21.veritextllc.com/myfiles/502522/12034I.TXT

07/12/2006 2:58 PM

37

7  respect --
8       THE COURT: I'll make the
9  determination.
10      MR. RYAN: I understand, Judge. I
11 certainly didn't mean to suggest otherwise.
12      The point is that all paragraph 25
13 says is they have the right to come in here and
14 make a request. It doesn't say that the court
15 should grant it for --
16      THE COURT: For --
17      MR. RYAN: -- any reason or no
18 reason. That's the point. What's the standard,
19 Judge? It can't just be Willy Nilly, it can't
20 because they ask for it they expect you to grant
21 it, there's got to be a showing, at least that's
22 what the Second Circuit has articulated as the
23 standard.
24      They go on to argue, your Honor, and
25 this wasn't flushed out in oral argument, but

1       CALPINE CORPORATION
2  something I certainly noticed in the papers, they
3  say Judge --
4       THE COURT: By the way, as a
5  footnote you should know that I spent a lot of time
6  going over all of your papers, every word.
7       MR. RYAN: You have that reputation,
8  I appreciate that.
9       THE COURT: My wife doesn't, but
10 that's okay.
11      MR. RYAN: They say, Judge, there's

38

12 another practical problem, namely if you allow fees
13 to be paid and the make whole is not due, then
14 we'll have to recover those fees, because there's
15 no entitlement to them unless the make whole is
16 due. Well, that's not so, your Honor. It's just
17 not so. Maybe that's why that argument was wasn't
18 reiterated this morning orally, because the
19 indenture provides very clearly for the payment of
20 fees in connection with the enforcement of the
21 indenture and claims made against the trustee by
22 the company, in this case the debtor.
23      The case law is clear that there is
24 an entitlement to fees under 506(b) if the
25 underlying agreement so provides and if there's

1       CALPINE CORPORATION
2  over collateralization, as we all agree there is
3  here, irrespective of whether the position on the
4  merits that's being articulated by the secured
5  creditor prevails or not, and we've sighted those
6  cases. The standard of course is reasonableness,
7  we're not afraid of that standard. Indeed, Judge,
8  I think what the court should focus on here is that
9  is the standard and that is the mechanism that is
10 established in the order itself that they are
11 seeking to modify for the disposition of fees.
12      We are not looking to recover
13 unreasonable fees, the order provides only that we
14 are entitled to reasonable fees, and the order
15 provides a very orderly mechanism to determine what
16 is reasonable and unreasonable. The statements are

https://vip21.veritextllc.com/myfiles/502522/12034l.TXT

17  submitted. They are reviewed by the debtor. They
18  are reviewed by the creditors' committee. They can
19  object to those fees that they believe are
20  unreasonable. We then have the opportunity to talk
21  about it to see if we can resolve it, and if not
22  those fees that are objected to come before this
23  court for determination, this court being the final
24  arbiter of the question.
25            I don't see why we need to change

39

1              CALPINE CORPORATION
2  that mechanism, and the only reason that I can
3  think of is that they are trying to beat us over
4  the head. We are not going away; whether the court
5  grants this motion or not we are not going away,
6  but the question is are we going to be treated in a
7  manner that is fair and consistent with the order
8  or are we going to be treated in some other manner?
9  There just isn't a reason to change what is in
10  place because it contemplates a reasonable test.
11            And by the way, Judge, it does us no
12  good to put ourselves in a position where we look
13  like we are magnifying fees for the sake of fees.
14  And indeed, our client, quite judiciously, has put
15  the financial advisors previously retained into a
16  no service period. Our activities have been
17  confined, quite properly as they should be, to the
18  make whole issue. And so, now going forward, if we
19  submit statements and the debtor doesn't think that
20  they are appropriate and we can't resolve it on the
21  basis of reasonable people, then the court will

22  decide what's reasonable and what isn't.
23            Finally, your Honor, this business
24  about nunc pro tunc is sort of the insult to the
25  injury. There's no basis for the court to go back

40

1              CALPINE CORPORATION
2  and change the rules of the game in hindsight.
3  It's one thing of course for the court to say okay,
4  look, here we are, I've heard what the parties have
5  said, and, you know, going forward we are going to
6  do it this way. But what they want is for you to
7  go back and change the rules of the game
8  retroactive to a date, interestingly enough, when
9  they say they paid the full principle and interest.
10  Well, of course they didn't, they acknowledge that
11  that really wasn't the date they fully paid it,
12  that was the date they almost fully paid it, but
13  they would like the court to go back to it. Even
14  the U.S. Constitution has a provision of ex post
15  facto laws. It's fundamental fairness. I don't
16  know that it rises to a constitutional question
17  ultimately, but it's a level of fairness that the
18  rules of the game not be changed retroactively.
19            So for all those reasons, your
20  Honor, I would urge the court to leave in place the
21  order as it stands. It certainly is sufficiently
22  flexible to accommodate any concerns with respect
23  to the proliferation of unreasonable fees, if that
24  is indeed the concern, and I would urge the court
25  to deny the motion.

**41**

1
2                        CALPINE CORPORATION
3            MR. CANTOR: Your Honor, if I may
4    just briefly reply?
5            Working backwards, with respect to
6    the date that we asked the court to enter the order
7    nunc pro tunc, I would say that the reason why
8    there's some question as to whether or not it was
9    paid by day or not paid by day. It was very
10   difficult executing on your Honor's order
11   authorizing us to pay the amounts due. As you
12   know, we had to come back for a number of orders
13   for things that appeared to be hyper technical, and
14   I don't think it's unfair that we are authorized to
15   go back to at least the day that we paid it down.
16           When we commenced the case, we owed
17   these first lien holders 650 some odd million
18   dollars and they had asserted secured claims. And
19   it was the very beginning of the case, we were
20   trying to get the use of cash collateral. We
21   necessarily had to negotiate agreements with our
22   secured creditors that we thought were reasonable
23   under the circumstances. And whether or not we
24   could have litigated with the first secured lien
25   holders, and, one, had proven that they were

**42**

1                        CALPINE CORPORATION
2    already adequately protected, we had considered
     that and determined that discretion was the better

**43**

3    part of valor, and go ahead and make a deal.
4            For there to be a suggestion that
5    things are not so different that it's appropriate
6    to reconsider the adequate protection we committed,
7    we paid the secured creditor back what they are
8    owed. And I think that under any measure,
9    reconsidering what we've committed to provide as
10   adequate protection, is sort of -- it's hard to
11   imagine that anybody could suggest that the
12   circumstances aren't so changed that we should not
13   be authorized to modify that obligation.
14           Likewise, the reliance, I could
15   understand their reliance argument if we hadn't
16   paid them anything back and we came back to court,
17   we are not waiving our right to do that to other
18   creditors by the way, but come back to court, not
19   pay them a nickle, and ask you to modify the cash
20   collateral order, that's a very different
21   situation. That's not what we have here.
22           Your Honor, the issue of the date
23   that we need to bring actions to challenge the
24   secured claims of the first lien holders and other
25   lien holders is likely something wrong that we are

1                        CALPINE CORPORATION
2    talking about, and it's our hope that if we and/or
3    the committee have reached some conclusions, or at
4    least preliminary conclusions, that there are
5    issues that need to be investigated and considered,
6    that the secured parties will likewise consider it
7    to be the better part of valor to agree to an

https://vip21.veritextllc.com/myfiles/502522/12034 I.TXT

07/12/2006 2:58 PM

8 extension of that date or we need to either file
9 complaints that would unnecessarily inflame things
10 in what has been what I think a pretty consensual
11 case so far, a constructive case, and in all
12 likelihood we'll be back before your Honor asking
13 for an extension of time to challenge liens or
14 secured claims, and I'm glad Mr. Ryan reminded us
15 of that, because it's something I think that we all
16 need to talk about, it certainly will have
17 relevance in connection with the status conference
18 that we are going to have on the adversary
19 proceeding.
20    Which leads me to my last point,
21 which is:  In some respects, I don't think there is
22 any question that an action has been filed in the
23 court that brings into play and calls into question
24 and joins before your Honor some issues about the
25 allowance of that secured claim.  And to suggest

44

1          CALPINE CORPORATION
2 that a failure to bring an action by the debtor by
3 the date -- I don't remember what the date was, it
4 might have been July 30th or July --
5    MR. STAMER:  July 30th.
6    MR. CANTOR:  -- to suggest, and I
7 guess as long as we're here we can get it all on
8 the record, that I don't think there should be any
9 question that the debtors challenged the secured
10 claim of the first lien holders as it relates to
11 the make whole with full reservation of rights on
12 any other challenges, and I hope we don't need to

13 get into that question, particularly in connection
14 with the status conference.  And, your Honor, to
15 the extent we can have the record reflect that and
16 an understanding that our obligation under the
17 catch collateral order is satisfied, at least as it
18 relates to the challenge of the make whole, we
19 don't think the make whole is an allowable claim,
20 and I think the committee agrees with us.  And to
21 the extent that the first lien holders deserve
22 notice and an opportunity to understand what the
23 challenge is, we object to that claim, your Honor,
24 and hopefully that will be able to resolve any
25 other extensions related to challenging liens and

45

1          CALPINE CORPORATION
2 other sphered claims later on.
3    MR. STAMER:  Your Honor, just
4 briefly.  We echo the sentiments by Mr. Cantor and
5 have nothing further.
6    MR. RYAN:  Your Honor, the point of
7 my argument is that it isn't enough just to raise
8 your hand and say, you know what, we don't think
9 that you are owed the money.  There is a procedure
10 that is supposed to be followed, namely an
11 articulation of the basis.  And they just want to
12 avoid that in order to continue to prolong this
13 process.  They are very coy in their pleading, your
14 Honor.  They are going to tell you what the details
15 of their position are and tell us when the time is
16 appropriate, in their view I guess, namely sometime
17 in the indefinite future.  That's not what this

18 order contemplates. That's not what this order
19 provides. And that's not fair.
20        THE COURT: Thank you all.
21        As I told you, I've read the papers
22 very carefully, and it isn't even really a weighing
23 factor, if I were to weigh, certainly
24 predominantly, the arguments of the creditors'
25 committee and the debtors' clearly are correct and

46

1        CALPINE CORPORATION
2 clearly justify the relief that's being sought
3 here.
4        As has been conceded by Mr. Ryan and
5 as articulated in all of the papers, if there is
6 remaining an issue of adequate protection, there is
7 an overwhelming amount of assets to support
8 adequate protection. There is an enormous amount
9 of equity here, and that's been conceded. So what
10 are we fighting about? Well, we're fighting about
11 when it comes to the professional fees, which have
12 been provided for in the earlier cash collateral
13 order with the caveat, with the right and
14 reservations, that based upon changed circumstances
15 there can be a modification. And that's why we're
16 here today, there is a seeking of the appropriate
17 modification.
18        Based upon other overwhelming fact,
19 and we are just glossing over the normalcy, do I
20 owe you anything more when I pay you 650 some odd
21 million dollars? Well, the argument is no, I owe
22 you nothing more, there's nothing more to be

23 adequately protected; however, there is the issue
24 with respect to the make whole. That is like a
25 dangling participle, it is not clear at all at this

47

1        CALPINE CORPORATION
2 point whether the make whole is appropriate, needs
3 adequate protection or not.
4        Certainly, what we're left with as a
5 practical matter, is this estate funding the
6 litigation against itself with respect to the make
7 whole argument? That's a great incentive to
8 continue to carry on the litigation. I'm not going
9 to give a lot of credibility to the statements
10 which are not backed up on page six and seven of
11 the debtors' application where quotes are made with
12 respect to threats to continue this litigation
13 until it uses up maybe 10 million dollars in fees.
14 I know that that's hyperbole, and I know that's
15 part perhaps of a litigation tactic if indeed it
16 has been asserted. But nevertheless, the mere fact
17 that there is incentive to continue an engine of
18 litigation, based upon the fact that the fees for
19 the adversary in that litigation are coming out of
20 the estate, I find to be improvident, improper, and
21 certainly under the changed circumstances that
22 exist today, call for a modification of the
23 arrangement of paying for fees as adequate
24 protection.
25        And as a footnote to that, I don't

48

07/12/2006 2:58 PM

https://vip21.veritextllc.com/myfiles/502522/120341.TXT

```
 1            CALPINE CORPORATION
 2    know where this form of adequate protection got
 3    some currency. When I grew up in the Bankruptcy
 4    Code, I cut my teeth in it, adequate protection
 5    almost never included having to pay the other
 6    side's attorneys fees. If they won they got paid,
 7    if they didn't win they didn't get paid. And
 8    that's what pertains here. If indeed, Mr. Ryan,
 9    you are successful in your quest and it turns out
10    that you are contractually or otherwise entitled to
11    attorneys' fees, there is sufficient here in the
12    estate to cover for that. But it is highly
13    improvident and improper, in my judgment, to
14    continue paying and funding the litigation under
15    these circumstances without my even getting into
16    the issue of reasonableness, because it does seem
17    that based upon the numbers that have been put
18    before me, that these fees that are coming from the
19    professionals for the note holders are escalating,
20    and I don't think that that's a tolerable fact
21    under any circumstances.
22            With respect to the 506 argument,
23    I'm sure before this case is over I'm going to see
24    lots of 506 requests for compensation, and at that
25    time I'm sure I will hear from Mr. Ryan and his
```

49

```
 1            CALPINE CORPORATION
 2    cohorts in that connection, but this is not the
 3    time for that.
 4            With respect to the nunc pro tunc
 5    portion, clearly you have been on notice, including
 6    an indication from the court at prior hearings with
 7    respect to concern about reasonableness, that the
 8    continued compensation would be objected to; and it
 9    has not been paid, so nobody is asking for
10    disgorgement at this point. The appropriate date
11    would be the date that there has been full payment
12    of the 650 some odd million dollars to your
13    clients.
14            Accordingly, the request for
15    modification is granted. Submit an appropriate
16    order.
17            MR. CANTOR:  Thank you, your Honor.
18            Your Honor, the order reflects the
19    date of repayment.
20            MR. RYAN:  Your Honor, I don't think
21    the order, unless it's been changed, reflects the
22    date of the payment. By repayment, I mean that it
23    allows sufficient to cover what was principal and
24    interest, if that's what they mean by repayment. I
25    don't think May 26th is the date. My understanding
```

50

```
 1    is that that date is June 4th.
 2            MR. CANTOR:  Your Honor, I'm sure we
 3    can figure out the appropriate date, whether it's
 4    the 26th or the 4th. I don't know what kind of
 5    fees could have been incurred between the 26th and
 6    the 4th.
 7            THE COURT:  Well, if you divide 400
 8    thousand by 30, what do you get?
```

https://vip21.veritextllc.com/myfiles/502522/12034l.TXT

```
10         MR. RYAN: I'm simply responding to
11   the court's desire to get an order --
12         THE COURT: Yes, I desire to give
13   you an order that reflects the final payment date.
14         MR. CANTOR: June 4th is acceptable,
15   your Honor, to the debtor.
16         THE COURT: Good. This record
17   indicates that June 4th, although the order doesn't
18   state that. It is so ordered.
19         MR. CANTOR: Thank you, your Honor.
20         THE COURT: I have approved the
21   order.
22         MR. CANTOR: Thank you, your Honor.
23   The next matter on the agenda I
24   believe is the pretrial conference, which again --
25         MR. POWELL: It's a motion to extend
```

                              51

```
 1   CALPINE CORPORATION
 2   time.
 3         MR. CANTOR: A motion for an
 4   extension of time is next?
 5         MR. POWELL: We settled that one.
 6         MR. CANTOR: Okay. I'm sorry, your
 7   Honor. Your Honor, the debtors' motion to extend
 8   time to answer, and Mr. Powell is going to take the
 9   lead on that motion.
10         MR. POWELL: Good morning again,
11   your Honor. Jeff Powell on behalf of the debtors.
12   Your Honor, we filed a motion for
13   extension of time to answer or otherwise plead to
14   the first amended complaint. That issue, to coin a
```

```
15   phrase, is inexplicably intertwined with the status
16   conference. The firsts filed an amended complaint.
17   Our answer was due yesterday. Last week we filed a
18   motion for an extension of time to answer. We did
19   not ask for an indefinite extension, as was
20   suggested a minute ago, nor is is our motion an
21   injunction. We are not seeking to enjoin the
22   firsts from bringing this adversarial proceeding,
23   we are seeking an extension of time, a continuance,
24   to litigate it.
25   We raised, in our motion, three
```

                              52

```
 1   CALPINE CORPORATION
 2   grounds for an extension, your Honor. The first is
 3   that this case should be litigated at a more
 4   suitable stage of the proceedings. That argument
 5   was briefed a couple of different times. It was
 6   argued on May 10, I won't belabor it again today.
 7   The second ground for extension,
 8   your Honor, is that this case should not be
 9   litigated until the resolution of the appellate
10   process. After the court's ruling on May 10, the
11   firsts appealed your Honor's ruling; that issue is
12   going up to the district court. The issues
13   identified by the firsts in their pleadings, the
14   issues presented on appeal, are virtually identical
15   to the relief they seek in their declaratory
16   judgment. And we've laid out in our papers the
17   relevant language from both the issue that was
18   presented on appeal and the first amended
19   complaint. The resolution of appeal, your Honor,
```

https://vip21.veritextllc.com/myfiles/502522/12034l.TXT

20 will clearly affect the nature of the litigation
21 here.
22        I don't think there's any way that
23 the resolution of the appellate process cannot
24 impact this adversarial complaint, and they we laid
25 that out both in our opening papers and the

53

CALPINE CORPORATION
1
2 exhibits attached to it. If the district court
3 were to affirm your Honor, it is possible that
4 there may be a ruling that no make whole premium is
5 due. If the district court was to reverse your
6 Honor and hold that there may be a simultaneous
7 payment of the make whole premium at the time the
8 principal is repaid, then any litigation with
9 respect to this complaint would be wasted, would be
10 inefficient, and would be completely unwound.
11        The third reason, your Honor, that
12 we raised in our papers for an extension, simply
13 put, we need more time to investigate the facts and
14 to prepare an answer. But the bottom line is, your
15 Honor, we think the time to answer should be put
16 off to a much later stage in the case, either at
17 the claims reconciliation process, the plan
18 confirmation stage, or at a minimum, at a minimum,
19 your Honor, after the appeal process has been
20 resolved with respect to your Honor's May 10th
21 ruling.
22        Thank you, your Honor.
23        MR. STAMER: Your Honor, just very
24 briefly. Again, Michael Stamer from Akin Gump on

25 behalf of the committee.

54

CALPINE CORPORATION
1
2        Your Honor, the committee supports
3 the debtors' motion. In addition, by order dated
4 May 30th of this year, the court authorized the
5 committee to intervene as party defendants to this
6 action. The committee agrees that allowing the
7 litigation to go forward presents a number of
8 issues. It presents a risk of overlapping
9 litigation on same or similar issues with the
10 potential of conflicting decisions by different
11 courts. We also strongly believe that this
12 litigation will be distracting, time consuming, and
13 expensive. As, your Honor, I'm sure has realized,
14 this is an extremely complicated company, and an
15 even more complicated restructuring, and that the
16 resources of the company and its professionals now
17 and in the near future need to be focused on fixing
18 the company and reorganizing and restructuring
19 these assets.
20        In addition, your Honor, based upon
21 the holding of your Honor with respect to adequate
22 protection, the first lien holders are adequately
23 protected. There are, as we have stated and as
24 your Honor has held, they are overwhelmingly over
25 secured. To the extent they have claims, which we

55

```
1         CALPINE CORPORATION
2   strongly believe they do not, there will be money,
3   whenever this is litigated, to satisfy those
4   claims.  And it is for those reasons, your Honor,
5   that we join the debtors and support the motion to
6   extend the time to answer.
7            THE COURT:  Mr. Ryan, you oppose I'm
8   sure.
9            MR. RYAN:  I actually do.  Thank
10  you.
11           Your Honor, let me take the last two
12  arguments raised by my colleague on behalf of the
13  debtor, because the first argument that he made was
14  something that the court handled at the last
15  hearing, denied their request at that point for
16  this indefinite extension, so I think we're down to
17  the second two issues.
18           THE COURT:  I think the way all the
19  papers put it, I didn't rule.
20           MR. RYAN:  Well, let me put it this
21  way, you didn't grant the relief requested.
22           With respect to the argument that
23  somehow the court should now back off deciding the
24  make whole question, because there is an appeal of
25  the court's decision from last month authorizing
```

```
1         CALPINE CORPORATION
2   the debtor to go forward to pay principle and
3   interest, is, I guess, first of all ironic, in what
4   the debtor wanted the court to adopt as a view was
5   that it could authorize the payment of principal
```

56

```
6   and interest.  Step one, and step two, proceed to
7   dispose of the make whole.  We said the court
8   should combine the two, we lost that one before
9   this court.  The debtor now, I guess, has taken a
10  somewhat different view, but that's just sort of in
11  the nature of irony, I guess.
12           What the court really needs to focus
13  on, I think, is what is on appeal and what is the
14  subject of the complaint, and are they, in fact,
15  inextricably linked, as is somewhat suggested.
16  What's at issue on the appeal is the question about
17  did this court have the power under 105 and 363 to
18  order the payment of principal and interest over
19  the objection of the first lien note holders
20  without disposing of, or without deciding I should
21  say, the question of whether a make whole is due.
22  Our issue was that that is not something that the
23  court -- the court can't, in effect, force a
24  contested claims resolution on a party in the
25  absence of the plan process.  As I said, we lost
```

```
1         CALPINE CORPORATION
2   that issue before this court.  That's what's before
3   the district judge.
4            The district judge isn't being asked
5   to determine the make whole, the amount the make
6   whole, or even whether the make whole is due with
7   respect to the redemption that took place on June
8   4th, that's what this court is being asked to
9   determine in connection with the complaint; namely,
10  did that redemption, within the meaning of the
```

57

11 indenture, trigger a make whole, and if so, what is
12 the amount of the make whole. The district court
13 doesn't have to decide that; it isn't going to
14 decide that. So that's a separate issue. That's
15 what's before this court under the amended
16 complaint, and it's not in any way inextricably
17 linked to what's going on with respect to the
18 appeal.
19        Judge, the second argument that's
20 being advanced today is, to me, incredible. I
21 don't know how the debtor one month ago can come
22 before this court and say to you, Judge, we've got
23 a good idea, we're going to redeem the first lien
24 notes, we are going to do it because we can save
25 money. It's too expensive debt. And, Judge, we

                    58

              CALPINE CORPORATION

1 know that there's lurking in the background this
2 make whole, and we know that if it were in fact
3 due, our argument about saving money would be out
4 the window because the amount of make whole would
5 overwhelm any saving that we could achieve over the
6 next four or five years, but you know what, Judge?
7 We are satisfied -- this is at least my
8 understanding of what they were saying to you, your
9 Honor, we're satisfied, says the debtor, that no
10 make whole is due. We've exercised our business
11 judgment. Presumably what that entails is some due
12 diligence into the facts so that one can make an
13 informed judgment about whether a make whole is
14 due. That was the thrust of what was put before
15

16 the court last month. Presumably the court
17 accepted that at face value and authorized the
18 relief that was requested.
19        Now, a month later, Judge, the
20 facts, say the debtor, are so complicated that we
21 need a lot more time to figure them out. That's
22 pretty scary. I don't understand how, other than
23 that in a cynical way, one can say those two
24 things, one in June, one in July, and expect to
25 have any credibility before this court. Unless the

                    59

              CALPINE CORPORATION

1 view is, look, the court's job is not to be an
2 impartial arbiter of disputes between contesting
3 parties, the court's job is to, you know, just do
4 whatever the debtor asks the court to do in the
5 interest of the debtors' convenience and the
6 debtors' positions that they wish to advance,
7 whether those positions are contradictory from one
8 month to the next or not. I mean it just defies
9 credibility, your Honor.
10        THE COURT: It doesn't to me, Mr.
11 Ryan, because there's only one real issue here, and
12 it's the word inextricable and whether the appeal
13 and your complaint are inextricably tied together
14 is what drives my determination.
15        MR. RYAN: Your Honor, please, if in
16 any way I've suggested that the court --
17        THE COURT: So you are going beyond
18 what the real issues are.
19        MR. RYAN: Fair enough, your Honor.
20

60

```
21  I'm just pointing out that I don't think that the
22  debtor can credibly argue with respect to what they
23  have argued.
24         THE COURT: Well, debtors and
25  parties in interest are sometimes credible,
```

CALPINE CORPORATION

```
1
2   sometimes incredible, and I've seen them all, and
3   I've seen them all in this case by the way.
4          MR. RYAN: Your Honor, I would also
5   say that we suggested that if they need a little
6   more time that would be okay, we are not
7   unreasonable people in that respect.
8          THE COURT: Well, you threw in the
9   magic word in your papers that we are negotiating
10  toward a settlement, and I've tried to parse that
11  out. And while that's only a side issue here, it's
12  not even an issue at all, I'm driven to inquire
13  what settlement was under discussion. Is it the
14  issue to make whole? Is it the issue of
15  professional fees on the modification order?
16         It's not important that you tell me,
17  but I was just wondering if there was a global
18  settlement being discussed or specific settlements
19  based upon specific tranches of litigation.
20         MR. RYAN: I'm not --
21         THE COURT: You are all --
22         MR. RYAN: -- I think I'm
23  constrained, your Honor.
24         THE COURT: Nobody wants to respond,
25  and I don't want you to respond, but I thought it
```

61

CALPINE CORPORATION

```
1
2   was very interesting that you threw that into your
3   papers as an argument, that we should then help
4   with the standstill because there are settlement
5   discussions going on.
6          MR. RYAN: No, your Honor. What --
7   if I can --
8          THE COURT: If there are none,
9   that's fine.
10         MR. CANTOR: Your Honor, if I may.
11  I rise, and I don't mean to be impertinent to the
12  question. It would be unfair to tell your Honor
13  that there are any meaningful settlement
14  discussions going on. And I would say that
15  representations in that vein have widely incredible
16  effects on the pricing of these bonds, and even
17  discussing this here.
18         THE COURT: Well, that was contained
19  in Mr. Ryan's papers.
20         MR. CANTOR: Yes. And that's why I
21  would just want to put a fork in it now. It would
22  be unfair to suggest that there are any meaningful
23  discussions going on.
24         THE COURT: Very well.
25         MR. RYAN: Your Honor, what we were
```

62

CALPINE CORPORATION

```
1
2   trying to say in the papers is that there was a
```

63

```
 3   dialog about the length of time with respect to
 4   which the --
 5             THE COURT: I think the word began
 6   with an S and ended with a T.
 7             MR. RYAN: That's true, your Honor.
 8   What I'm trying to say, your Honor, is that we
 9   pointed out there were some discussions about how
10   long the --
11             THE COURT: You need go no further,
12   Mr. Ryan, because the caution has just been thrown
13   out on the table. And I accept the yellow or the
14   red light.
15             MR. RYAN: Fair enough, your Honor.
16   I'm just pointing out that, you know, we are
17   willing to entertain, and we've communicated that,
18   some reasonable additional period in which an
19   answer could be filed.
20             What doesn't seem appropriate is
21   that that period become an indefinite period to
22   some future claims resolution process. That's not
23   consistent with the terms of the cash collateral
24   order, as I pointed out, which requires or
25   contemplates a prompt airing of these issues, to
```

```
 1                  CALPINE CORPORATION
 2   the extent that there are disputes with respect to
 3   secured claims, including ours. It's not
 4   consistent with notions of fundamental fairness in
 5   which justice delayed without good reason is
 6   justice denied.
 7             So what we would urge the court is
```

64

```
 8   that if there is going to be some limited period in
 9   which they are given to formulate their answer,
10   that it be tailored to their specific needs, and
11   that it not simply be something where the court
12   allows them an indefinite period to respond,
13   thereby just putting the determination of my
14   client's rights on ice for months or years without
15   any underpinnings to that determination. In
16   essence, your Honor, I'm just asking the court not
17   to establish or to make a determination here that
18   just amounts to lessen their desires to stall an
19   adjudication of the make whole issue.
20             THE COURT: Does anyone else want to
21   be heard?
22             MR. POWELL: No.
23             THE COURT: On April 19th 2006, the
24   debtors filed a motion for an order authorizing the
25   debtors to repay immediately up to 646.11 million
```

```
 1                  CALPINE CORPORATION
 2   dollars of principal of their first lien debt and
 3   permit all parties in interest to reserve their
 4   rights to litigate the disputed make whole premium
 5   demand, if necessary, at a more suitable a stage of
 6   the Chapter 11 proceeding.
 7             On May 5, the first lien trustee
 8   filed both an objection to the debtors' repayment
 9   motion, and a complaint seeking, inter alia, a
10   declaratory judgment in favor of the first lien
11   trustee declaring that the debtors were prohibited
12   from making the proposed repayment without making a
```

13 simultaneous payment of the corresponding make
14 whole premium due in connection therewith. The
15 creditors' committee was subsequently authorized to
16 intervene in the adversary proceeding.
17        Following a hearing on May 10, this
18 court granted the debtors' motion to repay first
19 lien debt principle (the May 10 order), but did not
20 rule on the debtors' request to postpone litigation
21 over the first lien trustee's make whole premium
22 demand.
23        The first lien trustee appealed the
24 May 10 order, as well as successive orders
25 implementing the first lien debt principle

65

1            CALPINE CORPORATION
2 repayment authorized by the May 10th order; we'll
3 call that the repayment orders.
4        According to the first lien trustee,
5 the issue to be presented on appeal are, and I'll
6 either quote or paraphrase here: Whether the
7 bankruptcy court erred and otherwise acted
8 improperly, one, in concluding that it had
9 authority under Sections 105 and 363(b) of the
10 Bankruptcy Code or applicable law, to authorize the
11 debtors to repay principal of first lien notes
12 outside the context of a plan of reorganization
13 without, and I emphasize, first determining whether
14 such prepayment was permitted under the first lien
15 indenture absent a simultaneous payment of any
16 applicable premium due thereunder. End the
17 emphasizing. And, two, otherwise directing such

18 repayment not in conformance with the terms and
19 conditions of the first lien indenture. (See the
20 notices of appeal.)
21        On June 6th, the first lien trustee
22 filed its first amended complaint that, among other
23 things, again seeks a declaratory judgment, "that
24 the debtors are required to pay the make whole
25 premium due under Section 3.05(b) of the first lien

66

1            CALPINE CORPORATION
2 indenture, simultaneously in connection with the
3 redemption of the first lien notes."
4        On June 16, the debtors filed a
5 motion, which the creditors' committee joined, to
6 extend their time to answer or otherwise plead to
7 the first lien trustee's first amended complaint.
8 Also on June 16, the first lien trustee filed a
9 request to file a motion for summary judgment with
10 respect to the issue of the make whole premium.
11        Clearly, as noted by the debtors and
12 the committee. The issue that the first lien
13 trustee seeks to litigate in its adversary
14 proceeding is "inextricably intertwined" with its
15 appeal of the repayment orders. This court
16 concurs. The central issue in both the appeal and
17 adversary proceeding is virtually identical: to
18 wit, whether the payment of the make whole premium
19 without payment of the first lien debt principle was
20 permissible. The posture of the case at this point
21 is that the same issue is before two courts which
22 could render conflicting results. Because the

23    issue is now before the District Court in the
24    appeal, it should not be considered by this court
25    at this time.

67

                CALPINE CORPORATION

1                 CALPINE CORPORATION
2       Additionally, as noted by the
3    creditors' committee, if the first lien holders are
4    successful in their appeal and the repayment of the
5    first lien debt is consequently unwound, the issue
6    of the make whole premium is moot unless the
7    debtors again seek authority to repay the first
8    lien debt.
9       Accordingly, the debtors and the
10    committee's request to extend their time to file an
11    answer or otherwise move, is granted until ten days
12    after the appeal is decided or resolved. Likewise,
13    the first lien trustee's request to file a motion
14    pursuant to Rule 7056-1A for summary judgment is
15    denied without prejudice pending the outcome of the
16    appeal.
17       It is so ordered.
18       MR. CANTOR: Your Honor, in that
19    connection I had the opportunity to pull out the
20    cash collateral order where the debtors and the
21    official committee, and any other persons in the
22    case seeking to challenge secured claims have until
23    July 30th of this year to bring that action. I
24    would just like to stake out, if not an
25    understanding an order of the court, that if we are

68

1                 CALPINE CORPORATION
2    necessarily going to wait until the appeal process
3    has run its course as it relates to the motion to
4    repay, that we likewise not be barred by the June
5    30 deadline, so that if we don't file our answer.
6    We've made it pretty clear, I know it hasn't been
7    accepted, that we intend to object to the claim and
8    either seeking an agreement in that connection an
9    order of your Honor that this date, as it relates
10    to challenging the make whole claim, likewise be
11    extended.
12       MR. RYAN: We wouldn't agree with
13    that, your Honor. We don't think it's that's
14    appropriate.
15       THE COURT: Well then make your
16    challenge, Mr. Cantor.
17       MR. CANTOR: We will bring the
18    appropriate motion, your Honor.
19       THE COURT: Okay.
20       MR. POWELL: Your Honor, may I ask
21    you a question about your ruling on the motion for
22    an extension of time? I don't want to gild the
23    lily, but I know that in April and May there were
24    discussions between the debtors and the firsts
25    where the prospect of appealing beyond the District

69

1                 CALPINE CORPORATION
2    Court was raised. Your order refers to an answer
3    within ten days after the resolution of the appeal

https://vip21.veritextllc.com/myfiles/502522/120341.TXT

07/12/2006 2:58 PM

4 we expect to win, we don't know what the intentions
5 of the firsts would be. And I'm just trying to
6 think that through, and perhaps maybe we can come
7 back to your Honor within a certain amount of days
8 after the District Court rules and get a sense
9 where the losing party is?
10       THE COURT: Well, you can certainly
11 come back to the court. You can also deal with the
12 District Court, and if it has to go further both
13 sides can seek stays pending the appeal and the
14 like.
15       MR. POWELL: Okay.
16       THE COURT: I've so ordered this
17 record. Unless you want to push a paper order,
18 gentlemen. I don't think it's necessary.
19       MR. POWELL: Nor do I.
20       MR. CANTOR: Thank you, your Honor.
21       MR. STAMER: Your Honor, I'm sorry
22 maybe I misunderstood. Our understanding, my
23 understanding of your order was the resolution of
24 appeal by final non appealable order, so if we
25 prevail in the District Court and they don't appeal

70

CALPINE CORPORATION
1 once the time to appeal lapses --
2       THE COURT: The ruling says that ten
3 days after the appeal is decided or resolved in a
4 final non appealable order. Is that your
5 recommendation?
6       MR. STAMER: I believe it is, your
7 Honor. That way we don't have to come back

9 in-between the two appeals, so that if it goes
10 further we all understand that the deadline is
11 extended.
12       THE COURT: I'm going to grant that
13 application.
14       MR. STAMER: Thank you, your Honor.
15       MR. RYAN: Note by my objection.
16       THE COURT: Certainly.
17       MR. POWELL: I think in light of
18 your Honor's ruling, that's taken care of the
19 pretrial conference with respect to the adversary.
20       THE COURT: Yes, it has, and it's
21 also taken care of the application to bring on a
22 motion for summary judgment as well.
23       MR. STAMER: Thank you, your Honor.
24       THE COURT: Thank you all.
25       MR. CANTOR: Your Honor, before we

71

CALPINE CORPORATION
1 all -- there are two last matters which were
2 adjourned. I just wanted to note for the record
3 that there is a motion to compel performance under
4 certain power purchase agreements between Calpine
5 and Acadia, and the second motion is for payment of
6 administrative expenses for Salvson Exploration
7 Company. Both of those have been, by agreement,
8 adjourned to July 26th, which is the second hearing
9 date we have in July, your Honor.
10       THE COURT: All right.
11       MR. CANTOR: Thank you, your Honor.
12       THE COURT: Thank you all.

14    MR. STAMER:  Thank you, your Honor.

72

CERTIFICATE

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF WESTCHESTER )

           I, Denise Nowak, a Shorthand
Reporter and Notary Public within and for
the State of New York, do hereby certify:
           That I reported the proceedings in
the within entitled matter, and that the
within transcript is a true record of such
proceedings.

           I further certify that I am not
related, by blood or marriage, to any of
the parties in this matter and that I am
in no way interested in the outcome of
this matter.

           IN WITNESS WHEREOF, I have
hereunto set my hand this _____ day of
_____, 2006.

                    _____
                         DENISE NOWAK