**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | ) Chapter 11 |
| Calpine Corporation, et al., | ) |
|  | ) Case No. 05-60200 (BRL) |
| Debtors. | ) Jointly Administered |
|  | ) |

**STIPULATION FIXING MAKEWHOLE AND DEFAULT INTEREST
CLAIMS OF CALGEN FIRST PRIORITY DEBT REPRESENTATIVES**

(a) Calpine Corporation ("Calpine") and its affiliated debtors and debtors in possession (collectively, the "Debtors"), (b) Wilmington Trust FSB, acting solely in its capacity as Indenture Trustee (the "First Priority Trustee") for the holders of certain First Priority Secured Floating Rate Notes due 2009 issued by Calpine Generating Company LLC ("CalGen") and CalGen Finance Corp. in the original aggregate principal amount of $235,000,000.00 (the "First Priority Floating Rate Notes"), (c) Wilmington Trust Company, acting solely in its capacity as successor Administrative Agent (the "First Priority Term Loan Administrative Agent" and, together with the First Priority Trustee, the "First Priority Debt Representatives") for the holders of certain First Priority Secured Institutional Term Notes due 2009 issued by CalGen and CalGen Finance Corp. in the original aggregate principal amount of $600,000,000.00 (the "First Priority Term Notes" and, collectively with the First Priority Floating Rate Notes, the "First Priority Notes"), (d) Whitebox Advisors LLC and certain of its affiliates (collectively, "Whitebox"), in their capacities as beneficial holders of (i) the face amount of $338,000,000.00 of the First Priority Term Notes and (ii) the face amount of $29,500,000.00 of the First Priority Floating Rate Notes, and (e) the Official Committee of Unsecured Creditors of Calpine Corporation, et al.

(the "Creditors' Committee") have agreed upon this stipulation (the "Stipulation") resolving the objections of the First Priority Debt Representatives to the Repayment Motion (as defined below) and the Debtors' Fourth Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Plan," as the same may be amended, restated or supplemented from time to time), and state as follows:

## RECITALS

WHEREAS, on March 23, 2004, CalGen and CalGen Finance Corp., together with various of their subsidiaries and affiliates acting as guarantors and pledgors (collectively, the "CalGen Debtors"), completed an offering of first, second and third lien debt consisting of floating and fixed rate term loans and a revolving line of credit, totaling more than $2.6 billion collectively (the "CalGen Secured Debt"), issued pursuant to certain loan documents (the "CalGen Loan Documents");

WHEREAS, the CalGen Secured Debt consisted of (i) the First Priority Floating Rate Notes issued pursuant to that certain First Priority Indenture (the "First Priority Indenture") and for which the First Priority Trustee acts as Indenture Trustee; (ii) the First Priority Term Notes issued pursuant to that certain First Priority Term Loan Agreement (the "First Priority Term Loan Agreement") and for which the First Priority Term Loan Administrative Agent acts as Administrative Agent; (iii) $200,000,000 First Priority Revolving Loans for which the Bank of Nova Scotia acts as Administrative Agent (the "Revolving Loan Administrative Agent"); (iv) $640,000,000 Second Priority Secured Floating Rate Notes due 2010 (the "Second Priority Floating Rate Notes") for which HSBC Bank USA, National Association acts as successor indenture trustee (the "Second Priority Trustee"); (v) $100,000,000 Second Priority Secured Term Loans due 2010 (the "Second Priority Term Notes" and, collectively with the Second

Priority Floating Rate Notes, the "Second Priority Notes") for which Bank of New York acts as successor Administrative Agent (the "Second Priority Administrative Agent," and together with the Second Priority Trustee, the "Second Priority Debt Representatives"); and (vi) $680,000,000 Third Priority Secured Floating Rate Notes due 2011 and $150,000,000 11.5% Third Priority Secured Notes due 2011 (collectively, the "Third Priority Notes") for which Manufacturers & Traders Trust Company acts as successor indenture trustee (the "Third Priority Trustee");

WHEREAS, on January 26, 2007, the Debtors filed their Motion for an Order (I) Authorizing Debtors to Obtain Replacement Postpetition Financing to (A) Refinance Existing Postpetition Financing and (B) Repay the Prepetition Debt; (II) Allowing Debtors' Limited Objection to Claims; and (III) Determining Value of Secured Claims (the "Repayment Motion"), in which the Debtors sought authority to (i) refinance their then-existing DIP Facility and (ii) use the proceeds from the replacement DIP Facility to repay the CalGen Secured Debt;

WHEREAS, on February 16, 2007, each of the First Priority Debt Representatives filed an objection to the Repayment Motion contending that the Debtors were not entitled to repay the First Priority Notes prior to their scheduled maturities and, in any event, could not repay the First Priority Notes without paying (i) certain "makewhole" amounts that the First Priority Debt Representatives believed to be required by the First Priority Term Loan Agreement and the First Priority Indenture and (ii) default interest and certain other amounts that had allegedly accrued under the First Priority Term Loan Agreement and the First Priority Indenture;

WHEREAS, on March 5, 2007, this Court entered the "Memorandum Decision and Order Granting, in Part, Debtors' Motion for an Order (I) Authorizing Debtors to Obtain Replacement Postpetition Financing to (A) Refinance Existing Postpetition Financing and (B)

Repay Prepetition Debt; (II) Allowing Debtors' Limited Objection to Claims; and (III) Determining Value of Secured Claims" (the "Memorandum Decision and Order");

WHEREAS, pursuant to the Memorandum Decision and Order, the First Priority Debt Representatives were granted an unsecured claim for damages in connection with the Debtors' repayment of the First Priority Notes equal to 2.5% of the outstanding principal amounts of the First Priority Notes (the "Makewhole Claims"), the cumulative dollar value of which is approximately $20,875,000.00;

WHEREAS, pursuant to the Memorandum Decision and Order, this Court deferred decision on whether the First Priority Debt Representatives are entitled to payment of post-petition default interest and certain other interest amounts;

WHEREAS, pursuant to the Memorandum Decision and Order, on March 29, 2007 (the "Repayment Date"), the Debtors repaid to the First Priority Debt Representatives principal and non-default contract interest due on the First Priority Notes as of the Repayment Date;

WHEREAS, the Debtors and the Revolving Loan Administrative Agent entered into a settlement under which the Debtors agreed to pay the Revolving Loan Administrative Agent and the holders it represents (i) 50% of the incremental interest amounts claimed by the Revolving Loan Administrative Agent and (ii) such additional amounts as are needed so that the percent of default interest paid to the Revolving Loan Administrative Agent and the holders it represents is the same as the maximum percent of default interest paid to any secured lender of the CalGen Debtors (or second lien lender of Calpine) pursuant to a settlement;

WHEREAS, the Debtors, the Creditors' Committee, the First Priority Debt Representatives and other parties in interest have appealed from the Memorandum Decision and

Order to the United States District Court for the Southern District of New York (the "District Court");

WHEREAS, the First Priority Debt Representatives have expressed their intention to seek default interest from the Debtors and object to the Plan on the basis of, among other things, the proposed substantive consolidation of the CalGen Debtors with other Calpine entities; and

WHEREAS, the parties hereto have entered into further negotiations and reached a settlement in respect of all outstanding issues related to the First Priority Notes.

**STIPULATION**

IT IS THEREFORE AGREED, IN CONSIDERATION OF THE PROMISES AND COVENANTS AND AGREEMENTS SET FORTH HEREIN, AND UPON COURT APPROVAL HEREOF, THAT IT SHALL BE ORDERED AS FOLLOWS:

1. Allowance of Claims.

(a) On account of the Makewhole Claims, the First Priority Trustee is granted for all purposes an allowed unsecured claim against the CalGen Debtors in the aggregate amount of $5,875,000.00 and the First Priority Term Loan Administrative Agent is granted for all purposes an allowed unsecured claim against the CalGen Debtors in the aggregate amount of $15,000,000.00, which amounts shall accrue interest at the federal judgment rate from the Repayment Date through the effective date (the "Effective Date") of the Plan (said allowed unsecured claims, together with all such interest accrued thereon, are hereinafter referred to as the "Allowed Unsecured Makewhole Claims"). Consistent with the proposed Plan, the federal judgment rate shall be fixed at 4.34% per annum, which was the federal judgment rate in effect as of the date on which these cases

were filed (the "Applicable Federal Judgment Rate").  The holders of the First Priority Notes shall not be entitled to receive any adequate protection payments on account of the Allowed Unsecured Makewhole Claims under any chapter 11 plan or otherwise.

(b) On account of claims for default interest, the First Priority Trustee is granted for all purposes an allowed unsecured claim against the CalGen Debtors in the aggregate amount of $2,868,400.65 and the First Priority Term Loan Administrative Agent is granted for all purposes an allowed unsecured claim against the CalGen Debtors in the aggregate amount of $26,243,428.70, which amounts shall accrue interest at the Applicable Federal Judgment Rate from the Repayment Date through the Effective Date (said allowed unsecured claims, together with all such interest accrued thereon, are hereinafter referred to as the "Allowed Unsecured Default Interest Claims").  The holders of the First Priority Notes shall not be entitled to receive any adequate protection payments on account of the Allowed Unsecured Default Interest Claims under any chapter 11 plan or otherwise.

(c) On the Distribution Date (as defined in the Plan, in the form presently filed with the Court) or within forty-five (45) calendar days after receipt by the Debtors of an invoice or invoices submitted following entry of an order approving this Stipulation, whichever is earlier, the Debtors will pay $3,000,000.00 in the aggregate to the First Priority Debt Representatives and $684,000.00 to Whitebox, for application to reasonable, actual and documented fees and expenses (including legal fees and financial advisory fees, costs and expenses) accrued to the date hereof by the First Priority Debt Representatives and Whitebox, respectively, in these cases, provided that copies of invoices for such legal and financial advisors are provided to the Debtors, the Creditors'

Committee and the Official Committee of Equity Security Holders of Calpine within 10 days after the entry of an order approving this Stipulation and no objection has been interposed to the reasonableness of the fees and expenses reflected in such invoices. Notwithstanding any provision contained in this Stipulation to the contrary, if any fees, costs and expenses (including legal and financial advisory fees, costs and expenses) which the First Priority Debt Representatives have now or may hereafter incur are not paid in full in cash, the First Priority Debt Representatives may assert, to the extent permitted by the CalGen Loan Documents, their respective charging liens against any recoveries received for or on behalf of the respective holders of the First Priority Floating Rate Notes and the First Priority Term Notes for payment of all such unpaid fees, costs and expenses (including all such legal and financial advisory fees, costs and expenses).

2.      <u>Default Interest Protection</u>.  Before the Effective Date, the Debtors will use commercially reasonable efforts to identify a buyer (the "<u>Buyer</u>") of the entire amount of both Allowed Unsecured Default Interest Claims for the cumulative amount of $29,111,829.35, plus interest that has accrued on that amount at the Applicable Federal Judgment Rate from the Repayment Date through the date of such sale (the price paid for such Allowed Unsecured Default Interest Claims, the "<u>Purchase Price</u>").  To the extent that the Allowed Unsecured Default Interest Claims are not sold prior to the Effective Date, then on the Effective Date the Allowed Unsecured Default Interest Claims shall each be reduced to $0 and the First Priority Trustee shall be deemed to have been granted for all purposes an allowed secured claim against the CalGen Debtors in the aggregate amount of $2,868,400.65 (plus interest accrued on that amount at the Applicable Federal Judgment Rate from the Repayment Date) and the First Priority Term Loan Administrative Agent shall be deemed to have been granted for all purposes

an allowed secured claim against the CalGen Debtors in the aggregate amount of $26,243,428.70 (plus interest accrued on that amount at the Applicable Federal Judgment Rate from the Repayment Date). To the extent that the Allowed Unsecured Default Interest Claims are sold for a net Purchase Price of less than $29,111,829.35 plus interest that has accrued on that amount at the Applicable Federal Judgment Rate from the Repayment Date through the date of such sale (the difference between the allowed amount of the claim and the Purchase Price, the "Shortfall"), then the First Priority Debt Representatives shall be deemed to have been granted for all purposes allowed secured claims against the CalGen Debtors for the aggregate amount of such Shortfall, with each First Priority Debt Representative receiving an allowed secured claim for its proportional share of the Shortfall (which share shall be calculated by each First Priority Debt Representative and provided to the Debtors). To the extent the Purchase Price is greater than $29,111,829.35 plus interest that has accrued on that amount at the Applicable Federal Judgment Rate from the Repayment Date through the sale date, such surplus will be remitted to Calpine by the First Priority Debt Representatives.

3. <u>Sale and Assignment of Default Interest Claim.</u> The First Priority Debt Representatives shall, at the written direction of the Debtors, sell and assign the entirety of the Allowed Unsecured Default Interest Claims on behalf of holders of the First Priority Notes, and such holders shall be deemed to have joined in such direction, at any time prior to the Effective Date. Such Allowed Unsecured Default Interest Claims shall not be sold absent receipt of a written direction to each of the First Priority Debt Representatives from the Debtors. Such written direction shall identify the proposed Buyer of the entire Allowed Unsecured Default Interest Claim and the proposed Purchase Price. The Debtors shall consult with the Creditors' Committee in connection with the giving of any direction to sell the Allowed Unsecured Default

Interest Claims and, to the extent the Debtors and the Creditors' Committee do not agree on whether such direction should be given, the Debtors will provide the Creditors' Committee with no less than three (3) business days' written notice prior to issuing such direction and the Creditors' Committee shall be permitted to seek a ruling by this Court as to the reasonableness of the Debtors' direction on an expedited basis. The Purchase Price shall be paid directly to the First Priority Debt Representatives upon the sale of the Allowed Unsecured Default Interest Claims and distributed as provided for hereunder and in the CalGen Loan Documents. Any sale and assignment of the Allowed Unsecured Default Interest Claims shall be without recourse to the First Priority Debt Representatives, holders of the First Priority Notes, the Debtors, or the Creditors' Committee (and each of the foregoing parties' respective affiliates, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives or members in their capacities as such), and none of the foregoing parties shall have any liability of any kind on account of the sale and assignment of the Allowed Unsecured Default Interest Claims contemplated by this Stipulation. None of the First Priority Debt Representatives, holders of the First Priority Notes, the Debtors, or the Creditors' Committee shall make any representations or warranties in connection with such sale and assignment and the Buyer shall be permitted to rely on this Stipulation and the order approving the Stipulation as to the validity of the Allowed Unsecured Default Interest Claims, subject to the terms of this Stipulation and the order approving this Stipulation. The First Priority Trustee and the First Priority Term Loan Administrative Agent shall be entitled to seek indemnification from the Debtors pursuant to the provisions of Section 7.07 of the First Priority Indenture and Sections 2.08, 7.07, 8.03, 12.02 and 12.03 of the First Priority Term Loan Agreement with respect to any claims or liability arising in connection with the sale and

assignment of the Allowed Unsecured Default Interest Claims or the enforcement of this Stipulation or the order approving this Stipulation.

4. <u>Satisfaction of Claims</u>. All allowed secured claims granted pursuant to this Stipulation, if any, shall be paid in cash in full as soon as reasonably practicable after the Effective Date. The First Priority Debt Representatives shall receive consideration, which consideration shall be the same consideration to be received by the other holders of General Unsecured Claims (as defined in the Plan), on account of all allowed unsecured claims granted pursuant to this Stipulation on the earliest date on which distributions are made on account of unsecured claims pursuant to the Plan.

5. <u>Waiver of Claims and Objections</u>. Except as set forth herein, within two (2) business days of the order approving this Stipulation becoming a Final Order,[1] the First Priority Debt Representatives and Whitebox shall withdraw and waive all pending and future objections to relief sought by the Debtors and shall be deemed to have waived all claims against all of the Debtors and their estates, including, without limitation, as follows:

(a) The First Priority Debt Representatives will promptly withdraw any and all pending (and forego any future) objections to the Repayment Motion, including, without limitation, their appeal from the Memorandum Decision and Order.

(b) Upon execution of the Stipulation, the First Priority Debt Representatives and Whitebox will not object to or oppose in any way the Plan or any aspect of the Plan;

---

[1] As used herein, the term "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

<u>provided</u> that nothing contained therein conflicts with or derogates from the provisions of this Stipulation or the order approving this Stipulation. Upon execution of the Stipulation, except as contemplated by the Stipulation, the First Priority Debt Representatives and Whitebox will not seek to delay any aspect of the schedule on which the Debtors seek to confirm the Plan, whether based on the suspension of litigation activities resulting from entry into this Stipulation or otherwise.

(c) This settlement is in complete and full satisfaction of all outstanding claims, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, in law, equity, or otherwise, which the First Priority Debt Representatives and the holders of the First Priority Notes (in their capacities as such) may now have against the Debtors. Accordingly, subject to the provisions of this Stipulation and provided that the Plan is not amended or revised in such a way that the treatment of CalGen's unsecured creditors is materially worse than under the Plan in the form presently filed with this Court, the First Priority Debt Representatives and the holders of the First Priority Notes (in their capacities as such) hereby waive and release any pending (and forego any future) claims or objections against the Debtors in these chapter 11 cases, including, without limitation, claims for additional interest, fees and expenses, or damages resulting from the repayment of the First Priority Notes.

(d) Upon execution of this Stipulation, all litigation among the Debtors, the First Priority Debt Representatives, and/or the holders of the First Priority Notes (in respect of such First Priority Notes), including, without limitation, the appeal from the Memorandum Decision and Order and discovery related to disputes between the Debtors

and the First Priority Debt Representatives, shall be suspended until the earlier of: (a) this Court's approval of this Stipulation, at which time such litigation shall continue to be suspended until the entry of a Final Order, at which such time the litigation shall be withdrawn; or (b) November 30, 2007, on which date this Stipulation shall be null and void absent consent of all parties hereto. The Debtors and the First Priority Debt Representatives shall inform the District Court that they have entered into this Stipulation with respect to the Makewhole Claims that is subject to approval by this Court. In the event that this Stipulation is not approved by this Court or any order approving it becomes subject to a stay pending appeal, the Debtors and the Creditors' Committee agree that the deadline for the First Priority Debt Representatives filing a motion for default interest will be reasonably and appropriately extended. The Debtors will not, under any circumstances, oppose relief sought by the First Priority Debt Representatives aimed at avoiding prejudice caused by the suspension of litigation activities.

(e) Absent a court order providing otherwise, the Debtors will make all distributions contemplated by the Stipulation at the times set forth herein. Until such time as the order approving this Stipulation becomes a Final Order, in the event that a court order, including a stay pending appeal, is entered that prevents the distributions required by this Stipulation from being made at the times set forth herein, any party hereto shall have the option to terminate this Stipulation and all obligations hereunder within five (5) days of entry of such a court order. If the Stipulation is terminated pursuant to this provision, the Debtors and the Creditors' Committee agree that the deadline for the First Priority Debt Representatives to file a motion for default interest will be reasonably and appropriately extended. The Debtors will not, under any

circumstances, object to relief sought by the First Priority Debt Representatives reasonably aimed at avoiding prejudice caused by the cessation of litigation activities, including any request or motion to establish a revised, reasonably expedited schedule for the prosecution of the First Priority Debt Representatives' default interest claims.

6. <u>Modification Motion</u>. On the Distribution Date (as defined in the Plan, in the form presently filed with the Court) or the date on which the order approving this Stipulation becomes a Final Order, whichever is earlier, the holders of the First Priority Notes and the First Priority Debt Representatives will be excepted from the Order Approving the Debtors' Motion Seeking Approval of an Immaterial Modification to the Debtors' Joint Plan of Reorganization Without the Need for Further Solicitation of Votes, entered November 8, 2007 [Docket No. 6542] (the "<u>Modification Order</u>") with the exception of Paragraph 4 of the Modification Order, which shall continue to bind the holders of the First Priority Notes and the First Priority Debt Representatives. To the extent there is a conflict between Paragraph 4 of the Modification Order and this Stipulation, the Modification Order shall control.

7. <u>Releases</u>. The order approving this Stipulation shall provide that on the earlier of the Effective Date or the date on which the order approving this Stipulation becomes a Final Order, except as provided for herein, the First Priority Debt Representatives, the Debtors and the Creditors' Committee (and each of the foregoing parties' respective affiliates, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives or members in their capacities as such) (collectively, the "<u>Released Parties</u>") shall be deemed released and discharged by the Debtors, the First Priority Debt Representatives and all of the holders of the First Priority Notes (collectively, the "<u>Releasing Parties</u>") from any and all current or future claims, obligations,

rights, suits, damages, causes of action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, in law, equity, or otherwise, which any of the Releasing Parties may have against the Released Parties as of the date hereof, including without limitation, any such claims, obligations, rights, suits, damages, causes of action, remedies and liabilities relating to, or in any manner arising from, in whole or in part, these chapter 11 cases (including the entry into this Stipulation, performance under this Stipulation, and the settlement of claims described hereunder) in respect of the First Priority Notes.  Any order confirming the Plan or any other plan of reorganization of the Debtors shall provide for the continued effectiveness of both this Stipulation and the order approving this Stipulation.  The release by holders of the First Priority Notes of the First Priority Debt Representatives shall be in consideration for distributions to be made to such holders, as contemplated by this Stipulation.

        8.      <u>Intercreditor Issues</u>.  Except as provided for herein, this Stipulation does not limit, restrict or otherwise alter any of the rights and remedies of the First Priority Debt Representatives or any of the holders of the First Priority Notes (including Whitebox) under the Intercreditor Agreement[2] against any of the parties to the Intercreditor Agreement and all such rights and remedies are specifically reserved.  If by the date of the hearing on the motion to approve this Stipulation, the First Priority Debt Representatives and Whitebox have not agreed to release the Second Priority Debt Representatives and the Third Priority Trustee from all liability under the Intercreditor Agreement and any and all claims the First Priority Debt Representatives and Whitebox have against such parties in respect of the CalGen Secured Debt, then the Debtors and the Creditors' Committee each have the right to withdraw this Stipulation prior to the

---

[2] As used herein, the term "<u>Intercreditor Agreement</u>" means that certain Collateral Trust and Intercreditor Agreement, dated as of March 23, 2004, by and among the CalGen Debtors, Wilmington Trust Company as Collateral Agent thereunder, the First Priority Debt Representatives, the Revolving Loan Administrative Agent, the Second Priority Debt Representatives, the Third Priority Trustee and others named therein

hearing without prejudice to any party hereto. The First Priority Debt Representatives and Whitebox will agree to release the Second Priority Debt Representatives and the Third Priority Trustee from all liability under the Intercreditor Agreement and the CalGen Secured Debt if, in advance of the hearing on the motion to approve this Stipulation, (i) the Third Priority Trustee agrees to voluntarily dismiss with prejudice the lawsuit filed against the First Priority Debt Representatives in this Court (Adv. Proc. No. 07-02027), and (ii) the Second Priority Debt Representatives and the Third Priority Trustee agree to execute and deliver releases to the First Priority Debt Representatives and Whitebox, which are in form and substance reasonably acceptable to the First Priority Debt Representatives and Whitebox, respectively.

9.  <u>Section 502(j)</u>.  Notwithstanding section 502(j) of the Bankruptcy Code, no order of this Court and nothing contained in any chapter 11 plan confirmed in these cases (including the Plan) or any order of this Court confirming such plan shall conflict with or derogate from the provisions of this Stipulation.  In addition, this Stipulation shall be binding upon any trustee appointed in any of these cases or in a subsequent chapter 7 case(s).

10.  <u>Entire Agreement</u>.  This Stipulation is the entire agreement between the parties in respect of the subject matter hereof and shall not be modified, altered, amended, or vacated without this Court's approval.  No statement made or action taken in the negotiation of the Stipulation may be used by any party for any purpose whatsoever.

11.  <u>Jurisdiction</u>.  This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Stipulation.

**12.**  <u>Effectiveness</u>.  This Stipulation shall only be effective upon entry of an order substantially in the form of the proposed order approving this Stipulation.

Dated  November 9, 2007
         New York, New York

 /s/ Edward O. Sassower
Richard M. Cieri (RC 6062)
Marc Kieselstein (admitted pro hac vice)
David R. Seligman (admitted pro hac vice)
Edward O. Sassower (ES 5823)
Stephen E. Hessler (admitted pro hac vice)
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York  10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Attorneys for the Debtors and
Debtors in Possession

  /s/ Richard C. Pedone
Amanda D. Darwin, Esq. (AD 2719)
Richard C. Pedone, Esq. (admitted pro hac vice)
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110
Telephone:  (617) 345-1000
Facsimile:  (617) 310-8007

Attorneys for Wilmington Trust Company as
successor Administrative Agent and Wilmington
Trust FSB as Indenture Trustee

  /s/ Philip C. Dublin
Michael S. Stamer (MS-4900)
Philip C. Dublin (PD-4919)
AKIN GUMP STRAUSS HAUER & FELD, LLP
590 Madison Avenue
New York, New York  10022
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1001

Attorneys for the Official Committee of
Unsecured Creditors of Calpine
Corporation, et al.

 /s/ Emil A. Kleinhaus
Richard G. Mason (RM-0698)
Emil A. Kleinhaus (EK-6731)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019-6150
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

Attorneys for Whitebox Advisors LLC and certain
of its affiliates