UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HSBC Bank USA, National Association, as Indenture
Trustee, et al.,

                              Appellants,

        v.

Calpine Corporation, et al.,

                              Appellees.



MEMORANDUM DECISION
AND ORDER
07 Civ. 3088 (GBD)

GEORGE B. DANIELS, District Judge.

        The trustees and administrative agents (collectively, "Trustee") for the first-,

second-, and third-priority loans issued to Calpine Generating Company, LLC

("CalGen") and CalGen Finance Corporation on March 23, 2004 appeal, pursuant to 28

U.S.C. § 158(a), several orders entered in the bankruptcy court. CalGen and CalGen

Finance Corporation are two of the largest subsidiaries of Appellee Calpine Corporation

("Calpine"). The loans, which were accelerated by a bankruptcy filing by Calpine and its

affiliated debtors and debtors in possession (collectively, "Debtor"), lacked provisions for

damages in the event of acceleration. The bankruptcy court nevertheless granted Trustee

unsecured damages in lieu of the stream of interest payments it expected to receive from

Debtor over the life of the loans. Trustee and Debtor both appeal, *inter alia*, the amount

of these awards. The Trustee's appeal is DENIED.[1]

---

[1] All of the parties to the appeals relating to the first- and second-priority loans settled with the exception of
the Official Committee of Equity Security Holders. (*See* Dkt. Nos. 54, 58, 59.) The Collateral Agent also
settled its appeals regarding all three notes. Thus the parties remaining on the appeals regarding the first-
and second-priority notes are Trustee and the Official Committee of Equity Security Holders. The parties
remaining on the appeals regarding the third-priority notes are Trustee, Debtor, the Official Committee of
Equity Security Holders, and the Official Committee of Unsecured Creditors. Because all of the parties

**Background**

      The loans consisted of three first-priority notes, two second-priority notes, and two third-priority notes.  All of the notes except one of the first-priority notes included no-call provisions that prohibited repayment prior to certain dates.  The first-priority notes had maturity dates in 2009 and two of them prohibited repayment prior to April 1, 2007; the second-priority notes had maturity dates in 2010 and prohibited repayment prior to April 1, 2008; and the third-priority notes prohibited repayment prior to their maturity in 2011.  None of the notes required the payment of a premium in the event of repayment pursuant to acceleration, as is commonly provided.  See, e.g., Cont'l Sec. Corp. v. Shenandoah Nursing Home P'ship, 193 B.R. 769, 772 (W.D. Va. 1996), aff'd, 104 F.3d 359 (4th Cir. 1996); In re Calpine Corp., 365 B.R. 392, 398 (Bankr. S.D.N.Y. 2007); Northwestern Mut. Life Ins. Co. v. Uniondale Realty Assocs., 11 Misc.3d 980, 985-88, 816 N.Y.S.2d 831 (N.Y. Sup. Ct. 2006) (collecting cases).  The two first-priority notes with no-call provisions did, however, require payment of a premium in the case of repayment on or after April 1, 2007, and the second-priority notes required payment of a premium in the case of repayment on or after April 1, 2008.  The third-priority notes did not require a repayment premium in any circumstances.

      On December 20, 2005 Debtor filed a petition for bankruptcy pursuant to Chapter 11 of the United States Code (the "Bankruptcy Code"), and an emergency motion for up to $2 billion in debtor-in-possession financing (the "DIP Facility").  The bankruptcy court granted the latter motion on January 26, 2006.  On February 26, 2006 the

---

other than Trustee are adverse to Trustee, for simplicity the Court only refers to Trustee and Debtor.  All three notes are governed by New York law.

bankruptcy court ordered Debtor to pay Trustee all accrued interest and fees at the non-default rates specified in the loan agreements, and Trustee's reasonable fees going forward. On January 26, 2007, Debtor filed a motion seeking authorization to obtain up to $5 billion to refinance the DIP Facility (the "Replacement DIP Facility") and to repay its outstanding debt—about $2.516 billion. On February 27, 2007 the bankruptcy court held a hearing on this motion and considered Trustee's objections, *inter alia*, that Debtor should not be able to pay back the notes, or alternatively that it owed Trustee secured damages equal to the amount of interest it had expected to receive over the life of the loans, and the repayment premiums.

In an order dated March 5, 2007 (the "Memorandum Decision") the bankruptcy court first granted in part Debtor's refinancing motion over Trustee's objections. It found that Debtor's bankruptcy filing rendered the notes mature and payable, and that refinancing would save Calpine about $100 million in interest payments per year and provide it with greater liquidity, among other benefits. Second, the court found that Trustee could not recover secured amounts equal to expectation damages and the repayment premiums. The court granted Trustee, however, unsecured damages in lieu of the interest payments it had expected to receive over the life of the notes—2.5% of principal of the two first-priority notes that included repayment premiums, and 3.5% of principal of both the second- and third-priority notes.[2] Third, the court deferred ruling on Trustee's claim for interest at the default rate specified in the notes from the date of

---

[2] The court found that "the 2.5% prepayment premium of the First Lien Notes and the 3.5% prepayment premium provided in the Second Lien Notes are reasonable proxies for measures of damages to be awarded to those creditors. While the Third Lien Notes do not provide for a premium, based on the calculations submitted by all of the experts I find that a 3.5% premium is also a reasonable proxy of damages . . . ." In re Calpine Corp., 365 B.R. at 400.

Debtor's petition through the date of repayment (the "Default Interest Claim").[3]  On

March 12 and March 26, 2007 the bankruptcy court entered orders implementing the

Memorandum Decision.  It also again deferred ruling on the Default Interest Claim,

expunged Trustee's claim against Debtor for indemnification of fees it would incur in the

future, and expunged Trustee's claim against Debtor's guarantors.  Debtor repaid the

notes in full, including accrued interest and fees due through the date of repayment, on

March 29, 2007.

   Trustee appeals the orders issued in March and seeks (1) secured damages equal

to the repayment premiums and interest it would have received over the life of the notes

less the amount Trustee could have earned in mitigation; (2) the Default Interest Claim;

(3) a secured claim for indemnification of expenses and professional fees due or that

become due, including amounts incurred in this litigation; and (4) payment by Trustee's

guarantors in case the Court does not grant its claims.  Debtor opposes these claims and

argues that (1) the bankruptcy court erred by awarding Trustee any damages, and (2) the

Default Interest Claim is not ripe for review.

**Jurisdiction and Standard of Review**

   District courts have jurisdiction to hear appeals from final orders issued by

bankruptcy courts pursuant to 28 U.S.C. § 158(a)(1).  An order issued by a bankruptcy

court is final if it "finally dispose[s] of discrete disputes within the larger case . . . [and]

[n]othing in the order . . . indicates any anticipation that the decision will be

reconsidered."  In re Palm Coast, Matanza Shores Ltd. P'ship, 101 F.3d 253, 256 (2d Cir.

1996) (internal citations and quotation marks omitted).  Except for the Default Interest

---

[3] The Default Interest Claim is only asserted by the trustee and administrative agent for the third-priority notes.

Claim, which is discussed *infra*, the orders at issue meet this standard.  A bankruptcy courts' conclusions of law, and mixed questions of law and fact are subject to *de novo* review.  In re Enron Corp., 306 B.R. 33, 37 (S.D.N.Y. 2004), aff'd, Enter. Prods. Operating L.P. v. Enron Gas Liquids Inc., 119 F. App'x 344 (2d Cir. 2005).  Findings of fact are reviewed for clear error.  Id.

I.      **Trustee's Claims for Expectation Damages and for the Repayment Premiums**

        A.      **Debtor's Bankruptcy Filing Rendered the No-Call Provisions in the Notes Unenforceable**

        Trustee argues that ordinary principles of contract law apply to its claim for expectation damages.  This argument misses the mark.  According to the terms of the notes, a voluntary bankruptcy filing constitutes an event of default that accelerates and matures the notes, thus making them due and payable immediately.  Even without these provisions, the Bankruptcy Code would require the same result, as the filing of a bankruptcy petition renders all of a petitioner's outstanding debts mature and payable. See, e.g., In re Granite Broad. Corp., 369 B.R. 120, 144 (Bankr. S.D.N.Y. 2007); In re Ridgewood Apartments of DeKalb County, Ltd., 174 B.R. 712, 720 (Bankr. S.D. Ohio 1994) ("Even without specific contractual language, a bankruptcy filing acts as an acceleration of all of a debtor's obligations."); In re Manville Forest Prods. Corp., 43 B.R 293, 297-98 (Bankr. S.D.N.Y. 1984) (noting that "[i]t is a basic tenet of the Bankruptcy Code that [b]ankruptcy operates as the acceleration of the principal amount of all claims against the debtor . . . [t]his tenet follows logically from the expansive Code definition of claim . . . and from the Code's provision in Section 502 that a claim will be allowed in

bankruptcy regardless of its contingent or unmatured status") (internal citations and quotation marks omitted), rev'd on other grounds, 60 B.R. 403 (S.D.N.Y. 1986); S. REP. NO. 95-989, at 63 (1978) (*as reprinted in* 1978 U.S.C.C.A.N. 5787) (stating that "bankruptcy operates as an acceleration of the principal amount of all claims against the debtor"); H.R. REP. NO. 95-595, at 353 (1977) (*as reprinted in* 1978 U.S.C.C.A.N. 5963) (same); cf. Capital Ventures Int'l v. Republic of Arg., 552 F.3d 289, 296-97 (2d Cir. 2009) (stating that "[t]he normal consequence of acceleration is that . . . the entire principal is immediately due and owing").

Accordingly, the no-call provisions in the notes became unenforceable once Debtor filed for bankruptcy, and these provisions could not have prevented Debtor from repaying the notes.  See, e.g., Cont'l Sec. Corp. v. Shenandoah Nursing Home P'ship, 188 B.R. 205, 213 (W.D. Va. 1995) (allowing repayment of note despite no-call provision and stating it "would violate the purpose behind the Bankruptcy Code to deny a debtor the ability to reorganize because a creditor has contractually forbidden it") (internal citation and quotation marks omitted); In re Vest Assocs., 217 B.R. 696, 698 (Bankr. S.D.N.Y. 1998) (allowing repayment of note despite no-call provision); Scott K. Charles & Emil A. Kleinhaus, Prepayment Clauses in Bankruptcy, 15 Am. Bankr. Inst. L. Rev. 537, 563-64 (Winter 2007) (collecting cases and stating that "the cases . . . agree on one thing: [a] contractual prohibition on prepayment should not be specifically enforced in bankruptcy"); George Lefcoe, Yield Maintenance and Defeasance: Two Distinct Paths to Commercial Mortgage Prepayment, 28 Real Estate L.J. 202, 208 (Winter 2000) ("Except in bankruptcy, courts have universally enforced absolute prohibitions against prepayment . . . .").

Because Debtor's bankruptcy filing rendered the no-call provision in the notes unenforceable and liability cannot be incurred pursuant to an unenforceable contractual provision, Debtor did not incur any liability for repaying the notes. See, e.g., Kaiser-Frazer Corp. v. Otis & Co., 195 F.2d 838, 844 (2d Cir. 1952) ("[T]here having been no enforceable contract, Otis is not liable in damages . . . ."); In re Worldcom Inc., 357 B.R. 223, 225-26 (S.D.N.Y. 2006) (affirming bankruptcy court's denial of claim because petitioner's conduct could not have breached unenforceable contract); In re Jamesway Corp., 201 B.R. 73, 78-79 (Bankr. S.D.N.Y. 1996) (denying claim based on unenforceable contract provision), aff'd on other grounds, 179 B.R. 33 (S.D.N.Y. 1995); In re R.H. Macy & Co., 170 B.R. 69, 77 (Bankr. S.D.N.Y. 1994) (same); Gracie Square Realty Corp. v. Choice Realty Corp., 305 N.Y. 271, 282, 113 N.E.2d 416 (N.Y.1953) (finding damages not recoverable based on unenforceable contract). Debtor's repayment of the notes also did not occur prior to maturity, because accelerated debts are mature. See In re LHD Realty Corp., 726 F.2d 327, 330-31 (7th Cir. 1984) (stating that "acceleration, by definition, advances the maturity date of the debt so that payment thereafter is not prepayment but instead is payment made after maturity"); In re Ridgewood Apartments, 174 B.R. at 720 ("It would be anomalous for acceleration of an obligation to be construed as a prepayment . . . . Even without specific contractual language, a bankruptcy filing acts as an acceleration of all a debtor's obligations."); Northwestern Mut. Life Ins. Co., 11 Misc.3d at 982-83, 816 N.Y.S.2d 831 (collecting cases and stating that "[a]cceleration is a change in the date of maturity from the future to the present. Once the maturity date is accelerated to the present, it is no longer possible to repay the debt before maturity.") (internal citations and quotation marks omitted). The

7

cases that Trustee cites for the proposition that breach of an enforceable no-call provision always causes damages are inapposite because these cases did not occur in the context of bankruptcy filings.

### B.     The Notes Lacked Provisions for Damages in the Case of Acceleration

While Trustee may not recover expectation damages for Debtor's repayment of the notes despite the no-call provisions, the notes could have provided for the payment of premiums in the event of payment pursuant to acceleration. See, e.g., In re United Merchs. and Mfrs., Inc., 674 F.2d 134, 140 (2d Cir. 1982).  Parties frequently provide for damages in these situations precisely because acceleration deprives borrowers of the payment streams for which they contracted. See, e.g., Teachers Ins. & Annuity Ass'n of Am. v. Butler, 626 F. Supp. 1229, 1235 (S.D.N.Y. 1986); In re Calpine Corp., 365 B.R. at 398; In re Hidden Lake Ltd., 247 B.R. 722, 728 (Bankr. S.D. Ohio 2000).  Without such a provision, however, no damages are recoverable after acceleration. See, e.g., Cont'l Sec. Corp., 193 B.R. at 777 (denying claim for damages and noting that a no-call provision, "completely uncoupled from some sort of damages provision, is not specific enough to be enforced by this court"); accord In re Solutia Inc., 379 B.R. 473, 485 n.7 (Bankr. S.D.N.Y. 2007) (disagreeing with the bankruptcy court's ruling in the instant case); In re Vest Assocs., 217 B.R. at 699 (noting that "because the note does not include a damage or penalty provision in the event of the Debtor's prepayment, they cannot recover damages for any lost interest opportunity or other damages resulting from the prepayment); Northwestern Mut. Life Ins. Co., 11 Misc.3d at 985, 816 N.Y.S.2d 831 (collecting cases).  The Court may not alter the terms of the notes. See, e.g., Red Ball

Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999); In re Ames
Dep't Stores, Inc., No. 93 Civ. 4014, 1995 WL 311764, at *2 (S.D.N.Y. May 18, 1995)
("a bankruptcy court does not have the power to rewrite contracts").

Trustee argues that "the only time acceleration defeats a prepayment prohibition,
prepayment premium, or other available remedy for prepayment under an agreement is
when the lender acts to compel prepayment . . . [otherwise] a debtor could avoid the
effect of [such a] clause by filing a bankruptcy case." (Reply Brief Appellant
Manufacturers & Traders Trust Co. ("M&T Reply") 22 (internal citation and quotation
marks omitted) (second alteration in the original).) None of the cases Trustee cites
awarded lenders damages in the absence of a damages provision in the underlying
agreement. Accordingly, no damages are recoverable based on the third- priority note.

While the first- and second-priority notes did require payment of premiums in the
event of early payment, damages were still inappropriate for the repayment of these
notes. First, the premiums were inapplicable when Debtor repaid the notes on March 29,
2007. The first- and second-priority notes did not require the payment of premiums
unless they were repaid on or after April 1, 2007 and April 1, 2008, respectively. Trustee
cites only one case that awarded damages in the absence of an applicable damages
provision, and that case has been properly criticized.[4] Contrary to Trustee's argument,

---

[4] Trustee cites only one case where a prepayment premium was awarded in circumstances where it did not
apply according to its own terms. In In re 360 Inns, Ltd., 76 B.R. 573, 575 (Bankr. N.D. Tex. 1987), the
note at issue contained a no-call provision and required payment of a premium during the first ten years of
the note in the event of an involuntary repayment. The debtor filed a voluntary bankruptcy petition during
the fifth year of the note, but the bankruptcy court nevertheless required treatment of the premium in the
debtor's reorganization plan. Id. at 576-77. This has case has been criticized because it assumed without
determining that a reorganization plan needed to include treatment of the premium. See Cont'l Sec. Corp.,
193 B.R. at 776-77. The Court agrees with this criticism. It also does not seem that there was any basis for
the court in In re 360 Inns, Ltd. to conclude that the premium needed to be included in any reorganization
plan since the premium did not apply to the circumstances of the debtor's repayment. See Cont'l Sec.
Corp., 193 B.R. at 776-77.

there is no basis for the Court to simply award the premiums in circumstances to which they do not apply.  Second, as discussed *supra,* no damages are recoverable merely because of the no-call provisions in the notes.  The no-call provisions became unenforceable once Debtor filed for bankruptcy, and neither note specifically required a payment in the event of acceleration.  Accordingly, Trustee does not have a valid claim for damages under state law.

### C.    The Bankruptcy Code Precludes Trustee's Claim

The Bankruptcy Code clarifies this analysis.  In order to have a valid claim in bankruptcy, a party must first have a valid claim under non-bankruptcy law.  Travelers Cas. & Sur. Co. of Am., 549 U.S. 443, 450 (2007).  Section 502 of the Bankruptcy Code, 11 U.S.C. § 502, then determines whether such claims are allowed.  Travelers Cas. & Sur. Co. of Am., 549 U.S. at 449.  All claims are allowed unless specifically proscribed by one of the nine exceptions listed in § 502(b).  Travelers Cas. & Sur. Co. of Am., 549 U.S. at 449.  Claims under § 502(b) are determined "as of the date of the filing of the petition."  11 U.S.C. § 502(b).

Trustee fails the first part of this test because it does not have valid claims under state law for expectation damages or for the prepayment premiums.  Section 502(b)(2) of the Bankruptcy Code also specifically disallows Trustee's claim for expectation damages because it disallows claims for unmatured interest.  11 U.S.C. § 502(b)(2).  The Bankruptcy Code does not define "unmatured interest," but case law has determined that unmatured interest includes interest that is not yet due and payable at the time of a bankruptcy filing, or is not yet earned.  See, e.g., Capital Ventures Int'l, 552 F.3d at 296 (collecting cases and noting that "[t]he normal consequence of acceleration is that interest

payments that would have been due in the future are no longer due . . . future interest payments are unearned because the creditor is no longer loaning the debtor the principal") (internal citations and quotation marks omitted); In re Alves, No. 05 Civ. 2284, 2007 WL 1540264, at *4 (Bankr. W.D.N.Y. May 25, 2007) ("unmatured interest is interest that has not been earned"); In re Moore, 307 B.R. 394, 397 (Bankr. S.D.N.Y. 2004) (collecting cases and concluding that "unmatured interest . . . [is interest] that has not been earned as of the filing of the bankruptcy petition") (internal citations and quotation marks omitted); see also S. REP. NO. 95-989, at 63 (noting that under § 502(b) "interest stops accruing at the date of the filing of the petition, because any claim for unmatured interest is disallowed under this paragraph"); accord H.R. REP. NO. 95-595, at 353.  Trustee seeks damages equal to the full amount of interest due over the life of the loans, but not yet due as of the petition date.  This amount was unmatured when Debtor filed for bankruptcy, and therefore may not be recovered.

Trustee's claims are also proscribed by § 506(b) of the Bankruptcy Code, which governs the treatment of oversecured claims.  See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 238-39 (1989).  All parties agree that Trustee's claims are oversecured. Section 506(b) permits holders of an "*allowed* [over]secured claim . . . interest on such claim, and any reasonable fees, costs, or charges *provided for under the agreement*."  11 U.S.C. § 506(b) (emphasis added).  Awards are not allowed under § 506(b), however, unless the claims they derive from are first allowed under § 502.  See Travelers Cas. & Sur. Co. of Am., 549 U.S. at 450.  Trustee may not recover under § 506(b) because it does not have allowed claims under § 502, and no damages were "provided for under the

agreement[s]" in the event of repayment pursuant to acceleration.  See 11 U.S.C. §

506(b).

Trustee largely brushes aside these governing legal principles and argues that its

claims satisfy the two-part test set forth in Travelers Cas. & Sur. Co. of Am.  (See, e.g.,

Opening Brief Appellant Manufacturers & Traders Trust Co. ("M&T Brief") 22.)  First,

Trustee argues that it has valid claims under state law because expectation damages are

always applicable.  Trustee contends that even though the no-call provisions in the notes

may not be enforceable under the Bankruptcy Code, because no-call provisions are

generally enforceable under state law they therefore "may still give rise to a valid money

damage claim under state law that is allowable under the Bankruptcy Code."  (M&T

Reply 4.)  It also notes that repayment premiums are generally enforceable under state

law and under the Bankruptcy Code.  Second, Trustee argues that prepayment premiums

and damages for breach of no-call provisions do not constitute unmatured interest such

that they would be disallowed pursuant to § 502(b)(2).  As discussed *supra*, however,

damages for Debtor's repayment of the notes despite the no-call provisions would

constitute unmatured interest, and no prepayment premiums applied when Debtor filed

for bankruptcy.  Finally, Trustee argues that § 506(b) does not preclude its claims.  It

argues that its claim for expectation damages need not "be shoehorned into section

506(b) as a cost or charge.  As New York law confirms, the Damage Claim is a claim for

the lost interest that would have been paid (less mitigation) . . . [and interest] is provided

for quite clearly in the Third Priority Indenture."  (M&T Brief 37-38.)  It also notes that

the first- and second-priority notes provided for repayment premiums.

These arguments fall short.  Not only would they mean that bankruptcy filings and the Bankruptcy Code have no effect on claims for ordinary contract damages, but they also fail both steps of the analysis set forth in <u>Travelers Cas. & Sur. Co. of Am</u>. First, there is no basis in state law for Trustee to recover expectation damages or the repayment premiums.  While Trustee argues that it seeks merely to recover what it bargained for, it is in fact getting just that.  Indeed Debtor has repaid the entirety of the principal of the notes plus interest up until the time it filed for bankruptcy.

Second, Trustee's claims are specifically proscribed by § 502(b)(2) and § 506(b) of the Bankruptcy Code.  As to Trustee's claim for expectation damages, its argument that this claim need not "be shoehorned into section 506(b) as a cost or charge . . . [and interest] is provided for quite clearly in the Third Priority Indenture," fails to sustain this claim.  (M&T Brief 37-38.)  To the extent Trustee intends this argument to satisfy the requirement in § 506 that "any reasonable fees, costs, or charges [be] provided for under the agreement," it fails to do so.  The notes provide for interest payments over the life of the loan.  They do not provide for a "charge" equal to the lost interest payments in the context of a bankruptcy filing, the context with which § 506 is concerned.  <u>See</u> <u>Ron Pair Enters., Inc.</u>, 489 U.S. at 238-40; <u>see also</u> <u>Cont'l Sec. Corp.</u>, 193 B.R. at 775 (rejecting, in similar circumstances to this case, appellant's claim for lost interest payments and "what would otherwise be a straightforward demand for a charge if the note provided for a penalty, into a demand for the full value of the note, inherently freed from the strictures of § 506(b)") (internal quotation marks omitted).  Trustee's theory that expectation damages are always available would eviscerate the prohibition against the award of unmatured interest in § 502(b)(2).  The repayment premiums in the first- and second-

13

priority notes also do not satisfy § 506(b) because they did not apply when Debtor filed

for bankruptcy.  To the extent Trustee intends its argument to be that the interest

payments required under the notes constitute "interest" under § 506, this argument also

fails.  The "interest" specified in § 506 refers to interest on an otherwise allowed

oversecured claim, "regardless of whether the agreement giving rise to the claim provides

for interest."  In re Milham, 141 F.3d 420, 423 (2d Cir. 1998) (internal citation and

quotation marks omitted).  Trustee does not have an allowed oversecured claim upon

which interest could be awarded.  Interest under § 506(b) only accrues, moreover, from

the time a petition is filed until the time of the payment of a claim or the confirmation of

a reorganization plan; it does not function to compensate a lender for lost interest

payments.  See id.


## II.     The Default Interest Claim

The trustee and administrative agent for the third-priority debt seek interest at the

default rate specified in the notes, from Debtor's bankruptcy filing until it repaid the

notes.  They asserted this claim in the bankruptcy court in their proof of claim numbered

4073.  They allege that the bankruptcy court deferred ruling on this claim in the

Memorandum Decision, but then expunged it in subsequent orders dated March 12, 2007

and March 26, 2007.  It is clear, however, that the court expressly preserved their right to

litigate this claim.  In the court's order dated March 26, 2007, which is attached to the

Joint Appendix submitted by Trustee and the Collateral Agent, the court stated that claim

number

> 4073 . . . shall be expunged and disallowed; provided, however, that the
> CalGen Lenders may continue to assert claims for the difference between

> interest calculated at the default rate and interest paid at the non-default
> rate through the date of payment of the Repayment Amounts, pending the
> Court's ruling on this issue.

(Joint Appendix Volume I at 3 ¶ 6.)  Accordingly, the bankruptcy court's order did not

finally dispose of this issue, and this Court lacks jurisdiction over this unresolved claim.[5]

See In re Palm Coast, Matanza Shores Ltd. P'ship, 101 F.3d at 256.


### III.   Trustee's Claim for Indemnification of Fees

Trustee argues that the bankruptcy court erred by expunging its claim for

indemnification of all of its expenses and professional fees incurred or to be incurred for

enforcing the notes, including this appeal.  The notes provide, *inter alia*, for the

indemnification of "costs and expenses of enforcing this Indenture."  (Joint Appendix

Volume I at 245, 409, 575.)  A Collateral Trust and Intercreditor Agreement issued the

same day as the notes similarly provides for "all reasonable fees, expenses and

disbursements of legal counsel . . . or other professional advisors and agents . . . in

connection with the . . . performance or enforcement of this Agreement."  (Id. at 1165.)

On March 26, 2007 the bankruptcy court ordered that

> the Debtors are authorized to discontinue all payments to the CalGen
> Lenders' professionals . . . as of the date the Repayment Amounts are
> paid; provided, however, that any reasonable professionals' fees incurred
> with respect to the litigation of default interest (before the Bankruptcy
> Court only) will be paid.

(Id. at 59 ¶ 8.)

---

[5] The trustees and administrative agents for all three notes also argue that the bankruptcy court improperly
expunged their claims for indemnification of fees and their claims against their guarantors without
explanation in the orders entered on March 12, 2007 and March 26, 2007.  Before the court entered these
orders, however, they filed proofs of claim, proposed their own orders, and objected to Debtor's proposed
order expunging these claims.  The bankruptcy court's orders therefore implicitly overruled their
arguments.  The merits of these claims are discussed *infra*.

Trustee's claim must be evaluated under § 506(b) because Trustee's claims are

oversecured, as noted *supra*.  See Ron Pair Enters., Inc., 489 U.S. at 238-39.  Only

"reasonable fees, costs, or charges provided for under the agreement" are allowed under §

506(b).  Bankruptcy courts have broad discretion and "inherent power" in deciding upon

the reasonableness of fees under § 506(b).  In re Mills, 77 B.R. 413, 419 (Bankr.

S.D.N.Y. 1987) (internal citations omitted).  Indeed,

> where services are not reasonably necessary or where action is taken
> because of an attorney's excessive caution or overzealous advocacy,
> courts have the right and duty, in the exercise of their discretion, to
> disallow fees and costs under § 506(b).

Id. at 420 (internal citations and quotation marks omitted).

First, the Court assumes that the requested fees fall within the scope of the

indemnification provisions.  Second, several considerations inform the Court's

determination of the reasonableness of Trustee's claim.  Debtor argues that awarding fees

and expenses in this case would encourage Trustees to engage in further, meritless

litigation.  Debtor provides the transcript from a hearing in which the bankruptcy court

made a similar observation in this case:

> Certainly, what we're left with as a practical matter, is this estate funding
> the litigation against itself with respect to the make whole argument?
> That's a great incentive to continue to carry on the litigation . . . . [T]he
> fact that the fees for the adversary in that litigation are coming out of the
> estate, I find to be improvident . . . .

(Reply Brief Appendix Debtors-Appellees Ex. M, Hr'g Tr. 47:4-20, June 21, 2006.)

Significant amounts of time, energy, and money have been spent litigating the issues in

this appeal both in the bankruptcy court and in this Court.  Trustee nevertheless provides

only one criticized case in which damages were awarded for repayment of an accelerated

loan in the absence of an applicable damages provision in the underlying agreement.  See

In re 360 Inns, Ltd., 76 B.R. at 575.  Trustee also does not provide any substantial

justification for its claim that expectation damages may be recovered outside of the

Bankruptcy Code.  Cf. In re Mills, 77 B.R. at 418 (noting that success in a bankruptcy

litigation is not a prerequisite to recover fees under § 506(b)).  Indeed a different judge in

the bankruptcy court already rejected a similar claim in a different case, although that

case is not binding on this Court.  See In re Vest Assocs., 217 B.R. at 699-700.

Accordingly the Court rejects Trustee's claim for fees and expenses incurred after the

bankruptcy court's order allowing Debtor to stop paying these amounts.  The Court notes

that the bankruptcy court authorized Trustee to seek fees related to litigation of the

Default Interest Claim before the bankruptcy court only.


### IV.   Trustee's Claim against Debtor's Guarantors

Trustee argues that the bankruptcy court erred in expunging its claim against

Debtor's guarantors, and that Debtor's bankruptcy filing does not alter the guarantors'

obligations to pay the full amount of all of Trustee's claims.  The notes provide, *inter

alia*, that each of Debtor's guarantors "jointly and severally, unconditionally guarantees

. . . [that] the principal . . . interest . . . and all other obligations . . . will be promptly paid

in full."  (Joint Appendix Volume I at 255, 420, 586.)  A guaranty functions as "a

collateral undertaking by one person to answer for the payment of a debt or the

performance of some contract or duty in case of the default of another person who is

liable for such payment or performance in the first instance."  38A C.J.S. *Guaranty* § 1

(2008).  The obligations of a guarantor depend, however, on the extent to which a debt

remains outstanding according to the terms of an underlying contract.  Id. § 50.  Because

Debtor does not owe anything to Trustee, Debtor's guarantors have no liability to Trustee. This claim is denied.

## V.    The Bankruptcy Court's Approval of Debtor's Repayment of the Notes Outside of a Reorganization Plan

Trustee also argues that the bankruptcy court impaired its claims by awarding it less than the full amount of its claims, and by approving Debtor's repayment of the notes pursuant to 11 U.S.C. § 363(b) outside of the confirmation procedures of a Chapter 11 reorganization plan.[6] According to Trustee, the repayment "ma[de] it difficult or impossible for a creditor of [Debtor] to propose a competing plan for [Debtor] because the new loan necessitates repayment . . . [it] altered the playing field without any confirmation procedures." (M&T Brief 45.) Trustee therefore requests that this Court remand the case to the bankruptcy court, directing it to award Trustee the full amounts of its claims.

Trustee's argument fails because the bankruptcy court properly authorized repayment of the notes pursuant to § 363(b). Transactions are permitted under § 363(b) when a judge "expressly find[s] from the evidence presented before [him or her] at the hearing [that there is] a good business reason to grant such an application." In re Iridium Operating LLC, 478 F.3d 452, 466 (2d Cir. 2007) (alterations in the original) (internal citation and quotation marks omitted). Indeed bankruptcy courts have the authority to

---

[6] A claim is "impaired" under a reorganization plan unless the plan, *inter alia*, "leaves unaltered the legal, equitable, and contractual rights" of the holder of such claim. 11 U.S.C. § 1124. Reorganization plans under Chapter 11 must conform to the confirmation requirements of 11 U.S.C. § 1129, including the requirement that "[w]ith respect to each impaired class of claims or interests . . . each holder . . . has accepted the plan." 11 U.S.C. § 1129(7). Section 363(b) provides that a "trustee [or a debtor in possession], after notice and a hearing, may use . . . other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b); *see also* 11 U.S.C. § 1107(a) (providing that a debtor-in-possession in a Chapter 11 case has many of the rights, and performs many of the functions and duties, of a trustee).

modify creditors' contract rights to further substantive provisions of the Bankruptcy Code, and § 363 serves to protect the interests of debtors.  United States ex rel. Rural Electrification Admin. v. Wabash Valley Power Ass'n, 167 B.R. 885, 888-89 (S.D. Ind. 1994) (internal citations omitted).

In contrast, transactions pursuant to § 363(b) are illegal when they constitute *de facto* plans of reorganization and dictate the terms which an eventual plan must take.  In re Iridium Operating LLC, 478 F.3d at 466; In re Tower Auto., Inc., 342 B.R. 158, 163-64 (Bankr. S.D.N.Y. 2006).  Such transactions impermissibly "short circuit the requirements of chapter 11 for confirmation of a reorganization plan."  In re Iridium Operating LLC, 478 F.3d at 466 (internal citation and quotation marks omitted).  Pre-confirmation transactions do not constitute illegal *de facto* reorganization plans when they do not, *inter alia*, dispose of all of a debtor's assets, all of a creditor's claims against a debtor, or restrict creditors' rights to vote on a reorganization plan.  In re Tower Auto., Inc., 342 B.R. at 164.

Repayment saved Debtor substantial amounts of money and it did not dictate the terms of a reorganization plan.  The bankruptcy court held a hearing on this issue in accordance with § 363(b). In the Memorandum Decision, it expressly found that Debtor's repayment of the loans made good business sense.  The court noted that:

> The proposed refinancing will replace higher interest-rate debt with lower interest-rate debt, saving the Debtors approximately $100 million annually . . . . Debtors also expect to realize an additional $5 million in annual savings by no longer having to pay certain fees as adequate protection for the CalGen Secured Debt.  The Proposed Refinancing will provide the Debtors with greater liquidity, a simplified capital structure and enable the Debtors to grant security in respect of hedging obligations in the commodity market.  The Proposed Refinancing also extends the maturity date should a Plan of Reorganization not be approved before the end of 2007 and can be converted to exit financing if the Debtors so chose [sic]

> . . . . This Court has previously authorized the Debtor to prepay secured
> debt . . . over the objections of the First Lien Trustee based in part on the
> interest-rate savings to the Debtor's estates and that order was affirmed on
> appeal.

In re Calpine Corp., 365 B.R. at 396-98 (internal footnote and citation omitted).  Indeed,

Trustee itself did not "seriously dispute[]" the benefits that would result from Debtor's

refinancing, id. at 394 n.1, and it had an opportunity to be heard on this issue.  It also

acknowledges that CalGen is very solvent.  Trustee has not submitted any persuasive

evidence that repayment has dictated the terms of a reorganization plan, and it retains the

right to vote on a plan.  The bankruptcy court's authorization of Debtor's repayment of

the notes adequately complied with the requirements of § 363(b).[7]

### Conclusion

For the reasons discussed *supra* the following claims are DENIED: Trustee's

claim for damages resulting from Debtor's repayment of the notes, its claim for the

repayment premiums in the first- and second-priority notes, its claim for indemnification

of fees, its claim against its guarantors, and its claim that the bankruptcy court improperly

---

[7] In an earlier appeal in this bankruptcy case the holders of the first lien debt unsuccessfully asserted a similar argument regarding Debtor's repayment of the outstanding principal and accrued interest outside the context of a reorganization plan.  As this Court noted:

> the Trustee's appeal boils down to the notion that because the bankruptcy court failed to
> order Debtors to pay Noteholders the Make-Whole Premium or make a determination
> that the Make-Whole Premium was not due, the bankruptcy court violated the
> (continued on next page)
> (continued from previous page)
> Noteholders' contractual rights and impaired their claims outside of a chapter 11 plan.
> Nothing could be further from the truth because the bankruptcy court merely ordered the
> payment of the outstanding principal of the Notes for now so Debtor's estates would stop
> losing money, and preserved all parties' rights to litigate the Trustee's Make-Whole
> Premium Demand later. . . . Should the Trustee prevail in its adversary proceeding, the
> Noteholders shall be entitled to the appropriate relief at that time.  Should the Trustee
> fail, the Noteholders have already been made whole.

In re Calpine Corp., 356 B.R. 585, 596-97 (S.D.N.Y. 2007) (internal footnotes, citations, and quotation marks omitted).  This observation is particularly relevant here, since this Court has decided that nothing is owed to Trustee on any of its claims.

authorized repayment of the notes outside the context of a reorganization plan.  Trustee's

Default Interest Claim is not ripe for review. The order of the Bankruptcy Court is

affirmed.

Dated: September 14, 2010
       New York, New York

                            SO ORDERED.


                            GEORGE B. DANIELS
                            UNITED STATES DISTRICT JUDGE